**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **BRENDON TAYLOR,** <br> C/O WHITTAKER LAW, LLC <br> 2055 Reading Road, Suite 260 <br> Cincinnati, Ohio 45202 <br><br> **and** <br><br> **HOLLY HOOVEN,** <br> C/O WHITTAKER LAW, LLC <br> 2055 Reading Road, Suite 260 <br> Cincinnati, Ohio 45202 <br><br>        **Plaintiffs,** <br><br> **v.** <br><br> **JESSE LEE ANTHONY HOOVEN,** <br> **individually and acting under** <br> **color of State law,** <br> 3344 Greenway Avenue <br> Cincinnati, Ohio 45248 <br><br> **and** <br><br> **THE CITY OF CINCINNATI,** <br><br> <u>Serve</u>: <br> City of Cincinnati Law Department <br> 801 Plum Street, Suite 214 <br> Cincinnati, Ohio 45202 <br><br> **and** <br><br> **MADISON M. PAUL,** <br> **individually and acting under** <br> **color of State law,** <br> 907 Beachmeadow Lane <br> Cincinnati, Ohio 45238 <br><br> **and** | Case No. _____ <br><br> **Judge:** _____ <br><br><br> **COMPLAINT AND JURY DEMAND** |

| | |
|---|---|
| **THE HAMILTON COUNTY BOARD OF COUNTY COMMISSIONERS,** | ) |
| <u>Serve</u>: Alicia Reece, President County Administration Building 138 East Court Street, Suite 603 Cincinnati, Ohio 45202 | ) |
| **and** | ) |
| **THE HAMILTON COUNTY DEPARTMENT OF JOBS AND FAMILY SERVICES,** | ) |
| <u>Serve</u>: Michael Patton, Director 222 East Central Parkway Cincinnati, Ohio 45202 | ) |
| **Defendants.** | ) |

## <u>COMPLAINT</u>

**COME NOW** Plaintiffs, Brendon Taylor and Holly Hooven, by and through counsel, and for their Complaint and Jury Demand against Defendants Jesse Lee Anthony Hooven individually and acting under color of State law, the City of Cincinnati, Ohio, Madison M. Paul individually and acting under color of State law, the Hamilton County Board of County Commissioners, and the Hamilton County Department of Jobs and Family Services, state as follows:

### NATURE OF THIS CASE

1.      Plaintiffs initiate this civil action against Defendant and City of Cincinnati police officer Jesse Lee Anthony Hooven, and Defendant Madison M. Paul, a former employee of the Hamilton County Board of County Commissioners and Hamilton County Department of Jobs and Family Services, jointly and severally in their capacities as State actors, under 42 U.S.C. §1983, for depriving them of their rights, privileges, and

immunities secured by the United States Constitution and federal law in connection with Defendants' unlawful and retaliatory accessing and dissemination of private and confidential juvenile records in violation of Plaintiffs' clearly defined constitutional rights arising under the First and Fourteenth Amendments to the United States Constitution.

2. Plaintiffs also proceed against Officer Hooven and Ms. Paul jointly and severally under 42 U.S.C. §1985(3) for conspiring to interfere with and deprive Plaintiffs of their civil rights, equal protection of laws, and equal privileges and immunities under the United States Constitution and the laws of the United States.

3. Plaintiffs further proceed separately against Defendants the City of Cincinnati, Ohio, the Hamilton County Board of County Commissioners, and the Hamilton County Department of Jobs and Family Services under 28 U.S.C. §1983 and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) for adopting, ratifying, approving, and endorsing the unlawful and unconstitutional conduct of Officer Hooven and Ms. Paul described in accordance with their respective policies, procedures, and customs, and as the moving force for the same.

4. Plaintiffs finally allege tort claims against Officer Hooven and Ms. Paul for intentional infliction of emotional distress, wrongful intrusion, and abuse of process arising under Ohio common law.

5. By this civil action, Plaintiffs seek compensatory damages, damages for emotional distress and psychological injuries, equitable relief, injunctive relief, punitive damages, pre-and post-judgment interest, reimbursement of their attorney's fees and

costs, and all other relief to which they're entitled from Defendants, jointly and severally in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

## PARTIS, JURISDICTION, AND VENUE

6.     Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

7.     Plaintiff Brendon Taylor is a resident of Campbell County, Kentucky.

8.     Plaintiff Holly Hooven is a resident of Campbell County, Kentucky.

9.     Defendant Jesse Lee Anthony Hooven is a resident of Hamilton County, Ohio.

10.     Defendant the City of Cincinnati ("the City") is an incorporated municipality within Hamilton County, Ohio.

11.     Defendant Madison M. Paul is a resident of Hamilton County, Ohio.

12.     Defendant the Hamilton County Board of County Commissioners ("the County") is the elected administrative body for Hamilton County government, with a central office located in Cincinnati, Ohio.

13.     Defendant the Hamilton County Department of Jobs and Family Services ("JFS") is a political subdivision of the State of Ohio and/or Hamilton County, Ohio, and recipient of federal funds, with a central office located in Cincinnati, Ohio.

14.     This Court has personal jurisdiction over the parties to this action and subject matter jurisdiction over the controversy alleged in this Complaint under (a) 28 U.S.C. §1331 based on the federal questions presented, (b) 28 U.S.C. §1332 based on the diversity of citizenship of the parties, and (c) 28 U.S.C. §1367 based on the Court's

supplemental jurisdiction over Plaintiffs' claims arising under State law, which arise as part of the same case and controversy as their claims arising under federal law.

15.     The United States District Court for the Southern District of Ohio, Western Division, at Cincinnati, is the appropriate venue for this civil action.

## FACTS

### The Parties

16.     Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

17.     Mr. Taylor is a sergeant and chaplain's assistant in the Ohio Army National Guard. He's been a member of the Army since 2013.

18.     Mr. Taylor has also owned and operated an auto detailing business located in Miamisburg, Ohio since 2017.

19.     Mr. Taylor has two minor children born of previous relationships: a 14-year-old son living in Nashville, Tennessee, and a seven-year-old daughter living in Austin, Texas.

20.     Ms. Hooven earned a Master of Social Work from the University of Cincinnati in 2016 and is employed as a licensed independent social worker.

21.     Ms. Hooven and Mr. Taylor began dating in February 2023.

22.     Ms. Hooven and Mr. Taylor are engaged to be married and cohabitate in a home she owns in Ft. Thomas, Kentucky.

23.     Officer Hooven has been employed by the City as a police officer since 2014.

24. Ms. Hooven and Officer Hooven were married in Cincinnati in June 2015 and have two minor children born of the marriage: a seven-year-old daughter and a five-year-old son.

25. In January 2019, the Hamilton County Court of Common Pleas, Domestic Relations Division, entered a Decree of Dissolution of the marriage of Ms. Hooven and Officer Hooven, in Case No. DR1801899.

26. Ms. Paul was employed by the County and or JFS as a Children's Services Worker between May 2016 and February 2018 and as an Assessment Supervisor from February 2018 until October 2023.

27. Since November 2023, Ms. Paul has been employed as a guardian *ad litem* and court-appointed special advocate for children by ProKids, an Ohio nonprofit corporation located in Cincinnati.

28. The Hamilton County Board of County Commissioners is made up of three elected members. It serves as the taxing, budgeting, appropriating, and purchasing authority for Hamilton County, and holds title to all County property.

29. JFS administers state, federal, and local programs supplying children's services, child support, adult protection services, cash assistance, food assistance, medical assistance, and workforce development programs to Hamilton County residents.

30. JFS has approximately 850 employees and is the largest Department within the Hamilton County government.

31. JFS reports directly to the County.

32. Since their divorce, Officer Hooven has been the driver of conflict with Ms. Hooven regarding the custody of their minor children and has taken it upon himself to retaliate against her and Mr. Taylor by directly and indirectly interfering in their private and consensual intimate relationship.

33. For example, Officer Hooven regularly appears armed and in uniform at the children's schools and extracurricular events to (a) speak openly to anyone who will listen whether they want to or not, about his quarrels with Ms. Hooven related to child custody; (b) slander, defame, malign, and falsely accuse Mr. Taylor of being a person who shouldn't be trusted; and (c) pressure and demand that teachers, administrators, and parents keep tabs on Ms. Hooven and Mr. Taylor; and (d) pressure and demand that teachers, administrators, and parents report back to him about Plaintiff's' comings and goings, associations, and vehicle identifications and descriptions.

34. Officer Hooven has also enlisted and deputized the neighbors of Mr. Taylor and Ms. Hooven to spy on them and report back to him about their comings and goings, and the identities of visitors to their residence.

**The Conspiracy of Officer Hooven and Ms. Paul**

35. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

36. Officer Hooven met Ms. Paul in March 2023 while assisting her with a call for services, Hooven in his capacity as a police officer, and Paul in her capacity as a JFS employee. By April, the two had begun a sexual relationship.

37.     In the same timeframe, Officer Hooven complained to Ms. Paul about the private and consensual intimate relationship between Ms. Hooven and Mr. Taylor.

38.     In April 2023, Officer Hooven engaged Ms. Paul to dig up dirt on Mr. Taylor and to use any information they could find to retaliate against and punish Mr. Taylor and Ms. Hooven for engaging in a private and consensual relationship without his approval. Officer Hooven also told Ms. Paul that he would use the same or similar information as leverage against Ms. Hooven in their ongoing child custody dispute in the Hamilton County Domestic Relations Court.

39.     Officer Hooven knew, however, that he couldn't use any law enforcement databases otherwise available to him to "investigate" Mr. Taylor, because he had no legitimate, valid, or compelling reason to do so in connection with any law enforcement purposes, or any other State interest.

40.     Officer Hooven therefore asked Ms. Paul to access the Ohio Statewide Automated Child Welfare Information System ("SACWIS") to see if Mr. Taylor had any kind of "record."

41.     SACWIS is a database shared by each of Ohio's 88 public children's service agencies, including Hamilton County Child Protective Services ("CPS"), an agency within JFS.  The Ohio Legislature created SACWIS in 2006 to comply with the strict confidentiality requirements of the United States Social Security Administration.

42.     In connection with her position of public authority at JFS, Ms. Paul had unfettered access to State-wide juvenile data and records collected and maintained in SACWIS.

43. Ms. Paul therefore used a computer, hardware, software, network, and systems owned and maintained by the County and JFS, to look up and access records within SACWIS related to Mr. Taylor **and** his minor son. She did so knowing that **(a)** Officer Hooven meant to interfere with, retaliate against, and punish Ms. Hoover and Mr. Taylor for engaging in a private and consensual intimate relationship based on the protected and confidential information she discovered; **(b)** Officer Hooven also meant to use the same information to gain leverage over Ms. Hooven in their child custody dispute.

