# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| **Brendon Taylor, et al.,** | : | Case No. 1:24cv204 |
| Plaintiffs, | : | Judge Susan J. Dlott |
| v. | : | **DEFENDANT CITY OF CINCINNATI'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT** |
| **Jesse Lee Anthony Hooven, et al.,** | : | |
| Defendants. | : | |

Upon the attached memorandum and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant City of Cincinnati moves to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. The Court should dismiss Plaintiffs' claims against the City as a matter of law.

Respectfully submitted,

**EMILY SMART WOERNER (0089349)**
**CITY SOLICITOR**

/s Shuva J. Paul
Shuva J. Paul (0088484)
Katherine C. Baron (0092447)
Assistant City Solicitors
801 Plum Street, Suite 214
Cincinnati, Ohio 45202
(513) 352-4551
shuva.paul@cincinnati-oh.gov
katherine.baron@cincinnati-oh.gov
*Trial Attorneys for Defendant City of Cincinnati*

**MEMORANDUM IN SUPPORT**

**I.     SUMMARY**

This case arises from purely private conduct aimed at gaining leverage in a child custody dispute. It illustrates the basic principle that courts should dismiss municipal liability claims brought pursuant to 42 U.S.C. § 1983 when a plaintiff's allegations show, as they do here, a city employee acting purely in service of his private interests rather than under color of state law. *See Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975) ("Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983.").

Plaintiffs Brendon Taylor and Holly Hooven, a Kentucky couple, bring this action pursuant to 42 U.S.C. § 1983. They seek damages arising out of the unauthorized release of confidential information from a database used by Ohio's county public child service agencies. A Hamilton County employee with access to the database disclosed protected information about Mr. Taylor to Ms. Hooven's ex-husband to aid the ex-husband in the Hoovens' child custody dispute. Both the agency employee and the ex-husband are named in this suit along with Hamilton County. In addition, Plaintiffs seek judgment against the City of Cincinnati ("City"), which employed the ex-husband as a police officer. Plaintiffs allege the City was deliberately indifferent to Plaintiffs' constitutional rights and maintained policies, procedures, and customs that violated Plaintiffs' First Amendment rights to associate with each other. Plaintiffs also allege the City violated Mr. Taylor's substantive due process rights under the Fourteenth Amendment.

Plaintiffs fail to state a claim against the City. The ex-husband's tortious conduct was private in nature and furthered no City interest. Plaintiffs cannot show he acted under color of state law, as they must do to advance their municipal liability claims under 42 U.S.C. § 1983. The Court should grant the City's Rule 12(b)(6) motion to dismiss as a matter of law.

II.     STATEMENT OF FACTS

   A. The Search for "Dirt" to Gain "Leverage" in a Child Custody Dispute

In April 2023, Defendant Madison Paul was a supervisor at the Hamilton County Department of Jobs and Family Services ("JFS"). (Complaint, ECF No. 1, ¶¶ 13, 26, PageID 4, 6).[1] During that time, Ms. Paul was also in a personal/sexual relationship with a Cincinnati police officer, Defendant Jesse Hooven (hereafter "Officer Hooven"), who she had met previously when he responded to a JFS call for service. (Id., ¶¶ 23, 36, PageID 5, 7). Officer Hooven let Ms. Paul know he wanted her help in obtaining "dirt" on Mr. Taylor that Officer Hooven could use as "leverage" against his ex-wife, Ms. Hooven, in their child custody dispute. (Id., ¶¶ 24-25, 38, 40, PageID 6, 8). At the same time, Officer Hooven told Ms. Paul that he was *not* investigating Mr. Taylor using the law enforcement databases available to him through his job as a police officer because there was "no legitimate, valid, or compelling reason to do so in connection with any law enforcement purposes, or any other State interest." (Id., ¶¶ 39, 43, 44, PageID 8-9).

