**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **BRENDON TAYLOR, *et al.*,** | ) | **Case No. 1:24-cv-0204** |
| | ) | |
| **Plaintiffs,** | ) | **Judge: Hon. Susan J. Dlott** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JESSE LEE ANTHONY HOOVEN, *et al.*,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**<u>THE MOTION TO DISMISS OF THE CITY OF CINCINNATI</u>**

The City's Rule 12(b)(6) Motion to Dismiss is a motion for summary judgment in disguise. Throughout its Motion, the City argues that the Complaint lacks sufficient factual detail to withstand a motion to dismiss, while at the same time arguing that the Court should adopt its version of a host of genuinely disputed material facts. The City will have plenty of time to argue that its version of the facts should prevail as a matter of law after discovery. The pleadings state is inappropriate for those arguments. The Court should overrule the City's Motion to Dismiss on this independent basis. Otherwise, Plaintiffs state claims for which relief can be granted under the First and Fourteenth Amendments, including without limitation the City's Monell liability.

## I. RELEVANT FACTUAL ALLEGATIONS

Plaintiffs allege violations of the First and Fourteenth Amendments under 42 U.S.C. §1983 against Officer Hooven and Ms. Paul in their capacities as public officials acting under color of state law, arising from their improper access to, handling of, and dissemination of private and confidential records maintained by JFS related to Mr. Taylor

and his son in Counts I and III. [Doc.1, at ¶¶71-79, and 91-102]. Plaintiffs also allege that Officer Hooven and Ms. Paul conspired to deprive them of their civil rights under 42 U.S.C. §1985(3) in Count VI, [*Id.*, at ¶¶114-17], and various torts arising under Ohio law in Counts VII, VIII, and IX. [*Id.*, at ¶¶118-31].

In Counts II and IV, Plaintiffs allege Monell liability against the City arising out of its policies and customs being the moving force of Officer Hooven's misconduct under color of State law, and their constitutional injuries. [Doc.1, at ¶¶80-90, and 103-05]. For example, Plaintiffs allege out of the gate that the City "adopted, ratified, approved, and endorsed" Officer Hooven's unlawful conduct "in accordance with its policies, procedures, and customs, and as the moving force for the same." [*Id.*, at ¶3]. Plaintiffs allege that Officer Hooven uses the trappings of authority associated with his status as a police officer to exert leverage on Ms. Hooven in their child custody proceedings. [*Id.*, at ¶¶33 and 34].

Plaintiffs allege that Officer Hooven met Ms. Paul in the course of their respective duties as public officials and engaged her to use the Ohio Statewide Automated Child Welfare Information System ("SACWIS") to access JFS records related to Mr. Taylor and his minor son with the hope of using that information against Ms. Hooven in their child custody proceedings, and indeed has tried to use the information he allegedly learned in that capacity. [Doc.1, at ¶¶36-48]. Plaintiffs allege "but for" Officer Hooven's status as a police officer, he wouldn't have been able to persuade Ms. Paul to gather dirt for him. [*Id.*, at ¶¶51-52].

When the Plaintiffs complained about the illegal conduct of Officer Hooven and Ms. Paul, the Internal Investigation Section ("IIS") of the Cincinnati Police Department

("CPD") "investigated" the same and exonerated Officer Hooven at the personal instruction and direction of Chief Theetge, persons and her office, and persons reporting to her office, under CPD policies and customs of inaction, poor training and supervision, and tolerance of the unconstitutional conduct of police officers. [Doc.1, at ¶¶64-69, 81-90, 104-05]. Plaintiffs allege throughout the Complaint, that all of Officer Hooven's misconduct was done in his capacity as a police officer acting under color of State law within the meaning of Section 1983. [*Id.*, at ¶¶56, 72, 98].

## II. LEGAL STANDARD

To withstand the City's Rule 12(b)(6), Motion to Dismiss, the Complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Leta v. Hamilton County Dep't of Job & Family Servs.*, 668 F. Supp. 3d 724, 733 (S.D. Ohio 2023) (Dlott, J.) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). *See also*, *Kovalchuk v. City of Decherd*, 95 F.4th 1035, 1037 (6th Cir. 2024) (same). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Leta*, 668 F. Supp. 3d, at 733 (citing *Iqbal*, 556 U.S., at 678). Thus, the Complaint need only contain "either direct ***or*** inferential allegations respecting all material elements to sustain a recovery under some viable legal theory" (emphasis supplied). *Id.* (citing *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir.

