**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **BRENDON TAYLOR, *et al.*,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**JESSE LEE ANTHONY HOOVEN, *et al.*,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 1:24-cv-0204**<br><br>**Judge: Hon. Susan J. Dlott** |

**PLAINITFFS' REPLY MEMORANDUM**
**IN SUPPORT OF MOTION FOR LEAVE TO SUPPLEMENT MEMORANDUM**
**IN OPPOSITION TO THE CITY OF CINCINNATI'S MOTION TO DISMISS**

The Court should grant Plaintiffs' Motion for Leave to Supplement their Memorandum in Opposition to the City's Motion to Dismiss [Doc.28] because the City doesn't substantively oppose it. Instead, the City argues throughout its Memorandum in Opposition that the Plaintiffs shouldn't be granted leave to file a "sur-reply" *See, e.g.*, [Doc.35, at ##246-47], which they haven't asked to do. That the City has elected to argue against a motion not before the Court is improper.

**1. Plaintiffs seek leave to supplement their Memorandum in Opposition to the City Motion to Dismiss, not to file a "sur-reply."**

As with its Motion to Dismiss, the City is arguing the wrong legal standard. Unlike the movant in *Power Mktg. Direct, Inc. v. Moy*, No. 2:08-cv-826, 2008 U.S. Dist. LEXIS 94997 (S.D. Ohio Nov. 20, 2008), Plaintiffs haven't sought leave to file a "sur-reply." Non-moving parties sometimes seek leave to file "sur-replies" when the moving party makes a new argument or raises a new issue for the first time in its reply. *See, e.g.*, *Luis v. Zang*, No. 1:12-cv-629, 2018 U.S. Dist. LEXIS 53958, at *5 (S.D. Ohio Mar. 30, 2018). In those

circumstances "good cause" may exist under Local Rule 7.3(b) to file a sur-reply. *Id.* That rule doesn't apply here.

Here, Plaintiffs seek leave to supplement their Memorandum in Opposition to the City's Motion to Dismiss, [Doc.28], with material information they only learned about when Ms. Paul filed her Answer and Crossclaim on June 26, 2024 [Doc.27]. Plaintiffs' Motion is analyzed under Local Rule 7.2(a)(2), [Doc.28, at ##199-200], not Local Rule 7.3(b). The Court should also reject the City's contention that Plaintiffs were obliged to indicate whether they had secured the City's permission to seek leave under Local Rule 7.3(b). [Doc.35, at #246]. Local Rule 7.3(b) is irrelevant under these circumstances. Because the City applies the wrong legal standard in opposition, the Court should grant Plaintiffs' Motion as unopposed on this independent basis.

**2. The Memorandum of Understanding is relevant to the fact-intensive question of whether Officer Hooven was acting under color of State law.**

The City argues that the Memorandum of Understanding ("MOU") alleged by Ms. Paul and confirmed by the County Defendants in their Joint Answer isn't "new information." [Doc.35, at #248]. While the existence of the MOU might not be new information to Ms. Paul, the City, or the County Defendants, it is new information to the Plaintiffs. The City also says that it covered Ms. Paul's allegations that Officer Hooven was acting in his personal interest, in its Motion to Dismiss, rather than under color of state law. [Doc.35, at #248-49]. The City is again wrong. Ms. Paul alleges that ***with respect to her***:

> Officer Hooven's False Statements … were made for personal reasons related to ongoing disputes he had with Plaintiff Holly Hooven, ***in*** retaliation for Ms. Paul revealing to Officer Hooven's then-girlfriend that he

> had cheated on her with Ms. Paul, and in an attempt to make Ms. Paul the scapegoat for his own wrongful conduct.

[Doc.27, ¶22, at #193].

According to Ms. Paul, Officer Hooven's "making and publishing of these False Statements was manifestly outside the scope of his employment as a Cincinnati Police Officer, and he made them with malicious purpose, in bad faith, or in a wanton or reckless manner." [[Doc.27, ¶23, at #93]. It's unsurprising that Ms. Paul would make this argument because her claims against Officer Hooven sound in Ohio tort law, particularly the law of defamation. [Doc.27, ¶¶27-36, at ##194-95]. Were she to allege otherwise, Officer Hooven might be immune under Ohio Revised Code §2744.03 – with respect to those claims, only.

