**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **Brendon Taylor, et al.,** | : | **Case No. 1:24cv204** |
| **Plaintiffs,** | : | **Judge Susan J. Dlott** |
| **v.** | : | **DEFENDANT CITY OF CINCINNATI'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |
| **Jesse Lee Anthony Hooven, et al.,** | : | |
| **Defendants.** | : | |

---

Upon the attached memorandum and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant City of Cincinnati moves to dismiss Plaintiffs' Amended Complaint (ECF No. 55) for failure to state a claim upon which relief can be granted. The Court should dismiss Plaintiffs' claims against the City as a matter of law.

Respectfully submitted,

**EMILY SMART WOERNER (0089349)**
**CITY SOLICITOR**

*<u>/s Shuva J. Paul</u>*
Shuva J. Paul (0088484)
Katherine C. Baron (0092447)
Assistant City Solicitors
801 Plum Street, Suite 214
Cincinnati, Ohio 45202
(513) 352-4551
shuva.paul@cincinnati-oh.gov
katherine.baron@cincinnati-oh.gov
*Trial Attorneys for Defendant City of Cincinnati*

## MEMORANDUM IN SUPPORT

### I. SUMMARY

Upon reviewing Plaintiffs' Amended Complaint (ECF No. 55), the City incorporates herein the arguments set forth in its memoranda in support of its motion to dismiss filed May 17, 2024. (ECF No. 21, 26). Plaintiffs have not cured their failure to state a claim against the City.

This case is a manifestation of an ongoing dispute between ex-spouses, one of whom happens to be a Cincinnati police officer. The case illustrates the long-standing principle that courts should dismiss municipal liability claims brought pursuant to 42 U.S.C. § 1983 when a plaintiff's allegations show, as they do here, a city employee acting purely in service of his private interests rather than under color of state law. *See Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975) ("Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983.").

Plaintiffs Brendon Taylor and Holly Hooven, a Kentucky couple, bring this action pursuant to 42 U.S.C. § 1983. They seek damages arising out of the unauthorized release of confidential information from a database used by Ohio's county public child service agencies. Defendant Madison Paul, a Hamilton County employee with access to the database, allegedly disclosed protected information about Mr. Taylor to Ms. Hooven's ex-husband, Defendant Jesse Hooven, a Cincinnati police officer, to aid Officer Hooven in the Hoovens' child custody dispute.[1] Plaintiffs also seek judgment against Hamilton County and the City of Cincinnati ("City"). Plaintiffs allege the City was deliberately indifferent to Plaintiffs' constitutional rights and maintained policies, procedures, and customs that violated Plaintiffs' First Amendment rights to associate with each other. Plaintiffs also allege the City violated Mr. Taylor's

[1] The use of "Officer" in referring to Defendant Jesse Hooven is solely to clearly distinguish between the Hoovens. The City does not represent Officer Hooven in this action as his actions were personal and private in nature, in furtherance of no City purpose, and in connection with no City investigation whatsoever.

substantive due process rights under the Fourteenth Amendment. The Amended Complaint asserts the same nine causes of action asserted in the Initial Complaint, with Counts II and IV being the causes of action Plaintiffs assert against the City.

In amending their complaint, Plaintiffs deleted paragraphs referencing the dating relationship between Officer Hooven and the county employee Madison Paul during the time of the alleged disclosure of protected information. However, they continue to rely upon the same exhibits attached to their Initial Complaint, which reference a dating relationship between Ms. Paul and Officer Hooven during the time they discussed his personal child custody concerns and which describe their mutual understanding that there was no City investigation into Mr. Taylor. Whether a dating relationship actually existed between them is irrelevant because Plaintiffs continue to refrain from including in their pleadings any facts whatsoever alleging that Officer Hooven purported to seek the protected information pursuant to any City law enforcement investigation. Their failure to allege such facts is fatal to their municipal liability claims. *See Lindke v. Freed*, 601 U.S. 187, 189 (2024) ("For [complained-of] activity to constitute state action, an official must not only have state authority, he must also purport to use it.).

