```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF OHIO
 2                         WESTERN DIVISION
                            -   -   -
 3   BRENDON TAYLOR, et al.,      : CASE NO. 1:24-cv-0204
                                  :
 4            Plaintiffs,         :
           vs.                    : ORAL ARGUMENT
 5                                :
     JESSE LEE ANTHONY HOOVEN, et : 26th of August, 2024
 6   al.,                         : 10:44 a.m.
                                  :
 7            Defendants.
                            -   -   -
 8            TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE SUSAN J. DLOTT, JUDGE
 9                          -   -   -

10   APPEARANCES:

11   For the Plaintiffs:
                        Justin Whittaker, Esq.
12                      Whittaker Law, LLC
                        2055 Reading Road, Suite 260
13                      Cincinnati, Ohio 45202

14   For the Defendant, The City of Cincinnati:
                        Shuva J. Paul, Esq.
15                      Katherine Clarke Baron, Esq.
                        City of Cincinnati, Law Division
16                      801 Plum Street, Room 214
                        Cincinnati, Ohio 45202
17
     For the Defendants, The Hamilton County Board of County
18   Commissioners and The Hamilton County Department of Jobs and
     Family Services:
19                      Michael J. Friedmann, Esq.
                        Kathleen Caroline Fischer, Esq.
20                      Hamilton County Prosecutor's Office
                        230 East 9th Street, Suite 4000
21                      Cincinnati, Ohio 45202

22   Law Clerk:        Margaret Fechtel, Esq.

23   Courtroom Deputy:  William Miller

24   Court Reporter:    Lisa Conley Yungblut, RDR, RMR, CRR, CRC
                        United States District Court
25                      100 East Fifth Street
                        Cincinnati, Ohio 45202
```

**PROCEEDINGS**

1

2          (Proceedings held in open court at 10:44 a.m.)

3          THE DEPUTY:  All rise.  This court is now in

4    session pursuant to the recess, The Honorable Judge Susan J.

5    Dlott presiding.  Please be seated.  United States -- or

6    *Brendon Taylor versus Jesse Lee Anthony Hooven, et al*, Case

7    No. 24-cv-204.

8          THE COURT:  Good morning to everyone.  Let me ask

9    counsel to enter their appearances, and we'll start with Mr.

10   Whittaker.

11         MR. WHITTAKER:  Yes.  Good morning, Your Honor.

12   Justin Whittaker for the plaintiffs, Holly Hooven and

13   Brendon Taylor.

14         THE COURT:  Thank you.

15      City of Cincinnati, who's sitting at which table?

16         MR. PAUL:  Good morning, Your Honor.  Shuva Paul

17   for the City of Cincinnati here.

18         THE COURT:  I'm sorry, what is your name?

19         MR. PAUL:  Shuva Paul.  "Paul" is the last name.

20         THE COURT:  Oh, it's your last name?

21         MR. PAUL:  Yeah, yeah.

22         THE COURT:  Okay.  What's your first name?

23         MR. PAUL:  Shuva.

24         THE COURT:  Oh, okay.  All right.  I have got it

25   backwards here on this.

```
1            THE DEPUTY:  I have it backwards.

2            MR. PAUL:  Wouldn't be the first time.  If I had a

3      nickel for every time.

4            THE COURT:  How long have you been with the City?

5            MR. PAUL:  Since 2012.

6            THE COURT:  Surprised I've never seen you before.

7         Ms. Baron?

8            MS. BARON:  Yes, Your Honor, for the City.

9            THE COURT:  Good morning.

10            MS. BARON:  Good morning.

11            MR. FRIEDMANN:  Michael Friedmann for Hamilton

12      County.

13            MS. FISCHER:  Kathleen Fischer for Hamilton County.

14            THE COURT:  Okay.  We have the second generation of

15      Friedmanns here too.  I know I've been on the bench too long

16      when I'm getting people's kids.

17         All right.  We're here today in Brendon Taylor versus

18      Jesse Lee Anthony Hooven, and, first, I want to take care of

19      some preliminary things.  Plaintiffs have moved the clerk

20      for -- clerk of court for an entry of default.  Officer

21      Hooven's attorney, let's see, his attorney entered -- his

22      attorney entered an appearance and he's moved for dismissal

23      of insufficient service of process.

24            MR. WHITTAKER:  Yes, Your Honor.  They moved for

25      dismissal after the clerk calculated their answer time for
```

1    August 22nd, and then the motion itself, however, doesn't

2    actually address the service date.  So we have a couple of

3    weeks to respond, but we're going to respond this week.  I

4    would expect that they would withdraw the motion once

5    they've maybe looked at the docket, but we're going to

6    respond this week to that motion.

7         THE COURT:  Who filed that, Mr. Gottesman?

8         MR. WHITTAKER:  Mr. Gottesman.

9         THE COURT:  All right.  We're not going to play

10   Mickey Mouse here.  Let's see.  Officer Hooven works for the

11   City.  I want you to order him to your office to be served.

12   How are you going to do this?

13        MR. WHITTAKER:  Judge, I think the clerk has

14   already found that he has been served, but --

15        THE COURT:  But there's a difference of opinion

16   about it.  We're not doing these Mickey Mouse things.  He's

17   going to get his ass served.  Pardon me.  This angers me.

