IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Brendon Taylor, *et al.*, | : | Case No. 1:24-cv-204 |
| | : | |
| Plaintiffs, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | Order Granting City of Cincinnati's |
| | : | Motion to Dismiss First Amended |
| Jesse Lee Anthony Hooven, *et al.*, | : | Complaint and Granting in Part and |
| | : | Denying in Part Hooven's Second |
| Defendants. | : | Motion to Dismiss |

This matter is before the Court on Defendant City of Cincinnati's Motion to Dismiss
Plaintiffs' First Amended Complaint and Defendant Jesse Hooven's Second Motion to Dismiss.
(Docs. 63, 65.) Plaintiffs Brendon Taylor and Holly Hooven sue four sets of Defendants—
(1) Jesse Hooven, a police officer for the City of Cincinnati; (2) the City of Cincinnati, Ohio
("City"); (3) Madison M. Paul, a former employee of Hamilton County, Ohio; and (4) the
Hamilton County, Ohio Department of Jobs and Family Services ("Hamilton County JFS") and
the Hamilton County, Ohio Board of County Commissioners ("Hamilton County")—alleging
constitutional rights violations and state law torts. (Doc. 55.) Mr. Taylor and Ms. Hooven, who
are engaged to each other, allege that Ms. Hooven's ex-husband, Officer Hooven, and Ms. Paul
improperly accessed and disseminated confidential child welfare records about Mr. Taylor to
interfere in their intimate relationship. For the reasons below, the Court will **GRANT** the City's
Motion to Dismiss Plaintiffs' First Amended Complaint and **GRANT IN PART AND DENY
IN PART** Officer Hooven's Second Motion to Dismiss.

1

## I.      BACKGROUND

### A.      Factual Background

#### 1.      Parties

The well-pleaded factual allegations in the First Amended Complaint are assumed to be true for purposes of the dismissal motions.  Ms. Hooven and Mr. Taylor started dating in February 2023 and now are engaged to be married.  (Doc. 55 at PageID 402.)  Mr. Taylor has two minor children from previous relationships.  (*Id.*)  Ms. Hooven has two minor children with her ex-husband, Officer Hooven.  (*Id.* at PageID 403.)  The marriage between Ms. Hooven and Officer Hooven ended via a Decree of Dissolution entered in January 2019.  (*Id.*)  Ms. Hooven and Officer Hooven have had disputes about their child custody arrangements since their divorce.  (*Id.* at PageID 404.)  Officer Hooven has interfered in the relationship between Ms. Hooven and Mr. Taylor.  (*Id.*)  At the Hooven children's school and education events, Officer Hooven, while in uniform and armed, spoke about his quarrels with Ms. Hooven and Mr. Taylor, stated that Mr. Taylor could not be trusted, and pressured parents and school officials to keep tabs on Ms. Hooven and Mr. Taylor for him.  (*Id.*)

Officer Hooven has been employed by the City as a police officer since 2014.  (*Id.* at PageID 403.)  Ms. Paul was employed by Hamilton County and/or Hamilton County JFS from May 2016 through October 2023.  (*Id.*)  At the time of the relevant events, Ms. Paul served as an Assessment Supervisor for Hamilton County JFS.  (*Id.*)  Officer Hooven and Ms. Paul met in March 2023 when they both responded to a call for services while acting in their capacities as government employees.  (*Id.* at PageID 409.)

2. **Accessing Confidential Information**

a. **Memorandum of Understanding**

A Memorandum of Understanding ("MOU"), revised June 15, 2015, between Hamilton County and City of Cincinnati officials sets forth agreed operating procedures with respect to reporting and investigating child abuse and neglect. (*Id.* at PageID 405–409; Doc. 54-1.) Law enforcement officers handling child abuse and neglect cases—including the Personal Crimes Unit ("PCU") of the Cincinnati Police Department—are governed by the mandates in the MOU. (Doc. 55 at PageID 405–409; Doc. 54-1.) Officer Hooven was not a member of the PCU. (Doc. 55 at PageID 405.)

