# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **BRENDON TAYLOR**, *et al.*, ) | Case No. 1:24-cv-0204 |
| ) | |
| **Plaintiffs,** ) | JUDGE: HON. SUSAN J. DLOTT |
| ) | |
| v. ) | **ORAL ARGUMENT REQUESTED** |
| ) | |
| **JESSE LEE** ) | |
| **ANTHONY HOOVEN**, *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFFS' JOINT AND CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF THE COURT'S JANUARY 3, 2025, ORDER

Officer Hooven remains tightlipped about the MOU because he means to advance third-party claims against the City that depend on his acting under the color of state law and within the scope of his authority. The City tiptoes around the MOU because the MOU reflects the policies and procedures of CPD and the MOU's relationship with the County Defendants – which is undisputed. If the Court isn't persuaded that Defendants are dodging the MOU to avoid treading into a host of disputed facts demonstrating that dismissal under Rule 12(b)(6) is inappropriate, prudence instructs that the January 3, 2025, Order be certified for immediate appellate review to ensure that Plaintiffs' claims are tried in whole rather than piecemeal. Alternatively, the Court should order limited discovery into the narrow question of whether Officer Hooven was acting under color of state law to efficiently adjudicate this threshold question, and out of fairness to the Plaintiffs who have been deprived of the ability to adjudicate any of their claims for almost a full year.

> **1. The MOU ensures strict compliance with the confidentiality requirements of SACWIS by limiting access to sensitive data.**

At its core, the City argues that Plaintiffs haven't alleged enough factual matter to state a claim for which relief can be granted, for example, that Plaintiffs don't allege that Officer Hooven "told anyone that he was investigating a child abuse or neglect case and is thus entitled to that information pursuant to an MOU between." [Doc.89, at PageID #826]. The City's argument is form over substance. Plaintiffs can't make perfect allegations at this stage because they aren't privy to any communications between Ms. Paul and Officer Hooven.

Respectfully, the City and the Court read Plaintiffs' pleading obligations under Rule 12(b)(6) too restrictively, particularly in light of the Court's forward-looking admonishment on August 26, 2024, that the undersigned should amend the Complaint to include important details about the MOU. [Doc.64, at PageID ##552-53]. As the Court has observed in similar circumstances, "it seems a dubious proposition given that [f]ederal pleading rules call for a short and plain statement that the pleader is entitled to relief, [under Rule 8(a)(2)]; they do not countenance dismissal of a complaint for imperfect statement of legal theory supporting the claim asserted." *Jones v. Montgomery Cnty. Dep't of Job & Family Servs.*, No. 3:18-cv-00037, 2018 U.S. Dist. LEXIS 207999, at *18 (S.D. Ohio Dec. 10, 2018) (citing *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014)).

This is a case in which the MOU and state law require special government equipment, resources, and privileges to gain access to SACWIS data in a confidential statewide database. [Doc.55, at ¶43, PageID #408]. This ***must*** be the case because the

2

federal government provides states funding to plan, design, develop, and implement SACWIS databases. *Dynamics Research Corp. v. Ohio Dep't of Job & Family Servs.*, 8 N.E.3d 380, 382 (10th App. Dist.). To qualify for the funding, a state "must provide for a design which, when implemented, will produce a comprehensive system, which is effective and efficient," as provided under 45 C.F.R. 1355.53. *Id*. "Failure to comply may result in the recoupment of federal funds" under 45 C.F.R. 1355.56(b)(4). *Id*.

In short, the State of Ohio must specifically design and implement SACWIS to comply with federal law to prevent unauthorized access to confidential data, lest the State lose federal funding. It does this, as Plaintiffs allege, by strictly limiting access to data:

> SACWIS is a database shared by each of Ohio's 88 public children's service agencies, including Hamilton County Child Protective Services ('CPS'), an agency within JFS. The Ohio Legislature created SACWIS in 2006 to comply with the strict confidentiality requirements of the United States Social Security Administration.

[Doc.55, at ¶44, PageID #408]. Consistent with Ms. Paul's training, "JFS employees are only authorized to share information gleaned from SACWIS with other public officials delineated in Section 5101:2-33-26." [*Id*., at ¶47, PageID #409].

