IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Brendon Taylor, *et al.*, | : | Case No. 1:24-cv-204 |
| | : | |
| Plaintiffs, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | Order Granting in Part Plaintiffs' Motion |
| | : | for Reconsideration and Amending in |
| Jesse Lee Anthony Hooven, *et al.*, | : | Part January 3, 2025 Dismissal Order |
| | : | |
| Defendants. | : | |

This matter is before the Court on Plaintiffs' Joint and Consolidated Motions for Reconsideration of the Court's January 3, 2025 Order, or Alternatively, to Certify the Same as "Final" Under Rule 54(b). (Doc. 84.) Plaintiffs Brendon Taylor and Holly Hooven sued four sets of Defendants—(1) Jesse Hooven, a police officer for the City of Cincinnati; (2) the City of Cincinnati, Ohio; (3) Madison M. Paul, a former employee of Hamilton County, Ohio; and (4) the Hamilton County, Ohio Department of Jobs and Family Services and the Hamilton County, Ohio Board of County Commissioners—alleging constitutional rights violations and state law torts. (Doc. 55.) Mr. Taylor and Ms. Hooven, who are engaged to each other, alleged that Ms. Hooven's ex-husband, Officer Hooven, and Ms. Paul improperly accessed and disseminated confidential child welfare records about Mr. Taylor to interfere in their intimate relationship.

In the January 3, 2025 Order ("Dismissal Order"), the Court dismissed Counts 1–4 (violations of civil rights), 6 (civil conspiracy), and 9 (abuse of process) against the City of Cincinnati and Officer Hooven. (Doc. 75.) Plaintiffs move the Court to reconsider the Order as to Counts 1–4 and 9 only. Alternatively, Plaintiffs move the Court to certify the Dismissal Order as final for purposes of appeal. The Court also inadvertently stated in the Dismissal Order that it

1

was dismissing Count 3 (violation of substantive due process rights) against Ms. Paul. Plaintiffs ask the Court to clarify that the Court did not intend to dismiss the claim against Ms. Paul. For the reasons below, the Court will **GRANT IN PART AND DENY IN PART** Plaintiffs' Joint and Consolidated Motions.

I. **MOTION FOR RECONSIDERATION**

Reconsideration of an interlocutory order is permissible under common law and Federal Rule of Civil Procedure 54(b). *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). Rule 54(b) states in relevant part that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Courts can reconsider interlocutory orders on the basis of "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959.

A. **Claims Against Officer Hooven**

    1. **Counts 1 and 3**

        a. **State Action Issue**

Plaintiffs alleged in Count 1 that Officer Hooven is liable to them for retaliation in violation of the First Amendment pursuant to 42 U.S.C § 1983, and they alleged in Count 3 that Officer Hooven is liable to Mr. Taylor for a Fourteenth Amendment substantive due process violation pursuant to 42 U.S.C. § 1983. (Doc. 55 at PageID 415–418, 420–422.) The Court dismissed these claims because it concluded as a matter of law that Plaintiffs had not alleged

sufficient facts to plausibly establish that Officer Hooven acted under the color of state law for purposes of § 1983 liability. (Doc. 75 at PageID 690–691.) In the pending Motion for Reconsideration, Plaintiffs contend that the Court made a clear error of law by not construing the factual allegations and inferences from the First Amended Complaint in their favor on the color of state law issue.

"Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters v. City of Morristown, Tenn.*, 242 F.3d 353, 359 (6th Cir. 2001). "Acts of police officers in the ambit of their personal, private pursuits fall outside of 42 U.S.C. § 1983." *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975). "While public officials can act on behalf of the State, they are also private citizens with their own constitutional rights." *Lindke v. Freed*, 601 U.S. 187, 196 (2024). "The fact that a police officer is on or off duty, or in or out of uniform is not controlling. It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law." *Morris v. City of Detroit, Mich.*, 789 F. App'x 516, 518 (6th Cir. 2019) (internal quotation and citation omitted).

Courts must look to whether the conduct that caused the deprivation of a right is "fairly attributable to the State[,]" in that it is "traceable to the State's power or authority." *Lindke*, 601 U.S. at 198. The Sixth Circuit recently affirmed a two-part test:

> When asking whether a challenged action qualified as state action, we described the "the controlling issue" as whether an official "possessed state authority" to take the action "and whether [the official] purported to act under that authority" on the specific occasion.