44. Ms. Paul also knew at the time she coordinated with Officer Hooven to access confidential CPS Records without limitation that **(c)** such CPS Records are confidential as a matter of State and federal law; **(d)** her actions were illegal and violated State and federal law; **(e)** as a matter of State and federal law, Officer Hooven didn't have access CPS records himself; **(f)** as a matter of State and federal law, Officer Hooven couldn't otherwise use any law enforcement database to "investigate" Mr. Taylor on his own because he had no legitimate law enforcement purpose for doing so; **(g)** that the State of Ohio had no rational, legitimate, or compelling interest in her actions; **(h)** if Officer Hooven did access law enforcement databases to accomplish their shared goals, there would be a record of him doing so; and **(i)** coordinating with Officer Hooven in their respective capacities as State officials served no legitimate law enforcement purpose, JFS purpose, CPS purpose, County purpose, or City purpose, and was otherwise unrelated to any legitimate, rational, or compelling State interest.

45. Upon accessing SACWIS, Ms. Paul disseminated confidential CPS Records about Mr. Taylor and his son to Officer Hooven.

46. In substance, Ms. Paul revealed to Officer Hooven that Mr. Taylor had been sexually abused as a child and that an investigation related to Mr. Taylor's son, but unrelated to Mr. Taylor himself, had been opened, conducted, and completed in the past.

47. On or about April 11, 2023, Officer Hooven disseminated the information supplied to him by Ms. Paul to Ms. Hooven in a text message exchange:



Remember when you sent me all that stuff about child molestation and people and what not? But yet you wavy to leave my child with someone who was physically and sexually abused as a child. You want to leave my children with a guy who [redacted] told to file for emergency custody of his child because of how bad he had it with [redacted] and he couldn't be bothered with it. Have a good day holly. I'm not fighting with you. [redacted] can call when [redacted] wakes up.



JFS worker told me. Said both were there.



And I'm not dumb enough to use leads in a way that I'm but allowed. That's a felony and I lose my job.

48.     When Ms. Hooven asked Officer Hooven who supplied him with this information, he responded:



Name is Madison. I don't know her last name

**The Actual and Apparent Authority of Officer Hooven and Ms. Paul**

49.     Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

50.     But for her position as a public official at JFS, and the trust placed in her by the State of Ohio, the County, and JFS, Ms. Paul couldn't have accessed CPS Records about Mr. Taylor and his son to disseminate to Officer Hooven.

51.     For his part, under Ohio Revised Code §9.69(B)(1), by virtue of being a police officer, Officer Hooven "holds public office on a continuing basis." Similarly, under Section 9.69(B)(2), Officer Hooven is "***always on duty***," regardless of whether he "is, or is not, officially within work hours or officially on the clock."

52.     But for his position as a police officer, and the trust placed in him by the City of Cincinnati, Officer Hooven never could have coordinated with Ms. Paul to access SACWIS and disseminate the information she learned to Ms. Hooven.

53.     Officer Hooven also knowingly and deliberately lied to Ms. Hooven by telling her that the information he disseminated to her was a matter of "public record" in a misguided effort to conceal his actions.

54. Officer Hooven's actions and lies were maliciously made under false pretenses, and in abuse of his nondiscretionary authority as a police officer solely for the improper and illegal purposes of (a) interfering with the private and consensual intimate relationship between Ms. Hooven and Mr. Taylor; (b) intimidating Ms. Hooven and Mr. Taylor; (c) retaliating against and punishing Ms. Hooven and Mr. Taylor for engaging in their relationship; and (d) gaining leverage over Ms. Hooven in their custody dispute.

55. For her part, Ms. Paul knew that Officer Hooven meant to use the information she supplied him in her nondiscretionary capacity for his own, nondiscretionary purposes unrelated to any legitimate State or law enforcement purpose. Ms. Paul also knew that doing so would or could be detrimental to Ms. Hooven and Mr. Taylor but did so anyway, and therefore acted intentionally and/or with reckless disregard for their rights arising under the United States Constitution, federal law, and State law.

56. Despite the same, Ms. Paul abused her nondiscretionary authority as a public official acting under color of State law to unlawfully access and disseminate confidential information in Mr. Taylor's CPS Records and the records of his son for no legitimate, compelling, or rational State purpose.

57. At no time did Mr. Taylor authorize the dissemination of the CPS Records to anyone, even if he could have. Indeed, the confidential information unlawfully accessed by Ms. Paul and Officer Hooven and disseminated by them, was unknown to Mr. Taylor until Officer Hooven disseminated it to Ms. Hooven.

**The City, County, and JFS Approved and Endorsed the Unlawful Conduct of Officer Hooven and Ms. Paul Pursuant to their
Respective Official Policies, Procedures, and Customs.**

58.     Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

59.     On or about April 11, 2023, Mr. Taylor filed a formal complaint against Ms. Paul with JFS.

60.     On or about April 12, 2023, Mr. Taylor filed a complaint against Officer Hooven with the City of Cincinnati Citizen Complaint Authority ("CCA"), the City agency tasked with investigating citizen complaints of police misconduct.  In his CCA Complaint, Mr. Taylor alleged that Officer Hooven "used his official capacity as a police officer to obtain information about his juvenile history with JFS."  The CCA then referred the matter to the Cincinnati Police Department ("CPD") Internal Investigations Section ("IIS") for further investigation.

61.     IIS opened its investigation into Officer Hooven's conduct on or about April 14, 2023.

62.     In May 2023, Officer Hooven initiated formal proceedings against Ms. Hooven in Case No. DR1801899, to modify his child support obligation and the shared custody of their minor children.

63.     On or about June 6, 2023, JFS suspended Ms. Paul for eight days without pay to be served on June 9, 2023, for "gross misconduct, neglect of duty, nonfeasance, and failure of good behavior," but took no further action.

64.     On or about June 22, 2023, found in part:

Within a day of meeting [Ms. Paul] and speaking in their personal time, Officer Hooven began talking about his ex-wife, Ms. Hooven, and her new boyfriend, Mr. Taylor.  Officer Hooven told Ms. Paul that he was concerned about Mr. Taylor's past considering he was around Officer Hooven's children.  Officer Hooven did not offer Ms. Paul specific safety concerns for his children.  Officer Hooven asked Ms. Paul if she could query Mr. Taylor in JFS database to see if Mr. Taylor had a record.  Ms. Paul was aware the information Officer Hooven was requesting was for his personal knowledge, and not for a law enforcement-related investigation.

....

Within one day of meeting Ms. Paul, Officer Hooven began asking her about what databases she had access to in order to collect more information about Mr. Taylor.  Officer Hooven told Ms. Paul that he was unable to use law enforcement databases to query information regarding Mr. Taylor.

(**Exhibit 1**).

65.     Despite the above findings and sustaining a finding of "Law Violation by an Officer" against Officer Hooven in 2022 related to his arrest in May 2022 for operating a vehicle while intoxicated in Hamilton County Municipal Court Case No. 22/TRC/2630, IIS Commander John B. Johnstone "exonerated" Officer Hooven of wrongdoing on or about June 23, 2023.  (Exhibit 1).

66.     Officer Hooven is known to Hamilton County Prosecutors for his actions in connection with Case No. 22/TRC/2630 and is on the County's *Brady* List as a result. (**Exhibit 3**).

67.     CPD Chief, Colonel Teresa A. Theetge personally approved Officer Hooven's "exoneration" on July 25, 2023.  (Exhibit 1).

68.     On or about September 21, 2023, however, CCA sustained a finding of "misconduct" against Officer Hooven.  In doing so, CCA relied in part on the following language found in Section 0.5 of the CPD Manual of Rules and Regulations:

Law enforcement is an honorable calling. Service in this field commands a professional rather than an occupational philosophy. Personal honor, a desire for professional status, and devotion to service above self are the motives that impel police officers to discharge their responsibility in full measure. Police officers' lives are ones of self-sacrificing service to a high ideal, based upon their recognition of the responsibilities entrusted to them and the belief that law enforcement is an honorable vocation .... They perform the functions of their office without fear, favor or prejudice, and do not engage in unlawful or improper practices.

(**Exhibit 2**).

69.     In 2020, the CCA also sustained a complaint against Officer Hooven for excessive force and improper procedure.  (Exhibit 2).

70.     On or about October 18, 2023, Ms. Paul resigned from JFS.

## CAUSES OF ACTION

### Count I
### First Amendment Retaliation
### 42 U.S.C. §1983

**(Ms. Hooven and Mr. Taylor against Officer Hooven)**

71.     Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

72.     At all times relevant to this Complaint, Officer Hooven acted in his nondiscretionary capacity as a police officer and public official under color of State law.

73.     Under 42 U.S.C. §1983, State actors like Officer Hooven are prohibited from violating the civil rights of others.  Section 1983 states in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

74.     At all times relevant to this Complaint, Plaintiffs engaged in clearly established, constitutionally protected rights and conduct under the First Amendment by associating with each other and maintaining a private, consensual intimate relationship.

75.     As described in this Complaint, and without limitation, Officer Hooven took the following adverse actions against Mr. Taylor and Ms. Hooven in retaliation for, exercising their clearly established constitutional rights:

    a.     Enlisting Ms. Paul to access Mr. Taylor's CPS Records, and the CPS Records of Mr. Taylor's son without any legitimate law enforcement, or other legitimate State purpose;

    b.     Disseminating the information he learned from Ms. Paul to Ms. Hooven, knowing that doing so served no legitimate law enforcement purpose or other legitimate State purpose;

    c.     Lying to Ms. Hooven that the CPS Records were public information; and

    d.     Using or attempting to use the information he'd allegedly learned as leverage against Ms. Hooven in their child custody dispute.

76.     Officer Hooven knew that his conduct described in this Complaint deprived Plaintiffs of their clearly established rights, privileges, and/or immunities secured by the Constitution and laws, such that no reasonable public official would have done so as evidenced, without limitation, by (a) his disapproval of the relationship between Ms. Hooven and Mr. Taylor; (b) his knowledge that he couldn't access any law enforcement databases to look up information about Mr. Taylor because it would serve no legitimate law enforcement purpose; (c) his knowledge that he had no lawful purpose for accessing Mr. Taylor's CPS Records independent of any law enforcement databases otherwise available to him; (d) knowing that he had to enlist Ms. Paul in her capacity as a public official to access SACWIS; and (e) knowingly lying to Ms. Hooven that Mr. Taylor's CPS Records were "publicly available."

77.     By his unlawful and dishonest conduct described in this Complaint, Officer Hooven intended to retaliate against Plaintiffs for exercising their clearly established constitutional rights to freely associate with each other and engage in a private, consensual intimate relationship, and to deter Plaintiffs as persons of ordinary firmness from continuing to engage in the same.

78.     At all times relevant to this Complaint, the adverse actions taken by Officer Hooven were motivated, at least in part, by his intent and desire to retaliate against Plaintiffs and to deprive them of their clearly established constitutional rights.

79.     As a direct and proximate result, Plaintiffs have suffered compensable injuries in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

## Count II
### *Monell* Liability, 42 U.S.C. §1983

### (Ms. Hooven and Mr. Taylor against the City: 1st Amendment)

80.     Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

81.     "When execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983," i.e., "*Monell* Liability." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Monell*, 436 U.S., at 694).

82.     If "an officially executed policy, or the toleration of a custom... leads to, causes, or results in the deprivation of a constitutionally protected right," municipalities

and arms of the State are labile under Section 1983 for their inaction. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996) (*citing Monell*, 436 U.S. at 690-91).