Ms. Paul's position at JFS gave her "unfettered access" to confidential juvenile records contained in the Ohio Statewide Automated Child Welfare Information System ("SACWIS"). (Id., ¶¶ 41-42, PageID 8). Ms. Paul searched SACWIS for confidential records related to Mr. Taylor and disclosed what she found to Officer Hooven, who then used that information to text Ms. Hooven his concerns about their child custody arrangement. (Id., ¶¶ 40, 43-48, PageID 8-11). Mr. Taylor immediately filed a pair of administrative complaints, one with JFS against Ms. Paul, and one with the Cincinnati Civilian Complaint Authority ("CCA") alleging Officer Hooven had "used his official capacity as a police officer to obtain information about his juvenile history with JFS." (Id., ¶¶ 59-60, PageID 13).

---

[1] This section draws from allegations contained in the Complaint, reflecting the Court's obligation on a motion to dismiss to accept as true all well-pleaded allegations and to draw all reasonable inferences in favor of the plaintiff. This factual summary is intended to assist the Court and does not concede the truth of any of Plaintiffs' allegations.

### B. The CCA and IIS Investigations

CCA conducted an investigation and issued a report in September 2023, a copy of which Plaintiffs attached to their pleadings. (CCA Report attached as Exhibit 2 to Complaint ("CCA Report"), ECF No. 1, PageID 35-38). CCA confirmed the existence of a "consensual personal relationship" between Ms. Paul and Officer Hooven at the time of the unauthorized disclosures. (Id., PageID 36-37). CCA also determined it lacked evidence to find that Officer Hooven intentionally sought the improper accessing of Mr. Taylor's confidential records. (Id., PageID 36). However, CCA found that Officer Hooven, by further disclosing the improperly accessed information to his ex-wife "instead of preventing a further spillage of said information," exhibited "poor judgment" and that his actions "were not within CPD policy, procedure, or training." (Id.). CCA sustained the allegation of misconduct. (Id., PageID 37).

Before issuing its report, CCA referred the matter to the Cincinnati Police Department's ("CPD") Internal Investigations Section ("IIS") for further investigation. (Complaint, ECF No. 1, ¶¶ 60-61, PageID 13). The IIS review addressed two separate potential violations and issued a report in June 2023, a copy of which Plaintiffs attached to their pleadings. (IIS Report attached as Exhibit 1 to Complaint ("IIS Report"), ECF No. 1, PageID 29-34). On the first charge, Unethical Conduct, IIS, "was unable to determine who [between Ms. Paul and Officer Hooven] prompted the request for restricted information" and recommended a finding of "Not Sustained" on this charge. (Id., PageID 34).

In its investigation, IIS confirmed the existence of "a romantic relationship" between Ms. Paul and Officer Hooven at the time of the disclosure of the restricted information, and also determined that Ms. Paul had "utilized her access to [SACWIS] to acquire information about Mr. Taylor as a personal favor to Officer Hooven." (Id., PageID 33-34). IIS further found that Ms.

4

Paul "was aware Officer Hooven was receiving the information for personal reasons and not for legitimate law enforcement reasons." (Id., PageID 33).

On the second charge, Improper Use of a Law Enforcement Database, IIS checked Regional Crime Information Center ("RCIC") data and confirmed what Officer Hooven had told them, that he "did not query Mr. Taylor in a law enforcement database." (Id., PageID 32-33). IIS further determined that "[n]o law enforcement officers with RCIC access have queried Mr. Taylor in the previous year using a law enforcement database on the RCIC network." (Id., PageID 33). On this second charge, IIS recommended a finding of "Exonerated." (Id., PageID 34).

In signing her approval to the closing of the two charges, Cincinnati Police Chief Teresa A. Theetge indicated that command officers were "to meet with Officer Hooven regarding this investigation" and that the meeting was "to be documented with an ESL." (Id., PageID 29). "ESL" stands for "Evaluation Supplement Log" and indicates an entry in the officer's personnel file "which documents personnel work performance, corrective measures, discipline, and interventions to enhance employee effectiveness." (CPD Procedure Manual, Chapter 15.115 - Corrective/Disciplinary Process and Documentation, available at https://www.cincinnati-oh.gov/police/department-references/police-department-procedure-manual/15115/).