2014)). The Complaint ***doesn't require*** "detailed factual allegations" or "heightened fact pleading of specifics" to comply with *Twombly*. *Leta*, 668 F. Supp. 3d, at 733-34. Rather, the Court "must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations." *Id.*, at 734 (citing *Iqbal*, 556 U.S. at 678-79; and *DiGeronimo Aggregates*, *supra*, at 509).

## III. ARGUMENT

### A. Whether Officer Hooven acted under color of state law is a fact-intensive question inappropriate for resolution under Rule 12(b)(6).

The City applies the wrong legal standard throughout its Motion hoping to persuade the Court to dismiss it from the case without having to put its cards on the table in discovery. The Court needn't look any further than the authorities the City relies on for dismissal that this is true. They're all summary judgment cases. The standard under Rule 56 is whether the party with the burden of proof can identify genuine disputes of material fact for trial ***after*** ample time for discovery, not whether Plaintiffs allege sufficient facts to state a claim for which relief can be granted under Rule 12(b)(6) based on the facts alleged in the Complaint, which must be accepted as true.

Questions of material fact, like whether Officer Hooven was acting under color of State law, "cannot be resolved in a Rule 12(b)(6) posture." *Linthicum v. Johnson*, 1:02-cv-480, 2006 U.S. Dist. LEXIS 33896, **69-70 (S.D. Ohio May 26, 2006) ("Linthicum I") (Dlott, J.). "The inquiry is fact-specific, and the presence of state action is determined on a case-by-case basis." *Linthicum v. Johnson*, No. 1:02-cv-480, 2007 U.S. Dist. LEXIS 118098, at *10 (S.D. Ohio Jan. 18, 2007) ("Linthicum II") (Dlott, J.) (citing *Chapman v.*

*Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003); and *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961)).

Thus, while it's ***possible*** the Plaintiffs might not survive summary judgment after a full opportunity to conduct discovery, that day is not nearly upon us, and "the same cannot be said at the motion-to-dismiss stage, where it is all but impossible for the plaintiff to have secured evidence of misconduct." *Lipman v. Budish*, 974 F.3d 726, 748 fn.11 (6th Cir. 2020). Without the benefit of discovery and with the vast majority of the evidence under the City's control, Plaintiffs' allegations are more than sufficient to survive the City's Motion to Dismiss. *Kovalchuk*, 95 F.4th, at 1046-47 (citing *Lipman*, supra, at 748 fn.11; and *Genaw v. Garage Equip. Supply Co.*, 856 F. App'x 23, 29 (6th Cir. 2021) (reversing district court's order dismissing plaintiff's complaint and noting that the plaintiffs had not been provided the benefit of full discovery)).

The City is welcome to test the sufficiency of the facts gleaned in discovery at the dispositive motions stage. *Coon v. Froehlich*, 556 F. Supp. 115, 118 (S.D. Ohio 1983) (citing *Layne v. Sampley*, 627 F.2d 12, 13 (6th Cir. 1980); and *Stengel*, 522 F.2d, at 441). That time, however, is not now. The City's Motion for Summary Judgment is procedurally improper for the simple reason that it applies the wrong legal standard throughout, and every conclusion is derived from Rule 56 analysis. The Court should therefore overrule the City's Motion to Dismiss on this independent basis.

### B. Plaintiffs more than sufficiently allege that Officer Hooven acted under color for purposes of Rule 12(b)(6).

If the Court isn't inclined to overrule the City's "Motion to Dismiss" based on its failure to apply the correct legal standard, "to survive a motion to dismiss under

Rule 12(b)(6), Plaintiffs must adequately plead (i) that a violation of a federal right took place, (ii) that Officer Hooven acted under color of state law, and (iii) that the City's policy or custom caused that violation to happen. *Bright v. Gallia County,* 753 F.3d 639, 660 (6th Cir. 2014) (citing *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008)). *See also*, *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007) (same).

#### 1. The City doesn't contest that that a violation of a federal right took place; or that the City's policy or custom caused that violation to happen.

"To establish municipal liability pursuant to Section 1983, a plaintiff must allege an unconstitutional action that implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers or a constitutional deprivation[] visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels." *Bright,* 753 F.3d, at 660 (citing *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003); and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Of course, "a municipality cannot be held liable ***solely*** because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory" (emphasis in the original). *Id.* (citing *Monell*, *supra*, at 691).