Regardless, whatever the facts and circumstances of Ms. Paul's allegations against Officer Hooven for defamation, they have nothing to do with Plaintiffs' claims arising under Section 1983. It's also premature to address any of these issues because Officer Hooven hasn't yet answered the Complaint or the Crossclaim. Though, the County Defendants admit that:

> Certain HCJFS employees are trained on how to properly cooperate with law enforcement agencies as part of their job duties. County Defendants admit that authorized dissemination of information obtained through SACWIS to law enforcement officers who are investigating a report of child abuse and neglect is to remain confidential."

[Doc.34, ¶10, at #235]. The City doesn't deny this material allegation. Ms. Paul admits that "[O]fficer Hooven asked her to access information regarding Mr. Taylor on the Ohio Statewide Automated Child Welfare Information System ('SACWIS')." [Doc.27, ¶40, at #180]. She also alleges that "Officer Hooven served as a Cincinnati Police Officer at all

times relevant to this crossclaim." [*Id.*, ¶6, at #190]. The City doesn't dispute these material allegations either.

Therefore, Ms. Paul's allegations have gone from "plausible" to undisputed with respect to the existence and nature of the MOU. To be fair to the opposing parties, we can't say for sure until that issue is explored in discovery. If Ms. Paul is correct, and the admissions of the County Defendants ring true, the MOU bolsters the conclusion that Officer Hooven was acting under color of State law when he persuaded Ms. Paul to access confidential records for him, because he could have only accessed those records in his capacity as a police officer.

The existence of the MOU strongly suggests that CPD contemplates Officer Hooven's access to those records through Ms. Paul as part of his duties. As alleged by Ms. Paul, that's essentially the entire point of the MOU – for JFS employees and police officers to share information in their capacities as public employees.

Finally, as the City acknowledges in its Motion to Dismiss:

> In signing her approval to the closing of the two charges [against Officer Hooven], Cincinnati Police Chief Teresa A. Theetge indicated that command officers were "to meet with Officer Hooven regarding this investigation" and that the meeting was "to be documented with an ESL." "ESL" stands for "Evaluation Supplement Log" and indicates an entry in the officer's personnel file "which documents personnel work performance, corrective measures, discipline, and interventions to enhance employee effectiveness."

[Doc.21, at #137]. This strongly suggests that CPD considered Officer Hooven to be acting under color of State law when it investigated him. Otherwise, he wouldn't be subject to discipline in the first place, much less referred by Chief Theetge, herself for ESL. Moreover, CPD didn't exonerate Officer Hooven because he was acting in his personal

pursuits, but because ISS determined that the allegations against him weren't true. [Doc.1, at #34]. Indeed, the ISS Report itself states that Officer Hooven engaged Ms. Paul while on duty assisting her with a call for service at District 5. [*Id.*, at ##32-33]. All of the above strongly indicates that Officer Hooven was acting under color of State law from the perspective of CPD.

### 3. The question of whether Officer Hooven was acting under color of State law remains a fact-specific inquiry inappropriate for disposition under Rule 12(b)(6).

The City continues to construe "under color of state law" too narrowly for the same or similar reasons expressed by this Court in *Linthicum v. Johnson*, No. 1:02-cv-480, 2006 U.S. Dist. LEXIS 33896, at *85 (S.D. Ohio May 26, 2006).

> [While, it's] true that a state actor's "private conduct, outside the course or scope of his duties, and unaided by any actual indicia of actual or ostensible state authority," does not arise "under color of state law, … [i]t is firmly established that a defendant in a Section 1983 suit acts under color of state law when he ***abuses*** the position given to him by the State" (emphasis in the original).

*Id.* (citing *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001); and *West v. Atkins*, 487 U.S. 42, 49-50 (1988)).[1]

It therefore follows that "a defendant may act 'under color of state law' either 'while acting in his official capacity ***or*** while exercising his responsibilities pursuant to state law" (emphasis in the original). *Linthicum*, 2006 U.S. Dist. LEXIS 33896, at *85 (citing *West*, 487 U.S., at 50). "All that is required, for Section 1983 purposes, is that the official have exercised power 'possessed by virtue of state law and made possible only because the

[1] *See also*, *Nyce v. Jones*, No. 2:19-cv-13, 2019 U.S. Dist. LEXIS 194922, at *11 (S.D. Ohio Nov. 8, 2019) (citing *West*, 487 U.S., at 48; and *Monroe v. Pape*, 365 U.S. 167, 172 (1961) (same)).

wrongdoer is clothed with the authority of state law.'" *Id.* (citing *West*, 487 U.S., at 49; and *United States v. Classic*, 313 U.S. 299, 326 (1941)). This is precisely what Plaintiffs allege in the Complaint.