Plaintiffs try to circumvent this fatal defect by acting as if they have discovered newly relevant evidence: they attach a copy of a memorandum of understanding ("MOU") between the City and the County addressing the sharing of otherwise protected information to aid in law enforcement investigations conducted pursuant to various Ohio statutes. In so doing, they ask the Court to speculate impermissibly that the MOU somehow demonstrates a municipal policy encouraging County employees to share with City police officers protected information for unauthorized purposes as well as authorized ones, e.g., to help officers in their most personal and private disputes—here, a child custody battle in the midst of a contentious divorce proceeding.

That is the unreasonable inference Plaintiffs want this Court to draw from the fact of the MOU's existence. As set forth in the City's previously filed motion to dismiss, Plaintiffs need to *plausibly* allege a municipal liability claim. It defies common sense to suggest that when a municipality and a county share information to facilitate each other's governmental business pursuant to an agreement, that those agreements, despite their clear wording, authorize the sharing of information to help its employees gain leverage in their personal, private pursuits.

Plaintiffs' Amended Complaint reveals their purpose as dilatory at best. It continues to refer to the same investigative reports they attached as exhibits to their Initial Complaint, reports that show that Officer Hooven and Madison Paul both were acting with the understanding that Officer Hooven was furthering no City purpose—*that there was no City investigation into Mr. Taylor or Ms. Hooven.* (Am. Compl., ¶ 59, 62, PageID 412). The Court need look only to the screenshots of the texts attributed to Officer Hooven that Plaintiffs set forth in their Amended Complaint to confirm the purely private nature of his conduct.

Plaintiffs' Amended Complaint fails to allege facts necessary to survive the City's motion to dismiss. Plaintiffs allege facts insufficient to show he acted under color of state law, as they must do to advance their municipal liability claims under 42 U.S.C. § 1983. The Court should grant the City's Rule 12(b)(6) motion to dismiss as a matter of law.

## II. STATEMENT OF FACTS

### A. The Request for Damaging Information to Aid a Child Custody Dispute

In April 2023, Defendant Madison Paul was a supervisor at the Hamilton County Department of Jobs and Family Services ("JFS"). (Am. Compl., ECF No. 55, ¶ 11, 13, 25).[2] During that time, Ms. Paul was also in a personal dating relationship with Officer Hooven, who

[2] This section draws from allegations contained in the pleadings, reflecting the Court's obligation on a motion to dismiss to accept as true all well-pleaded allegations and to draw all reasonable inferences in favor of the plaintiff. This factual summary is intended to assist the Court and does not concede the truth of any of Plaintiffs' allegations.

she had met previously when he responded to a JFS call for service. (Plaintiffs' Exh. 1, ECF No. 1, PageID 31; Am. Compl., ECF No. 55, ¶ 51, PageID 409). Officer Hooven let Ms. Paul know of his concerns about Mr. Taylor's presence around his children and sought her help in obtaining information that would help him personally, rather than to aid in any law enforcement investigation. (Plaintiffs' Exh. 1, ECF No. 1, PageID 31). Officer Hooven's conduct, which was aimed at "directly and indirectly interfering in [Plaintiffs'] private and consensual intimate relationship," was driven by his conflict with his ex-wife "regarding the custody of their minor children." (Am. Compl., ECF No. 55, ¶ 31, PageID 404). On duty and off, whether he was in uniform or not, Officer Hooven spoke of "his quarrels with Holly related to child custody." (Id., ¶ 32, PageID 404).

Ms. Paul's position gave her access to confidential records contained in the Ohio Statewide Automated Child Welfare Information System ("SACWIS"), access that authorized her to cooperate with law enforcement agencies like the Cincinnati Police Department pursuant to an MOU between the County and the City. (Id., ¶ 44, 45, PageID 408). Ms. Paul searched SACWIS for records related to Mr. Taylor and disclosed what she found to Officer Hooven, who then used that information to text Ms. Hooven his concerns about their child custody arrangement. (Id., ¶ 55-56, PageID 410-411). Mr. Taylor thereafter filed a pair of administrative complaints, one with JFS against Ms. Paul, and one with the Cincinnati Civilian Complaint Authority ("CCA") alleging Officer Hooven had "used his official capacity as a police officer to obtain information about his juvenile history with JFS." (Id., ¶ 58-59, PageID 412).