18        MR. WHITTAKER:  I think because his counsel have

19   appeared, I can do Rule 5 by filing a notice in the record

20   of service of the complaint.  I think that's the only way I

21   can.

22        THE COURT:  No.  He is an employee of the City.  He

23   can make himself available to be served.  I guess you do

24   personal service.

25        MR. WHITTAKER:  I'm happy to serve him however is

1    the most convenient for the City.

2         THE COURT:  All right.

3         MR. PAUL:  If I may, I understand that they're not

4    accepting service on his behalf.

5         THE COURT:  No, they don't have to accept service.

6    I want them to order him to be at the solicitor's office and

7    he can get served there.

8         MR. PAUL:  With the understanding that the City has

9    made it clear that they are not representing Officer Hooven.

10        THE COURT:  No, no, I understand that, but you are

11   his boss.

12        MR. PAUL:  Okay.

13        THE COURT:  You can order him.  So you and Mr.

14   Whittaker work out arrangements for when this can be done in

15   the next week.

16        MR. WHITTAKER:  I'm available at the City's

17   convenience to do that, Your Honor.

18        MR. PAUL:  We'll consult.

19        THE COURT:  This is outrageous that a police

20   officer is avoiding service.  I'm really offended.

21        MR. PAUL:  I don't disagree, Your Honor.  I will

22   say, Your Honor, when police officers act in the scope of

23   their duties and they're acting, then, certainly, we do

24   everything we can to facilitate that.  And, in fact, we, you

25   know, take seriously the idea of not serving an officer at

1    any other place, like their residence, but we don't accept

2    service on behalf of people who have personal matters, so

3    that's why this has probably come out like this.  It's not

4    on --

5          THE COURT:  It's not your fault.  It is the

6    officer's fault.  And I want to cure that without a whole

7    bunch of pleadings back and forth; that is not necessary,

8    that offends me.  He works for the City.  You order him to

9    be at the solicitor's office so Mr. Whittaker can serve him

10    at a time that works out with you all in the next week.

11          MR. PAUL:  Okay.  City appreciates the

12    clarification, Your Honor.

13          MR. WHITTAKER:  Just to clarify for the record, the

14    plaintiffs aren't suggesting that the City has done

15    anything, or should be doing anything differently, to assist

16    with that.

17          THE COURT:  I understand this completely.  He's

18    dodging service.

19          MR. WHITTAKER:  Thank you, Your Honor.

20          THE COURT:  He's making it difficult.  He and Mr.

21    Gottesman are apparently making it difficult to get him

22    served.  You know, we're not -- pardon me, but we're not in

23    state court, we are in federal court, and I don't put up

24    with this kind of stuff.  Okay, we solved that problem.

25          MR. WHITTAKER:  Thank you, Your Honor.

1          THE COURT:  Okay.  Oh, Mr. Whittaker, have you

2     requested and obtained the memorandum of understanding

3     that's been mentioned in discovery?

4          MR. WHITTAKER:  I have not asked for it, but I've

5     gotten a copy of it independently of having to ask for it.

6          THE COURT:  So you have it?

7          MR. WHITTAKER:  As far as I know, I have it, but I

8     assume once we get into discovery, that will be produced.

9          THE COURT:  Well, that's sort of a critical thing

10    with this motion.  So, you know, I need to know that you are

11    aware of what it says, because I think that because of

12    what's been pleaded -- is it in the counterclaim, Peggy,

13    cross-claim, counterclaim?

14         MS. FECHTEL:  The memorandum of understanding was

15    brought up by Ms. Paul in her cross-claim.

16         THE COURT:  Yeah, yeah.  And because of that,

17    because of the suggestion in her cross-claim, I think you

18    may want to -- you may want leave to amend the complaint.

19         MR. WHITTAKER:  That's what I was going to ask for

20    today, Your Honor.  I think that might cure everybody's

21    concerns.  If I had had knowledge of the memorandum of

22    understanding before filing the response, I absolutely would

23    have asked to amend, but perhaps that was an error,

24    strategic error, on my part, but I just wanted to get in

25    front of the Court however I could.  If an amendment will

1    cure that --

2            THE COURT:  Yeah, I will give you leave to amend,

3    and I would like the City to immediately send a copy of this

4    memo over to Mr. Whittaker so that he has an official

5    version.

6            MR. PAUL:  May I address the relevance of the MOU,

7    Your Honor?

8            THE COURT:  Sure.

9            MR. PAUL:  You know, so in this instance, even if

10   he were to have the MOU, it's not relevant because of the

11   sole purpose of Jesse Hooven's actions were to gain -- this

12   is drawing on the complaint -- to gain dirt on his ex-wife's

13   fiance for leverage in their private child custody dispute.

14   So the City asks really:  What is more personal than a

15   divorce and an accompanying child custody dispute?  The MOU

16   would be, if it was between City and county for

17   government-related purposes.  And the plaintiffs, it's the

18   plaintiffs themselves, who allege that Officer Hooven made

19   it clear and that Madison Paul understood it, this has

20   nothing to do with any City investigation, no law

21   enforcement investigation.