Certain JFS employees, including Ms. Paul, were trained to disseminate information obtained through the Ohio Statewide Automated Child Welfare Information System ("SACWIS") to law enforcement officers who are investigating a report of child abuse and neglect. (*Id.* at PageID 408, 410.) SACWIS is a database shared by Ohio's 88 public children's services agencies, including the child protective services agency within Hamilton County JFS. (*Id.* at PageID 408.) All information contained in SACWIS is confidential and may be disseminated only to other public officials enumerated in Ohio Administrative Code § 5101:2-33-21(F)–(G), including to law enforcement officers investigating a report of child abuse and neglect.

b. **Officer Hooven's and Ms. Paul's Actions**

In March and April 2023, Officer Hooven asked Ms. Paul to use the SACWIS system to investigate Mr. Taylor. (Doc. 55 at PageID 410.) Upon accessing the SACWIS system, Ms. Paul disseminated confidential child welfare records about Mr. Taylor and his son to Officer Hooven. (*Id.*)

Officer Hooven then disclosed the confidential information that Ms. Paul had shared with him in a series of text messages to Ms. Hooven:

> Remember when you sent me all that stuff about child molestation and people and what not? But yet you wavy [*sic*] to leave my child with someone who was physically and sexually abused as a child. You want to leave my children with a guy who Montgomery County told to file for emergency custody of his child because of how bad he had it with ███████████ and he couldn't be bothered with it. Have a good day holly. I'm not fighting with you. ████████ can call when ████████ wakes up.
>
> * * *
>
> JFS worker told me. Said both were there.
>
> * * *
>
> And I'm not dumb enough to use leads in a way that I'm but allowed. That's a felony and I lose my job.

(*Id.* at PageID 411.) When Ms. Hooven asked where he obtained the information, he stated: "Name is Madison. I don't know her last name[.]" (*Id.* at PageID 412.)

### 3. Aftermath

#### a. Officer Hooven

On April 12, 2023, Mr. Taylor filed a complaint against Officer Hooven with the City of Cincinnati Citizen Complaint Authority ("Cincinnati CCA") asserting that Officer Hooven "used his official capacity as a police officer to obtain information about his juvenile history with JFS." (*Id.* at PageID 412.) The Cincinnati CCA referred the matter to the Cincinnati Police Department's ("CPD's") Internal Investigations Section. (*Id.*) The CPD Internal Investigations Section opened its investigation on April 14, 2024. (*Id.*)

After Mr. Taylor filed the administrative complaint, in May 2023, Officer Hooven initiated formal proceedings against Ms. Hooven to modify his child support obligation and their shared custody arrangement. (*Id.*) Plaintiffs allege that he has used the proceedings to retaliate

against Plaintiffs for reporting him.  (*Id.* at PageID 413.)

The CPD Internal Investigations Section issued their report on Officer Hooven in late June 2023.  (Doc. 1 at PageID 29–34.)[1]  According to the report, Ms. Paul told investigators that Officer Hooven had complained to her about the relationship between Ms. Hooven and Mr. Taylor and expressed concern about Mr. Taylor's past because Mr. Taylor was often around his children.  (*Id.* at PageID 31.)  Ms. Paul stated that Officer Hooven asked her to query Mr. Taylor in the Hamilton County JFS database to see if he had a record and that she knew Officer Hooven sought the information for his personal knowledge and not for a law enforcement investigation. (*Id.* at PageID 31, 33.)  She stated that she knew that Officer Hooven could not access law enforcement databases to query Mr. Taylor himself.  (*Id.* at PageID 32.)  On the other hand, Officer Hooven told investigators that he did not ask Ms. Paul to query Mr. Taylor and he did not know why she did so.  (*Id.*)

The CPD Internal Investigations Section concluded that it could not determine whether Officer Hooven requested that Ms. Paul search the confidential SACWIS child welfare records or if Ms. Paul provided the information to Officer Hooven on her own initiative.  (*Id.* at Page 33–34.)  Accordingly, the CPD Internal Investigations Section recommended that "the allegation of Unethical Conduct, against Police Officer Jesse Hooven be closed, **NOT SUSTAINED**."  (*Id.* at PageID 34.)  Because Officer Hooven did not personally query information about Mr. Taylor in law enforcement databases, the CPD Internal Investigations Section further recommended that the "allegation of Law Violation (Improper Use of a Law Enforcement Database) . . . be closed, **EXONERATED**."  (*Id.*)  CPD Chief Teresa A. Theetge approved both findings.  (*Id.*)  She also

---

[1] Plaintiffs attached the report to the original Complaint, and they reference it again in the First Amended Complaint.  (Doc. 55 at PageID 413.)

ordered that "D 5 Commander and Officer Hooven's Relief Commander to meet with Officer

Hooven regarding this investigation."  (*Id.* at PageID 29.)

Finally, on September 21, 2023, the Cincinnati CCA "sustained" a finding of

"misconduct" against Officer Hooven for violating CPD's Code of Ethics for sharing the

information Ms. Paul improperly obtained about Mr. Taylor with Ms. Hooven.  (*Id.* at PageID

36–37.)

### b.    Ms. Paul

On April 11, 2023, Mr. Taylor filed a formal complaint against Ms. Paul with Hamilton

County JFS.  (Doc. 55 at PageID 412.)  On June 6, 2023, Hamilton County JFS suspended Ms.