Because of the highly specialized nature of the SACWIS database and Ms. Paul's training, Officer Hooven had **no need** to expressly "invoke[] the powers of [his] office to accomplish the offensive act." *See, e.g.*, *Blackwell v. Allen*, No. 22-1300, 2022 U.S. App. LEXIS 35494, at **20-22 (6th Cir. Dec. 21, 2022) (comparing *McDade v. West*, 223 F.3d 1135, 1140 (9th Cir. 2000) (finding state action where the defendant's status as a state employee allowed her access to a government database, which she used to

3

obtain confidential information), *with Naffe v. Frey*, 789 F.3d 1030, 1037 (9th Cir. 2015) (finding that a county prosecutor did not act under color of state law when commenting on politics through his personal social media page).

Accessing SACWIS data, was a task "made possible only because [Officer Hooven] [was] clothed with the authority of state law." *Blackwell*, 2022 U.S. App. LEXIS 35494, at \*\*20-21 (citing *Honaker v. Smith*, 256 F.3d 477, 484-85 (7th Cir. 2001)). Thus, "[h]owever improper [Officer Hooven's] actions were, they clearly related to the performance of [his] official duties." *McDade*, 223 F.3d , at 1140. To hold otherwise would be to ignore the purpose of SACWIS, and the State's emphatic interest in ensuring only proper access lest it risk losing federal funding.

The Court can also reasonably interpret Officer Hooven's own words to Holly that he knew his access to confidential data was restricted lest he lose his job. [Doc.55, at ¶56, PageID #411]. Thus, at **worst**, there's a genuine dispute of material fact. In *Lawson v. Creely*, 737 F. Supp. 3d 483 (E.D. Ky. 2024), for example, the district court found that the defendants' status as school employees "is the very thing that enabled them access" to a coworker's office and bag, through which they rifled to find incriminating information about medications they believed she was taking. *Lawson*, 737 F. Supp. 3d, at 496 (citing *McDade*, 223 F.3d, at 1140). As here, the conduct of the interlopers in *Lawson*, "even if motivated by private concern, was conduct taken under color or pretense of state law." *Id*., at 495-96.

The question is whether it's more plausible that Officer Hooven gained access to SACWIS data because he's a police officer, or that he managed to do so independent of

the authority of his office. Even if Officer Hooven could have gained access to SACWIS data without being a police officer, Ms. Paul alleges that she understood his request to look up confidential SACWIS data as being in furtherance of his duties as a police officer. She therefore cooperated with him because she was trained by the County Defendants to do so. The County Defendants agree that Ms. Paul was so trained. This stands to reason, given the importance, expectation, and necessity of cooperation between JFS workers and law enforcement to further the State's ends. *State v. Jackson* (2018), 154 Ohio St. 3d 542, 116 N.E.3d 1240.

### 2. Officer Hooven's admissions support an inference of state action.

In ruling on a motion under Civil Rule 12(b)(6), "the Court must construe the pleadings in the light most favorable to the plaintiff, and treat all well-pleaded allegations contained therein as true." *O'Donnell v. Fin. Am. Life Ins. Co.*, No. 2:14-cv-1071, 2015 U.S. Dist. LEXIS 53519, at *11 (S.D. Ohio Apr. 23, 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This necessarily includes the allegations of Ms. Paul and the County Defendants in their pleadings.

Even if the Court isn't obliged to read the allegations of Ms. Paul and the County Defendants in the light most favorable to the Plaintiffs, Officer Hooven failed to deny in his Answer key facts alleged in paragraphs 72-87, 88-95, 96-109, 110-12, 113-20, 121-24, and 133-38 of the First Amended Complaint. [Doc.79, at ¶¶36-41, and 50, PageID ##708 and 709]. Officer Hooven doesn't just fail to deny these allegations, but he affirmatively "omits answers" to the same. Thus, under Civil Rule 8(b)(6), the effect of

5

Officer Hooven's failure to deny these facts is to "admit" them. *Henricks v. Pickaway Corr. Inst.*, No. 2:08-cv-580, 2016 U.S. Dist. LEXIS 113001, at *5 (S.D. Ohio Aug. 24, 2016). To this end, Officer Hooven admits without limitation that the only way he could have gotten access to SACWIS records is because he is a police officer. [Doc.55, at ¶76, PageID #416]. This is otherwise consistent with Ms. Paul's allegations that she was trained to cooperate with police officers when they request confidential SACWIS data and the County Defendants' acknowledgment of that training.

As to Plaintiffs' claims arising under the First Amendment, Officer Hooven admits that:

- He abused the authority bestowed upon him by the MOU;

- His actions were calculated to harm and retaliate against Holly and Brendon for engaging in a romantic relationship;

- He knew he was violating Plaintiffs' constitutional rights; and

- He intended to use his authority as a police officer to violate the Plaintiff's constitutional rights.