*Mackey v. Rising*, 106 F.4th 552, 559 (6th Cir. 2024) (citations omitted). Courts must consider "the totality of the circumstances." *Morris*, 789 F. App'x at 518. As to the first part of the test,

3

§ 1983 is implicated if the defendant "could not have behaved as he did without the authority of his office." *Waters*, 242 F.3d at 359. "There can be no pretense of acting under color of state law if the challenged conduct is not related in some meaningful way either to the actor's governmental status or to the performance of his duties." *Id.* Whether a defendant acted under the color of state law is a question of law for the district court. *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002).

Plaintiffs argue that the Court clearly erred by not construing the factual allegations and inferences from the First Amended Complaint in their favor. The Court will start with Plaintiffs' allegations that Officer Hooven acted under the color of state law when he tried to pressure school officials and parents into sharing information about Ms. Hooven and Mr. Taylor. (Doc. 55 at PageID 404, 416.) Upon reconsideration, the Court again concludes that *Morris* dictates the holding that Officer Hooven was not taking state action under the facts alleged. In *Morris,* the Sixth Circuit held that an on-duty police officer, wearing her badge and carrying her firearm, did not take state action when she initiated an altercation at the plaintiff's house to try to collect a personal debt. 789 F. App'x at 517–519. The *Morris* court was persuaded by evidence that the officer did not purport to be conducting police-related business nor attempt to use her police officer status to her advantage during the altercation. *Id.* at 518. Likewise, here, even though Officer Hooven appeared at school and extracurricular events in uniform and while armed, the facts alleged do not plausibly suggest that Officer Hooven was purporting to conduct police business when he impugned Mr. Taylor and pressured community members to keep tabs on Ms. Hooven and Mr. Taylor. Rather, the alleged facts suggest he was acting solely for the purely private reason of interfering in Plaintiffs' intimate relationship. (Doc. 55 at PageID 404, 416–417.) The alleged actions were neither related to Officer Hooven's government status nor to the

performance of his duties. The Court correctly dismissed Counts 1 and 3 to the extent they are based on these allegations.

However, the Court is persuaded that it erred when it concluded that Plaintiffs did not plead sufficient facts to plausibly allege that Officer Hooven acted under the color of state law when he requested Ms. Paul to query Mr. Taylor in the Ohio Statewide Automated Child Welfare Information System ("SACWIS") and then disseminated the confidential information to Ms. Hooven. (*Id.* at PageID 409–415; Doc. 75 at PageID 687–688, 690–691.) The Court too tightly conflated Officer's Hooven's alleged motive—to interfere with and retaliate against Plaintiffs for their intimate relationship—with the legal issue of whether he possessed state authority and purported to act under that authority. *See Mackey*, 106 F.4th at 559 (providing a two-part test for determining state action). The Court now re-examines the relevant First Amended Complaint allegations.

The First Amended Complaint incorporated and explained the Memorandum of Understanding between Hamilton County and City of Cincinnati officials that set forth agreed operating procedures with respect to reporting and investigating child abuse and neglect. (Doc. 55 at PageID 404–409; Doc. 54-1.) Certain JFS employees, including Ms. Paul, were trained to disseminate information obtained through SACWIS to law enforcement officers investigating reports of child abuse and neglect. (Doc. 55 at PageID 408–410.) All information contained in SACWIS is confidential and may be disseminated only to other public officials enumerated in Ohio Administrative Code § 5101:2-33-21(F)–(G), including to law enforcement officers investigating a report of child abuse and neglect. (*Id.*)

Officer Hooven and Ms. Paul met in March 2023 when they both responded to a call for services while acting in their capacities as government employees. (*Id.* at PageID 409.) Officer

Hooven asked Ms. Paul to use her position as a JFS official to access SACWIS to investigate Mr. Taylor. (*Id.* at PageID 410.) Ms. Paul believed Officer Hooven served as a police officer when he made the request and that she had an obligation to assist police officers under the Memorandum of Understanding. (*Id.*)[1] Ms. Paul disseminated confidential Child Protection Services records about Mr. Taylor to Officer Hooven. (*Id.*) Officer Hooven then told Ms. Hooven that Mr. Taylor had been "physically and sexually abused as a child." (*Id.* at PageID 411.)[2] Regardless of his motivation, the Court is persuaded that an inference arises from these allegations that Officer Hooven purported to use his state authority as a police officer when he requested a JFS worker to share confidential SACWIS database information with him. *See Waters*, 242 F.3d at 359 (stating that § 1983 is implicated if the defendant "could not have behaved as he did without the authority of his office"). An inference also arises that Ms. Paul would not have disseminated the confidential information to Officer Hooven if he had not been a police officer. The Court erred when it focused more on specific allegations that Plaintiffs did not make than on the reasonable inferences that arose from the allegations they did make.