83.  "Custom" for purposes of *Monell* liability must be permanent and well settled, and reflect a course of action deliberately chosen from among various alternatives, to constitute a custom or usage with the force of law, and such is the case in the instant dispute.

84.  Plaintiffs can prove the existence of the City's illegal policy or custom of inaction through: (a) its legislative enactments or official agency policies; (b) actions taken by officials with final decision-making authority; (c) a policy of inadequate training or supervision; or (d) a custom of tolerance or acquiescence of federal rights violations. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); and *Doe*, 103 F.3d, at 507.

85.  For its part, the City was deliberately indifferent to the rights of Mr. Taylor and Ms. Hooven as evidenced by CPD's failure to properly supervise Officer Hooven and investigate Mr. Taylor's CCA Complaint when officials with final decision-making authority looked the other way, in particular after they'd already sustained allegations of illegality against Officer Hooven in 2022.

86.  Despite having a charge of illegality sustained against him in 2022, Officer Hooven had no reticence about violating State and federal law in 2023 because he knew the City and CPD would take no meaningful action against him because those in the position to make final decisions would look the other way as a matter of policy, procedures, and custom.

87.     Moreover, by its policies, procedures, and customs, the City fails to train and supervise police officers like Officer Hooven, does no meaningful investigation into misconduct, and therefore takes no meaningful action in response, as in the instant dispute.

88.     Indeed, the City ratified, approved of, supported, endorsed, and adopted Officer Hooven's illegal actions in 2022 and 2023, in keeping with its policies, procedures, and customs, and those of CPD and IIS as the underlying motivating force behind his actions.

89.     The City is therefore liable in its own right under Section 1983 for violating Plaintiffs' First Amendment rights to associate with each other and engage in a private and consensual intimate relationship, separate and apart from the liability of Officer Hooven.

90.     As a direct and proximate result of Officer Hooven's execution of the City's policies, procedures, and customs in violation of the First Amendment, Plaintiffs have suffered compensable injuries of a constitutional magnitude in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count III**
**Violation of the Fourteenth Amendment**
**Substantive Due Process Clause**
**42 U.S.C. §1983**

**(Mr. Taylor against Officer Hooven and Ms. Paul)**

91.     Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

92.     Ms. Paul was also a public official acting in her nondiscretionary capacity under color of State law at all times relevant to this Complaint.  She's therefore also subject to liability under Section 1983.

93.     To this end, the Due Process Clause of the Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property, without due process of law."

94.     In addition to setting the procedural minimum for deprivations of life, liberty, or property, the Due Process Clause bars government actions regardless of the fairness of the procedures used to implement them, i.e., "substantive due process."

95.     Under well-established and clearly defined substantive due process principles, Mr. Taylor had the right to be free of arbitrary and capricious action by State actors like Officer Hooven and Ms. Paul.

96.     In particular, and without limitation, the Fourteenth Amendment guarantees Mr. Taylor's substantive right and "interest in avoiding disclosure of personal matters" like the information contained in the CPS Records because that information is of a personal, sexual, and/or humiliating nature, i.e., a fundamental substantive "information right of privacy."

97.     Therefore, by illegally disseminating the CPS Records, Officer Hooven, and Ms. Paul knowingly and deliberately violated Mr. Taylor's substantive information right to privacy.

98. By their actions described in this Complaint, Officer Hooven and Ms. Paul knowingly and deliberately abused their positions and nondiscretionary authority as public officials under color of State law, to further illegal purposes beneficial only to them.

99. There was no legitimate or rational State interest whatsoever in the actions of Officer Hooven and Ms. Paul described in this Complaint.

100. The deliberate and unlawful acts and omissions of Officer Hooven and Ms. Paul described in this Complaint were arbitrary and capricious and would "shock the conscience" of any reasonable person.

101. Ms. Paul was similarly charged by State and federal law to maintain the strict confidentiality of SACWIS records. She agreed to assist Officer Hooven in his endeavor to dig up dirt on Mr. Taylor, knowing that her efforts were for no legitimate law enforcement or other valid State purpose. Her conduct was therefore similarly arbitrary and capricious, would "shock the conscience" of all reasonable persons, and violated Mr. Taylor's substantive due process rights arising under the Fourteenth Amendment.

102. As a direct and proximate result, Mr. Taylor has suffered compensable injuries within the jurisdictional threshold of this Court to be determined by the trier of fact.

### Count IV
### *Monell* Liability, 42 U.S.C. §1983

### (Mr. Taylor against the City: 14th Amendment)

103. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

104. The City of Cincinnati is liable under Section 1983 for violating Mr. Taylor's Fourteenth Amendment substantive due process rights for the same reasons articulated in Counts I, II, and III of this Complaint.

105. As a direct and proximate result of Officer Hooven's execution of the City's policies, procedures, and customs in violation of the Fourteenth Amendment, Mr. Taylor has suffered compensable injuries of a constitutional magnitude in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

<u>Count V</u>
*Monell* **Liability, 42 U.S.C. §1983**

**(Mr. Taylor against the County and JFS: 14th Amendment)**

106. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

107. The failures of the County and JFS to properly train and supervise Ms. Paul are manifest. It took only a few days for Officer Hooven to persuade and enlist Ms. Paul – a supervisor at JFS – to illegally access and disseminate confidential records pertaining not only to Mr. Taylor but to his son.

108. Yet the County and JFS put up no guardrails to prevent the misconduct of Officer Hooven and Ms. Paul described in this Complaint.

109. Even upon finding Ms. Paul to be guilty of "gross misconduct," "misfeasance," "neglect of duty," and "failure of good behavior," the County and JFS gave her a mild slap on the wrist in the form of unpaid leave for one business day without taking any other action. What's worse, thereafter, JFS allowed Ms. Paul the same access to the same or similar confidential information in SACWIS until she resigned in October 2023.

110. By failing to properly train and supervise Ms. Paul on a matter so important as maintaining the confidentiality of SACWIS records, the County and JFS turned a blind eye to Ms. Paul's illegal activities under color of State law in furtherance of no legitimate State interest. By taking no meaningful action against her, despite their unequivocal findings, and allowing her to retain the authority of her position, the County and JFS endorsed, ratified, and adopted Ms. Paul's misconduct as being consistent with their customs, policies, and practices, which were the moving forces behind the violations alleged in this Complaint.

111. The City, County, and JFS are therefore liable in their own rights separate and apart from the liability of Officer Hooven and Ms. Paul.

112. As a direct and proximate result, Mr. Taylor has suffered compensable injuries within the jurisdictional threshold of this Court to be determined by the trier of fact.

113. As a direct and proximate result of Ms. Paul's execution of the policies, procedures, and customs of the County and JFS in violation of the Fourteenth Amendment, Mr. Taylor has suffered compensable injuries of a constitutional magnitude in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

<u>**Count VI**</u>
**Civil Conspiracy to Violate Civil Rights**
**42 U.S.C. §1985(3)**

**(Mr. Taylor and Ms. Hooven against Officer Hooven and Ms. Paul)**

114. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

115. As described in this Complaint, Officer Hooven and Ms. Paul conspired against Plaintiffs to deprive them, directly and indirectly, of the equal protection of the laws, and of the equal privileges and immunities of the laws, secured by the United States Constitution and federal law.

116. As described in this Complaint, Officer Hooven and Ms. Paul took the overt acts of illegally accessing, using, and disseminating the CPS Records in furtherance of their conspiracy against Mr. Taylor and Ms. Hooven.

117. As a direct and proximate result, Plaintiffs have suffered compensable injuries to their persons and property and have been deprived of their rights and privileges afforded citizens of the United States, in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

## Count VII
### Intentional Infliction of Emotional Distress

### (Mr. Taylor and Ms. Hooven against Officer Hooven)

118. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

119. By his acts described in this Complaint, Officer Hooven either intended to cause Plaintiffs emotional distress, and knew, or should have known that the same would result in serious emotional distress to them.

120. Officer Hooven's conduct described in this Complaint was so extreme and outrageous as to go beyond all bounds of decency and was utterly intolerable in a civilized society.

121. As a direct and proximate result, Plaintiffs have suffered compensable mental anguish, emotional distress, psychological injuries so serious that no reasonable person could be expected to endure them, and other compensable injuries in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

### Count VIII
### Wrongful Intrusion

### (Mr. Taylor against Officer Hooven and Ms. Paul)

122. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

123. As described in this Complaint, Officer Hooven and Ms. Paul wrongfully intruded into Mr. Taylor's private affairs when they illegally accessed and disseminated his CPS Records without any lawful purpose.

124. Officer Hooven and Ms. Paul did so in a manner that would outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

125. As a direct and proximate result, Mr. Taylor has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

### Count IX
### Abuse of Process

### (Ms. Taylor against Officer Hooven)

126. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this Complaint as if fully rewritten.

127. As described in this Complaint, Officer Hooven initiated a civil judicial proceeding against Ms. Hooven between March of 2023 and the present to eliminate or

reduce his child support obligation and to modify their parenting schedule to be more favorable to him.

128.    He commenced that civil proceeding properly and with probable cause.

129.    As described in this Complaint, Officer Hooven subsequently perverted the civil custody proceeding to attempt to accomplish the ulterior motive of securing leverage over Ms. Hooven and to extort a more favorable result for himself, purposes for which custody proceedings aren't designed.

130.    Officer Hooven's conduct described in this Complaint therefore constitutes abuse of process under Ohio law.

131.    As a direct and proximate result, Ms. Hooven has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Brendon Taylor and Holly Hooven pray for judgment against Defendants Jesse Lee Anthony Hooven, the City of Cincinnati, Madison Paul, the Hamilton County Board of County Commissioners, and the Hamilton County Department of Jobs and Family Services, jointly and severally as follows:

A.    A finding that none of the Defendants are entitled to a defense of qualified immunity;

B.    A finding that none of the Defendants are entitled to a defense of Eleventh Amendment immunity;

C.      A finding that Defendant the City of Cincinnati is liable in its own right under Section 1983 for violating Plaintiffs' First and Fourteenth Amendment rights under its policies, procedures, and customs;

D.      A finding that Defendant the Hamilton County Board of County Commissioners is liable in its own right under Section 1983 for violating Mr. Taylor's Fourteenth Amendment rights under its policies, procedures, and customs;

E.      A finding that the Hamilton County Department of Jobs and Family Services is liable in its own right under Section 1983 for violating Mr. Taylor's Fourteenth Amendment rights under its policies, procedures, and customs;

F.      Compensatory damages;

G.      Damages for emotional distress and psychological injuries;

H.      Equitable relief;

I.      Pre- and post-judgment interest on compensatory damages, damages for emotional distress and psychological injuries, and equitable relief;

J.      Injunctive relief;

K.      Punitive damages;

L.      Statutory damages;

M.      Reimbursement of their attorney's fees and costs; and

N.      All other relief to which they're entitled.

Respectfully submitted,

*/s/ Justin Whittaker*
Justin Whittaker, Esq. (0093212)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
(513) 259-3758
(513) 436-0698 Fax
Justin@WhittakerLawFirm.com

**Counsel for Plaintiffs**
**Brendon Taylor and Holly Hoo**

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

*/s/ Justin Whittaker*
Justin Whittaker, Esq. (0093212)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
(513) 259-3758
(513) 436-0698 Fax
Justin@WhittakerLawFirm.com

**Counsel for Plaintiffs**
**Brendon Taylor and Holly Hooven**



*[Handwritten note:]* Due to ___ of the Officer Hooven's Relief Commander to meet with Officer Hooven regarding this investigation. meeting to be documented with an ESL — TAT

# Internal Investigations Section
## Captain Jay B. Johnstone, Commander

**Case Number:** 2023-102          **Date Assigned:** April 14, 2023

**Investigator:** Sergeant Zachary Sterbling

**Reviewed By:** Lieutenant David A. Sprague          **Date:**

**Approved By:** Captain Jay B. Johnstone          **Date:** 6/22/23

**Approved By:** Colonel Teresa A. Theetge, Police Chief          **Date:** 6.25.23

<span style="color:red">**<u>EXHIBIT 1</u>**</span>

Taylor.Hooven__00068

### CINCINNATI POLICE DEPARTMENT
### INTERNAL INVESTIGATIONS SECTION
### CASE #2023-102

## INTRODUCTION

Internal Investigations Section (IIS) completed an investigation into a complaint of Law Violation and Unethical Conduct filed on April 12, 2023, by Mr. Brendon Taylor with the Citizen Complaint Authority (CCA).