### C. Plaintiffs' Claims

Plaintiffs assert nine causes of action. (Complaint, ECF No. 1, PageID 15-27). Of those nine, only Counts II and IV are claims brought against the City.[2] Count II seeks to impose

---

[2] Count I alleges that Officer Hooven acted under color of state law to retaliate against Plaintiffs in violation of their First Amendment rights to freely associate with each other. Count III alleges that Officer Hooven and Ms. Paul violated Mr. Taylor's fundamental right to privacy under the Fourteenth Amendment. Count V seeks to impose liability upon Ms. Paul's County employers for violating Mr. Taylor's Fourteenth Amendment rights. Count VI alleges Officer and Ms. Paul conspired to deprive Plaintiffs of their civil rights. Plaintiffs' state claims (Counts VII, VIII, and IX) allege the intentional infliction of emotional distress, wrongful intrusion, and abuse of process. (Id., PageID 15-26).

5

municipal liability upon the City of Cincinnati for violations of Plaintiffs' First Amendment free association rights. (Id., PageID 17-19). Count IV alleges that the City violated Mr. Taylor's right to privacy under the Fourteenth Amendment. (Id., PageID 21-22). Additionally, although not a claim *directly* against the City, Plaintiffs contend in Count I that Officer Hooven acted "under color of state law" to retaliate against them in violation of their First Amendment rights to freely associate with each other. (Id., PageID 15-17).

### III. STANDARD OF REVIEW

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 557 (internal citations omitted).

In ruling on a motion to dismiss, a court can consider: (1) any documents attached, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *See New Eng. Health Care Emples. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999); *Whittiker v. Deutsche Bank Nat'l Trust Co.*, 605 F. Supp. 2d 914, 924 (6th Cir. 2009); see also Fed. R. Civ. P. 10(c). "This includes public records and government documents available from reliable sources on the Internet." *Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007) (citations omitted).

IV.     ARGUMENT

A claim brought under 42 U.S.C. § 1983 against a government entity cannot survive a motion to dismiss if the plaintiff fails to plausibly allege that an individual acted on the government's behalf, i.e., that the individual acted under color of state law. *See Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007). As set forth below, Plaintiffs do the exact opposite of what they needed to do: they plead facts showing that Officer Hooven acted purely in service of his own private pursuits with no City interest at stake. Because Officer Hooven did not act under color of state law, there is no need to reach the question of whether the City engaged in a policy or custom that was the moving force behind the alleged deprivation of Plaintiffs' rights. Plaintiffs' claims against the City should be dismissed as a matter of law for failure to state a claim.

### A. The City Has No Monell Liability for Plaintiffs' First Amendment Claim Under 42 U.S.C. § 1983

Plaintiffs contend that the City of Cincinnati should be held liable because it failed to properly train and supervise Officer Hooven, and that by "exonerating" him, it ratified unconstitutional conduct on his part. Plaintiffs also claim the City has an "illegal policy or custom of inaction" and was deliberately indifferent to Plaintiffs' rights. (Complaint, ECF No. 1, ¶¶ 80-90, PageID 17-19). Plaintiffs fail to allege the facts necessary to advance their *Monell* claim past the pleadings stage.

It is axiomatic that a municipality may not be sued under 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). In other words, a municipality cannot be held liable for the constitutional torts of its employees on a *respondeat superior* theory. A plaintiff must also allege that the municipality "engaged in a 'policy or custom' that was the 'moving force' behind the deprivation

7

of the plaintiff's rights." *Powers*, 501 F.3d at 607 (quoting *Monell* at 694). But a plaintiff first must plead facts that, if proven, would show a constitutional violation. This Court has repeatedly recognized that "[t]here can be no liability under Monell without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).