The City doesn't challenge that Officer Hooven violated either Plaintiffs' rights arising under the First or Fourteenth Amendments. Its silence in this regard is a tacit acknowledgment that Plaintiffs allege both in Counts I and III of the Complaint, sufficient to state a claim for which relief can be granted as to the "constitutional violation" element. The City is estopped from arguing otherwise in its reply. As for policy and custom, the

City declares that the Court needn't reach that issue on the strength of its "under color of state law" argument. [Doc.21, at ##139 and 144]. The City therefore doesn't do any "policy and custom" analysis at all and is estopped from raising it in its reply.

**2. The City's "color of state law" argument is based entirely on disputed questions of material fact and is therefore unavailing at the pleading stage.**

This isn't a case in which Plaintiffs are attempting to attribute the acts of a private individual to the State. There's no genuine dispute of material fact that Officer Hooven is a police officer and thus a public employee. To this end, a public employee generally operates under color of state law "while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Linthicum*, 2006 U.S. Dist. LEXIS 33896, **82-83 (citing *West v. Atkins*, 487 U.S. 42, 51 (1988)). Conduct constituting "state action" for purposes of the Fourteenth Amendment also establishes conduct "under color of state law" for purposes of Section 1983 liability. *Id.* (citing *West*, *supra*, at 49; *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935 (1982); and *Moore*, 890 F.2d at 833).

Ultimately, "[i]t is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law." *Stengel,* 522 F.2d, at 441. As this Court has observed, this is inherently a question of fact:

> What amounts to action under color of state law differs depending on the circumstances. For example, under certain circumstances "flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute between third parties pursuant to a duty imposed by police department regulations" may be sufficient displays of authority to bring the officer's conduct within the color of state law.

*Linthicum*, 2007 U.S. Dist. LEXIS 118098, at **9-10 (citing *Memphis, Tennessee Area Lo., American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 903, 86 Fed. Appx. 137 (6th Cir. 2004)

In this context, the City makes the same arguments in this action that it did in *Linthicum I* with respect to how the term "under color of state law" should be construed. *Linthicum*, 2006 U.S. Dist. LEXIS 33896, at **82-85. The Court held in that case that the City's construction was simply too narrow. *Id.*, at *85. This is because "[i]t is firmly established that a defendant in a Section 1983 suit acts under color of state law when he ***abuses*** the position given to him by the State" (emphasis in the original). *Id.* (citing *West*, 487 U.S. at 49-50). This is exactly what Plaintiffs allege Officer Hooven's conduct amounted to when he took certain adverse actions against them. [Doc.1, at ¶¶54, 75, 98].

"All that is required, for Section 1983 purposes, is that the official has exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Linthicum*, 2006 U.S. Dist. LEXIS 33896, at *85 (citing *West*, 487 U.S., at 49; and *United States v. Classic*, 313 U.S. 299, 326 (1941)). "In other words, Section 1983 is implicated not only where a state actor performs an actual or apparent duty of his office," ***but also where*** "the actor ***could not have behaved as he did without the authority of his office***" (emphasis in the original). *Id.*, at **85-86 (citing *Waters*, 242 F.3d at 359; and *West*, 487 U.S. at 49-50).

Along these lines, Plaintiffs allege that "but for" his position as a police officer and the cloak of trust and authority the State bestowed upon along with it, Officer Hooven never could have gotten near the SACWIC data he coveted. [Doc.1, at ¶52]. While not

dispositive, that Officer Hooven (a) appeared at school and at the children's events armed and in uniformed, (b) pressured teachers, administrators, and neighbors to help him, [*Id.*, at ¶33], and (c) Ohio law considers him to be "always on the clock" under Ohio Revised Code §9.69(B)(1), [*Id.*, at ¶51], are certainly relevant indicia as to whether he was acting under color of State law.

As this Court observed:

> The City has correctly observed that a police officer does not ***necessarily*** act "under color of state law" simply because he acts in uniform or on duty. To the extent that an officer's police uniform, equipment or duty status constitute natural "indicia" of his state authority, however, these elements are certainly ***relevant*** to the question of whether that officer abused his police status or privileges -- and thus acted "under color of state law" -- in violating another's constitutional rights (emphasis in the original).

*Linthicum*, 2006 U.S. Dist. LEXIS 33896, at **87-88 (citing *Waters*, 242 F.3d at 359 (emphasizing state actor's reliance on "indicia of actual or ostensible state authority" in determining whether conduct occurred "under color of state law"). Moreover, "even conduct outside the scope of an officer's ***apparent*** authority may be actionable under Section 1983 so long as the actor could not have behaved as he did without the authority of his office" (emphasis supplied). *Id.*, at *92 (citing *Waters*, 242 F.3d at 359).