"In other words, Section 1983 is implicated not only where a state actor performs 'an actual or apparent duty of his office,' but also where 'the actor ***could not have behaved as he did without the authority of his office***'" (emphasis in the original). *Linthicum*, 2006 U.S. Dist. LEXIS 33896, at **85-86 (citing *Waters*, 242 F.3d, at 359; and *West*, 487 U.S. at 49-50). Thus, that Officer Hooven may have acted in his individual capacity toward Ms. Paul, doesn't impact Plaintiffs' allegations that he abused his position as a police officer acting under color of State law. These are two unrelated sets of claims analyzed under two legal regimes.

That Plaintiffs haven't specifically pleaded the existence of the MOU in their Complaint is immaterial under Rule 12(b)(6) because that question is one of fact that must be borne out in discovery as it would be anyway. The existence of the MOU is another material fact suggesting that Officer Hooven was acting in his official capacity under color of State law. Plaintiffs needn't specifically plead it under Rule 12(b)(6) to advance past the pleading stage. That's what Rule 56 is for after the parties have had the opportunity for full and complete discovery.

The City continues to misrepresent the nature of the allegations in the Complaint, and Plaintiffs' opposition to the Motion to Dismiss. For example, the City says that "Plaintiffs appear to be trying to spin a new variation on their argument that Cincinnati Police Officers are ***always*** acting under color of law because they are 'always on duty'"

(emphasis supplied). [Doc.35, at #249], to justify its Motion to Dismiss. The City knows this isn't true most obviously because it doesn't refer to the Complaint. Similarly, the City says that "Plaintiffs appear still wedded to their erroneous view that a police officer is ***always*** acting under color of law simply by virtue of being a police officer." [Doc.35, at #250]. The City knows this is false, too, and for the same reasons.

The City also knows this because the foundation of Plaintiffs' Memorandum in Opposition is that dismissal under Rule 12(b)(6) is inappropriate because the question of whether Officer Hooven was "acting under color of State law" doesn't turn on subjective allegations but is rather fact specific. *Mackey v. Rising*, No. 20-13408, 2022 U.S. Dist. LEXIS 214622, at *8 (E.D. Mich. Nov. 29, 2022) (citing *Chapman v. Higbee Co*., 319 F.3d 825, 834 (6th Cir. 2003)).[2]

Thus, while it's a question of law for the Court to ultimately say whether or not Officer Hooven ultimately was acting under color of State law, that inquiry is for the dispositive motions stage after the parties have completed discovery into the facts, rather than for disposition under Rule 12(b)(6). Indeed, "[w]hen determining whether a person acted under color of state law, [t]he fact that a police officer is on or off duty, or in or out of uniform is not controlling. It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law." *Morris v. City of Detroit*, 789 Fed. Appx. 516, 518 (6th Cir.

---

[2] *See also*, *Barkovic v. Hogan,* 505 F. App'x 496 (6th Cir. 2012) (whether "unanswered questions of fact regarding the proper characterization of the actions," should be presented to the jury is resolved on summary judgment).

2019) (citing *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975)). Of course it is. Hence the fact-specific inquiry essential to answer the question.

***On summary judgment*** "[w]e consider certain factors when deciding whether an officer was acting under color of state law, such as whether the officer flashed a badge, identified himself as a police officer, placed an individual under arrest, intervened in a dispute between third parties pursuant to a duty imposed by police-department regulations, or used state-issued equipment." *Morris,* 789 Fed. Appx., at 518 (citations omitted). "Courts must consider the totality of the circumstance in determining whether an officer was acting under color of law at the time of the alleged constitutional violation." *Id.*

When courts have analyzed the question of whether a defendant is "acting under color of State law" under Rule 12(b)(6), they've reasoned that when it is alleged that a police officer takes actions "made through the use of one's police officer status," as in the instant case, those allegations are "indicia of acting under the color of state law." *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004). "Therefore, for purposes of … Rule 12(b)(6)," such allegations sufficiently plead that an officer is acting under color of state law. *Id.*, at 903-04.[3]

---

[3] Determining whether a defendant is a state actor is a "necessarily fact-bound inquiry." *Williams v. Summit Cnty.*, No. 5:22-cv-1649, 2023 U.S. Dist. LEXIS 81317, at *7 (N.D. Ohio May 9, 2023) (citing *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 298 (2001); *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982); and *Doe v. Oberlin Coll.*, 60 F.4th 345, 353 (6th Cir. 2023)). "To the extent the Complaint alleged that [Officer Hooven] could not have acted in the same manner without the authority of [his] office, that itself would show state action under controlling precedent." *Id.*, at *15 (citing *West*, 487 U.S. at 49-50; and *Waters v. City of Morristown, TN*, 242 F.3d 353, 359 (6th Cir. 2001)).