**B. The CCA and IIS Investigations**

CCA conducted an investigation and issued a report in September 2023. (Plaintiffs' Exh. 2, ECF No. 1, PageID 35-38). CCA confirmed the existence of a "consensual personal

relationship" between Ms. Paul and Officer Hooven at the time of the unauthorized disclosures. (Id., PageID 36-37). CCA also determined it lacked evidence to find that Officer Hooven intentionally sought the improper accessing of Mr. Taylor's confidential records. (Id., PageID 36). However, CCA found that Officer Hooven, by further disclosing the improperly accessed information to his ex-wife "instead of preventing a further spillage of said information," exhibited "poor judgment" and that his actions "were not within CPD policy, procedure, or training." (Id.). CCA sustained the allegation of misconduct. (Id., PageID 37).

CCA also referred the matter to the Cincinnati Police Department's ("CPD") Internal Investigations Section ("IIS") for further inquiry. (Am. Compl., ECF No. 55, ¶ 61, PageID 412). The IIS review addressed two separate potential violations and issued a report in June 2023, a copy of which Plaintiffs attached to their pleadings. (Plaintiffs' Exh. 1, ECF No. 1, PageID 29-34). On the first charge, Unethical Conduct, IIS, "was unable to determine who [between Ms. Paul and Officer Hooven] prompted the request for restricted information" and recommended a finding of "Not Sustained" on this charge. (Id., PageID 34).

In its investigation, IIS confirmed the existence of "a romantic relationship" between Ms. Paul and Officer Hooven at the time of the disclosure of the restricted information, and also determined that Ms. Paul had "utilized her access to [SACWIS] to acquire information about Mr. Taylor as a personal favor to Officer Hooven." (Id., PageID 33-34). IIS further found that Ms. Paul "was aware Officer Hooven was receiving the information for personal reasons and not for legitimate law enforcement reasons." (Id., PageID 33).

On the second charge, Improper Use of a Law Enforcement Database, IIS checked Regional Crime Information Center ("RCIC") data and confirmed what Officer Hooven had told them, that he "did not query Mr. Taylor in a law enforcement database." (Id., PageID 32-33). IIS

further determined that "[n]o law enforcement officers with RCIC access have queried Mr. Taylor in the previous year using a law enforcement database on the RCIC network." (Id., PageID 33). On this charge, IIS recommended a finding of "Exonerated." (Id., PageID 34).

In signing her approval to the closing of the two charges, Cincinnati Police Chief Teresa A. Theetge indicated that command officers were "to meet with Officer Hooven regarding this investigation" and that the meeting was "to be documented with an ESL." (Id., PageID 29). "ESL" stands for "Evaluation Supplement Log" and indicates an entry in the officer's personnel file "which documents personnel work performance, corrective measures, discipline, and interventions to enhance employee effectiveness." (CPD Procedure Manual, Chapter 15.115 - Corrective/Disciplinary Process and Documentation, available at https://www.cincinnati-oh.gov/police/department-references/police-department-procedure-manual/15115/).

**C. Plaintiffs' Claims**

The nine causes of action Plaintiffs assert in their Amended Complaint are the same nine they asserted initially. (Am. Compl., ECF No. 55, PageID 415-26). Of those nine, only Counts II and IV are claims brought against the City.[3] Count II seeks to impose municipal liability upon the City of Cincinnati for violations of Plaintiffs' First Amendment free association rights. Count IV alleges that the City violated Mr. Taylor's right to privacy under the Fourteenth Amendment. Additionally, although not a claim *directly* against the City, Plaintiffs contend in Count I that Officer Hooven acted "under color of state law" to retaliate against them in violation of their First Amendment rights to freely associate with each other.