22       And so this is not like, for example, the *Stengel* case,

23   which the City cited in the brief.  That's the 50-year-old

24   case where the officer, an off-duty officer, intervened in a

25   physical altercation in a bar.  And the Court ruled, well,

1    you know, had he not intervened, he would have been

2    subjected to discipline because he stepped up pursuant to a

3    department regulation and then he overstepped his bounds by,

4    you know, exceeding that.

5         But here, there is no, there is no -- he would not --

6    would Officer Hooven have been disciplined had he not asked

7    or allegedly asked for this information?  No, because there

8    was no City investigation concerning Mr. Taylor or

9    Ms. Hooven.  So it's a red herring, Your Honor.

10        The MOU, we'll certainly provide it because that's

11   something that Mr. Whittaker could have requested at any

12   time, but it doesn't change the fact that his claims don't

13   make it past a prima facia stage.  And I can expound on

14   that, Your Honor.

15        THE COURT:  Mr. Paul, if it makes you feel any

16   better, I have the exact same reaction to that as you did.

17   But my law clerk pointed out to me a Sixth Circuit case from

18   2019, *Morris versus City of Detroit*, which states, to

19   determine whether a person acted under the color of state

20   law, the Sixth Circuit has explained that, quote:  "The fact

21   that a police officer is on or off duty, or in or out of

22   uniform, is not controlling.  It is the nature of the act

23   performed, not the clothing of the actor or even the status

24   of being on duty or off duty which determines whether the

25   officer has acted under color of law."

1          MR. PAUL:  And actually, Your Honor, we rely

2    heavily on that case for the proposition that the claims --

3    and we're talking about Counts 2 and 4, the municipal

4    liability claims against the City -- can't proceed, and

5    here's why.  In that case -- this is *Morris v City of*

6    *Detroit*.  The officer in that case was on duty, wore her

7    badge, had department-issued handcuffs, went to the

8    plaintiff's home to collect a personal debt of $300, got

9    into the physical altercation, drew her department-issued

10    firearm, fired a shot at the plaintiff missing the

11    plaintiff.  And the Court agreed that the officer did not

12    manifest the requisite showing of state-granted authority to

13    act under color of law.

14         So instead of a personal debt of $300, what we have

15    here with Officer Hooven is a personal vendetta against his

16    ex-wife's fiance.  He didn't like the fact, according to the

17    allegations, that they were going to get married.  It's the

18    same thing, the sole purpose was to get dirt so he could use

19    it in his child custody case.  And plaintiffs have not

20    disputed the legal analysis in *Morris*, Your Honor.  That

21    case is fatal to their claims against the City at this

22    stage.

23          THE COURT:  Okay.  I think you've gotten into your

24    argument.

25          MR. PAUL:  I'm sorry.

```
 1                THE COURT:  No, that's fine, that's fine.

 2          Felix, is that you in the back?  No.

 3                MR. HICKS:  William Hicks from the City.

 4                THE COURT:  I thought you looked familiar.

 5                MR. HICKS:  Just coming to supervise.

 6                THE COURT:  It was my pleasure to have you in my

 7     courtroom awhile ago, you and Emily.

 8          Okay.  Well --

 9                MR. WHITTAKER:  Judge, if I might respond to that

10     argument, if you're inclined to hear it.

11                THE COURT:  Yeah, go ahead.

12                MR. WHITTAKER:  We rely on the Morris case too.

13     It's a summary judgment case, and all of the authorities

14     that the City relies on and argues from are based on summary

15     judgment, not 12(b)(6).  It's inappropriate at this stage to

16     go through the complaint with a fine-tooth comb and say this

17     fails, this fails, this fails.  The City is arguing that

18     these things didn't happen or these things don't matter or

19     certain aspects, just because they are alleged, that must be

20     the entire basis for the claim, and it's not.  The overall

21     umbrella argument in the complaint is Officer Hooven

22     accessed this system that he could not have come anywhere

23     close to but for his status as a police officer.  And the

24     MOU roundly acknowledges that and supports that conclusion.

25          I don't think we needed the MOU in the complaint to
```

1    survive a motion to dismiss.  The MOU solidifies that point

2    that there was a policy that is apparently undisputed that

3    allowed information-sharing between JFS workers and police

4    officers.  Officer Hooven took advantage of that policy that

5    only he could access because he's a police officer, got to

6    Ms. Paul because she's a JFS worker, evidently.  Ms. Paul

7    alleged that she was acting within the scope of her duty, of

8    her obligations, and color of State law, and she presumably

9    would not have shared that information with Officer Hooven

10   but for him acting under the color of State law as a police

11   officer himself.

12        So the cases in the Sixth Circuit say, you know, even

13   if a police officer or public official departs from his

14   duties, or whatever his intent, if he's abusing the

15   authority bestowed upon him by the state, or by the City in

16   this case -- which is exactly what we allege in the case and

17   which exactly appears to have happened because of the MOU --

18   then, that's acting under a color of State law or at least a

19   strong indicia of that fact, more than sufficient enough to

20   survive a motion to dismiss.  It's possible in discovery

21   that the claims against -- the MOU claims won't survive, but

22   that is way -- very premature now under 12(b)(6).

23            THE COURT:  Well, it's up to you if you want to

24   amend your complaint.