Paul for without pay for "gross misconduct, neglect of duty, nonfeasance, and failure of good

behavior."  (*Id.* at PageID 413.)  It is unclear for how long she was suspended.  The First

Amended Complaint inconsistently states in the Facts section that the suspension lasted eight

days, but it states in Count 5 that the suspension lasted for one day.  (*Id.* at PageID 413, 423.)

On October 18, 2023, Ms. Paul resigned from Hamilton County JFS.  (*Id.* at PageID 415.)

### B.    Procedural Posture

Plaintiffs Mr. Taylor and Ms. Hooven filed their Complaint against Defendants Officer

Hooven, Ms. Paul, the City of Cincinnati, Hamilton County, and Hamilton County JFS on April

15, 2024.  (Doc. 1.)  Ms. Paul filed an Answer to the Complaint and Crossclaims against the

other Defendants on June 26, 2024 and then Amended Crossclaims on August 2, 2024.  (Docs.

27, 43.)

The City moved to dismiss the claims against it in the initial Complaint for failure to state

a claim upon which relief can be granted.  (Doc. 21.)  Officer Hooven moved to dismiss the

claims against him for insufficient service of process.  (Doc. 48.)  On August 26, 2024, the Court

held a hearing on the initial Motions to Dismiss, resolved the service of process issue, and granted Plaintiffs leave to amend their Complaint.

On August 30, 2024, Plaintiffs filed their First Amended Complaint. (Doc. 55.) They asserted nine claims:

- Count 1: First Amendment Retaliation, 42 U.S.C. § 1983: Ms. Hooven and Mr. Taylor against Officer Hooven in his official capacity acting under color of state law;

- Count 2: Violation of the First Amendment, 42 U.S.C. § 1983: Ms. Hooven and Mr. Taylor against the City;

- Count 3: Violation of the Fourteenth Amendment Substantive Due Process Clause, 42 U.S.C. § 1983: Mr. Taylor against Officer Hooven and Ms. Paul in their official capacities acting under color of state law;

- Count 4: Violation of the Fourteenth Amendment, 42 U.S.C. § 1983: Mr. Taylor against the City;

- Count 5: Violation of the Fourteenth Amendment, 42 U.S.C. § 1983: Mr. Taylor against the Hamilton County Defendants;

- Count 6: Civil Conspiracy to Violate Civil Rights, 42 U.S.C. § 1985(3): Mr. Taylor and Ms. Hooven against Officer Hooven and Ms. Paul in their official capacities acting under color of state law;

- Count 7: Intentional Infliction of Emotional Distress: Mr. Taylor and Ms. Hooven against Officer Hooven individually;

- Count 8: Wrongful Intrusion: Mr. Taylor against Officer Hooven and Ms. Paul individually; and

- Count 9: Abuse of Process: Ms. Hooven against Officer Hooven individually.

(*Id.* at PageID 415–426.) The Hamilton County Defendants and Ms. Paul filed their Answers to the First Amended Complaint on September 13, 2024. (Docs. 61, 62.)

In response to the First Amended Complaint, the City and Officer Hooven both filed Motions to Dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docs. 63, 65.) Plaintiffs filed a Consolidated Memorandum in Opposition, to which

the City and Officer Hooven each filed a Reply.  (Docs. 70, 71, 72.)

## II.    STANDARD OF LAW FOR MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Rule 8(a)(2)).  When ruling on a motion to dismiss, a court may consider the complaint and any documents attached or referenced in the complaint that are central to the claims therein.  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008); *see also* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion.").

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 555.  A complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory."  *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (citation omitted).  However, it "does not need detailed factual allegations" or "heightened fact pleading of specifics."  *Twombly*, 550 U.S. at 555, 570.  A district court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678–679; *DiGeronimo Aggregates*, 763 F.3d at

509.

## III. ANALYSIS

### A. The City of Cincinnati's Motion to Dismiss

Plaintiffs have asserted two claims against the City pursuant to 42 U.S.C. § 1983 for constitutional rights violations: Count 2 by Ms. Hooven and Mr. Taylor for a violation of their First Amendment rights and Count 4 by Mr. Taylor for a violation of his Fourteenth Amendment right to substantive due process. (Doc. 55 at PageID 418–420, 422.) Section 1983 creates a cause of action to remedy constitutional violations as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. The City moves to dismiss the claims against it on two bases, lack of state action and lack of municipal wrongdoing. The Court will consider each in turn.