[Doc.55, at ¶¶78, and 81-83, PageID ##416-17]. Officer Hooven further admits that his actions were facilitated by the City's policies and procedures. [*Id.*, at ¶¶88-95]. As to Brendon's claim arising under the Fourteenth Amendment, Officer Hooven admits that the City failed to properly train and supervise him, and erected no guardrails from doing as Plaintiffs allege. [*Id.*, at ¶114, PageID ##423-24].

Officer Hooven's admissions "are generally binding on the parties and the Court." *Shah v. Metro. Life Ins. Co.*, No. 2:16-cv-1124, 2018 U.S. Dist. LEXIS 239316, at *7 (S.D. Ohio June 6, 2018) (citing *Brown v. Tenn. Gas Pipeline Co.*, 623 F.2d 450 (6th Cir.

6

1980)). Indeed, Rule 8(b)(6) "admits of no discretion." *Henricks*, 2016 U.S. Dist. LEXIS 113001, at *11. Thus, allegations that are deemed admitted under Rule 8(b)(6) can support a ruling on the merits against Officer Hooven or preclude him from offering at trial evidence or argument denying facts that have been deemed to be admitted. *Id. See also*, *Fridlund v. Spychaj-Fridlund*, 654 F. Supp. 2d 634 (E.D. Ky. 2009) (same).

### 3. Resolving questions of fact at this stage was clear error.

Officer Hooven says nothing about "clear error," other than to repeat the legal standard. Nevertheless, Plaintiffs' arguments aren't based on mere disagreement or dissatisfaction with the Court's conclusions. Rather, Plaintiffs respectfully object to the Court's resolution and/or disregard of factual matters, particularly in light of the "fact-intensive" investigation that the Sixth Circuit instructs must take place to resolve the question of whether Officer Hooven was acting under color of state law.

Plaintiffs also respectfully object to the Court's application of Rule 12(b)(6) to the substantive law, which instructs that abuse of state power necessarily implicates state action. These are questions of fact and credibility that Plaintiffs can't plead with more, particularly at this stage. Nor are they obliged to. What matters under Rule 12(b)(6) is that taking the pleadings as a whole, Plaintiffs have plausibly alleged that Officer Hooven was engaged in state action sufficient to warrant discovery.

The City's reliance on *Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129 (6th Cir. 1990), is misplaced, because Plaintiffs aren't asking the Court to reverse a jury's decision under Rules 59 or 60. It should go without saying that the procedural posture following a trial on the merits after the jury considered the facts and witness credibility, isn't

7

comparable to asking the Court to reconsider dismissal with prejudice before any discovery has taken place, and no facts are established.

The City's complaint about Plaintiffs not relying on the *Morris* case, as "controlling law" is also misplaced, [Doc.89, at PageID ##826-27], because *Morris* doesn't control in light of the Sixth Circuit's recent reliance in *McCay* on the principle articulated in *Lindke*, that the question before the Court is necessarily "fact-intensive." This conclusion is bolstered by the Sixth Circuit's admonishment in *Siefert* that "fact-intensive" inquiries are often a bad fit for Rule 12(b)(6) analysis because "[a]bsent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is 'obvious' or 'squarely governed' by precedent, which prevents us from determining whether the facts of this case parallel a prior decision or not." *Siefert*, 951 F.3d, at 761 (citing *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 235 (6th Cir. 2005)).

**4. The facts underlying Officer Hooven's allegations and admissions are new evidence subject to discovery.**

Relying on *Abington Emerson Capital, LLC v. Adkins*, No. 2:17-cv-143, 2021 U.S. Dist. LEXIS 30883 (S.D. Ohio Jan. 22, 2021), Officer Hooven says that "allegations in a defensive pleading do not constitute 'newly discovered evidence' warranting reconsideration." [Doc.86, at PageID #810]. Officer Hooven also relies on *Adkins* for the proposition that "pleadings are not evidence; 'new' factual matter must be previously unavailable and material." [*Id.*]. The Court should reject both arguments because *Adkins* doesn't say anything about "defensive pleadings," "newly discovered evidence," Rule 54(b), or the grounds for reconsideration.