The Court concludes upon reconsideration that Plaintiffs pleaded sufficient facts to state plausible claims that Officer Hooven acted under the color of state law when he requested Ms. Paul to query Mr. Taylor in SACWIS and then disseminated the confidential information to Ms. Hooven. The Court erred in dismissing Counts 1 and 3 based on the lack of state action defense as to these allegations. That does not end the Court's inquiry on Counts 1 and 3,

---

[1] Plaintiffs specifically incorporated into the First Amended Complaint Ms. Paul's allegation that Officer Hooven served as a police officer when he made the request. The fact that Ms. Paul told the CPD Internal Investigations Service that she knew Officer Hooven lacked a legitimate law enforcement basis to investigate Mr. Taylor creates a question of fact to be fleshed out during discovery and resolved later. (Doc. 1 at 31, 33; Doc. 55 at PageID 413.)

[2] Plaintiffs allege that Ms. Paul also disseminated confidential records about Mr. Taylor's son to Officer Hooven, who then shared information about the son to Ms. Hooven, but the analysis above is sufficient without repeating those allegations here. (Doc. 55 at PageID 410–411.)

however, for the reason discussed immediately below.

### b. Qualified Immunity Defense

Although neither party raises this issue in their briefs on the Motion for Reconsideration, the Court must grapple with the qualified immunity defense to liability that Officer Hooven raised in his Second Motion to Dismiss. (Doc. 65 at PageID 587–589.) The parties had the opportunity to brief the issue fully. (Doc. 70 at PageID 635–641; Doc. 72 at PageID 664–667.) The Court did not address the qualified immunity defense in its Dismissal Order because it determined—erroneously in part—that Officer Hooven did not act under the color of state law based on the facts pleaded. It must address the defense now. Counts 1 and 3 must be dismissed on alternative grounds if Officer Hooven is entitled to qualified immunity.

The doctrine of qualified immunity provides "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, courts must ask whether the government official's conduct violated a constitutional right, and if yes, whether the specific right violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 200–201 (2001). "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The inquiry into whether the constitutional right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. The Sixth Circuit has a "general preference to save qualified immunity for summary judgment." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 762 (6th Cir. 2020). But if a plaintiff's allegations do not "plausibly show[ ] a

violation of his clearly established rights, then the officer-defendant is entitled to immunity from suit." *Id.*

Plaintiffs—who at the time of filing were "engaged to be married and cohabitate in a home"—alleged in Count 1 that Officer Hooven retaliated against them for exercising their First Amendment right to intimate association. (Doc. 55 at PageID 402, 415–418.) In order to prove a claim for First Amendment retaliation, a plaintiff must establish the following elements: "(1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights." *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). Officer Hooven asserted two bases for the Court to find that he was entitled to qualified immunity for Count 1: (1) Plaintiffs had no right to privacy in a public database and (2) the constitutional protection for intimate relationships does not extend to engaged couples. Neither argument withstands scrutiny.

Officer Hooven first argued that he was entitled to qualified immunity for Count 1 because the Sixth Circuit has held that there is no right to privacy in a police officer's search of a public database even for an improper purpose. *United States v. Ellison*, 462 F.3d 557, 560–562 (6th Cir. 2006). *Ellison* concerned a police officer's search of a vehicle's license plate number to determine if the driver had an outstanding warrant. *Id.* at 559. *Ellison* is materially distinguishable from this case, however, because the Sixth Circuit based its decision on its finding that individuals have no right to privacy in their license plate number. *Id.* at 561–562. In fact, the Sixth Circuit suggested the outcome would have been different if the police officer had used technology not available to the public to intrude into a constitutionally-protected area. *Id.*

8

at 562–563 ("This is not a case where the police used a technology not available to the public to discover evidence that could not otherwise be obtained without intrusion into a constitutionally-protected area. . . . As the information was obtained without intruding upon a constitutionally-protected area, there was no search for Fourth Amendment purposes.") (internal quotation and citation omitted). In this case, Officer Hooven requested Ms. Paul to access SACWIS to obtain constitutionally-protected information about Mr. Taylor that was not publicly available. *Cf. Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (recognizing a constitutional right to privacy as to matters of a sexual, personal, or humiliating nature). Officer Hooven does not have qualified immunity under the authority of *Ellison*.

"Time and time again, the Sixth Circuit has held that romantic partners have the clearly established right to not be punished for engaging in that intimate association." (Doc. 70 at PageID 638.) Officer Hooven attempted to distinguish two cases cited by Plaintiffs in support—*Sowards. v. Loudon County*, 203 F.3d 426 (6th Cir. 2000) and *Gaspers v. Ohio Department. of Youth Services*, 648 F.3d 400 (6th Cir. 2011)—because both cases involved married couples. However, constitutional protection for intimate relationships extends beyond only familial relationships.