Mr. Taylor alleged in April 2023, Police Officer Jesse Hooven, EID# 31192, District Five, obtained records from Hamilton County Jobs and Family Services (HCJFS) through illicit means. Officer Hooven then shared personal information obtained from HCJFS with Mr. Taylor's girlfriend, Ms. Holly Hooven. Ms. Hooven is Officer Hooven's ex-wife. Mr. Taylor also alleged Officer Hooven illegally queried Mr. Taylor using a law enforcement database.

## INTERVIEW SUMMARIES

### Mr. Brendon Taylor, 112 Timber Ridge Drive, Carlisle, Ohio 45005,

Mr. Taylor is currently dating Officer Hooven's ex-wife, Ms. Hooven. Ms. Hooven told Mr. Taylor that Officer Hooven had access to personal Child Protective Service (CPS) information about Mr. Taylor.

Specifically, Officer Hooven told Ms. Hooven that Mr. Taylor was the victim of sexual abuse as a child and had a recently opened case with CPS regarding his son.

Officer Hooven should not have access to this private information unless it was acquired as the subject of a law enforcement investigation in the course of his official duties.

Mr. Taylor believed Officer Hooven obtained this personal and private information in an unethical manner by using his credentials as a law enforcement officer. Mr. Taylor also believed Officer Hooven improperly queried him in a law enforcement database.

### Ms. Holly Hooven, 136 Bramble Avenue, Highland Heights, KY 41076,

Ms. Hooven is the ex-wife of Officer Hooven. She is currently dating Mr. Taylor. On April 11, 2023, Officer Hooven contacted Ms. Hooven via text message to discuss their common children.

Officer Hooven told Ms. Hooven he did not want Mr. Taylor to care for their common children because Officer Hooven had knowledge Mr. Taylor was the victim of sexual and physical abuse as a child. Officer Hooven told Ms. Hooven he obtained the personal and private information from a HCJFS employee named, "Madison."

Officer Hooven also told Ms. Hooven that Mr. Taylor should not be around their common children because Mr. Taylor recently had an open case with CPS regarding Mr. Taylor's son.

Officer Hooven told Ms. Hooven the information was public information. Ms. Hooven did not believe such information was available to the public. Ms. Hooven called HCJFS herself to see if she could confirm the information Officer Hooven shared with her and was told by HCJFS employees that such information was not for public dissemination.

Ms. Hooven believed Officer Hooven obtained the information about her boyfriend, Mr. Taylor, in an unethical manner.

### *Ms. Madison Paul, 907 Beechmeadow Lane, Cincinnati, Ohio 45238,*

Ms. Paul is an employee of HCJFS. Ms. Paul met Officer Hooven in March 2023, when he responded to a call for service to assist Ms. Paul in a child custody dispute. Officer Hooven was on duty and assisted Ms. Paul. While investigating, Ms. Paul and Officer Hooven exchanged personal cellular telephone numbers to discuss the case further.

The day following their on-duty interaction, Officer Hooven called Ms. Paul, and it became immediately clear to Ms. Paul that the telephone call was a personal call and not work related. In the following days, Ms. Paul and Officer Hooven continued to text message and speak on the telephone in their personal time. They developed a romantic relationship and met occasionally outside of work.

Within a day of meeting and speaking in their personal time, Officer Hooven began talking about his ex-wife, Ms. Hooven, and her new boyfriend, Mr. Taylor. Officer Hooven told Ms. Paul that he was concerned about Mr. Taylor's past considering he was around Officer Hooven's children. Officer Hooven did not offer Ms. Paul specific safety concerns for his children. Officer Hooven asked Ms. Paul if she could query Mr. Taylor in a HCJFS database to see if Mr. Taylor had a record. Ms. Paul was aware the information Officer Hooven was requesting was for his personal knowledge, and not for a law enforcement related investigation.

Ms. Paul queried Mr. Taylor in the Ohio Statewide Automated Child Welfare Information System (SACWIS). Ms. Paul did not find anything in her query that concerned her about Mr. Taylor being near children. Ms. Paul did not recall exactly what she learned in her query, but recalls telling Officer Hooven that Mr. Taylor did not have a concerning history.

Ms. Paul provided the information to Officer Hooven during a telephone conversation. Ms. Paul is not aware of what Officer Hooven did with the information she provided him.

Ms. Paul learned that Officer Hooven had a live-in girlfriend and was cheating on her. Ms. Paul contacted Officer Hooven's current girlfriend and told her Officer Hooven had been cheating on her. Ms. Paul ended her relationship with Officer Hooven and has not spoken to him since April 8, 2023.

Mr. Taylor made a complaint to HCJFS regarding Ms. Paul disseminating personal and private information to Officer Hooven. Ms. Paul was investigated by the Ohio Inspector General for violating privacy rules regarding the improper use of the SACWIS database. Ms. Paul is currently awaiting discipline from HCJFS.

Ms. Paul believed when she first met Officer Hooven, he only cultivated a personal relationship with her for the sole reason of using her for access to sensitive information regarding his ex-wife and new boyfriend. Officer Hooven spoke about his ex-wife and her new boyfriend regularly. Within one day of meeting Ms. Paul, Officer Hooven began asking her about what databases she had access to in order to collect more information about Mr. Taylor. Officer Hooven told Ms. Paul he was unable to use law enforcement databases to query information regarding Mr. Taylor.

In her interview with IIS, Ms. Paul said she felt Officer Hooven manipulated her for access to information he otherwise did not have access to.

### _Police Officer Jesse Hooven, EID# 37106, District Five_

Officer Hooven and his ex-wife, Ms. Hooven, are currently engaged in a legal dispute regarding the custody of their shared children. Ms. Hooven's new boyfriend, Mr. Taylor, regularly watches Officer Hooven's children at the behest of Ms. Hooven. Officer Hooven has never met Mr. Taylor.

Officer Hooven has never queried Mr. Taylor using a law enforcement database.

In March 2023, Officer Hooven met a HCJFS employee, Ms. Paul, while assisting her with a call for service in District Five. Officer Hooven received Ms. Paul's personal cellular telephone number during the call for service. Later, Ms. Paul continued to text message Officer Hooven unrelated to work.

Officer Hooven and Ms. Paul began a romantic relationship outside of work. Officer Hooven vented to Ms. Paul regularly about his ex-wife and her new boyfriend, Mr. Taylor. Ms. Paul voluntarily, and without request, queried Mr. Taylor in a database she had access to at HCJFS. Ms. Paul told Officer Hooven that Mr. Taylor was sexually and physically assaulted as a child based on information she learned from her query.

Ms. Paul did not give any documents to Officer Hooven. Ms. Paul shared the information from her query during a telephone conversation.

Officer Hooven then told his ex-wife, Ms. Hooven, about Mr. Taylor's history of abuse.

Ms. Paul learned that Officer Hooven had a girlfriend. Ms. Paul contacted Officer Hooven's girlfriend and told her that she had an affair with Officer Hooven. Officer Hooven has not spoken to Ms. Paul since she told his girlfriend of their relationship.

Officer Hooven did not cultivate a relationship with Ms. Paul for the purpose of using her for access to information about Mr. Taylor. Officer Hooven told IIS he did not request Ms. Paul to access information for him about Mr. Taylor. Officer Hooven told IIS he was not sure why Ms. Paul queried Mr. Taylor in a HCJFS database.

Officer Hooven was not aware Ms. Paul was being disciplined by HCJFS for accessing a HCJFS database for improper purposes.

## ADDITIONAL INFORMATION

IIS reviewed:
- CCA Complaint Sheet #23072
- Cellular telephone text messages between Officer Hooven and Ms. Hooven.
  - Officer Hooven tells Ms. Hooven that Mr. Taylor was sexually and physically abused as a child. Officer Hooven tells Ms. Hooven he learned this information from an HCJFS worker named "Madison."
- Regional Crime Information Center (RCIC) data
  - No law enforcement officers with RCIC access have queried Mr. Taylor in the previous year using a law enforcement database on the RCIC network.

## CONCLUSION

Internal Investigations Section (IIS) completed an investigation into a complaint of Law Violation and Unethical Conduct filed on April 12, 2023, by Mr. Brendon Taylor with the Citizen Complaint Authority (CCA).

Mr. Taylor alleged in April 2023, Police Officer Jesse Hooven obtained records from Hamilton County Jobs and Family Services (HCJFS) through illicit means. Officer Hooven then shared personal information obtained from HCJFS with Mr. Taylor's girlfriend, Ms. Holly Hooven. Ms. Hooven is Officer Hooven's ex-wife. Mr. Taylor also alleged Officer Hooven illegally queried Mr. Taylor using a law enforcement database.

Officer Hooven and his ex-wife, Ms. Hooven, are currently engaged in a legal dispute regarding the custody of their shared children. Ms. Hooven's new boyfriend, Mr. Taylor, regularly watched Officer Hooven's children at the behest of Ms. Hooven. Officer Hooven has never met Mr. Taylor.

Officer Hooven met Ms. Madison Paul, an employee of HCJFS, while on duty and assisting Ms. Paul with a call for service. Ms. Paul and Officer Hooven exchanged personal telephone numbers to discuss the call for service during Officer Hooven's tour of duty.

Officer Hooven and Ms. Paul continued to communicate regularly after Officer Hooven's tour of duty. Their discussions quickly became unrelated to work. Officer Hooven and Ms. Paul developed a romantic relationship off duty.

In her interview with IIS, Ms. Paul said Officer Hooven asked her to query Mr. Taylor in the HCJFS state database to which Officer Hooven did not have access. Officer Hooven told Ms. Paul he was concerned about the welfare of his children near Mr. Taylor, as his ex-wife would often have Mr. Taylor watch Officer Hooven's children.