A two-part test determines whether a municipality is liable for a violation under 42 U.S.C. § 1983. *Powers* at 606-07. First, plaintiffs must show that they suffered a deprivation of a constitutional right. If an underlying constitutional violation exists, plaintiffs then must show that the alleged deprivation occurred at the hands of a person acting under color of state law. *Id*.

Plaintiffs therefore must allege facts sufficient to show that Officer Hooven acted under color of state law. They fail to do so. They allege that Officer Hooven would regularly appear at his children's schools and extracurricular events "armed and wearing his police uniform." (Complaint, ECF No. 1, ¶ 33, PageID 7). That is insufficient to show he acted under color of law. As this Court has recognized time and again:

> [t]he fact that a police officer is on or off duty, or in or out of uniform is not controlling. 'It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law.

*Stengel*, 522 F.2d at 441.

The key consideration is "the nature of the act performed." *Id*. What was the nature of Officer Hooven's conduct at his children's schools? Instead of alleging that Officer Hooven arrived at the schools and said a police investigation was underway, Plaintiffs aver that Officer Hooven merely vented "to anyone who will listen" about his child-custody-related "quarrels" with his ex-wife and his feelings of animosity towards his ex-wife's fiancé, wanting listeners to support him in his quest to gain the upper hand in his child custody proceedings and to be his eyes and ears on Mr. Taylor's interactions with his children. (Id., ¶¶ 33-34, PageID 7). In other

8

words, Plaintiffs allege that Officer Hooven's acts were private in nature, in service of no City interest, and thus not attributable to the City. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.")

Plaintiffs cite to Section 9.69(B)(1) of the Ohio Revised Code for their contention that a police officer is "always on duty" under Ohio state law. (Id., ¶ 51, PageID 11). Insofar as Plaintiffs are alleging that state law demands the conclusion that a police officer is always acting under color of law, that suggestion plainly leads to absurd conclusions. Under Plaintiffs' logic, an off-duty officer who enters a bank in his police uniform and robs it to pay off his personal debts would be acting under color of state law. So would an on-duty officer. What Plaintiffs fail to consider is that neither the wearing of a uniform nor R.C. 9.69's "always on duty" language controls whether a person has acted under color of state law for purposes of liability under 42 U.S.C. § 1983.

The Court is familiar with disposing of municipal liability claims lacking the requisite factual support showing state action. For example, in *Morris v. City of Detroit,* 789 Fed. Appx. 516 (6th Cir. 2019), the Court affirmed the lower court's dismissal of Fourth and Fourteenth Amendment claims against a police officer who, while on duty, went to the plaintiff's home to try to collect on a personal debt by one of them. A physical altercation ensued. The officer drew her department-issued firearm and fired a shot that missed the plaintiff. The officer was wearing her police badge and had her department-issued handcuffs with her. The Court agreed that the officer "did not manifest the requisite showing of state-granted authority to act under color of law." *Morris* at 518. Her "sole purpose" was "to collect a personal debt of $300." *Id*. In

9

affirming the dismissal of the federal civil rights claims, this Court noted that the officer "did not purport to be conducting police-related business." *Id*.

Here, the same analysis applies under which the Court should conclude that Officer Hooven did not manifest the requisite showing of state-granted authority to act under color of law. Plaintiffs freely aver that Officer Hooven told Ms. Paul in no uncertain terms that he was *not* investigating Mr. Taylor using the law enforcement databases otherwise available to him because there was "no legitimate, valid, or compelling reason to do so in connection with any law enforcement purposes, or any other State interest." (Complaint, ECF No. 1, ¶¶ 39, 43, 44, PageID 8-9). Plaintiffs' pleadings are devoid of any factual allegations whatsoever that Officer Hooven took any action that was in furtherance of City business or of any official duty required by or requested by the City. Consequently, the City cannot be held liable for Officer Hooven's conduct as that conduct was private in nature and not under color of law.