### C. Plaintiffs have more than sufficiently pleaded the City's Monell liability for which relief can be granted.

#### 1. Plaintiffs state a claim for which relief can be granted for First Amendment Retaliation.

In opposition to Counts I and III, the City takes issue with more facts alleged in the Complaint, not to claim that they fail to state a claim for which relief can be granted under Rule 12(b)(6), but to declare that Plaintiffs' factual allegations are simply wrong. [Doc.21, at ##140-44]. For example, the question of final decision-making authority and

ratification is ***ostensibly*** a disputed question of material fact. The chain of command doesn't go up much higher than the Chief of Police. The City's reliance on *Morris v. City of Detroit*, 789 Fed. Appx. 516 (6th Cir. 2019), for the contrary position, is again misplaced because it's another summary judgment case.

Still, *Morris* makes clear, that the question of whether Officer Hooven acted under color of State law is fact-intensive even at the summary judgment stage:

> We consider certain factors when deciding whether an officer was acting under color of state law, such as whether the officer flashed a badge, identified himself as a police officer, placed an individual under arrest, intervened in a dispute between third parties pursuant to a duty imposed by police-department regulations, … or used state-issued equipment.

*Morris*, 789 Fed. Appx., at 518. In that light, "[c]ourts must consider the totality of the circumstance in determining whether an officer was acting under color of law at the time of the alleged constitutional violation." *Id.*

Finally, the City takes issue with Plaintiff's allegations that "Officer Hooven told Ms. Paul in no uncertain terms that he was not investigating Mr. Taylor using the law enforcement databases available to him," because there was no legitimate reason for him to do so. [Doc.21, at #142]. This mischaracterizes Plaintiffs' allegations. Plaintiffs allege that Officer Hooven didn't use any law enforcement databases to investigate Mr. Taylor because he knew his purpose was unlawful. [Doc.1, at ¶39].

Plaintiffs haven't alleged that Officer Hooven ***told*** Ms. Paul that he wasn't investigating Mr. Taylor. Plaintiffs allege that Officer Hooven ***was*** investigating Mr. Taylor. Plaintiffs allege that Officer Hooven knew, that if he did so by using law enforcement databases otherwise at his disposal, however, he'd be committing a felony

and could lose his job. [*Id.*, at ¶47]. Therefore, he enlisted Ms. Paul to access the SACWIS database to do what he believed he couldn't do directly. [*Id.*, at ¶40].

**2. Mr. Taylor more than plausibly alleges a violation of his substantive due process rights under the Fourteenth Amendment.**

To state a claim for which relief can be granted under the Fourteenth Amendment, Mr. Taylor must plausibly allege that a state actor either (a) deprived him of a particular constitutional guarantee ***or*** (c) "acted in a manner that 'shocks the conscience.'" *McComas v. Bd. of Educ. Rock Hill Local Sch. Dist.*, No. 1:07-cv-573, 2009 U.S. Dist. LEXIS 147570, at **38-39 (S.D. Ohio Nov. 5, 2009) (Dlott, J.) (citing *Valot v. Southeast Loc. Sch. Dist. Bd. Of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)). *See also*, *Parisi v. Heck*, 666 Fed. Appx. 384, 388-89 (6th Cir. 2016) (same).

In Count III, Plaintiffs allege that Officer Hooven violated his substantive due process right to privacy arising under the Fourteenth Amendment by **(a)** disclosing matters of a personal nature "where the information released was of a sexual, personal, and humiliating nature," the so-called informational right to privacy first articulated in *Whalen,* 429 U.S. 589 (1977);[1] and **(b)** because his conduct in doing so "shocks the conscious." [Doc.1, at 91-102]. More specifically, Mr. Taylor alleges that Officer Hooven violated his informational right to privacy by disseminating JFS records related to sexual abuse Mr. Taylor may have suffered as a child. [Doc.1, at ¶¶46, 47, and 96-98].

---

1 See also, *Jenkins v. Bd. of Educ.*, 463 F. Supp. 2d 747, 758 (S.D. Ohio 2006) (Dlott, J.) (same); *Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (citing *Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998) ("[A]n individual's right to control the nature and extent of information released about that individual" … "has been coined an informational right to privacy.")); and *Parisi v. Heck*, 666 Fed. Appx. 384, 388-89 (6th Cir. 2016) (same).

To survive a motion to dismiss, the Complaint need only contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Chambers v. Sanders*, 63 F.4th 1092, 1096 (6th Cir. 2023) (citing *Ashcroft*, 556 U.S., at 678; and *Twombly*, 550 U.S., at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lipman*, 974 F.3d, at 740 (citing *Ashcroft, supra,* at 678. Mr. Taylor has met this burden.