On the other hand, the City's Motion would have the Court presume Plaintiffs' allegations are untrue or inaccurate, "but that is not proper in the Rule 12(b)(6) context." *Williams v. Summit Cnty.*, No. 5:22-cv-1649, 2023 U.S. Dist. LEXIS 81317, at *11 (N.D. Ohio May 9, 2023) (citing *Paige v. Coyner*, 614 F.3d 273, 284 (6th Cir. 2010) (holding that plaintiff's allegations of state action sufficed to withstand a motion to dismiss); *cf. Warner v. Amazon.com Servs., LLC*, No. 1:21-cv-1885, 2022 U.S. Dist. LEXIS 115373 (N.D. Ohio June 29, 2022) (dismissing Section 1983 claims where plaintiff failed to allege state action).

As things stand, the City hasn't identified any authority justifying dismissal under Rule 12(b)(6). The undersigned is aware of Rule 12(b)(6) cases in which a private entity is alleged to have acted under color of State law, and therefore the trial court must review the Complaint to determine whether that actor's conduct is "fairly attributable to the state." *See, e.g.*, *Healy v. Planned Parenthood of Greater Ohio*, No. 2:22-cv-2074, 2023 U.S. Dist. LEXIS 57851 (S.D. Ohio Mar. 31, 2023). That's not the case, here and the City doesn't argue otherwise. The undersigned is also aware of cases in which the plaintiff fails to allege that a defendant is acting under color of state law ***at all***, and thus fails to plead a *prima facie* case under Section 1983. *See, e.g.*, *Davison v. City of Lorain*, No. 1:24-cv-00227-PAB, 2024 U.S. Dist. LEXIS 99565 (N.D. Ohio June 5, 2024). Again, this is not the case, here, and the City doesn't allege otherwise.

Finally, if it's the City's position that "a police officer does not ***necessarily*** act 'under color of state law' simply because he acts in uniform or on duty" (emphasis in the original), *Linthicum*, 2006 U.S. Dist. LEXIS 33896, at *87 (citing *Stengel*, 522 F.2d at

441), Plaintiffs' agree. That's a fact-specific question inappropriate for disposition under Rule 12(b)(6). "To the extent that an officer's police uniform, equipment or duty status constitute natural 'indicia' of his state authority, … these elements are certainly ***relevant*** to the question of whether that officer ***abused his police status*** or privileges -- and thus acted 'under color of state law' -- in violating another's constitutional rights" (emphasis in the original). *Id.* (citing *Waters*, 242 F.3d, at 359). Plaintiffs agree with that, too, and this is another fact-specific question.

## CONCLUSION

Ultimately, "the presence of state action is determined on a case-by-case basis." *Manley v. Paramount's Kings Island*, No. 1:06-CV-634, 2007 U.S. Dist. LEXIS 84564, at *15 (S.D. Ohio Nov. 15, 2007) (citing *Chapman*, 319 F.3d, at 834; and *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S. Ct. 856, 6 L. Ed. 2d 45 (1961)). "Though 'it is possible to determine … whether a person acted under color of state law as a matter of law,'" this is not one of those instances because there are "unanswered questions of fact regarding the proper characterization of the actions for the jury to decide." *Id.*, at **15-16 (citing *Layne v. Sampley*, 627 F.2d 12, 13 (6th Cir. 1980)).

Thus, the Court should grant Plaintiffs leave to supplement their Memorandum in Opposition to the City's Motion to Dismiss to include the existence of the Memorandum of Understanding as factual support for the conclusion that Officer Hooven was acting under state law as alleged in the Complaint. The Court should ultimately overrule the City's Motion to Dismiss because Plaintiffs have more than sufficiently pleaded a claim for which relief can be granted against the City for Monell liability.

**DATED: July 30, 2024.**

Respectfully submitted,

***/s/ Justin Whittaker***

Justin Whittaker, Esq. (0093212)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
(513) 457-5545
(513) 457-5544 (Fax)
Justin@WhittakerLawFirm.com

**Counsel for**
**Plaintiffs Brendon Taylor**
**and Holly Hooven**

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing was electronically filed on **July 30, 2024**, with the Clerk of this Court via the CM/ECF system and served on counsel for the parties via the Court's electronic filing system. A hard copy was served via regular mail to all parties not served by the Court's electronic filing system.

***/s/ Justin Whittaker***
Justin Whittaker, Esq. (0093212)