[3] Count I alleges that Officer Hooven acted under color of state law to retaliate against Plaintiffs in violation of their First Amendment rights to freely associate with each other. Count III alleges that Officer Hooven and Ms. Paul violated Mr. Taylor's fundamental right to privacy under the Fourteenth Amendment. Count V seeks to impose liability upon Ms. Paul's County employers for violating Mr. Taylor's Fourteenth Amendment rights. Count VI alleges Officer and Ms. Paul conspired to deprive Plaintiffs of their civil rights. Plaintiffs' state claims (Counts VII, VIII, and IX) allege the intentional infliction of emotional distress, wrongful intrusion, and abuse of process.

## III. STANDARD OF REVIEW

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 557 (internal citations omitted).

In ruling on a motion to dismiss, a court can consider: (1) any documents attached, incorporated by, or referred to in the pleadings; (2) documents attached to the motion to dismiss that are referred to in the complaint and are central to the plaintiff's allegations, even if not explicitly incorporated by reference; (3) public records; and (4) matters of which the court may take judicial notice. *See New Eng. Health Care Emples. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999); *Whittiker v. Deutsche Bank Nat'l Trust Co*., 605 F. Supp. 2d 914, 924 (6th Cir. 2009); see also Fed. R. Civ. P. 10(c). "This includes public records and government documents available from reliable sources on the Internet." *Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007) (citations omitted).

## IV. ARGUMENT

Whether Officer Hooven acted under color of law is a legal question, not a factual one. *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002). A claim brought under 42 U.S.C. § 1983 against a government entity cannot survive a motion to dismiss if the plaintiff fails to *plausibly* allege facts, not conclusory statements, showing that an individual acted on the government's behalf, i.e., that the individual acted under color of state law. *See Powers v.*

*Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007). As set forth below, Plaintiffs do the exact opposite of what they needed to do: they plead facts showing that Officer Hooven acted purely in service of his own private pursuits with no City interest at stake. The MOU Plaintiffs attach is irrelevant because it applies to official business, not to employees' personal matters, and Plaintiffs do not even allege that Officer Hooven presented his request for confidential information about Mr. Taylor as anything other than a reflection of his personal dispute with his ex-wife over their children's custody. Accordingly, without a *constitutional* violation presented here, Plaintiffs cannot proceed under 42 U.S.C. § 1983 to the question of whether the City engaged in a policy or custom that was the moving force behind the alleged deprivation of Plaintiffs' rights. Plaintiffs' claims against the City should be dismissed as a matter of law for failure to state a claim.

### A. The City Has No Monell Liability for Plaintiffs' First Amendment Claim Under 42 U.S.C. § 1983

Plaintiffs contend that the City of Cincinnati should be held liable because it failed to properly train and supervise Officer Hooven, and that by "exonerating" him, it ratified unconstitutional conduct on his part. Plaintiffs also claim the City has an policy or custom of ratifying illegal behavior by officers and was deliberately indifferent to Plaintiffs' rights. (Am. Compl., ECF No. 55, ¶ 88-95, 110-112). Plaintiffs fail to allege the facts necessary to advance their *Monell* claim past the pleadings stage.

It is axiomatic that a municipality may not be sued under 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). In other words, a municipality cannot be held liable for the constitutional torts of its employees on a *respondeat superior* theory. A plaintiff must also allege that the municipality "engaged in a 'policy or custom' that was the 'moving force' behind the deprivation

of the plaintiff's rights." *Powers*, 501 F.3d at 607 (quoting *Monell* at 694). But a plaintiff first must plead facts that, if proven, would show a constitutional violation. This Court has repeatedly recognized that "[t]here can be no liability under Monell without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).

A two-part test determines whether a municipality is liable for a violation under 42 U.S.C. § 1983. *Powers* at 606-07. First, plaintiffs must show that they suffered a deprivation of a constitutional right. If an underlying constitutional violation exists, plaintiffs then must show that the alleged deprivation occurred at the hands of a person acting under color of state law. *Id*.