25            MR. WHITTAKER:  I do, Your Honor, I do.

1          THE COURT:  All right.  Then, I think -- you know,

2     I'm not going to decide this today.  I'm here to hear the

3     arguments for it, and I think I've heard quite a bit

4     already.

5          MR. PAUL:  Your Honor, I don't mean to -- I don't

6     know if you were going to go forward, Your Honor.

7          THE COURT:  Yeah, I was.  I intended to start that

8     way.

9          MR. PAUL:  I'll be happy to follow the Court's

10    discretion and reserve comment.

11         THE COURT:  Why don't we start over, then.  I've

12    gotten the flavor of your arguments already, but since it's

13    the City's motion to dismiss, are you going to argue it, Mr.

14    Paul?

15         MR. PAUL:  Yes, Your Honor.

16         THE COURT:  Okay.  Approach the podium.

17         MR. PAUL:  Good morning and may it please the

18    Court.  Your Honor, we have certainly gotten into the

19    reasons why Plaintiffs' claims against the City should be

20    dismissed at the pleading stage.  And I'm going to -- really

21    this case calls for a very straightforward application of

22    this very basic principle that is really not up for dispute.

23    It's the principle that any 1983 municipal liability claim

24    in order to proceed -- well, actually, it warrants dismissal

25    and cannot proceed when the alleged conduct is purely

1    private.  And that's what we have here, despite Plaintiffs'

2    speculation as to, you know, what things could be if the

3    facts were completely different.

4        Your Honor started -- at the outset of this proceeding,

5    Your Honor suggested that plaintiffs may want the MOU

6    because they may want to take a look at it, you know.  And I

7    want to come back to that in a second because underlying the

8    plaintiffs' failure is *Twombly*.  You know, they're combining

9    conclusory allegations about a policy and custom of an

10   action -- or even the color of law argument itself, but

11   combining it with very detailed factual allegations that are

12   fatal to their claims.

13       And this is -- and when Mr. Whittaker talks about

14   *Morris* being a summary judgment case, really, that's

15   plaintiffs' only objection to that, to the applicability of

16   that case.  Plaintiffs are the master of their complaint.

17   They are the ones who inserted such detailed allegations

18   into their complaints and pleadings that -- what more should

19   the Court look at?  Well, if you look at our motion to

20   dismiss, we drew all of our facts from the complaints.  We

21   didn't go outside of that.

22            THE COURT:  Let me ask you a question.

23            MR. PAUL:  Yes.

24            THE COURT:  If he amends his complaint, then, where

25   are you?

1          MR. PAUL:  So we're still back -- this is the

2    question, you know, can they amend the complaint to turn the

3    purpose of Officer Hooven into something -- into other than

4    it was?  Because they're the ones who said that his sole

5    purpose was to get dirt on his ex-wife's fiance, right?  So,

6    remember, in -- you know, if there had been a department

7    policy where he needed to act according to it and then

8    overstepped the bounds, well, then, you might -- then, there

9    might be implicating 1983.  Of course, once you get there,

10   you still have to show that the City was a moving force

11   behind it, right?

12       So I'm really focussing on color of law here, Your

13   Honor, because that's the most straightforward path of

14   dismissal.  We're not conceding constitutional violation,

15   not conceding that there's a moving force.  The plaintiffs

16   have alleged only in a very conclusory way that there's

17   some -- that the act of Officer Hooven could be even fairly

18   attributed to the City.

19       Deliberate indifference, you know, it's the opposite of

20   deliberate indifference when the City looks at whether

21   Officer Hooven used the City's law enforcement database.

22   And so they looked back a year and said, all right, no,

23   there's been no use of this, that was so -- so the

24   plaintiffs allege that, they say that, yeah.  I mean, the

25   complaint is so detailed as to Officer Hooven making it

1    clear that he's not doing anything related to a City

2    investigation and that Madison Paul -- the person he was

3    dating during the time of this complaint of conduct -- knew

4    that. She in her -- you know, and they've alleged that she

5    did it as a personal favor.

6         So when plaintiffs say that but for the authority of

7    his office, you know, it would not have been -- the conduct

8    would not have occurred or the defendant would not have gone

9    into the system, well, that's not true because they're the

10   ones alleging that you have a personal relationship between

11   the two defendants for whatever amount of time there was.

12   He made it clear I can't -- there's no City investigation

13   here. She is not relying on that because she's saying,

14   yeah, I knew that. Those are the plaintiffs' allegations.

15        So take the MOU and look at it and where does it get

16   you, Your Honor? It still gets you where the officer is

17   going completely rogue on a personal vendetta. Do we have

18   an instance -- I think in order -- what, perhaps, the

19   plaintiffs are asking the Court to speculate on is that

20   maybe the City -- they haven't alleged this, they haven't

21   alleged a pattern of this happening and that the City is

22   looking the other way.

23        The MOU is not -- I don't think Mr. Whittaker will

24   stand here and say that the MOU is going to say that the

25   County should divulge personal information to city officers

1     to help them with their personal matters; that's not common

2     sense to look at it that way.  It's the plaintiffs are the

3     master of their complaint.  They may have other claims, but

4     they don't belong in federal court under Section 1983, Your

5     Honor.

6          THE COURT:  Okay.  Thank you.  I understand your

7     argument.