### 1. No State Action

The City first argues that the allegedly tortious conduct by Officer Hooven was private and furthered no governmental interest, and therefore, it was not action taken under of color of state law for purposes of § 1983. "Because local governments are subdivisions of the State, actions taken under color of a local government's law, custom, or usage count as 'state' action for purposes of § 1983." *Lindke v. Freed*, 601 U.S. 187, 195 n.1 (2024). Here, Officer Hooven did not violate Plaintiffs' constitutional rights if he was not acting under the color of state law for purposes of § 1983 when he committed the allegedly tortious conduct. A finding that Officer Hooven did not violate Plaintiffs' constitutional rights also means that Plaintiffs suffered no constitutional violation for which the City can be held liable. *North v. Cuyahoga Cnty.*, 754 F. App'x 380, 389–390 (6th Cir. 2018).

9

"Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 359 (6th Cir. 2001).  "Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983." *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975).  "While public officials can act on behalf of the State, they are also private citizens with their own constitutional rights." *Lindke*, 601 U.S. at 196.  "The fact that a police officer is on or off duty, or in or out of uniform is not controlling.  It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law." *Morris v. City of Detroit, Mich.*, 789 F. App'x 516, 518 (6th Cir. 2019) (internal quotation and citation omitted).

Courts must look to whether the conduct that caused the deprivation of a right is "fairly attributable to the State[,]" in that it is "traceable to the State's power or authority." *Lindke*, 601 U.S. at 198.  The Sixth Circuit recently affirmed a two-part test:

> When asking whether a challenged action qualified as state action, we described the "the controlling issue" as whether an official "possessed state authority" to take the action "and whether [the official] purported to act under that authority" on the specific occasion.

*Mackey v. Rising*, 106 F.4th 552, 559 (6th Cir. 2024) (citations omitted).  Courts must consider "the totality of the circumstances." *Morris*, 789 F. App'x at 518.  As to the first part of the test, § 1983 is implicated if the defendant "could not have behaved as he did without the authority of his office." *Waters*, 242 F.3d at 359.  "There can be no pretense of acting under color of state law if the challenged conduct is not related in some meaningful way either to the actor's governmental status or to the performance of his duties." *Id*.  Whether a defendant acted under the color of state law is a question of law for the district court. *Neuens v. City of Columbus*, 303

F.3d 667, 670 (6th Cir. 2002).

Despite repeated uses of the phrase "in his capacity as a police officer acting under color of state law," Plaintiffs' First Amended Complaint paints a picture of a police officer acting on behalf of his private pursuits.  Ms. Hooven's and Mr. Taylor's factual allegations are that Officer Hooven took actions to retaliate against and interfere in the relationship between them because he overtly disapproved of their relationship.  (Doc. 55 at PageID 404, 416–417.)  First, they allege that Officer Hooven, while in uniform, disparaged Mr. Taylor and pressured school officials and parents into sharing information about Ms. Hooven and Mr. Taylor with him.  (*Id.* at PageID 404.)  The City disputes that such behavior constitutes state action.

The allegations in *Morris* provide a useful comparison with the allegations here because in both cases police officers were pursuing private objectives while displaying trappings of their position.  The Sixth Circuit described the key facts in *Morris* as follows:

> On June 20, 2017, [Defendant] Adams[, a police officer] clocked out and left work to go to plaintiffs' house at approximately 4:30 pm, even though she was scheduled to work until 6:00 pm that day. Upon arriving at the house, Adams began to knock aggressively on the door. When Morris opened the door, Adams placed her foot in the door so that Morris could not close it. Adams then entered the house and began questioning Morris about repayment of a $300 personal loan. Adams became hostile, pointing her finger in Morris' face and initiating a physical confrontation during which Morris sprayed Adams in the face with mace. After being sprayed with mace, Adams drew her gun and fired a shot. The bullet did not hit Morris.
>
> * * * *
>
> After discharging her gun, Adams fled the scene. . . . The internal investigation found that, at the time of the incident, Adams was not in police uniform. However, she was wearing her badge, had a waistband holster that displayed her department-issued gun, and had her department-issued handcuffs. The internal police investigation determined that Adams was technically "on duty" when she clocked out and went to plaintiffs' home at 4:00 pm because she was scheduled to work until 6:00 pm the day of the incident.

789 F. App'x at 517.  The Sixth Circuit held that even though she was on duty, wearing her

police badge, and carrying her police firearm, Adams was not acting under the color of state law during the "purely private altercation" with Morris. *Id.* at 518–519. "The sole purpose for Adams being at Morris' house was to collect a personal debt of $300. Adams did not purport to be conducting police-related business, nor did she attempt to use her status as a police officer advantageously during the altercation." *Id.* at 518. Likewise, here, Officer Hoover, even though he was in uniform, was not conducting police business when he impugned Mr. Taylor and pressured community members to keep tabs on Ms. Hooven and Mr. Taylor. Rather, he was acting solely for the purely private reason of interfering in Plaintiffs' intimate relationship. (Doc. 55 at PageID 416–417.)