8

Even if Officer Hooven's pleadings aren't themselves "evidence," his eventual testimony related to the facts he alleges in his pleadings and admits under Rule 8(b)(6), *is* evidence. The City suggests that Officer Hooven doesn't necessarily intend to persuade the Court that he was acting under color of state law and within the scope of his official duties. [Doc.89, at PageID #826]. First, while the preservation of affirmative defenses is to be expected, the *facts* underlying Officer Hooven's defenses are relevant and discoverable. *Harris v. Sowers*, No. 2:16-cv-888, 2018 U.S. Dist. LEXIS 110066, at *9 (S.D. Ohio July 2, 2018). Second, if Officer Hooven is telling the Court that he's entitled to a defense from the City, that could only be if he's aware of facts suggesting that he was acting within the scope of his authority under color of state law.

**5. Alternatively, the Court should certify the Order dismissing for immediate appellate review.**

Officer Hooven makes no argument against certification under Rule 54(b), again other than to recite the legal standard. The City says that because Plaintiffs' remaining claims are "premised on the same operative facts" as their dismissed claims, Rule 54(b) certification is inappropriate. [Doc.89, at PageID #829]. The City, however, makes no demonstration that this is the case. Plaintiffs' remaining claims against Officer Hooven are limited to intentional infliction of emotional distress and wrongful intrusion. These claims would exist irrespective of the MOU.

The City next argues that if Plaintiffs are correct on the merits, once the record is further developed, their color of state law contentions will be vindicated, which would moot the need for appellate review. [Doc.89, at PageID ##829-30]. If Plaintiffs succeed in persuading the Court to reconsider its Order dismissing their Section 1983 Claims,

9

however, nothing but their right to conduct discovery would be vindicated. Plaintiffs must still demonstrate a genuine question of material fact sufficient to survive summary judgment. Even then, Plaintiffs would only be "vindicated" if the jury finds for them at trial.

If an immediate appeal is granted as an alternative to reconsideration, however, Plaintiffs won't be able to *re*litigate the dismissed issues because the Court of Appeals would have upheld the Order dismissing, *or* it would have overruled the Order dismissing, and the parties would simply move on to discovery after completing the Rule 26(f) case management process. There would be no need to revisit the Motions to Dismiss. For example, assuming Plaintiffs prevail on summary judgment, it cannot be said that the case should have been dismissed at the pleading stage. If they fail, the Motions to Dismiss would be immaterial because Plaintiffs would have been given sufficient time to do discovery, which is all they ask the Court to allow.

The City next argues that because Officer Hooven alleges that he's entitled to a defense, piecemeal adjudication of Plaintiffs' Section 1983 claims in the meantime would be an inefficient use of judicial resources. [Doc.89, at PageID #831]. Whether or not that's true, however, has nothing to do with a set-off of Plaintiffs' claims because there are no competing claims *against* them, and thus nothing to off-set. The City also suggests that Plaintiffs' recourse is through an open records request, and therefore the risk of not being able to secure witness testimony is "speculative." [*Id.*, at PageID ##831-32]. Plaintiffs cannot secure witness testimony, however, through an open records request.

Finally, it's not speculative to suggest that witness testimony and other evidence might not be available after the adjudication of unrelated claims because there's a natural tendency for evidence to be less forthcoming over time for any number of innocent reasons. This isn't to say that the City or its counsel would allow evidence to spoliate. They wouldn't. Counsel, however, can only do so much, particularly given the volume of the City's caseload. Over time, evidence can be misplaced, and memories become less reliable. Current employees and other witnesses relocate, move on to new employment, and die. And so on.

## CONCLUSION

Due to the foregoing and the arguments advanced by Plaintiffs in their Motion for Reconsideration and in Opposition to Defendants' Motions to Dismiss, Plaintiffs respectfully submit that the Court should reconsider its January 3, 2025, Order dismissing the heart of their claims without the benefit of discovery. Alternatively, the Court should certify its Order for immediate appellate review under Rule 54(b), or order discovery for the limited purpose of resolving the narrow question of whether Officer Hooven was acting under the color of state law, which would also illuminate the extent of the City's *Monell* liability.

**DATED: March 10, 2025.**

Respectfully submitted,

*/s/Justin Whittaker*
Justin Whittaker, Esq. (0093212)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
(513)457-5545
(513)436-0689 (fax)
Justin@WhittakerLawFirm.com

**Counsel for Plaintiffs
Brendon Taylor and Holly Hooven**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was electronically filed on **March 10, 2025**, with the Clerk of this Court via the CM/ECF system and served on counsel for the parties via the Court's electronic filing system. A true and accurate copy was served via email to all parties not served by the Court's electronic filing system.

*/s/ Justin Whittaker*
Justin Whittaker, Esq. (0093212)