The Supreme Court has recognized that "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–618 (1984). The Supreme Court further explained the relationships entitled to constitutional protections:

> The Court has long recognized that, because the Bill of Rights is designed to secure individual liberty, it must afford the formation and preservation of certain kinds of highly personal relationships a substantial measure of sanctuary from unjustified interference by the State. Without precisely identifying every

9

> consideration that may underlie this type of constitutional protection, we have noted that certain kinds of personal bonds have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs; they thereby foster diversity and act as critical buffers between the individual and the power of the State. * * *
>
> The personal affiliations that exemplify these considerations, and that therefore suggest some relevant limitations on the relationships that might be entitled to this sort of constitutional protection, are those that attend the creation and sustenance of a family—marriage; childbirth; the raising and education of children, and cohabitation with one's relatives. Family relationships, by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life. Among other things, therefore, they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship.

*Id.* at 619–620 (internal citations omitted).

Following *Roberts*, the Sixth Circuit has recognized that intimate associations broader than those of family members are protected. *See Beecham v. Henderson Cnty., Tenn.*, 422 F.3d 372, 375 (6th Cir. 2005) (suggesting that engaged couples have constitutional protection); *Anderson v. City of LaVergne*, 371 F.3d 879, 881–882 (6th Cir. 2004) (stating that couple in a romantic, sexual, and monogamous relationship have a constitutionally-protected intimate relationship); *Akers v. McGinnis*, 352 F.3d 1030, 1039–1040 (6th Cir. 2003) ("Personal friendship is protected as an intimate association."). The intimate relationship of an engaged couple living together is protected under this clearly established law. The Court concludes that Plaintiffs have established a plausible claim at the dismissal stage that Officer Hooven retaliated against or interfered with Plaintiffs' clearly established First Amendment right to engage in an intimate relationship when he obtained access to confidential SACWIS information about Mr. Taylor and disclosed it to Ms. Hooven. *See Bloch*, 156 F.3d at 682 (denying qualified immunity to officials for the public disclosure of highly personal information about a plaintiff's rape in retaliation for public criticism). The Court will not dismiss Count 1 on the basis of qualified

10

immunity.

Turning to Count 3, Plaintiffs alleged that Officer Hooven violated Mr. Taylor's substantive due process right to privacy. (Doc. 55 at PageID 420–422.) Officer Hooven does not dispute that individuals have a clearly established informational right to privacy that includes an interest in avoiding disclosure of information of a sexual, personal, and humiliating nature. *See Lambert*, 517 F.3d at 440; *Bloch*, 156 F.3d at 683. Nonetheless, he asserts that these cases would not have put a reasonable officer on notice that disclosing to his ex-wife confidential SACWIS information about her fiancé was a violation of the fiancé's informational right to privacy. The Court does not agree.

In *Bloch*, the public officials released at a press conference intimate details about the plaintiff being raped. 156 F.3d at 676, 683, 686. The Sixth Circuit held in *Bloch* that "a rape victim has a fundamental right of privacy in preventing government officials from gratuitously and unnecessarily releasing the intimate details of the rape where no penalogical purpose is being served." *Id.* at 686. The Sixth Circuit recognized the "historic social stigma [ ] attached to victims of sexual violence." *Id.* It more broadly recognized "an individual's right to control the nature and extent of information [of a sexual, personal, and humiliating nature] released about that individual." *Id.* at 683; *see also Lambert*, 517 F.3d at 440 (quoting and reaffirming *Bloch*).

Plaintiffs alleged that Officer Hooven told Ms. Hooven that Mr. Taylor had been "physically and sexually abused as a child." (Doc. 55 at PageID 411.) Officer Hooven suggested to Ms. Hooven that Mr. Taylor was not trustworthy around their children because he was the alleged victim of abuse. (*Id.*) Plaintiffs alleged that Officer Hooven took that action to interfere with and retaliate against Mr. Taylor's intimate relationship with Ms. Hooven, not to further a governmental interest. (*Id.* at PageID 417.) Officer Hooven should have known that

11

the disclosure of information of alleged child abuse—which is clearly of a sexual, personal or humiliating nature—to Ms. Hooven violated Mr. Taylor's clearly established right to control whether and how to disclose such information to his fiancé. *See Lambert*, 517 F.3d at 440; *Bloch*, 156 F.3d at 683. The Court will not dismiss Count 3 on the basis of qualified immunity.