Officer Hooven told IIS that Ms. Paul queried Mr. Taylor and provided Officer Hooven with information about Mr. Taylor unsolicited.

Regardless of whether Officer Hooven requested the information or not, Ms. Paul told IIS she was aware Officer Hooven was receiving the information for personal reasons and not for legitimate law enforcement reasons.

Taylor.Hooven__00072

Ms. Paul told IIS she only told Officer Hooven that Mr. Taylor had no history that would raise concern about Mr. Taylor being around Officer Hooven's children. This statement was based on Ms. Paul's query of the Ohio Statewide Automated Child Welfare Information System (SACWIS).

Officer Hooven told Ms. Hooven, in a series of cellular telephone text messages, that he learned from a HCJFS employee that Mr. Taylor had been physically and sexually abused as a child. Officer Hooven also told Ms. Hooven the information about Mr. Taylor was public record.

Ms. Hooven shared the information with Mr. Taylor who made a complaint with HCJFS for improper dissemination of personal information. Ms. Paul was subsequently investigated and is being disciplined for improperly using the SAQWIS database.

Ms. Paul ended her relationship with Officer Hooven when she learned Officer Hooven had another girlfriend.

Regional Crime Information Center data confirmed Officer Hooven did not query Mr. Taylor in a law enforcement database. Ms. Paul's interview with IIS confirmed she utilized her access to SAQWIS to acquire information about Mr. Taylor as a personal favor to Officer Hooven. Ms. Paul was aware that Officer Hooven would not be using the information in course of his official duties as a police officer.

## RECOMMENDATION

Ms. Paul told IIS that Officer Hooven used his position as a police officer to cultivate a relationship with her to later gain information Officer Hooven would otherwise not have access to. Officer Hooven told IIS he did not solicit the restricted information Ms. Paul provided to Officer Hooven about Mr. Taylor. IIS was unable to determine who prompted the request for restricted information.

Based on the IIS investigation, IIS recommends the allegation of Unethical Conduct, against Police Officer Jesse Hooven be closed, **NOT SUSTAINED.**

Regional Crime Information Center data confirmed Officer Hooven did not query Mr. Taylor in a law enforcement database.

Based on the IIS investigation, IIS recommends the allegation of Law Violation (Improper Use of a Law Enforcement Database), against Police Officer Jesse Hooven be closed, **EXONERATED.**



city of
# CINCINNATI
*Interdepartmental Correspondence Sheet*

**Date:** September 21, 2023

**Case:** #23072          **Investigator:** Morgan Givens

**Complaint Received:** April 12, 2023          **Complainant:** Brenden Taylor

CCA completed an investigation of CCA Complaint No. 23072 by Brenden Taylor. This report is intended to convey the conclusions reached as a consequence of the investigation, and the basis for those conclusions. This report does not purport to summarize all evidence uncovered during the course of the investigation, nor is it intended to summarize the entirety of CCA's file on this matter.

**Complaint Summary:**

Mr. Taylor alleged that Officer Jesse Hooven used his official capacity as a police officer to obtain information about his juvenile history with the Hamilton County Job and Family Services (HCJFS).

Mr. Taylor became aware that his juvenile history with HCJFS may have been compromised when Officer Hooven contacted Witness B and sent text messages which stated that Officer Hooven became aware of the information from an HCJFS employee. Witness B alleged that Officer Hooven obtaining such information should be a Law Enforcement Automated Data System violation, Officer Hooven responded, "Ok, that's fine he can report me... I didn't search him so he'll be wasting his time, but he should still do it."

**Allegations:**

Misconduct

**Persons Involved:**

Officer Jesse Hooven, #P0111, M/W/26 (CPD, Subject Officer)
Witness A, F/W/29 (Citizen, Involved)
Witness B, F/W/35 (Citizen, Witness)
Brenden Taylor, M/W/31 (Complainant, Involved)

**Evidence Reviewed:**

CPD Records Management System (RMS)
CPD Internal Investigation Section (IIS) Report
Statements by officers, complainant, and relevant witnesses
Screenshots of text messages between Officer Hooven and Witness B

**Significant Discrepancies or Clarifications:**

Officer Hooven and Witness B were previously married and are undergoing a custody battle.

Witness B and Mr. Taylor are dating.

<span style="color:red">**EXHIBIT 2**</span>

Taylor.Hooven__00074

Witness A is a Hamilton County Job and Family Services (HCJFS) employee whom Officer Hooven met in his official capacity. Witness A and Officer Hooven continued communication and developed a consensual personal relationship.

Witness A stated that she had since ended the relationship because Officer Hooven had another girlfriend.

In his CCA interview, Officer Hooven described Witness A as "a friend" that he "didn't know that well" and did not explicitly disclose their romantic relationship. The romantic nature of their relationship as described by Witness A was confirmed in IIS report 2023-102.

There is a discrepancy in who initiated the search for information conducted by Witness A. Witness A says that Officer Hooven asked her to look the name up, Hooven says that she looked the name up unsolicited.

**Authorities:**

CPD Manual of Rules and Regulations § 0.5 (Code of Ethics)

**Analysis:**

**Allegation: Misconduct**

Mr. Taylor alleged that Officer Hoven obtained information pertaining to his juvenile HCJFS records through illicit means.

Despite the facts uncovered during this investigation, there is insufficient evidence regarding the subject officer's motivation or intent. Specifically, notwithstanding our efforts to obtain such evidence, CCA does not have information revealing whether Officer Hooven sought out the information about Mr. Taylor or if the information was provided unsolicited by Witness A.

CPD's Code of Ethics requires professionalism at all times and establishes the following standard for officers:

> Law enforcement is an honorable calling. Service in this field commands a professional rather than an occupational philosophy. Personal honor, a desire for professional status, and devotion to service above self are the motives that impel police officers to discharge their responsibility in full measure. Police officers' lives are ones of self-sacrificing service to a high ideal, based upon their recognition of the responsibilities entrusted to them and the belief that law enforcement is an honorable vocation…They perform the functions of their office without fear, favor, or prejudice and do not engage in unlawful or improper practices.

Although CCA could not determine whether or not Officer Hooven sought out the information regarding Mr. Taylor's juvenile history with Children Services, CCA determined that regardless, Officer Hooven is a nine-year veteran of CPD and is aware that HCJFS records are confidential; instead of preventing a further spillage of said information, he shared it with Witness B. In his CCA interview, Officer Hooven acknowledged that he texted Witness B to inform her about the information obtained from Witness A. Mr. Taylor provided CCA with a copy of the text messages where Officer Hooven confronted Witness B about Mr. Taylor's juvenile involvement with HCJFS.

Taylor.Hooven__00075

CCA has intentionally refrained from outlining the specific details that Officer Hooven allegedly texted Witness B to prevent further spillage of Mr. Taylor's confidential juvenile records. In the text exchange, Witness B confronted Officer Hooven about how he gained access to the records, "How did you know about past [REDACTED] as a child? That's not public knowledge." Officer Hooven responded, "JFS worker told me. Said both were there." Witness B stated, "Ok. Well, I told Brendon everything that is going on and he said there is no way that his childhood would be public knowledge and he is reporting you for a LEADS violation… I'm on hold with CPS now." Officer Hooven responded, "Ok, that's fine he can report me… I didn't search him so he'll be wasting his time but he should still do it."

Witness A admitted that she should not have searched for the information when prompted by Officer Hooven. She emphasized that Officer Hooven provided her with Mr. Taylor's information, and she believed that he was genuinely worried about his children. Witness A felt as though she had been manipulated by Officer Hooven to obtain the information and when she ended the relationship, Officer Hooven "threw it in his ex-wife's face." Ultimately a complaint was filed with HCJFS, and Witness A received punishment for her actions. She expressed remorse in her interview and was apologetic toward Mr. Taylor.

CCA found that Officer Hooven's poor judgment led to the further dissemination of confidential juvenile HCJFS records which is unacceptable. Officer Hooven's actions were not within CPD policy, procedure, or training.

**Findings:**

**Original Allegations**

| No. | Allegation | Subject Officer | Involved Citizen | Finding |
|-----|------------|-----------------|------------------|---------|
| 1 | Misconduct | Jesse Hooven | Brenden Taylor | Sustained |


**Morgan Givens, Investigator**


**Makiedah Messam, Interim Director**

3

Taylor.Hooven__00076

**Previous Contacts and Commendations for Officers with Sustained Findings:**

**Officer Jesse Hooven**

**Previous Contacts with CCA**

Officer Hooven had three previous contacts with CCA in the past three years.

| Case Number | Allegation | Finding |
|---|---|---|
| 20112 | Excessive Force | Sustained |
| 20112 | Improper Procedure | Unfounded |
| 20112 | Improper Procedure (BWC) | Sustained |
| 21054 | Discourtesy | Unfounded |
| 21054 | Discrimination | Unfounded |
| 21059 | Improper Procedure | Unfounded |
| 21059 | Harassment | Unfounded |
| 21059 | Discrimination | Unfounded |
| 21059 | Discourtesy | Unfounded |

**Previous Contacts for CCA Referrals**

Officer Hooven had no allegations that CCA referred to CPD for investigation in the past three years.

**Previous Contact with IIS**

Officer Hooven had one previous contact with IIS in the past three years.

| Case Number | Allegation | Finding |
|---|---|---|
| IIS Case 2022-023 | Law Violation by Officer | Sustained |

**Commendations**

Officer Hooven received one commendation in the past three years.

| Date | Source of Commendation Received |
|---|---|
| 5/25/2021 | CPD |

4

Taylor.Hooven__00077

<u>Report Updated:</u>  7/12/2023

# <u>MANDATORY DISCLOSURE</u> OF IMPEACHING EVIDENCE TO PROSECUTORS

### Per <u>*Brady and Giglio*</u>, this information must be disclosed to defense counsel in discovery

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 1. | Tom Campbell | Springfield Twp. PO | Prior to 3/26/2012 | *Internal Investigation Report of Acts of Dishonesty dated 3/26/2012<br>*Terminated by Springfield Township effective 4/4/2012 |
| 2. | Bryon Roos | North College Hill Police (formerly) | 8/21/2012 | P.O. Roos indicted federally in August 2012 for his involvement in Marijuana trafficking conspiracy/money laundering scheme (11 total charged) |
| 3. | Robert "Bobby" J. Ward | Norwood PD (formerly) | 8/11/2012 and November 2011 | *Convicted of misdemeanor Assault in Case No. C/12/CRB/346661 against Denise Diallio in his capacity as a Norwood police officer.  Special Prosecutor Keith Schneider appointed to handle this matter and any subsequent matters. |
| 4. | Jeremy Trentman | Springfield Township | 11/22/2010 | • Internal Investigation determined Officer violated Section 1.3.1 unreasonable amount of force; Section 1.3.1.0 1 regarding limited used of neck force; and Section 26.1.1 mistreatment of persons in custody (involving incident at Township Police Station subsequent to arrest of Dominique Hill.) |