Perhaps recognizing that Officer Hooven did not purport to anyone that he was conducting police-related business, Plaintiffs make the conclusory allegation that, "[b]ut for his position as a police officer, and the trust placed in him by the City of Cincinnati, Officer Hooven never could have coordinated with Ms. Paul to access SACWIS and disseminate the information she learned to Ms. Hooven." (Id., ¶ 52, PageID 11). Plaintiffs' speculation does not alter the color-of-law analysis. An individual acts "under color of law" when exercising "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–318 (1981). Here, Plaintiffs do not allege that Officer Hooven contacted Ms. Paul in his official capacity as a Cincinnati police officer to direct her to comply with a police investigation. They allege the exact *opposite*—that during the time they were involved with each other romantically/sexually, Officer Hooven said

that there was *no* law enforcement investigation and that his sole interest in Mr. Taylor was *personal* and driven by a child custody dispute he was having with his ex-wife. (Complaint, ECF No. 1, ¶ 39, PageID 8). In other words, Officer Hooven through his words and actions told Ms. Paul in layperson's terms that he was *not* acting under color of law.

Plaintiffs' allegations that Officer Hooven and Ms. Paul were in a personal/sexual relationship at the time of the unauthorized database search make it even more clear that their municipal liability claims warrant dismissal. They show that Ms. Paul's willingness to help Officer Hooven was rooted in something other than a perceived obligation to comply with a governmental investigation. Plaintiffs not only allege these facts but they attach to their initial pleading documentary proof. Exhibit 1 to their Complaint documents that Ms. Paul told IIS that she had "utilized her access to [SACWIS] to acquire information about Mr. Taylor *as a personal favor to Officer Hooven*." (Id., PageID 33-34) (emphasis added).

Plaintiffs' acceptance and incorporation into their pleadings of factual findings showing that Officer Hooven was *not* acting under color of state law is fatal to their municipal liability claims against the City. A "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citation omitted). "Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id*. Plaintiffs allege facts showing that Officer Hooven was telling Ms. Paul that he was *not* acting under color of law; that there was *no* City law enforcement investigation into Mr. Taylor; that he was driven by *personal* animosity towards Mr. Taylor and by his *private* child custody dispute; that Ms. Paul acted out of *personal* loyalty to Officer Hooven—and Plaintiffs

11

then make the conclusory allegation that Officer Hooven was acting under color of law. Plaintiffs' own pleadings call for concluding just the opposite.

For all of these reasons, Count II of the Complaint against the City should be dismissed.

### B. The City Has No Monell Liability for Plaintiff Brendon Taylor's Fourteenth Amendment Claim Under 42 U.S.C. § 1983

As set forth above, there is no need to reach the "policy or custom" part of the municipal liability analysis because no plausible reading of the complaint supports the inference that Officer Hooven acted under color of state law in his bid for leverage in his private child custody dispute. Plaintiffs' contention that the City violated Mr. Taylor's Fourteenth Amendment substantive due process guarantees thus does not help them advance beyond the pleadings stage. In addition, as this Court has noted, the "Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Chambers v. Sanders*, 63 F.4th 1092, 1097 (6th Cir. 2023); *see also Warren v. City of Athens*, 411 F.3d 697, 707 (6th Cir. 2005) ("To succeed on a substantive due-process claim, [a plaintiff] must show that an arbitrary and capricious government action deprived [him] of a constitutionally protected interest.") (internal citations and quotations omitted). Plaintiffs allege no facts here that plausibly support such a finding.

Plaintiffs contend that the City "was deliberately indifferent" to their constitutional rights, but that contention is conclusory and unsupported by any factual allegation. (Complaint, ECF No. 1, ¶ 85, PageID 18). They attach to their pleadings proof that two separate formal investigations followed from Mr. Taylor's administrative complaints, with *neither* investigation determining that Officer Hooven had prompted Ms. Paul to search the SACWIS database. (Exhibits 1 and 2 to Complaint, ECF No. 1, PageID 33-34, 36). *Both* investigations confirmed that Officer Hooven's actions were motivated by his own private desires to gain leverage in his

child custody dispute, and that Ms. Paul acted out of personal loyalty or sympathy when she shared confidential information about Mr. Taylor with Officer Hooven. (Id.) Rather than take Officer Hooven's word for it, IIS confirmed through their own investigatory efforts that no law enforcement official had used a law enforcement database to query Mr. Taylor's protected records. (IIS Report attached to Complaint, ECF No. 1, PageID 33). The City thus took reasonable steps, not arbitrary or capricious ones, to investigate whether there had been any misconduct under color of law and observed facts showing that there had been no conduct at all taken under color of law.