The City argues, however, that Plaintiffs' allegation in paragraph 85 of the Complaint that it was "deliberately indifferent" to their rights is "conclusory and unsupported by any factual allegation." [Doc.21, at #144]. While "deliberate indifference" is likely relevant to Mr. Taylor's "shocks the conscious" claim, neither that claim nor his "informational right of privacy" claim is ***dependent*** on a showing of deliberate indifference. Regardless, whether the City ***was*** deliberately indifferent is a question of fact. To this end, Plaintiffs allege:

> For its part, the City was deliberately indifferent to the rights of Mr. Taylor and Ms. Hooven as evidenced by CPD's failure to properly supervise Officer Hooven and investigate Mr. Taylor's CCA Complaint when officials with final decision-making authority looked the other way, in particular after they'd already sustained allegations of illegality against Officer Hooven in 2022.

[Doc.1, at ¶85].

Though the City isn't clear why these allegations are conclusory and unsupported by factual allegations, it doesn't argue that ***taken as true,*** the Complaint fails to state a claim for which relief can be granted under Rule 12(b)(6), as it must. Rather, the City argues that the facts alleged in the Complaint ***aren't true***. This is still the wrong legal

standard. For example, the City claims (i) that the IIS investigation didn't "determine[] that Officer Hooven []prompted Ms. Paul to search the SACWIS database," [Doc.21, at #144]; that the IIS investigation determined that Officer Hooven was motivated by his private interests, [*Id.*, at ##144-45]; that the City took "reasonable steps" to investigate Officer Hooven's conduct; and (iv) that the Chief's handwritten notes on the IIS Report demonstrate that the City took appropriate action against Officer Hooven, rather than "exonerating" him. [*Id.*, at ##145-46]. All of the above are material questions of fact.

Finally, the City refers to only paragraph 88 of the Complaint to argue that "Plaintiffs' contention that the City 'ratified' or otherwise approved Officer Hooven's illegal conduct is similarly conclusory and devoid of factual support in the pleadings." [Doc.21, at #145]. After again arguing its version of the facts, the City says that Plaintiffs "ignore the applicable standard for showing a municipality 'ratified' unconstitutional conduct." [*Id.*]. The City relies on another summary judgment case, *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993), for the proposition that "[r]atification of a subordinate's action requires more than acquiescence--it requires affirmative approval of a particular decision made by a subordinate." [Id.].

Therefore, according to the City, "Plaintiffs need to allege facts sufficient to ***prove*** that an official charged with making final policy expressly approved Officer Hooven's actions" (emphasis supplied). [Doc.21, at ##145-46]. Yes, as the party with the burden of proof, Mr. Taylor will need to demonstrate at least a genuine dispute of material fact that the Chief of Police was the official charged with making a final policy decision to exonerate Mr. Taylor. He doesn't, however, have to prove it at the pleading stage.

Regardless, Plaintiffs allege almost verbatim that Chief Theetge is the "official charged with making final policy expressly approved Officer Hooven's actions." *See, e.g.*, [Doc.21, at ¶67, 85, and 86]. This is sufficient under Rule 12(b)(6). If she's ***not*** that official, the City is welcome to explain that to the jury. Ultimately, that Chief Theetge allegedly referred Officer Hooven to intervention doesn't dispose of the issue of ratification, even if true. Rather, the City has highlighted a host of material facts related to ratification that will be explored in discovery. The City will have the chance to test its version of the facts on summary judgment and at trial. Now, however, is not that time.

## CONCLUSION

Due to the foregoing, the Court should overrule the City's Motion to Dismiss under Rule 12(b)(6). The City's Motion is premature and improper at the pleading stage. There will be ample time to address disputed questions of material fact in discovery, on summary judgment, at a trial.

**DATED: June 7, 2024.**

Respectfully submitted,

***/s/ Justin Whittaker***

Justin Whittaker, Esq. (0093212)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
(513) 457-5545
(513) 457-5544 (Fax)
Justin@WhittakerLawFirm.com

**Counsel for
Plaintiffs Brendon Taylor
and Holly Hooven**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing was electronically filed on June 7, 2024, with the Clerk of this Court via the CM/ECF system and served on counsel for the parties via the Court's electronic filing system. A hard copy was served via regular mail to all parties not served by the Court's electronic filing system.

***/s/ Justin Whittaker***
Justin Whittaker, Esq. (0093212)