Plaintiffs can satisfy neither part of this test. Most apparent on the face of their complaint is their inability to allege facts sufficient to show that Officer Hooven acted under color of law. They allege that when Officer Hooven appeared at his children's schools and extracurricular events and vented about his ex-wife and her fiancé Mr. Taylor, he was "armed and in uniform." (Am. Compl., ECF No. 55, ¶ 32, PageID 404). That is insufficient to show he acted under color of law. As this Court has recognized time and again:

> [t]he fact that a police officer is on or off duty, or in or out of uniform is not controlling. 'It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law.

*Stengel*, 522 F.2d at 441. *see also Lindke v. Freed*, 601 U.S. 187, 188 (2024) (noting that "[t]he distinction between private conduct and state action turns on substance, not labels").

The key consideration is "the nature of the act performed." *Id*. What was the nature of Officer Hooven's conduct at his children's schools? Plaintiffs aver that Officer Hooven vented about "his quarrels with [his ex-wife] Holly related to child custody" and his feelings of animosity towards his ex-wife's fiancé Mr. Taylor, wanting listeners to support him in his quest to gain the upper hand in his child custody proceedings and to be his eyes and ears on Mr.

Taylor's interactions with his children. (Am. Compl., ECF No. 55, ¶ 32-33, PageID 404). In other words, Plaintiffs allege facts clearly establishing that Officer Hooven's acts were private in nature, in service of no City interest, and thus not attributable to the City. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982) ("Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.").

Plaintiffs cite to Section 9.69(B)(1) of the Ohio Revised Code for their contention that a police officer is "always on duty" under Ohio state law. (Am. Compl., ECF No. 55, ¶ 75, PageID 415). Insofar as Plaintiffs are alleging that state law demands the conclusion that a police officer is always acting under color of law, that suggestion plainly leads to absurd conclusions. Under Plaintiffs' logic, an off-duty officer who enters a bank in his police uniform and robs it to pay off his personal debts would be acting under color of state law. So would an on-duty officer. What Plaintiffs fail to consider is that neither the wearing of a uniform nor R.C. 9.69's "always on duty" language controls whether a person has acted under color of state law for purposes of liability under 42 U.S.C. § 1983.

The Court is familiar with disposing of municipal liability claims lacking the requisite factual support showing state action. For example, in *Morris v. City of Detroit*, 789 Fed. Appx. 516 (6th Cir. 2019), the Court affirmed the lower court's dismissal of Fourth and Fourteenth Amendment claims against a police officer who, while on duty, went to the plaintiff's home to try to collect on a personal debt by one of them. A physical altercation ensued. The officer drew her department-issued firearm and fired a shot that missed the plaintiff. The officer was wearing her police badge and had her department-issued handcuffs with her. The Court agreed that the officer "did not manifest the requisite showing of state-granted authority to act under color of law." *Morris* at 518. Her "sole purpose" was "to collect a personal debt of $300." *Id*. In

affirming the dismissal of the federal civil rights claims, this Court noted that the officer "did not purport to be conducting police-related business." *Id*.

Here, the same analysis applies under which the Court should conclude that Officer Hooven did not manifest the requisite showing of state-granted authority to act under color of law. If the officer in *Morris* was not acting under color of law despite being in uniform and using her firearm to collect a personal debt, then Officer Hooven surely was not acting under color of law when he vented to others in uniform about his concerns about Mr. Taylor and tried to enlist their support to help him in his child custody dispute. Plaintiffs' pleadings are devoid of any factual allegations whatsoever showing that Officer Hooven took any action that was in furtherance of City business or of any official duty required by or requested by the City. Consequently, the City cannot be held liable for Officer Hooven's conduct as that conduct was private in nature and not under color of law.