8          Peggy -- I'm sorry.  I want to introduce to you my law

9     clerk, Peggy Fechtel, who has been with me way over

10    20 years.

11         MS. FECHTEL:  Thank you, Judge.  Judge mentioned

12    the *Morris* case.  There was another more recent Supreme

13    Court case, *Lindke*, L-I-N-D-K-E, 601 US 187.  And I don't

14    recall if the parties addressed that significantly, but it

15    seems to me that it maybe tweaks *Morris* a little bit or it

16    refocuses it when it talks about whether the conduct that

17    caused disparity is traceable to the state's power or

18    authority.  And so if the Judge does allow plaintiffs to

19    file the amended complaint and we go through this process

20    again, I would just ask that the parties focus some of their

21    discussion on that newer case.

22         MR. PAUL:  Thank you.

23         MR. WHITTAKER:  Thank you.

24         MR. PAUL:  May I respond to that, Your Honor?

25         THE COURT:  Sure, of course.

1          MR. PAUL:  Well, the starting point, you know, it's

2    hard to imagine how plaintiffs' claims against the City

3    could proceed without a complete overhaul, complete

4    retraction of everything they've alleged to date.  You know,

5    I mean, did it start out as an investigation into Mr. Taylor

6    on behalf of the City or Ms. Hooven?  No, there was no

7    ongoing investigation.  There was nothing pursuant to any --

8    you know, he wasn't trying to exercise his authority of

9    office at all there.  You know, in order to abuse your

10   authority, you have to at least use it, and, here, from the

11   outset, he said this is not part of any City investigation.

12   And that's why it's like if the police officer went into a

13   bank wearing the uniform and robbed the bank, is that

14   putting them under a color of law; and, no, that's

15   completely outside of any City interests.  It's not pursuant

16   to any City policy or any regulation.  That's rogue.  And

17   this is what this officer did.

18         THE COURT:  Yeah, I understand that.  It's funny,

19   under color of state law is a difficult concept, and I don't

20   know if Mr. Hicks remembers -- I don't even know if you were

21   in the office back then -- but I had a case where two

22   on-duty city policeman -- you remember this?

23         MR. PAUL:  Tough case, yeah.

24         THE COURT:  The Madonna Bar, picked up a woman who

25   was drunk, took her home and raped her, and the jury found

 1    that City wasn't liable.

 2            MR. PAUL:  Yeah, and the City addresses that case

 3    in our reply.  In fact, that case also stands for the

 4    proposition that this case should be dismissed.

 5            THE COURT:  I think Peggy told me that I was sort

 6    of overruled.

 7            MR. PAUL:  But that case -- if I remember right,

 8    there was testimony in that case that the City had a

 9    practice of having its officers take drunken bar patrons

10    home, right?  And so at least at this juncture, early

11    juncture, the City was eventually dismissed.  I believe

12    during trial Your Honor dismissed us, you know.  But in that

13    case, once discovery unfolded and there was no City

14    ratification or deliberate indifference to custom of this

15    happening, so the City was out eventually.

16        But the standard -- the reason this case that we have

17    here is, you know, there's no policy or custom alleged where

18    the county is supposed to help city officers with their

19    personal matters, and that's why we say the MOU is a red

20    herring.  And plaintiffs can amend the complaint, but

21    they're stuck, I believe they're stuck with the sole purpose

22    being what it was.

23            THE COURT:  Thank you.  Like I said, if it makes

24    you feel any better, that was my first reaction.  I'm not

25    sure I'm right on the law.

1        Mr. Whittaker.

2            MR. WHITTAKER:  Yes.  Thank you, Your Honor.  May

3    it please the Court.  The Court said -- observed in the

4    *Linthicum* case that all that is required under Section 83 is

5    that the official exercised power possessed by virtue of

6    state law and made possible only by the wrongdoer clothed

7    with the authorities.

8            THE COURT:  That was it, *Linthicum*.

9            MR. WHITTAKER:  Yes.  And that is exactly what we

10   allege in the complaint.  We just discussed that earlier in

11   the complaint.  I can tell the Court, you know, which

12   paragraph by paragraph we make these allegations.

13   Paragraph 52 of the complaint says:  But for his position as

14   a police officer and the trust placed in him by the City of

15   Cincinnati, Officer Hooven never could have coordinated with

16   Ms. Paul to access the system and disseminate the

17   information he learned to Ms. Hooven, his ex-wife.

18       And the City is telling the Court that there was no

19   investigation, there was no inquiry into this.  I don't know

20   how the City can make that argument when Internal

21   Investigation Services did investigate this very action,

22   Citizens' Complaint Authority investigated this action,

23   found culpability there.  That's a City agency, you know,

24   saying that Officer Hooven, you know, acting in his -- all

25   but saying acting in his capacity as a police officer

1    breached the public trust.  You know, the chief of police

2    herself signed off on the exoneration of Officer Hooven.  I

3    don't know how the City can say that there was no -- I mean,

4    I understand that the City is not getting into policy in its

5    motion, but policy under -- acting under color of state law

6    is intertwined here.  If the chief of police herself is

7    signing off on exoneration and writing a handwritten note in

8    the top of the corner recommending further instruction or

9    further discipline to Officer Hooven, I don't know how we

10   can go any higher in authority to say that there is some

11   sort of policy that the City is acting under or that the

12   City was interested in or felt could have been violated, but

13   maybe the investigation didn't get them there to reach the

14   factual conclusion of some sort of liability.  But these are

15   all questions of fact.