Second, Plaintiffs allege that Officer Hooven "asked Ms. Paul to use her position as a public official acting under the color of state law to use the SACWIS system to investigate Mr. Taylor." (*Id.* at PageID 410.) He then disseminated the confidential child welfare information he learned from Ms. Paul to Ms. Hooven and deliberately lied to Ms. Hooven that the information was "publicly available." (*Id.* at PageID 411, 417.) Plaintiffs make the conclusory allegation that Officer Hooven could not have accessed the information from the SACWIS but for his status as a police officer. (*Id.* at PageID 416.) Finally, they emphasize that the MOU requires JFS workers like Ms. Paul to assist police officers investigating child abuse and neglect cases. (*Id.* at PageID 405, 408–409; Doc. 54-1.)

These allegations, even if true, would not establish that Officer Hooven was acting under the color of state law. Officer Hooven did not possess state authority to access or disseminate the SACWIS confidential information, nor did he purport to be acting under such authority. *See Mackey*, 106 F.4th at 559 (stating two-part test for state action). To begin, only JFS workers like Ms. Paul, not police officers, had authority to access the SACWIS system. (Doc. 55 at PageID

408, 410.)  The MOU provides that JFS workers are expected to disseminate confidential child

welfare information to police officers investigating child abuse and neglect cases at their request.

(Doc. 54-1; Doc. 55 at PageID 405, 408.)  Plaintiffs do not allege that Officer Hooven was

operating under the MOU, that he referred to the MOU during his conversation with Ms. Paul,

that he was a member of the CPD's Personal Crime Unit investigating child abuse or neglect

cases, or that he told Ms. Paul that he was investigating a child abuse or neglect case.  Ms. Paul

told the CPD Internal Investigations Service that she knew that Officer Hooven had no legitimate

law enforcement basis to investigate Mr. Taylor.  (Doc. 1 at PageID 31, 33; Doc. 55 at PageID

413.)[2]  Consistent with this, Plaintiffs allege that Officer Hooven's motivation was to

"(a) interfere[e] with the private and consensual intimate relationship between Holly Hooven and

Mr. Taylor; (b) intimidate[e] Holly and Mr. Taylor; (c) retaliate[e] against Holly and Mr. Taylor

for engaging in their relationship; and (d) interfere[e] with their clearly established constitutional

rights.  (Doc. 55 at 416–417.)

    The Court concludes that Officer Hooven's alleged conduct was not "related in some

meaningful way" to his status as a police officer or to the performance of his duties.  *Waters,* 242

F.3d at 359.  Accordingly, the Court holds that Ms. Hooven and Mr. Taylor have failed to allege

facts which plausibly suggest that Officer Hooven was acting under the color of state law when

he attempted to interfere in their private relationship.  His alleged conduct, however outrageous

if true, falls outside the ambit of 42 U.S.C. § 1983 because it was not state action.  Because

Officer Hooven was not acting under the color of state law, neither he nor the City can be held

liable pursuant to § 1983 for a violation of Plaintiffs' rights.

---

[2]  Plaintiffs do not necessarily agree with the findings and conclusions of the CPD Internal Investigations Section Report.  This alleged fact is not necessary to the Court's conclusion on state action.  It is consistent with other allegations in the First Amended Complaint.

2.      **No Municipal Wrongdoing**

Even if Plaintiffs had alleged facts sufficient to establish that Officer Hooven was acting

under the color of state law, the City also moves to dismiss Counts 2 and 4 on the basis that

Plaintiffs have failed to allege facts that establish wrongdoing by the City.  Municipalities cannot

be held liable under respondeat superior—a municipality is liable "for its own wrongdoing, not

the wrongdoings of its employees." *Morgan v. Fairfield Cnty., Ohio*, 903 F.3d 553, 565 (6th Cir.

2018).  That is, the City of Cincinnati cannot be held liable under 42 U.S.C. § 1983 simply

because Officer Hooven, one of its employees, might have violated Plaintiffs' rights.  A

municipality is liable only "when execution of a government's policy or custom, whether made

by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

inflicts the [constitutional] injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S.

658, 694 (1984).  "[M]unicipalities can be held liable for harms caused by direct actions of the

municipalities themselves, harms caused by the implementation of municipal policies or

customs, and harms caused by employees for whom the municipality has failed to provide

adequate training."  *Id.* (internal citations omitted).  There are four methods to prove an official

policy or custom:

> The plaintiff may prove "(1) the existence of an illegal official policy or
> legislative enactment; (2) that an official with final decision making authority
> ratified illegal actions; (3) the existence of a policy of inadequate training or
> supervision; or (4) the existence of a custom of tolerance or acquiescence of
> federal rights violations."

*Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 581 (6th Cir. 2020) (citation omitted).

Plaintiffs argue that the City should be held liable under *Monell* for Officer Hooven's

wrongful conduct because it ratified or approved his conduct.  In support, they rely on the CPD

Internal Investigation Services report which they assert exonerated Officer Hooven.  This is a

mischaracterization of the report.  The CPD Internal Investigations Service exonerated Officer

Hooven on the limited charge of improper use of a law enforcement database because he did not himself query Mr. Taylor in SACWIS.  (Doc. 1 at PageID 34.)  It found that the broader charge of unethical conduct was "NOT SUSTAINED" because it could not determine whether Officer Hooven requested Ms. Paul to query Mr. Taylor in the SACWIS database or if he did so on her own accord.  (*Id.*)  Nothing in the CPD Internal Investigations Service report suggests that the City ratified or authorized Officer Hooven's conduct to render it the City's policy or custom and provide a basis for municipal liability.[3]

### 3.    Conclusion as to the City's Motion to Dismiss

The Court will dismiss Counts 2 and 4 because Plaintiffs have not alleged facts sufficient to establish liability against the City of Cincinnati for violation of constitutional rights pursuant to 42 U.S.C. § 1983.

## B.    Officer Hooven's Motion to Dismiss

Officer Hooven moves to dismiss the federal claims—Counts 1, 3, and 6—and the state claims—Counts 7, 8, and 9—stated against him in the First Amended Complaint.

### 1.    Counts 1 and 3: Constitutional Violations pursuant to 42 U.S.C § 1983

Plaintiffs allege in Counts 1 and 3 that Officer Hooven should be held liable pursuant to 42 U.S.C. § 1983 for retaliating against them in a violation of the First Amendment and violating Mr. Taylor's substantive due process rights.  (Doc. 55 at PageID 415–418, 420–422.)  Officer Hooven moves to dismiss on the basis that his actions did not violate the Constitution, that he is entitled to qualified immunity, and that *some* of his conduct did not constitute state action for

---

[3]  Additionally, a plaintiff seeking to establish liability under an "unofficial policy or custom" theory typically must show more than a single instance of unconstitutional conduct.  *See, e.g.*, *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985).  Plaintiffs here alleged, at most, that the City approved a single instance of unconstitutional conduct.

purposes of § 1983. The Court will start and end its analysis with the third argument.

The Court already concluded, as a matter of law, that Officer Hooven did not take state action either when he tried to pressure school officials and parents into sharing information about Ms. Hooven and Mr. Taylor or when he requested Ms. Paul to query Mr. Taylor in the SACWIS database and then disseminated the confidential information to Ms. Hooven. It is irrelevant that Officer Hooven did not argue in the Second Motion to Dismiss that the latter set of conduct—requesting Ms. Paul to query Mr. Taylor in the SAWCIS database and then disseminating the confidential information to Ms. Hooven—did not constitute state action. A district court cannot accept a plaintiff's concession that he was acting under the color of state law when the facts establish otherwise. *See Neuens*, 303 F.3d at 670 (instructing that district courts cannot accept stipulations on legal conclusions to be reached by the courts). The Court will dismiss the § 1983 claims against Officer Hooven because Plaintiffs did not plead sufficient facts to establish that Officer Hooven was acting under the color of state law.

**2. Count 6: Civil Conspiracy pursuant to 42 U.S.C. § 1985(3)**

Plaintiffs allege in Count 6 that Officer Hooven and Ms. Paul are liable for a civil conspiracy to violate their civil rights pursuant to 42 U.S.C. § 1985(3) because they accessed and disseminated Mr. Taylor's confidential child welfare records. (Doc. 55 at PageID 424.) Officer Hooven asserts that Plaintiffs fail to state a claim for relief under § 1985(3) as a matter of law. Section 1985(3) states in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages

16

occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

"Like 42 U.S.C. § 1983, § 1985 does not grant any 'substantive rights itself'; rather, it provides a cause of action to redress violations of rights found elsewhere." *Post v. Trinity Health-Michigan*, 44 F.4th 572, 581 (6th Cir. 2022) (citation omitted). A violation of First Amendment rights can provide the basis for a § 1985(3) claim. *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 833 (1983). However, the constitutional violation in a § 1985(3) claim must be motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Id.* at 834. The Sixth Circuit has held that § 1985(3) reaches conspiracies "targeting a person based on a classification (like racial discrimination) that would receive heightened scrutiny under the Supreme Court's equal-protection framework," *Post*, 44 F.4th at 580, and "individuals who join together as a class for the purpose of asserting fundamental rights," *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (citation omitted).