### 2. Count 9

Plaintiffs asserted in Count 9 that Officer Hooven is liable for abuse of process because he "perverted the civil custody proceeding to attempt to accomplish the ulterior motive of securing leverage over Ms. Hooven and to extort a more favorable result for himself." (Doc. 55 at PageID 426.) More specifically, they alleged he attempted to "eliminate or reduce his child support obligation and to modify their parenting schedule to be more favorable to him." (*Id.*) The Court dismissed the claim because Plaintiffs did not allege facts indicating that Officer Hooven sought to obtain a collateral benefit in the custody proceedings that the proceedings were not designed to give. *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St. 3d 294, 298, 626 NE.2d 115, 118, 194-Ohio-503 (1994). Officer Hooven does not prove any clear error of law by the Court in the Motion for Reconsideration. The Court reaffirms this holding.

**B.     Counts 2 and 4 against the City of Cincinnati**

Plaintiffs asserted in Counts 2 and 4 that the City of Cincinnati violated their First Amendment and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. (Doc. 55 at PageID 418–420, 422.) The Court dismissed those claims on two independent bases: (1) the lack of state action by Officer Hooven and (2) Plaintiffs' failure to plead facts sufficient to state a plausible claim of municipal liability under *Monell*. (Doc. 75 at PageID 684–689.) Although the Court erred in part as to the first basis as discussed in Section I(A) above, it did not err on the second basis. Plaintiffs move for the Court to reconsider the holding that they failed to plead a

basis for municipal liability.

Plaintiffs appear to argue that the Court too strictly applied the *Iqbal/Twombly* standard, but they do not make a more specific argument of how the Court wrongly applied the legal standard to the facts alleged in the First Amended Complaint.  The City of Cincinnati cannot be held liable on the basis of respondeat superior.  *Morgan v. Fairfield Cnty., Ohio*, 903 F.3d 553, 565 (6th Cir. 2018).  Plaintiffs failed to plead facts to plausibly allege that the City endorsed, ratified, or acquiesced in Officer Hooven's alleged wrongdoing, had a policy or practice of supporting similar wrongdoing, or failed to train on the proper procedure under the Memorandum of Understanding.  The Court reaffirms its holding to dismiss the claims against the City.

**C.  Count 3 against Ms. Paul**

Plaintiffs alleged in Count 3 that Officer Hooven and Ms. Paul violated Mr. Taylor's rights under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983.  Ms. Paul did not move to dismiss the claim against her.  The Court inadvertently stated in the Conclusion section of the Dismissal Order that Count 3 was dismissed against Officer Hooven and Ms. Paul, but it was a typographical or clerical error to dismiss the claim against Ms. Paul.  The Court will amend the Dismissal Order to correct this error.

**II.  MOTION TO CERTIFY DISMISSAL ORDER AS "FINAL" UNDER RULE 54(b)**

As an alternative to its Motion for Reconsideration, Plaintiffs also move the Court to certify the interlocutory Dismissal Order as "final" with "no just reason for delay" pursuant to Federal Rule of Civil Procedure 54(b) so that they can file an appeal.  The Court is granting the Motion for Reconsideration in part.  It is unclear that Plaintiffs would seek to immediately appeal

the Dismissal Order as amended herein. The Court will deny the Motion to Certify at this time.

### III. CONCLUSION

Plaintiffs' Joint and Consolidated Motion for Reconsideration of the Court's January 3, 2024 Order, or Alternatively, to Certify the Same as "Final" Under Rule 54(b) (Doc. 84) is **GRANTED IN PART AND DENIED IN PART**. The Motion for Reconsideration is granted in so far as the January 3, 2025 Dismissal Order is amended in two ways. First, Counts 1 and 3 are not dismissed against Officer Hooven to the extent Plaintiffs alleged that Officer Hooven requested Ms. Paul to query Mr. Taylor in the SACWIS database and then disseminated the confidential information to Ms. Hooven. Second, Count 3 is not dismissed against Ms. Paul.[3]

These claims are **DISMISSED WITH PREJUDICE**:

- Count 1 and Count 3 against Officer Hooven to the extent Plaintiffs allege that he tried to pressure school officials and parents into sharing information about Ms. Hooven and Mr. Taylor;
- Count 2 against the City;
- Count 3 against Officer Hooven;
- Count 4 against the City;
- Count 6 against Officer Hooven; and
- Count 9 against Officer Hooven.

Finally, the Plaintiffs' Motion to Certify is denied at this time.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge

---

[3] Plaintiffs do not challenge the Dismissal Order to the extent that the Court dismissed Count 6 against Officer Hooven or the extent that the Court did not dismiss Counts 7 and 8 against Officer Hooven.