# EXHIBIT 3

Taylor.Hooven__00078

<u>**Report Updated:**</u> 7/12/2023

|  | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| **5.** | **Adam Wong** | Sharonville P.D. | 9/27/2013; and January 2011 | • Sept. 27, 2013, incident involved overtime compensation abuse.  Internal investigation revealed Wong "untruthful" throughout 3 interviews; he was subsequently terminated.<br>• In January 2011 incident, Chief Schappa found Wong guilty of "Competent Performance" involving a traffic light camera citation.<br>• Adam Wong resigned from Sharonville PD 6/2/2014, subsequent arbitration hearing. |
| **6.** | **Richard L. Frey, Jr.** | HCSO - Court Services | 10/26/2013 | • Frey found Guilty of Theft on 1/7/2014 in Harrison Mayor's Court Case No. 13CRB00101<br>• Terminated by HCSO on _____?? |
| **7.** | **Gregory S. Session** | HCSO | 10/20/2012<br><br><br><br><br>2013 | • Found Guilty on 6/3/2013 under C/12/TRD/52825(A) (Reasonable Control) but Acquitted of (B) charge (Leaving the Scene).<br>• Officer Session terminated by Sheriff Neil<br>• Later, arbitrator reduced his termination to 20-day suspension.<br><br><br>• IA Case # 38-13<br>Dishonesty<br>Closure Date: 8/6/2013 |

Taylor.Hooven__00079

<u>Report Updated:</u>  7/12/2023

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 8. | **Michael Webster #1610** | HCSO | 02/07/2012<br><br><br><br><br><br><br>5/17/2012<br>5/15/2013 | • Act of Dishonesty:  Used White-Out to change field training form of another officer and passed it off as his own. (Tampering w/ Records and Falsification).<br>• HCSO charged him with violation of department rules and suspended him.  (Did not pursue criminal charges.)  Served 24-hour suspension without pay on 06/04/2012 for "Conduct Unbecoming a Deputy Sheriff."<br><br>- Employee #15116<br>  Dishonesty  (both dates) |
| 9. | **Andrew F. Helsinger** | HCSO | Offense: 8/12/2012<br>Conviction: 11/08/2012 | • Guilty of Reckless Operation (M-4). [Original charge DUI, R.C. 4511.19 (M-1.)]<br>• Disclose as a criminal record of a state's witness per Crim. R. 16.  Prosecutor can argue minimal impeachment value to judge at trials. |
| 10. | **Christopher MacMurdo** | City of Harrison | Arrest: 01/24/2015<br>Conviction: 02/09/2015 | • Found guilty of OVI under C/15/TRC/4106(A) and Reasonable Control under C/15/TRC/4106(B). Has driving privileges to work 01/24/2015 through 07/24/2015. Disclose as a criminal record of a state's witness per Crim. R. 16.  Prosecutor can argue lack of impeachment value at trial. |

Taylor.Hooven__00080

<u>**Report Updated:**</u>  7/12/2023

|  | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 11. | Joseph Redmond | Colerain Township | Resigned as of April 2015 | • Departmental finding of <u>dishonesty</u> in 2002. Redmond maintains his OPOTA certificate and is eligible for employment with another agency. |
| 12. | Nicholas McCarthy | Colerain Township | Terminated as of April 2015 | • Departmental Finding of Dishonesty<br>• Currently in arbitration. If he wins, we still disclose because his own agency made findings of dishonesty. |

**(\*\*\*\*Below names/incidents added to list 7/6/2016 by Phil Cummings/Appellate Division\*\*\*\*\*\*)**

|  | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 13. | Dennis Barnette<br>Badge # P19<br>District 4 | CPD | 2/11/15<br><br><br>2019 | -Plead Guilty to Deer Regulation - Section 1533.11 of OAC[1] - Minor Misdemeanor – Fined $240 – Violation of CPD Rule 1.02 (Criminal Conviction)<br><br>-Expressing Prejudice |
| 14. | Darrell Beavers<br>Badge # P193<br>District 3 | CPD | 6/30/2014 | Plead No Contest to Attempted Tampering with Evidence – R.C. 2923.02 and Illegal Use of a Minor in Nudity Oriented Material – R.C. 2907.323. Sentence: 1 Year ODC – Violation of CPD Rule 1.02 (Criminal Conviction) |

---

[1] Ohio Administrative Code

Taylor.Hooven__00081

<u>**Report Updated:**</u>  7/12/2023

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| **15.** | **Jeff Brunswick Retired** | CPD | 1/9/2014 | Plead Guilty to 2 Counts of Unauthorized Use of Property – R.C. 2913.03 – 3 Years Community Control – Violation of CPD Rule 1.02 (Criminal Conviction) |
| **16.** | **Ronald Childress Badge # S17 District 2** | CPD | 2/24/2015 | Found Guilty of Operating a Vehicle Under Influence of Alcohol/Drugs – R.C. 4511.33 – 1st Degree Misdemeanor – 3 Days – 180 Days License Suspension – Violation of CPD Rule 1.02 (Criminal Conviction) |
| **17.** | **David Damico Badge # S4 District 1** | CPD | 6/17/2015 | Plead Guilty to Operation in Willful Disregard of Safety of Persons/Property - R.C. 4511.20 – 4th Degree Misdemeanor – Fine – 3 Days Jail – Violation of CPD Rule 1.02 (Traffic Law - Criminal Conviction) |
| **18.** | **Lt. Michael Fern Badge # L48 District 1** | CPD | 10/20/2014  2/9/2018 | -  Plead Guilty to Operation of Willful Disregard of Safety of Persons/Property - R.C. 4511.20;  Speeding – R.C. 4511.21 – Fine – 30 Days EMU – Violation of CPD Rule 1.02 (Traffic Law – Criminal Conviction)  - 7/2/2018 Found to have intentionally given inaccurate information on a police form – Violation of Rule 2.03 |

Taylor.Hooven__00082

<u>**Report Updated:**</u>  7/12/2023

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| **19.** | **Eric Gilbert**<br>**Badge # P50**<br>**District 4** | CPD | 1/2/2014<br><br><br><br><br><br>6/18/2014 | -Plead Guilty to Section 333.02 Fairfield Municipal Code – Operation in Willful Disregard of Safety – 1st Degree Misdemeanor – 6 months Non-Reporting Probation – Court Costs – Violation of CPD Rule 1.02 (Traffic Law – Criminal Conviction)<br><br>-Plead Guilty to Disorderly Conduct – No Penalty |
| **20.** | **Kevin Jones**<br>**Badge # P920**<br>**District 3**<br>**Resigned 8/24/2015** | CPD | 5/29/2014<br><br><br>8/24/2015 | -Plead Guilty to Disorderly Conduct – R.C. 2917.11 – $40 Fine + Costs – Violation of CPD Rule 1.02 (Criminal Conviction)<br><br>-Plead Guilty to 2 Counts Disorderly Conduct – R.C. 2917.11 |
| **21.** | **David Knox**<br>**Badge # P307**<br>**District 3** | CPD | 8/22/2014 | Plead No Contest to Operating Under Influence Alcohol – R.C. 4511.19 - $400 Fine + Costs – 6 months Community Control – Violation of CPD Rule 1.02 (Criminal Conviction) |
| **22.** | **Rebecca Napier**<br>**Badge # P960**<br>**District 1** | CPD | 3/20/2014 | Found Guilty in Campbell County, KY of Possessing Open Container – Alcohol – Section 189.530 KRC - $100 Fine – 6 months License Suspension – Violation of CPD Rule 1.02 (Criminal Conviction) |

Taylor.Hooven__00083

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 23. | **Rodney Pompey**<br>**Badge # S95**<br>**District 1** | CPD | 2/5/2014 | Found Guilty of Operation in Willful Disregard of Safety – Section 72.41 Springdale Municipal Code – 4th Degree Misdemeanor - $250 Fine – 1 Year Probation Non-reporting – Violation of CPD Rule 1.02 (Criminal Conviction) |
| 24. | **Jeanette Whitehead**<br>**Badge # P145**<br>**Telephone Crime Reporting Squad** | CPD | 2/20/2013 | Found Guilty of Income Tax -Violation - Village of Mariemont Ordinance #0-17-3 – 1st Degree Misdemeanor – 4 Months Probation + Court Costs – Violation of CPD Rule 1.02 (Criminal Conviction) |
| 25. | **Orlando Smith**<br>**Badge # P432**<br>**District 4** | CPD | 4/10/2013 | Altered Citation with Intent to Mislead - Violation of CPD Rule 2.03(B) (Intentional Report Inaccuracies) |
| 26. | **Phillip Penn**<br>**Badge # P2**<br>**Central Business Section** | CPD | 8/1/2013 | Excessive Force – Inaccurate Report on Use of Baton - Violation of CPD Rule 1.23 – (Failure to Report Excessive Force) |
| 27. | **Aaron Kodish**<br>**Police Officer** | North College Hill Police Department | 3/10/2016 | Dishonesty.  Told Department He Was in Juvenile Court When He Was Not.  10 Day Suspension Without Pay. |

Taylor.Hooven__00084

<u>Report Updated:</u>  7/12/2023

|  | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 28. | **William Springer**<br>**Badge # P578**<br>**District 5** | CPD | 9/1/2013 | Made False Statement to Investigators About Use of Force - Violation of CPD Rule 5.01 (Serious Dishonesty) |
| 29. | **Freddie L. Vincent**<br>**Badge # P775**<br>**District 5** | CPD | 2/23/2015<br><br>1/29/2019 | -Violation of CPD Rule 2.03B – Submitted False Report Designed to Mislead<br><br>-Reckless Operation of a Motor Vehicle (M4, ORC §4511.20; original charge Stopping After Accident) |

(****Below names/incidents added to list 9/28/2016 per Phil Cummings****)

|  | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 30. | **Jose Laboy-Laviena**<br>**Former CPD Dist. 3 Officer** | CPD | 3/28/2012<br>4/11/2012 | Case No. B-1202358 - Indicted, plead and convicted of Theft in Office and Tampering w/ Evidence acting in his capacity as a Cincinnati Police Officer.  (Preyed on immigrants wanting U-visa's.) |
| 31. | **Joseph B. Simpson**<br>**Former CPD Officer** | CPD | 12/27/2015 | *Case No. B1600259 – Def. Indicted for Theft in Office (F5) and plead to Attempt (M1) (Theft in Office) on 6/16/2016.<br>*Resigned from CPD but still OPOTA certified |

Taylor.Hooven__00085

**Report Updated:** 7/12/2023

(****Below names/incidents added to list 9/18/2018 per Phil Cummings****)

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 32. | P.O. David Dozier | CPD | 9/26/2015<br><br>12/18/2015 | - slapped his son<br><br>- convicted of Disorderly Conduct R.C. 2917.11 |
| 33. | P.O. Charles Hains | CPD | 4/19/2016<br><br>4/22/2016 | - fought with neighbor while walking his dogs<br><br>- convicted of Disorderly Conduct R.C. 2917.17 |
| 34. | Specialist Eric Karaguleff | CPD | 4/17/2016<br><br>4/18/2016 | - Alcohol Intoxication in KY<br><br>- convicted |
| 35. | P.O. Stephanie Greene | CPD | 5/15/2016<br><br>6/8/2016<br><br><br>2017 | - arrested<br><br>- convicted of Reckless Operation of a Motor Vehicle R.C. 4511.20<br><br>- OVI |