Plaintiffs' contention that the City "ratified" or otherwise approved Officer Hooven's illegal conduct is similarly conclusory and devoid of factual support in the pleadings. (Complaint, ECF No. 1, ¶ 88, PageID 19). For example, Plaintiffs allege that IIS' recommendation that Officer Hooven be "exonerated" shows that Cincinnati police officers are free to act illegally because "those in the position to make final decisions would look the other way as a matter of policy, procedures, and custom." (Complaint, ECF No. 1, ¶ 86, PageID 18; see also ¶¶ 65-67, 84-85, 87, PageID 14, 18-19). Not only do Plaintiffs mischaracterize the "exonerated" recommendation—it was made with respect to the charge concerning whether Officer Hooven had accessed a law enforcement database (which even Plaintiffs do not allege he did)—but they ignore the applicable standard for showing a municipality "ratified" unconstitutional conduct. As this Court has noted, "[r]atification of a subordinate's action requires more than acquiescence--it requires affirmative approval of a particular decision made by a subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993). Putting aside for a moment Plaintiffs' failure to allege facts showing Officer Hooven acted under color of state law, Plaintiffs need to allege facts sufficient to prove that an official charged with

13

making final policy *expressly approved* Officer Hooven's actions. *See id.* They do not. In fact, the Police Chief's handwritten notation calling for supervisory follow-up demonstrates the opposite of what Plaintiffs allege. (IIS Report, attached as Exhibit 1 to Complaint, ECF No. 1, PageID 29).

Tying one's hopes for judicial relief to the Fourteenth Amendment is, as this Court has put it, "a tough test." *Chambers*, 63 F.4th at 1096 (quoting *Golf Vill. N., LLC v. City of Powell*, 42 F.4th 593, 601 (6th Cir. 2022)). Even assuming that Plaintiffs have identified a protected liberty or property interest, they have not identified any City employee or official acting under color of state law who intruded upon that right with the culpability required to state a due process violation. *See Chambers* at 1097.

Without an underlying constitutional violation, 42 U.S.C. § 1983 simply does not authorize municipal liability based on the private actions of an officer. Even if Plaintiffs are able to prove that Officer Hooven acted unlawfully in some manner, it would be an act of private misconduct requiring Plaintiffs to look to a vehicle other than 42 U.S.C. § 1983 to redress their grievances.

For all of these reasons, Count IV of the Complaint against the City should be dismissed.

V.   CONCLUSION

The purpose behind 42 U.S.C. § 1983 is to provide plaintiffs with a vehicle for redressing violations of federal civil rights. Where the purported wrongdoing is not of a constitutional nature or magnitude, plaintiffs must look elsewhere to redress their grievances. For the reasons set forth herein, the Court should grant the City's motion and dismiss all claims against the City.

Respectfully submitted,

**EMILY SMART WOERNER (0089349)**
**CITY SOLICITOR**

*/s Shuva J. Paul*
Shuva J. Paul (0088484)
Katherine C. Baron (0092447)
Assistant City Solicitors
801 Plum Street, Suite 214
Cincinnati, Ohio 45202
(513) 352-4551
shuva.paul@cincinnati-oh.gov
katherine.baron@cincinnati-oh.gov
*Trial Attorneys for Defendant City of Cincinnati*

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed on May **17**, 2024 with the Clerk of Courts via the CM/ECF system. Notice of this filing was sent to all parties by operation of the Court's electronic filing system, and copies were caused to be mailed to all parties not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s Shuva J. Paul*
Shuva J. Paul (0088484)