An individual acts "under color of law" when exercising "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–318 (1981). Here, Officer Hooven did not resort to using his authority as a police officer to compel any disclosures. Plaintiffs' pleadings show the exact *opposite*—that during the time they were dating, Officer Hooven told Madison Paul that there was *no* law enforcement investigation and that his sole interest in Mr. Taylor was *personal* and driven by a child custody dispute he was having with his ex-wife. (Plaintiffs' Exh. 1, ECF No. 1, PageID 31). In other words, Officer Hooven through his words and actions told Ms. Paul in layperson's terms that he was *not* acting under color of law. Plaintiffs cannot now run from their alleged initially about the dating relationship that led to the purported disclosures. Their own exhibit states that Ms. Paul told IIS that she had "utilized her access to [SACWIS] to

acquire information about Mr. Taylor *as a personal favor to Officer Hooven*." (Id., PageID 33-34) (emphasis added).

In addition, even if there had never been a dating relationship between Officer Hooven and Madison Paul illuminating the context in which the purported disclosures of confidential information were made, Plaintiffs still must allege facts showing that Officer Hooven purported to be entitled to the disclosures by virtue of his authority as a police officer. The Supreme Court recently made this requirement abundantly clear in a case involving a Port Huron, Michigan city manager who was sued under 42 U.S.C. § 1983 over actions he took to keep the plaintiff from commenting on his Facebook page.

> For social-media activity to constitute state action, an official must not only have state authority, he must also purport to use it. If the official does not speak in furtherance of his official responsibilities, he speaks with his own voice.

*Lindke*, 601 U.S. at 189 (remanding for further analysis consistent with its opinion).

Plaintiffs wisely steer clear of alleging facts that Officer Hooven purported to be using his authority. They cannot in good faith allege he purported to be acting on behalf of the City because their collection of the facts prior to commencing their suit shows Officer Hooven purporting *not* to be acting on the City's behalf. Trimming those facts from the body of their Amended Complaint simply forestalls the conclusion warranted here: Officer Hooven spoke "with his own voice," not the City's voice, when he sought information damaging to Mr. Taylor to give him leverage in his personal child custody dispute with Ms. Hooven. *See Lindke* at 189. Plaintiffs therefore fail to state a claim against the City.

A "complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citation omitted). "Conclusory allegations

or legal conclusions masquerading as factual allegations will not suffice." *Id*. Plaintiffs allege facts showing that Officer Hooven was telling Ms. Paul that he was *not* acting under color of law; that there was *no* City law enforcement investigation into Mr. Taylor; that he was driven by *personal* animosity towards Mr. Taylor and by his *private* child custody dispute; that Ms. Paul acted out of *personal* loyalty to Officer Hooven—and Plaintiffs then make the conclusory allegation that Officer Hooven was acting under color of law. Plaintiffs' own pleadings call for concluding just the opposite. For all of the reasons set forth above, Count II of the Complaint against the City should be dismissed.

### B. The City Has No Monell Liability for Plaintiff Brendon Taylor's Fourteenth Amendment Claim Under 42 U.S.C. § 1983

As set forth above, there is no need to reach the "policy or custom" part of the municipal liability analysis because no plausible reading of the complaint supports the inference that Officer Hooven acted under color of state law in his bid for leverage in his private child custody dispute. Plaintiffs' contention that the City violated Mr. Taylor's Fourteenth Amendment substantive due process guarantees thus does not help them advance beyond the pleadings stage. In addition, as this Court has noted, the "Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Chambers v. Sanders*, 63 F.4th 1092, 1097 (6th Cir. 2023); *see also Warren v. City of Athens*, 411 F.3d 697, 707 (6th Cir. 2005) ("To succeed on a substantive due-process claim, [a plaintiff] must show that an arbitrary and capricious government action deprived [him] of a constitutionally protected interest.") (internal citations and quotations omitted). Plaintiffs allege no facts here that plausibly support such a finding.