16       You know, Mr. Paul is arguing a summary judgment

17   standard.  You know, I investigated, you know,

18   12(b)(6) cases talking about under color of state law, and

19   that questions arises when private actors -- when

20   individuals are private actors trying to claim that their

21   actions are fairly attributable to the state or, on the face

22   of the complaint, there's no allegation of under color of

23   state law at all.  So that that's what 12(b)(6) would

24   review.

25       You know, the fact -- you know, we don't have to prove

1    the case in the complaint.  We just have to put the City and

2    the parties on notice of what the allegations are, the facts

3    underlying the complaint.  We can't possibly have all of the

4    facts in front of us while filing the complaint.  The

5    complaint is detailed and the complaint specifies that all

6    of these actions from Officer Hooven arose because of his

7    access to this system that he never could have gained access

8    to but for his office as a police officer.  Ms. Paul

9    alleges, similarly, at all times she was helping a police

10    officer.  I think it's fair to assume, although I can't

11    speak for Ms. Paul, that she would not be helping a private

12    individual get access to information unless she thought she

13    was relying on that person being a police officer and

14    relying on a policy allowing her to give that information to

15    a police officer.

16        So we intend to take Your Honor up on the opportunity

17    to exercise our leave to amend the complaint to add

18    allegations related to the MOU.  It's not going to be a

19    radical overhaul.  We haven't learned -- you know, we

20    haven't had any discovery yet, so we don't have any

21    additional facts to allege except for what Ms. Paul has

22    added in her counterclaim or cross-claim.  So, you know,

23    it's sort of bolstering the complaint rather than the

24    complaint being dependent on the MOU.

25        We will, obviously, take Your Honor up on that, but we

1   feel that the standard is clearly met under cases in the

2   Sixth Circuit and in the Supreme Court which make it clear

3   that under acting under color of state law at this point in

4   the pleading stage is properly pleaded in this situation.

5   And if Your Honor has any questions, I'm happy to take them.

6           THE COURT:  I was going to say, life was much

7   easier before *Twombly*.

8           MR. WHITTAKER:  People are still figuring out what

9   *Twombly* actually means.

10          THE COURT:  No.  Peggy, anything you want to ask?

11          MS. FECHTEL:  No.  I think just procedure, assuming

12  he files a new motion, I expect there to be another

13  motion -- excuse me, assuming plaintiffs file a new

14  complaint, I assume there will be another motion to dismiss.

15          THE COURT:  Right.

16          MS. FECHTEL:  I don't know if there's any way to

17  tighten that up this round.

18          THE COURT:  Yeah, I don't think there is,

19  unfortunately.

20      Okay.  Thank you, Mr. Whittaker, I understand what

21  you're saying.

22          MR. WHITTAKER:  Thank you, Judge.

23          THE COURT:  Mr. Paul?

24          MR. PAUL:  Thank you.

25          THE COURT:  Oh, let me ask you this, Mr. Whittaker,

1    when will you file your amended complaint by?

2            MR. WHITTAKER:  Yes, Your Honor.

3            THE COURT:  You don't have to get back up.  I just

4    need you to tell me how long you need.

5            MR. WHITTAKER:  I'm going to be out of town

6    starting this Thursday.  I will file it before then.

7            THE COURT:  Oh, okay.  That's fine.

8            MR. WHITTAKER:  I want to get in front of Your

9    Honor as soon as possible.  I don't want to delay.

10           THE COURT:  Great.  Thank you.

11           MR. PAUL:  *Twombly* matters, and if you turn to

12   paragraph 52, right.

13           THE COURT:  Judge Barrett and I sort of refused to

14   agree with *Twombly*, but --

15           MR. PAUL:  When I first started, it had just been

16   on the books and there was some speculation, Your Honor, as

17   to whether *Twombly* would -- you know, what kind of

18   difference *Twombly* would make, but words matter.  If you

19   look at paragraph 52 of plaintiffs' complaint where

20   plaintiffs allege, but for his position as a police officer

21   and the trust placed in him by the City of Cincinnati,

22   Officer Hooven could never have coordinated SACWIS facts.

23   Well, that is the -- if not the ultimate issue, because

24   there's a lot more to prove to get to admissible liability

25   besides color of law, besides constitution violation,

1    there's a lot more to prove, which plaintiffs haven't even

2    alleged enough, but it's a threshold issue.  But for his

3    authority, would he have done that?  So that's a conclusory

4    allegation that the Court should not take as true.

5        And when we look at the complaint and we look at the

6    allegations that are factual, they spell out in no uncertain

7    terms that she did it as a personal favor to him.  She said

8    so.  They say she said so.  So 52 is not -- should not be

9    credited as a factual allegation, paragraph 52, Your Honor.