Plaintiffs here do not allege in Count 6 that there was any class-based motivation for Officer Hooven's actions against them. Instead, they allege that Officer Hooven sought to retaliate against them "for exercising their clearly established constitutional rights to freely associate with each other and engage in a private, consensual intimate relationship." (Doc. 55 at PageID 418.) An intimate or even marital relationship is not the type of class membership that § 1985(3) protects. *See Dohner v. Neff*, 240 F. Supp. 2d 692, 705 (N.D. Ohio 2002) ("Plaintiff's association with and marriage to a member of a political party does not, however, place her in a group that constitutes a 'clearly defined class' of the sort that § 1985(3) protects."); *cf. McIlwain v. Dodd*, No. 22-5219, 2022 WL 17169006, at *4–5 (6th Cir. Nov. 22, 2022) (finding that single

17

fathers are not a protected class for purposes of a § 1985(3) claim and that the plaintiff did not target the defendant because she had animus against single fathers as a group). Because Plaintiffs have not alleged that Officer Hooven was motivated by a class-based animus, their § 1985(3) claim against Officer Hooven fails as a matter of law. *See Dohner*, 240 F. Supp. 2d at 706 ("Because her complaint does not allege that class-based animus motivated the defendants, it fails to state a claim under § 1985(3).") The Court will dismiss the § 1985(3) civil conspiracy claim against Officer Hooven.

### 3. Count 7: Intentional Infliction of Emotional Distress

Plaintiffs allege in Count 7 that Officer Hooven is liable for intentional infliction of emotional distress upon them. (Doc. 55 at PageID 425.) To establish a claim for intentional infliction of emotional distress, a plaintiff must prove these elements: (1) the defendant intended to cause emotional distress, or knew or should have known that his actions would result in serious emotional distress, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's actions proximately caused emotional injury to the plaintiff, and (4) the plaintiff suffered serious emotional anguish. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Under Ohio law, the alleged extreme and outrageous conduct must be sufficiently egregious:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Yeager v. Loc. Union 20*, 6 Ohio St. 3d 369, 453 N.E.2d 666, 671 (1983) (citation omitted), *abrogated on other grounds*, *Welling v. Weinfeld*, 866 N.E.2d 1051, 1054–1055 (Ohio 2007).

Neither party identifies any cases with analogous facts examining the boundaries of an intentional infliction of emotional distress claim. "Courts hesitate to dismiss IIED claims where

18

the allegations could reasonably be inferred to create a basis [to find] extreme and outrageous conduct." *Doe v. Archdiocese of Cincinnati*, No. 1:23-cv-318, 2024 U.S. Dist. LEXIS 99947, at *10 (S.D. Ohio June 5, 2024). The allegations that Officer Hooven, while in police uniform, discussed his child custody disagreements at school and extracurricular events, disparaged his ex-wife's new partner, Mr. Taylor, and pressured school officials and parents to spy on Ms. Hooven and Mr. Taylor for him are disturbing and might be found to greatly exceed normal boundaries for domestic relations disputes. Likewise, Plaintiffs' allegations that Officer Hooven unlawfully obtained confidential child welfare records from SACWIS about Mr. Taylor and his minor son and then shared that information with Ms. Hooven to interfere in their intimate relationship are sufficiently outrageous to proceed forward. The Court will not dismiss the intentional infliction of emotional distress claim against Officer Hooven at this Rule 12(b)(6) stage.

### 4. Count 8: Wrongful Intrusion

Plaintiffs allege that Officer Hooven and Ms. Paul are liable to Mr. Taylor for wrongful intrusion under Ohio law for illegally accessing and disseminating child welfare records. (Doc. 55 at PageID 425–426.) The Supreme Court of Ohio has recognized a tort of wrongful intrusion upon a person's seclusion:

> "1. The right of privacy is the right of a person to be let alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned.["]

> "2. An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

> The scope of a person's liability for intrusion into another's seclusion is stated in Section 652B of the Restatement of Torts 2d, as follows:

"One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

*Sustin v. Fee*, 69 Ohio St. 2d 143, 145, 431 N.E.2d 992, 993–994 (1982) (citation omitted).

Plaintiffs move to this dismiss this claim on the basis that Officer Hooven's disclosure of Mr. Taylor's confidential child welfare records to Ms. Hooven does not qualify as a disclosure to the public for purposes of the unwarranted publicity tort. (Doc. 72 at PageID 669.) Plaintiffs do not dispute this argument and do not seek to proceed with a publicity subclaim. Plaintiffs instead seek to prove wrongful intrusion into Mr. Taylor's private affairs only. (Doc. 70 at PageID 645–646.) "The '[wrongful] intrusion' tort is not dependent upon publicity of private matters, but [it] is akin to trespass in that it involves intrusion or prying into the plaintiff's private affairs." *Roe ex rel. Roe v. Heap*, No. 03AP-586, 2004 WL 1109849, at *18, 2004-Ohio-2504, ¶ 81 (Ohio App. 10th Dist. May 11, 2004) (quoting *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 166, 499 N.E.2d 1291 (1985)). The Court will not dismiss the claim based on a lack of public disclosure.