Taylor.Hooven__00086

**Report Updated:**  7/12/2023

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 36. | P.O. Lorenzo Law | CPD | 10/2013 | - Found to have undertaken investigation without obtaining permission from a commander |
| 37. | P.O. Tom Owens | CPD | 2/20/2017 | - Violation of Rule 6.01 CPD Rules |
| 38. | Sargent Shauna Lambert | CPD | 4/29/2016  5/16/2016 | - Arrested for OVI  - convicted of Reckless Operation R.C. 4511.20 |
| 39. | P.O. Janitta Nichols | CPD | 3/23/2016 | - Intentional Inaccuracies or Omissions in police internal investigation |
| 40. | P.O. Orlando Smith | CPD | 4/19/2013 | - Altered Traffic Citation to Avoid Discipline |
| 41. | P.O. David Jenkins | CPD | 7/18/2017 | - Plead Guilty to Disorderly Conduct While Intoxicated |

Taylor.Hooven__00087

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 42. | P.O. Jeffrey Ertel | CPD | 4/4/2011<br><br>8/18/2011 | - Use of Excessive Force in Arrest (struck offender who was resisting arrest)<br><br>- sustained finding of excessive force |
| 43. | P.O. Charles Haines | CPD | 12/1/2016<br><br>1/5/2017 | - Use of Excessive Force in Arrest (sprayed offender with chemical irritant)<br><br>- Police Chief upheld finding of excessive force |
| 44. | P.O. Patrice Brooks | CPD | 4/12/2018 | - Found to have made false verbal statement in Internal Investigation Interview |
| 45. | P.O. Monique Martin | CPD | 4/12/2018 | - Found to have made False Statements in Internal Investigation Interview |

Taylor.Hooven__00088

<u>Report Updated:</u> 7/12/2023

(****Below names/incidents added to list 12/05/2018 by Phil Cummings/Appellate Division*****)

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 46. | Lt. Danita Pettis | CPD | 2018 | - Reprimanded for violations of  CPD Rule 1.16(A)- Interference With An Investigation and CPD Rule 1.08- Disclosure of Confidential Information |
| 47. | Patrol Officer Gary McNeal | Blue Ash | 2018 | - Found to be untruthful during internal investigation |
| 48. | Sgt. Edward Charron | Blue Ash | 2018 | - Found to be untruthful during internal investigation |

(***Below names/incidents added to list 12/05/2018 by Phil Cummings/Appellate Division from the Sheriff's Office**)

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 49. | Richard Chandler | HCS | 2010<br><br>2014 | - IA Case # 44-10<br>  Excessive Force<br><br>- IA Case # 47-14<br>  Excessive Force |
| 50. | James Erpelding | HCS | 2010 | - IA Case # 44-10<br>  Excessive Force |

Taylor.Hooven__00089

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 51. | Robert Pangallo | HCS | 2010 | - IA Case # 44-10<br>  Excessive Force |
| 52. | Berlin Austin | HCS | 2013 | - IA Case # 01-13<br>  Excessive Force |
| 53. | Thomas Howland | HCS | 2013<br><br>2014 | - IA Case # 92-13<br>  Excessive Force<br><br>- IA Case # 84-14<br>  Excessive Force |
| 54. | Joseph Hicks | HCS | 2014 | - IA Case # 04-14<br>  Excessive Force |
| 55. | Richard Chandler | HCS | 2014 | - IA Case # 47-14<br>  Excessive Force |
| 56. | Thomas Howland | HCS | 2014 | - IA Case # 84-14<br>  Excessive Force |
| 57. | Ryan McClendon | HCS | 2014 | - IA Case # 99-14<br>  Excessive Force |

Taylor.Hooven__00090

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 58. | Sanford Speight | HCS | 2015 | - IA Case # 21-15<br>  Excessive Force |
| 59. | Randall Spence | HCS | 2016 | - IA Case # 05-16<br>  Excessive Force |
| 60. | Daniel Erwin | HCS | 2016 | - IA Case # 35-16<br>  Excessive Force |
| 61. | Jason Mize | HCS | 2016<br><br>01/2017 | - IA Case # 51-16<br>  Excessive Force and<br>  Dishonesty<br><br>- "Plead to deprivation of rights"<br>  Resigned |
| 62. | Matthew Peck | HCS | 2017 | - IA Case # 24-17<br>  Excessive Force |
| 63. | Jason Cable | HCS | 2017 | - IA Case # 65-17<br>  Excessive Force |

Taylor.Hooven__00091

<u>**Report Updated:**</u> 7/12/2023

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| **64.** | **James Burroughs** | HCS | 2009<br><br>2010 | - IA Case # 22-09<br>  Dishonesty<br><br>- IA Case # 45-10<br>  Sexual Harassment |
| **65.** | **Donald Fore** | HCS | 2009<br><br>2014 | - IA Case # 41-09<br>  OVI<br><br>- IA Case # 85-14<br>  OVI |
| **66.** | **Kenneth Payne** | HCS | 2010 | - IA Case # 03-10<br>  OVI |
| **67.** | **Randy Bernhardt** | HCS | 2010 | - IA Case # 17-10<br>  Falsified Internal<br>  Documents |
| **68.** | **Rob Dicker** | HCS | 2010 | - IA Case # 34-10<br>  OVI |

Taylor.Hooven__00092

**Report Updated:**  7/12/2023

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 69. | James Mitchell | HCS | 2011 | - IA Case # 21-11<br>OVI |
| 70. | Brian Shepherd | HCS | 2011 | - IA Case # 26-11<br>Assault & Criminal<br>Trespassing |
| 71. | Jason Swallen | HCS | 2012 | - IA Case # 02-12<br>OVI |
| 72. | Derrick Werner | HCS | 2012<br><br>2013<br><br>2018 | - IA Case # 08-12<br>OVI<br><br>- IA Case # 05-13<br>OVI<br><br>- IA Case # 16-18<br>OVI Law Violation |
| 73. | Philip Scalf | HCS | 2012 | - IA Case # 14-12<br>OVI |

Taylor.Hooven__00093

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 74. | Marc Evers | HCS | 2012 | - IA Case # 20-12<br> Dis. Conduct |
| 75. | Mike Jones | HCS | 2012 | - IA Case # 23-12<br> Dis. Conduct |
| 76. | Joseph Sprague | HCS | 2012 | - IA Case # 25-12<br> OVI |
| 77. | Clyde Davidson | HCS | 2013 | - IA Case # 06-13<br> Bias towards African<br> Americans |
| 78. | Greg Sersion | HCS | 2013 | - IA Case # 38-13<br> Dishonesty |
| 79. | John Kamphaus | HCS | 2014 | - IA Case # 22-14<br> Conviction –  Attempt<br> to Procure Sex from<br> Minor in Kentucky |

Taylor.Hooven__00094

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 80. | **Kenneth Mullins** | HCS | 2014 | - IA Case # 56-14<br>Falsified Internal<br>Documents |
| 81. | **Jose Romero** | HCS | 2014<br><br>2015 | - IA Case # 68-14<br>Bias Towards<br>Caucasians<br><br>- IA Case # 22-15<br>Dishonesty Terminated |
| 82. | **Sandra Dolan** | HCS | 2014<br><br>2019 | - IA Case # 73-14<br>OVI<br><br>- IA Case # 31-19<br>OVI Law Violation |
| 83. | **Curtis Taylor** | HCS | 2014 | - IA Case # 96-14<br>Falsified Internal<br>documents |

Taylor.Hooven__00095

<u>**Report Updated:**</u>  7/12/2023

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 84. | **Samuel Hickey** | HCS | 2015 | - IA Case # 13-15<br>  OVI Guilty Plea<br>  15/TRC/12494 |
| 85. | **Corey Lewis** | HCS | 2015 | - IA Case # 18-15<br>  Falsified Internal<br>  Documents |
| 86. | **Brian Braun** | HCS | 2015 | - IA Case # 18-15<br>  Falsified Internal<br>  Documents |
| 87. | **Robert Schwallie** | HCS | 2015<br><br>2019 | - IA Case # 31-15<br>  OVI by OSP Guilty Plea<br><br>- IA Case # 77-19<br>  OVI Law Violation<br>  Closure date:  11/14/2019 |

Taylor.Hooven__00096

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 88. | Bobby Colwell | HCS | 2016<br><br>2017 | - IA Case # 21-16<br> DC Arrest Butler County<br> Convicted Case #:<br> CRB 1600483<br><br>- IA Case # 41-17<br> Disorderly Conduct |
| 89. | Walter Brown | HCS | 2016 | - IA Case # 27-16<br> OVI Arrest Mason PD<br> Guilty Plea<br> Case #: 16TRC01824 |
| 90. | Matthew Collini | HCS | 2016 | - IA Case # 67-16<br> OVI Conviction Boone<br> County<br> Case #: 16-T-10806 |
| 91. | James Erpelding | HCS | 2016 | - IA Case # 49-16<br> Procuring Prostitution |
| 92. | Kyle Rasnick | HCS | 2017 | - IA Case # 04-17<br> Dishonesty, Resigned |

Taylor.Hooven__00097

<u>**Report Updated:**</u> 7/12/2023

|   | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 93. | **Angel Cherry** | HCS | 2017 | - IA Case # 03-17 Disorderly Conduct Conviction, Dishonesty Case #: 2017 CRB 00120 |
| 94. | **Diamond Webb** | HCS | 9/2/2017 | - IA Case # 90-17 Dishonesty |
| 95. | **Joshua Noel** | HCS | 2017 | - IA Case # 83-17 8/25/17 – Conduct Unbecoming/Criminal Case, Telephone Harassment - Convicted |

| (****Below names/incidents added to list 04/03/2019 by Phil Cummings/Appellate Division*****) | | | | |
|---|---|---|---|---|
|   | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
| 96. | **Timothy Hains** | CPD | 9/2/2017 | - Excessive Use of Force |
| 97. | **Sgt. Greg Morgan** | HSCO (RENU) | 10/2/2018 | -Falsified Information in Search Warrant Affidavit |

Taylor.Hooven__00098

**Report Updated:** 7/12/2023

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 98. | Brian Howard | CPD | 1/17/2019 | - Convicted of: Assault, M1 |
| 99. | Jeffrey T. Butler | CPD | 1/3/2019<br><br>2019 | - Convicted of: Prostitution, M3<br><br>- Substance Abuse - Alcohol |
| 100. | Sgt. Joe Briede | CPD | 12/19/2018 | - Convicted of: Operation in Willful or Wanton Disregard of Safety (Fairfield, Ohio Section 333.02(A), M1) |
| 101. | Sgt. Pompey | CPD | 2/5/2014 | - Convicted of: Operation in Willful or Wanton Disregard of Safety (Springdale Ord. 72.41, M4) |
| 102. | Andrew T. Pahzeca | Mt. St. Joe University P.D. | | - Administrative Finding of Dishonesty (Resigned) |