Plaintiffs contend that the City "was deliberately indifferent" to their constitutional rights, but that contention is conclusory and unsupported by any factual allegation. They attach to their

pleadings proof that two separate formal investigations followed from Mr. Taylor's administrative complaints, with *neither* investigation determining that Officer Hooven had prompted Ms. Paul to search the SACWIS database. (Plaintiffs' Exh. 1 and 2, ECF No. 1, PageID 33-34, 36). *Both* investigations confirmed that Officer Hooven's actions were motivated by his own private desires to gain leverage in his child custody dispute, and that Ms. Paul acted out of personal loyalty or sympathy when she shared confidential information about Mr. Taylor with Officer Hooven. (Id.) Rather than take Officer Hooven's word for it, IIS confirmed through their own investigatory efforts that no law enforcement official had used a law enforcement database to query Mr. Taylor's protected records. (Plaintiffs' Exh. 1, ECF No. 1, PageID 33). The City thus took reasonable steps, not arbitrary or capricious ones, to investigate whether there had been any misconduct under color of law and observed facts showing that there had been no conduct at all taken under color of law.

Plaintiffs' contention that the City "ratified" or otherwise approved Officer Hooven's illegal conduct is similarly conclusory and devoid of factual support in the pleadings. For example, Plaintiffs make the conclusory allegation that the City's "policies, procedures, and customs were the motivating force behind Officer Hooven's actions." (Am. Compl., ECF No. 55, ¶ 93, PageID 420). Not only do Plaintiffs mischaracterize the "exonerated" recommendation—it was made with respect to the charge concerning whether Officer Hooven had accessed a law enforcement database (which even Plaintiffs do not allege he did)—but they ignore the applicable standard for showing a municipality "ratified" unconstitutional conduct. As this Court has noted, "[r]atification of a subordinate's action requires more than acquiescence--it requires affirmative approval of a particular decision made by a subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649, 656 (6th Cir. 1993). Putting aside for a moment Plaintiffs' failure to

allege facts showing Officer Hooven acted under color of state law, Plaintiffs need to allege facts sufficient to prove that an official charged with making final policy *expressly approved* Officer Hooven's actions. *See id.* They do not. In fact, the Police Chief's handwritten notation calling for supervisory follow-up demonstrates the opposite of what Plaintiffs allege. (Plaintiffs' Exh. 1, ECF No. 1, PageID 29).

Tying one's hopes for judicial relief to the Fourteenth Amendment is, as this Court has put it, "a tough test." *Chambers*, 63 F.4th at 1096 (quoting *Golf Vill. N., LLC v. City of Powell*, 42 F.4th 593, 601 (6th Cir. 2022)). Even assuming that Plaintiffs have identified a protected liberty or property interest, they have not identified any City employee or official acting under color of state law who intruded upon that right with the culpability required to state a due process violation. *See Chambers* at 1097.

Without an underlying constitutional violation, 42 U.S.C. § 1983 simply does not authorize municipal liability based on the private actions of an officer. Even if Plaintiffs are able to prove that Officer Hooven acted unlawfully in some manner, it would be an act of private misconduct requiring Plaintiffs to look to a vehicle other than 42 U.S.C. § 1983 to redress their grievances. For all of the reasons set forth above, Count IV of the Complaint against the City should be dismissed.

## V. CONCLUSION

The purpose behind 42 U.S.C. § 1983 is to provide plaintiffs with a vehicle for redressing violations of federal civil rights. Where the purported wrongdoing is not of a constitutional nature or magnitude, plaintiffs must look elsewhere to redress their grievances. For the reasons set forth herein, the Court should grant the City's motion and dismiss all claims against the City.

Respectfully submitted,

**EMILY SMART WOERNER (0089349)**
**CITY SOLICITOR**

*/s Shuva J. Paul*
Shuva J. Paul (0088484)
Katherine C. Baron (0092447)
Assistant City Solicitors
801 Plum Street, Suite 214
Cincinnati, Ohio 45202
(513) 352-4551
shuva.paul@cincinnati-oh.gov
katherine.baron@cincinnati-oh.gov
*Trial Attorneys for Defendant City of Cincinnati*

**CERTIFICATE OF SERVICE**

I certify that a true and accurate copy of the foregoing document was filed on September **13**, 2024 with the Clerk of Courts via the CM/ECF system. Notice of this filing was sent to all parties by operation of the Court's electronic filing system, and copies were caused to be mailed to all parties not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s Shuva J. Paul*
Shuva J. Paul (0088484)