10       Mr. Whittaker spoke about the exoneration of Officer

11   Hooven.  The charge that he was exonerated on was improper

12   access to a law enforcement database.  So when the City

13   looked at that and they researched the Regional Crime

14   Information Center database going back a year and they

15   interviewed everybody who was involved in this dispute, this

16   personal dispute, yeah, they verified exactly what the

17   plaintiffs have alleged and admitted, conceded, in their

18   pleadings, that no City law enforcement database was

19   accessed.

20       And so if anything, that goes to how much of an uphill

21   climb or impossible climb the plaintiffs would have even if

22   they could show color of law because they don't have facts

23   in there showing that the City was deliberately indifferent

24   to a pattern or custom violation of this.  They're not

25   looking the other way when officers are accessing personal

1   information.  So there's no -- there's so -- we would say

2   that it's futile to amend the complaint, Your Honor.  I

3   don't see how that would be an efficient use of judicial

4   resources and it would keep the City in a case long past its

5   due point.

6       As to Ms. Paul's allegations, you know, this all just

7   goes to show how much of a personal dispute this is between

8   the parties involved.  She may have -- she may be trying

9   to -- she's arguing for indemnification for the count.  She

10  may be seeking to create a defense for herself as to why she

11  allegedly disclosed access, you know, disclosed confidential

12  information from the county database.  As far as our motion

13  goes, you know, no one is disputing it's her access to a

14  county database that they're looking -- that the plaintiffs

15  are concerned about, there's nothing here that suggests that

16  the plaintiffs -- that Officer Hooven relied on his

17  authority as a Cincinnati police officer to gain access

18  through the City's law enforcement database, or to represent

19  to anybody that there was a City investigation that

20  warranted disclosure of such information that he himself

21  said he wanted as leverage on his ex-wife's fiancee.

22          THE COURT:  Thank you, thank you.

23      Peggy, any questions?

24          MR. PAUL:  Oh, if I may address *Lindke*.  I totally

25  forgot to address *Lindke*.  I'm sorry.  If I may?

1          THE COURT:  Sure.

2          MR. PAUL:  I believe, I believe you're talking

3    about the case where the City manager in Port Huron had a

4    personal Facebook page.  And if that's the case we're

5    talking about, then, that case again doesn't help the

6    plaintiffs here.  That case held that -- holding there was

7    that a public official who prevents somebody from commenting

8    on an official social media page engages in state action

9    only if the official possessed actual authority to speak on

10   the state's behalf or purported to have authority speaking

11   on social media posts.

12      Here, the officer is saying I'm not doing anything

13   related to City business.  You know, and anyone he's -- the

14   plaintiffs allege in their own complaint that he would speak

15   and vent about his animosity towards his ex-wife and his

16   child custody dispute; that is not government business.

17          MR. WHITTAKER:  Judge, if I may.  He tells his

18   ex-wife --

19          THE COURT:  Wait, wait.  Let Mr. Paul finish.

20          MR. WHITTAKER:  I apologize.

21          MR. PAUL:  Sorry.  I don't know how that case helps

22   plaintiffs in any way and I appreciate the --

23          MS. FECHTEL:  I'm just asking you for standard of

24   law.  I understand the facts.

25          MR. PAUL:  Sure.

1          MS. FECHTEL:  But they have a standard of law that

2     seems -- to me at least, arguably changes the focus a little

3     bit and puts it much more where the authority to act comes

4     from possibly more than intent.  And, again, my point in

5     raising it is only in that I don't believe either side did

6     address it, and so I just urge you to help the Judge know

7     how to read it.  But, I mean, I don't know that it's so much

8     the facts.  Yeah, the facts are weird, and I believe that

9     that's a Sixth Circuit case, but they do kind of go into

10    what color of state law means and how you look at it, and I

11    don't know if they were intending to do it, but it certainly

12    jumped out at me in reading it.

13         MR. PAUL:  The City appreciates the level of detail

14    in the complaint giving personal details on a relationship.

15    That kind of, you know, explains why she did it as a favor

16    to him.  I mean, he didn't come to her as saying this is

17    part of an investigation.  So I think that this takes it

18    completely out of the ambit of how do you attribute this to

19    the City when at the outset the both of them are

20    acknowledging to each other, yeah, this is not a government

21    purpose here.  Yeah, sorry.

22         THE COURT:  Anything else, Peggy?

23         MS. FECHTEL:  No, ma'am.

24         THE COURT:  Mr. Paul?  Mr. Whittaker?

25         MR. WHITTAKER:  Just very briefly, Your Honor.  I

1    would just like to call the Court's attention to Paragraphs

2    85 through 90 of the complaint when the plaintiffs allege

3    exactly that the City was deliberately indifferent to the

4    rights of Mr. Taylor and Ms. Hooven by failing to supervise

5    Officer Hooven and properly investigate him, as evidenced by

6    the top police official, the chief herself, exercising

7    decision-making authority as to whether or not to sustain or

8    exonerate Officer Hooven for his conduct.  This despite the

9    fact that he's on the Brady list already, and despite the

10   fact that he's already been found --

11            THE COURT:  He's on the what list?

12            MR. WHITTAKER:  He's on the Brady list, Your Honor,

13   for actions involving dishonesty with a DUI a few years ago.