Plaintiffs have pleaded a claim for wrongful intrusion by Officer Hooven and Ms. Paul into Mr. Taylor's private affairs sufficient to defeat a Rule 12(b)(6) motion. They allege Officer Hooven and Ms. Paul accessed confidential child welfare records about Mr. Taylor from the SACWIS database without a lawful purpose. (Doc. 55 at PageID 410, 424.) This allegation is analogous to conduct the Ohio appeals court described as a wrongful intrusion:

* * * [S]ome other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. * * *

*Roe*, 2004 WL 1109849, at *20. The Court will not dismiss the wrongful intrusion claim against Officer Hooven.

20

### 5.     Count 9: Abuse of Process

In this final claim, Plaintiffs allege that Officer Hooven is liable to Ms. Hooven for abuse of process for "pervert[ing]" their pending child custody proceeding "to attempt to accomplish the ulterior motive of securing leverage over Ms. Hoven and extort a more favorable result for himself." (Doc. 55 at PageID 426.)  Officer Hooven moves to dismiss on the basis that Plaintiffs have not set forth a proper claim for abuse of process, a claim which has the following elements:

> (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process

*Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St. 3d 294, 298, 626 N.E.2d 115, 118, 1994-Ohio-503 (1994).  "[T]here is no liability [for abuse of process] where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions."  *Id.*, 626 N.E.2d at 118 n.2 (citation omitted).

Officer Hooven asserts that Plaintiffs have not stated a claim under *Yaklevich* because they have not alleged that he had an ulterior purpose in the child custody proceedings.  "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club."  *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St. 3d 264, 271, 662 N.E.2d 9, 14 (1996) (quoting Prosser & Keeton on Torts (5 Ed.1984) 898, Section 121).  Plaintiffs allege that Officer Hooven abused the pending child custody proceeding to retaliate against Plaintiffs for filing the administrative complaint against him with the Cincinnati CCA.  (Doc. 55 at PageID 413.)  However, his alleged bad intentions are not relevant.  *See Yaklevich*, 626 N.E.2d at 118 n.2.  Plaintiffs do not allege that Officer Hooven sought in the child custody proceedings to obtain a collateral benefit which child custody

proceedings were not designed to give.  *See Alabsi v. City of Cleveland*, No. 22-3375, 2023 WL 334893, at *4–5 (6th Cir. Jan. 20, 2023) (granting summary judgment to defendant because the plaintiff could not prove that the defendant had sought "to obtain something that the court in the normal course of the proceedings could not order").  Plaintiffs have failed to state a claim upon which relief can be granted in Count 9, and the Court will dismiss the abuse of process claim against Officer Hooven.

## IV.    CONCLUSION

Based on the foregoing analysis, the City of Cincinnati's Motion to Dismiss (Doc. 63) is **GRANTED** and Officer Hooven's Second Motion to Dismiss (Doc. 65) is **GRANTED IN PART AND DENIED IN PART**.  These claims are **DISMISSED WITH PREJUDICE**:

- Count 1: First Amendment Retaliation, 42 U.S.C. § 1983: Ms. Hooven and Mr. Taylor against Officer Hooven in his official capacity acting under color of state law;

- Count 2: Violation of the First Amendment, 42 U.S.C. § 1983: Ms. Hooven and Mr. Taylor against the City;

- Count 3: Violation of the Fourteenth Amendment Substantive Due Process Clause, 42 U.S.C. § 1983: Mr. Taylor against Officer Hooven and Ms. Paul in their official capacities acting under color of state law;

- Count 4: Violation of the Fourteenth Amendment, 42 U.S.C. § 1983: Mr. Taylor against the City;

- Count 6: Civil Conspiracy to Violate Civil Rights, 42 U.S.C. § 1985(3): Mr. Taylor and Ms. Hooven against Officer Hooven and Ms. Paul in their official capacities acting under color of state law; and

- Count 9: Abuse of Process: Ms. Hooven against Officer Hooven individually.

Conversely, Count 7 by Mr. Taylor and Ms. Hooven against Officer Hooven for intentional infliction of emotional distress and Count 8 by Mr. Taylor against Officer Hooven for wrongful intrusion are **NOT DISMISSED**.

**IT IS SO ORDERED.**

BY THE COURT:


S/Susan J. Dlott
Susan J. Dlott
United States District Judge