Taylor.Hooven__00099

<u>Report Updated:</u>  7/12/2023

**(****Below names/incidents added to list 05/22/2019 by Phil Cummings/Appellate Division*****)**

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 103. | Police Specialist David Hall | CPD | 1/2/2019 | - Positive Test for hydrocodone (controlled substance) on duty |
| 104. | Courtney Compton | CPD | 8/29/2017 | - Excessive Force (mistreatment of detainee) |
| 105. | John Neal | CPD | 1/11/2019 | - Allowed unauthorized use of cruiser, credentials by his neighbor on Halloween 2018 |

Taylor.Hooven__00100

**Report Updated:**  7/12/2023

(****Below names/incidents added to list 10/09/2019 by Phil Cummings/Appellate Division*****)

|  | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 106. | Cameron Farley | HCS | 2017 | - IA Case #38-17<br>  Dishonesty |
| 107. | Michael Middleton | HCS | 03/13/2018 | - IA Case # 13-18<br>  Aggravated Vehicular<br>  Assault |
| 108. | April Deaton | HCS | 2018 | - IA Case # 25-18<br>  OVI Law Violation |
| 109. | Joshua Yeager | HCS | 2018 | - IA Case # 31-18<br>  Child Porn Law<br>  Violation |
| 110. | Matthew Dews | HCS | 2018 | - IA Case # 72-18<br>  OVI Law Violation |
| 111. | Rick Johnson | HCS | 2018 | - IA Case # 58-18<br>  D.C. Law Violation |
| 112. | Haze Erwin | HCS | 2018 | - IA Case # 76-18<br>  OVI Law Violation |

Taylor.Hooven__00101

<u>**Report Updated:**</u>  7/12/2023

**(****Below names/incidents added to list 11/14/2019 by Phil Cummings/Appellate Division*****)**

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 113. | Aeriel Mitchell | HCS | 2018 | - IA Case # 23-18<br>  Excessive Force |
| 114. | John Brady | HCS | 2018 | - IA Case # 68-18<br>  Excessive Force |
| 115. | Damon Howard | HCS | 2019 | - IA Case # 60-19<br>  OVI Law Violation |
| 116. | Capt. Jeffrey L. Butler, Jr. | CPD | 2019 | - Intentionally Report<br>  Inaccuracies or<br>  Omissions |
| 117. | P.O. Johnny Harris | CPD | 2019 | - Substance Abuse / On<br>  Duty – Improperly<br>  Obtained Controlled<br>  Substance |
| 118. | P.O. Donte Hill | CPD | 2019 | - Expressing Prejudice |

Taylor.Hooven__00102

<u>**Report Updated:**</u>  7/12/2023

**(****Below names/incidents added to list 03/10/2020 by Phil Cummings/Appellate Division*****)**

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 119. | **Mark Owens** | Blue Ash Patrol Officer | 02/2020 | - Found to be <u>Untruthful</u> During Internal Investigation Regarding Personal Relationship with Intern – EXONERATED,  CHARGE DISMISSED |

**(****Below names/incidents added to list 10/06/2020 by Phil Cummings/Appellate Division*****)**

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 120. | **Jesse Hoefler** | HCS | 2019 | - IA Case # 03-20<br> Law Violation |
| 121. | **Cheyenne Gray** | HCS | 2019 | - IA Case #35-19<br> Dishonesty<br><br>- IA Case #71-19<br> Excessive Force |
| 122. | **Ryan Martin** | HCS | 2019 | - IA Case # 64-19<br> Law Violation Conveyance |
| 123. | **Joseph Glisson** | HCS | 2019 | - IA Case #79-19<br> OVI Law Violation   - CHARGE DISMISSED 12/19/2019 |

Taylor.Hooven__00103

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| **124.** | **Steven Conley** | HCS | 2019 | - IA Case # 82-29<br>  Law Violation Conveyance |
| **125.** | **Jacob Sokolis** | HCS | 2019 | - IA Case # 84-19<br>  Drug Abuse Law Violation |
| **126.** | **Joshua Evans** | HCS | 2019 | - IA Case # 91-19<br>  Dishonesty |
| **127.** | **Tanner Ruscin** | HCS | 2020 | - IA Case # 08-20<br>  Sex Harass/Dishonesty |

Taylor.Hooven__00104

**Report Updated:** 7/12/2023

(****Below names/incidents added to list 05/27/2021 by Phil Cummings/Appellate Division*****)

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 128. | Michael Stemmerding | HCS | 03/2021 | - IA Case # 72-15<br>  Sustained Finding of Racial, Religious and/or Bias |
| 129. | Sean Mulholland | HCS | 04/2021 | - OVI – Clermont Co. Muni Ct. Case No. 21 TRC 557 |
| 130. | Rose Valentino<br>Badge #P974 | CPD | We Were Notified on 01/01/2021<br><br>Terminated 08/2022 | - Disorderly Conduct (M4, ORC §2917.11)<br><br><br>-Use of Racial Slur |
| 131. | Bradley Gettlefinger<br>Badge #P176 | CPD | We Were Notified on 01/01/2021 | - Sustained CPD Rules & Regulations Violation – *Intentionally Report Inaccuracies or Omissions* |
| 132. | Thomas Owens<br>Badge #P567 | CPD | We Were Notified on 01/01/2021 | - Operating a Motor Vehicle While Under the Influence of Alcohol or Drugs (M1, ORC §4511.19(A1)) |
| 133. | Sgt Andre Smith<br>Badge #S148 | CPD | We Were Notified on 01/01/2021 | - Disorderly Conduct (M4, ORC §2917.11) |

Taylor.Hooven__00105

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 134. | P.O. Derrick<br>Badge #P481 | CPD | We Were Notified on 01/01/2021 | - Sustained CPD Rules & Regulations Violations – *Mistreatment of Detainees* |
| 135. | Jesse Franklin | HCS | 2020 | - IA Case # 20-20<br>  Excessive Force |
| 136. | Paige Johnson | HCS | 2020 | - Supervisor Write-up<br>  Dishonesty (15 day suspension)<br>  Closure date:  09/11/2020 |

| | | | | |
|---|---|---|---|---|
| **(****Below names/incidents added to list 09/27/2021 by Phil Cummings/Appellate Division*****)** | | | | |
| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
| 137. | Ohio State Trooper Axel C. Lewis | Ohio State Highway Patrol | 03/18/2021 | Administrative Finding of False Statement, Untruthfulness |
| 138. | Deputy Stephen Wells | HCS | 09/27/2021 | Internal Affairs Finding of Dishonesty |

Taylor.Hooven__00106

Report Updated: 7/12/2023

(****Below names/incidents added to list 03/17/2022 by Phil Cummings/Appellate Division*****)

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 139. | Corrections Officer Joshua Eastham | HCS | 09/2021 | Arrested for DV – Plead no contest to the amended charge of DC |
| 140. | Lt. Adrian Miller | CPD | 3/15/2022 | Found to have intentionally submitted inaccurate report in violation of Rule 2.03B |
| 141. | Corrections Officer Malcolm Kelley | CPD | 10/2021 | Excessive Use of Force |
| 142. | Deputy Stephen Wells | CPD | 09/2021 | Dishonesty |

(****Below names/incidents added to list 06/14/2022 by Phil Cummings/Appellate Division*****)

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 143. | Detective Brent Wethington | Colerain Police Dept. | 06/01/2022 | Several sustained findings of misconduct to include dishonesty – Relieved of his police powers and no longer employed by Colerain. |

(****Below names/incidents added to list 09/19/2022 by Phil Cummings/Appellate Division*****)

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 144. | Corrections Sergeant Fritz Elsasser | HCS | 08/29/2022 | Sustained charges to the following policy violation of Excess Use of Force. (He delivered closed fist strikes to the facial area of a restrained inmate after being spat in the face.) |

Taylor.Hooven__00107

**Report Updated:  7/12/2023**

(****Below names/incidents added to list 10/06/2022 by Phil Cummings/Appellate Division*****)

|  | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 145. | Probationary Police Officer (PPO) Anthony Crawford | Delhi Twp. Police Dept. | 9/16/2022 | Dishonesty |

(****Below names/incidents added to list 11/17/2022 by Phil Cummings/Appellate Division*****)

|  | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 146. | Police Officer Darryl Tyus, Badge P938 | CPD | 06/2022 | Convicted of Attempted Menacing by Stalking [M-2] - R.C.2923.02  -  Was Dismissed from CPD Pending Arbitration |
| 147. | Police Officer Justin Moore, Badge P191 | CPD | 06/2022 | Convicted of Stopping After Accident [M-1] |
| 148. | Sgt. Scott Owen (Retired) | Colerain Twp. |  | Dishonesty; Improper Handling of Evidence |

Taylor.Hooven__00108

**Report Updated:** 7/12/2023

**(****Below names/incidents added to list 01/02/2023 by Phil Cummings/Appellate Division*****)**

|  | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 149. | **Police Officer Jesse Hooven, Badge P111** | CPD | 02/04/2022 | Convicted of ORC 4511.19(A)(1)(a), OVI [M1] |
| 150. | **Police Officer Vanessa Stewart, Badge P255** | CPD | 09/07/2022 | Convicted of Fairfield (OH) Municipal Code 333.02A, Reckless Operation [M1] |

**(****Below names/incidents added to list 02/07/2023 by Phil Cummings/Appellate Division*****)**

|  | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 151. | **Police Officer Kelly Drach, Badge P675** | CPD | 11/2021 | 2 Complaints of Offensive Comments Concerning Ethnicity and Race Made at the RTCC   (Derogatory Ethic Comments/Discriminatory Harassment) – i.e. Use of "N" Word |

**(****Below names/incidents added to list 02/09/2023 by Phil Cummings/Appellate Division*****)**

|  | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 152. | **Police Officer Rebecca Napier, Badge P960** | CPD | 11/30/2022 | For Violation of Rule 1.02A – Plead Guilty on 1/13/23 to R.C. 2917.11, Disorderly Conduct – a Minor Misdemeanor |

**Report Updated:** 7/12/2023

(****Below names/incidents added to list 04/17/2023 by Phil Cummings/Appellate Division*****)

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 153. | Police Officer David Dozier, EID #22688 | CPD | 04/29/2020 | Excessive Force |
| 154. | Police Officer Todd Dawson, EID #31191 | CPD | 06/13/2020 | Excessive Force (Mistreatment of a Prisoner) |
| 155. | Police Officer Matthew Mauric, EID #32269 | CPD | 01/14/2021 | Mishandling of Property, Body Camera Violation & Mishandling of Evidence |
| 156. | Police Officer Genesis Steele, EID #34096 | CPD | 10/27/2021 | Positive Drug Screening |

(****Below names/incidents added to list 07/12/2023 by Phil Cummings/Appellate Division*****)

| | Officer's Name & Badge No. | Municipality | Date(s) of Incidents | Findings |
|---|---|---|---|---|
| 157. | Lt. Terry Larkin, EID # 23426 | CPD | 03/30/2023 | Knowingly Made Dishonest Statement and Created False Record |
| 158. | Police Officer Justin Shields, EID # 37099 | CPD | 04/14/2023 | On 5/17/23 – Plead Guilty to Having Physical Control of a Motor Vehicle While Under the Influence [M1] -Clermont Co. |

Taylor.Hooven__00110