14            MR. PAUL:  Excuse me.

15            THE COURT:  Yeah, it's all right.

16            MR. WHITTAKER:  And the department sustained an act

17   of finding of illegality in connection with that.  So the

18   allegations from Paragraphs 85 through 90 discuss that,

19   discuss the City's deliberate indifference and the City's

20   failure to supervise and investigate.  Again, the City is

21   still arguing evidence, facts, things that will be excellent

22   discussions on summary judgment, but we're not there yet.

23   So thank you, Your Honor.

24            THE COURT:  Thank you, Mr. Whittaker.

25        Yeah, Mr. Paul, go ahead.

1          MR. PAUL:  Sorry, Your Honor.  Just on the PageID

2     70 of Document 1, that's the exhibit to plaintiffs'

3     complaint.

4          THE COURT:  Where are you now?

5          MR. PAUL:  Document 1, plaintiffs' complaint,

6     PageID 70, there's a chart there and that's the Brady list

7     where prosecutors are made aware of certain, you know,

8     occurrences.  But I'm not sure where Mr. Whittaker got

9     dishonesty from.  He was -- he had a minor misdemeanor, an

10    OVI conviction, so that is -- now what plaintiffs need to

11    do, if they want to show a pattern, is not that this

12    particular officer had some unrelated conduct in the past,

13    unrelated to this issue before the Court, they've got to

14    show a pattern -- you know, do we need to show a different

15    kind of pattern of conduct on behalf on the part of the

16    City, whether it's ratification, policy and custom, or

17    deliberate indifference.  They only call it a pattern and

18    custom of inaction, and they're only looking at how the City

19    handled the complaint about Officer Hooven.  That in and of

20    itself does not get it to a municipal liability claim, even

21    if you could prove state color of law.  Thank you, Your

22    Honor.

23          THE COURT:  Thank you, Mr. Paul.

24       Where's the County fit into this, Mr. Friedmann?

25          MR. FRIEDMANN:  Your Honor, we don't take a

1   position on either one of them.  We're here just to observe

2   today.

3           THE COURT:  Okay, okay.  All right.

4       Then, anything else for the good of the order here?

5           MR. PAUL:  No, Your Honor, nothing.

6           MR. WHITTAKER:  Nothing more from plaintiffs, Your

7   Honor.

8           THE COURT:  Okay.  All right.  Thank you.  We

9   will -- I will take a look again at these cases.  And you're

10  going to file your amended complaint by this week, end of

11  this week, so I guess you'll have to file a new motion

12  anyway.

13          MR. WHITTAKER:  To clarify, Your Honor, leave is

14  granted or I need to apply for leave?

15          THE COURT:  No, no, leave is granted.

16          MR. WHITTAKER:  Thank you, Your Honor.

17          THE COURT:  I like to cut through the formalities.

18          MR. WHITTAKER:  Very good.

19          THE COURT:  This reminds me -- I hate to reminisce

20  with you guys, but this reminds me -- were you here, Peggy?

21  It was the professor at UC, he was a criminal law professor.

22          MS. FECHTEL:  It was not my case.

23          THE COURT:  Yeah.  I had a case, he was a criminal

24  law professor at UC.  His wife was a lawyer.  She was over

25  at in Kentucky with the school over there.  I don't know if

1    you guys remember this one.

2            MS. FISCHER:  I do.

3            THE COURT:  It was like being in domestic relations

4    court for a week.  I'll never forget that case as long as I

5    live.  The City had -- she complained that he had abused

6    her, so the City issued a warrant for his arrest, so he sued

7    the City.  And he had already -- I think the City had -- I

8    remember my old boss, Jim -- can't think of his last name --

9    was the Clerk of Courts at the time, and they were just

10   handing these things out without any discretion or review or

11   anything.  So the two of them duked it out in my courtroom

12   for a week.

13       And I thought I'll never forget that because the whole

14   time I thought to myself, I feel like I'm sitting in

15   domestic relations court.  They hated each other so much

16   that when they exchanged the kids, the two little children,

17   that he would leave them on the edge of the sidewalk right

18   next to the street and she would come out and get them.

19   That was as close as they got to each other.

20           MR. PAUL:  I will say, Your Honor, that, you know,

21   it's been nothing but collegial between counsel and at least

22   we have that.

23           THE COURT:  What was his name?

24       (Off-the-record discussion.)

25           THE COURT:  Anything further from anyone?

1          MR. WHITTAKER: Nothing from plaintiffs, Your

2  Honor.

3          THE COURT: Okay. Thank you all very much.

4          MR. PAUL: Thank you, Judge.

5          THE DEPUTY: All rise. Court is now adjourned.

6       (Proceedings concluded at 11:28 a.m.)

7               **C E R T I F I C A T E**

8     In accordance with 28 U.S.C. Section 753, I certify that the foregoing is a correct transcript of the record of

9  proceedings in the above-entitled matter prepared from my stenotype notes and that the transcript page format is in

10  accordance with the regulations of the Judicial Conference of the United States.

11

12  /s/         *Lisa Conley Yungblut*    09/16/2024
       LISA CONLEY YUNGBLUT, RDR, RMR, CRR, CRC    DATE

13

14

15

16

17

18

19

20

21

22

23

24

25