DEFENDANT'S EXHIBIT 6 MKS 4-6-26 PENGAD 800-631-6989

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **BRENDON TAYLOR, et al.,** | ) | **Case No. 1:24-cv-0204** |
| **Plaintiffs,** | ) | **Judge: Hon. Susan J. Dlott** |
| **v.** | ) | |
| **JESSE LEE ANTHONY HOOVEN, individually and acting under color of State law, *et al.*,** | ) | |
| **Defendants.** | ) | |

**FIRST AMENDED COMPLAINT AND JURY DEMAND**

**COME NOW** Plaintiffs, Brendon Taylor and Holly Hooven, by and through counsel, and for their First Amended Complaint and Jury Demand against Defendants Jesse Lee Anthony Hooven individually and acting under color of State law, the City of Cincinnati, Madison M. Paul individually and acting under color of State law, the Hamilton County Board of County Commissioners, and the Hamilton County Department of Jobs and Family Services, state as follows:

**NATURE OF THIS CASE**

1. Plaintiffs bring this civil action against Defendant and City of Cincinnati police officer Jesse Lee Anthony Hooven and Defendant Madison M. Paul, a former employee of the Hamilton County Board of County Commissioners and Hamilton County Department of Jobs and Family Services, jointly and severally in their capacities as public officials acting under color of state law under 42 U.S.C. §1983 ("Section 1983"), for depriving them of their rights, privileges, and immunities secured by the First and Fourteenth Amendments to the United States Constitution and federal law in connection

with their unlawful and retaliatory accessing and dissemination of confidential juvenile records in violation of Plaintiffs' clearly defined constitutional rights.

2. Plaintiffs also proceed against Officer Hooven and Ms. Paul in their official capacities and acting under color of state law, jointly and severally under 42 U.S.C. §1985(3) ("Section 1985(3)") for conspiring to interfere with and deprive them of their civil rights, equal protection of laws, and privileges and immunities under the United States Constitution and the laws of the United States.

3. Plaintiffs further proceed separately against Defendants the City of Cincinnati, the Hamilton County Board of County Commissioners, and the Hamilton County Department of Jobs and Family Services (collectively "the Municipal Defendants" unless otherwise indicated) under Section 1983 for "Monell Liability" for adopting, ratifying, approving, and endorsing the unlawful and unconstitutional conduct of Officer Hooven and Ms. Paul, in their respective capacities as public officials acting under color of state law, which constitutes violations of Plaintiffs' well established constitutional rights, and in accordance with the Municipal Defendants' respective policies, procedures, and customs, as the moving force for the same.

4. Plaintiffs finally allege tort claims against Officer Hooven and Ms. Paul in their individual capacities for intentional infliction of emotional distress, wrongful intrusion, and abuse of process.

5. By this civil action, Plaintiffs seek compensatory damages, damages for emotional distress and psychological injuries, equitable relief, injunctive relief, punitive damages, pre-and post-judgment interest, reimbursement of their attorney's fees and

costs, and all other relief to which they're entitled from Defendants, jointly and severally in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**PARTIS, JURISDICTION, AND VENUE**

6. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

7. Plaintiff Brendon Taylor is a resident of Campbell County, Kentucky.

8. Plaintiff Holly Hooven is a resident of Campbell County, Kentucky.

9. Defendant Jesse Lee Anthony Hooven is a resident of Hamilton County, Ohio, and has been a City of Cincinnati police officer and public official acting under color of state law at all times relevant to this Complaint.

10. Defendant the City of Cincinnati ("the City") is an incorporated municipality within Hamilton County, Ohio.

11. Defendant Madison M. Paul is a resident of Hamilton County, Ohio, and was an employee of the Hamilton County Department of Jobs and Family Services and a public official acting under color of state law at all times relevant to this Complaint.

12. Defendant, the Hamilton County Board of County Commissioners ("the County Board"), is the elected administrative body for Hamilton County government, with its primary office located in Cincinnati, Ohio.

13. Defendant the Hamilton County Department of Jobs and Family Services ("JFS") is a political subdivision of the State of Ohio and/or Hamilton County, Ohio, and recipient of federal funds, with a central office located in Cincinnati, Ohio.

14. This Court has personal jurisdiction over the parties to this action and subject matter jurisdiction over the controversy alleged in this Complaint under 28 U.S.C. §1331 based on the federal questions presented and under 28 U.S.C. §1367 based on the Court's supplemental jurisdiction over Plaintiffs' claims arising under State law, which arise as part of the same case and controversy as their claims arising under federal law.

15. The United States District Court for the Southern District of Ohio, Western Division, at Cincinnati, is the appropriate venue for this civil action.

## FACTS

### The Parties

16. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

17. Mr. Taylor is a sergeant and chaplain's assistant in the Ohio Army National Guard. He's been a member of the Army since 2013.

18. Mr. Taylor has also owned and operated an auto detailing business located in Miamisburg, Ohio, since 2017.

19. Mr. Taylor has two minor children born of previous relationships: a son living in Nashville, Tennessee, and a daughter living in Austin, Texas.

20. Holly Hooven earned a Master of Social Work from the University of Cincinnati in 2016 and is employed as a licensed independent social worker.

21. Holly Hooven and Mr. Taylor began dating in February 2023.

22. Holly Hooven and Mr. Taylor are engaged to be married and cohabitate in a home she owns in Ft. Thomas, Kentucky.

23. Officer Hooven has been employed by the City as a police officer since 2014.

24. Holly Hooven and Officer Hooven were married in Cincinnati in June 2015 and have two minor children born of the marriage. In January 2019, the Hamilton County Domestic Relations Court entered a Decree of Dissolution of their marriage in Case No. DR1801899.

25. Ms. Paul was employed by the County and or JFS as a Children's Services Worker between May 2016 and February 2018 and as an Assessment Supervisor from February 2018 until October 2023.

26. Between November 2023 and April or May of 2024, Ms. Paul was employed as a guardian *ad litem* and court-appointed special advocate for children by ProKids, an Ohio nonprofit corporation located in Cincinnati.

27. The County Board is made up of three elected members. It serves as the taxing, budgeting, appropriating, and purchasing authority for Hamilton County, Ohio, and holds title to all County property.

28. JFS is a public agency managed by the County Board and administers state, federal, and local programs supplying children's services, child support, adult protection services, cash assistance, food assistance, medical assistance, and workforce development programs to Hamilton County residents.

29. JFS has approximately 850 employees and is the largest Department within the Hamilton County government.

30. JFS reports directly to the County Board.

31. Since their divorce, Officer Hooven has driven conflict with Holly Hooven regarding the custody of their minor children and has taken it upon himself to retaliate against her and Mr. Taylor in his capacity as a police officer acting under color of state law by directly and indirectly interfering in their private and consensual intimate relationship.

32. For example, Officer Hooven (a) regularly appears armed and in uniform at the children's schools and extracurricular events while on duty and/or immediately before or after his shifts to (b) speaks about his quarrels with Holly related to child custody; (c) in his capacity as a police officer acting under color of state law, slanders, defames, maligns, and falsely accuses Mr. Taylor of being a person who shouldn't be trusted; (d) in his capacity as a police officer acting under color of state law, pressures teachers, administers, and parents associated with the school attended by his minor children with Holly to keep tabs on Holly and Mr. Taylor for him; and (e) in his capacity as a public official acting under color of state law, pressures teachers, administrators, and parents to report back to him about Mr. Taylor's comings and goings, associations, and vehicle identifications and descriptions.

33. Officer Hooven has also enlisted or tried to enlist, the neighbors of Mr. Taylor and Holly Hooven to spy on them and report back to him about their comings and goings and the identities of visitors to their residence.

**<u>The Memorandum of Understanding Among the Municipal Defendants</u>**

34. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

35. According to City records, since at least June 15, 2015, there's been a Memorandum of Understanding among the Municipal Defendants and other public agencies in effect under Ohio Revised Code §2151.421 and OAC 5101:2-33-26 that "sets forth the normal operating procedure employed by concerned officials in the execution of their respective responsibilities" with respect to reporting child abuse and neglect ("the MOU"). (**Exhibit 4**) [Doc.54-1].[1]

36. According to the MOU, "law enforcement officers handling child abuse and neglect cases" are required participants in the policies underlying its mandate and enforcement mechanisms giving it effect.

37. According to the MOU:

> The Personal Crimes Unit ("PCU") of the Cincinnati Police Department is charged with the responsibility for the investigations of suspected cases of child abuse and neglect occurring within the City of Cincinnati.

Upon information and belief, Officer Hooven isn't and has never been assigned to the PCU at any time relevant to this Complaint. According to the MOU, the Prosecutor's Division of the City of Cincinnati Law Department works with the Cincinnati Police Department in the prosecution of misdemeanor violations brought against adult perpetrators in child abuse and neglect cases. The Division may also work with the Police Department in the preliminary aspects of felony child abuse cases.

38. According to the MOU:

> JFS is the local organization legally responsible for taking reports of child abuse, neglect, and dependency; investigating those reports; assessing the safety of children; and acting to protect child victims and children at risk. When necessary, JFS caseworkers, with consultation and representation

---

1 According to records supplied by the City, the MOU has been updated and revised several times since 2015.

> from the Hamilton County Prosecutor's Office, initiate action in Juvenile Court to order participation in services or out-of-home placement for a child. HCJFS caseworkers also make reports to the appropriate law enforcement agency whenever the level of evidence suggests the possibility of a criminal offense.

39. CPD patrol officers like Officer Hooven "may respond initially to all calls of potential child abuse or neglect 24 hours, 7 days per week." "Patrol officers will conduct a preliminary investigation of the allegation." "***The patrol officer will notify PCU on all incidents*** identified as suspected child abuse or neglect encountered during patrol activities via a NIBRS report or a PCU Memorandum" (emphasis supplied).[2] "The Cincinnati Police Department's PCU is also notified by JFS of cases involving suspected child abuse and neglect in their jurisdiction."

40. Under the section of the MOU entitled "Cooperation between Law Enforcement & JFS":

> JFS makes an immediate report to law enforcement when the level of evidence suggests the possibility of a criminal offense. When a municipal or county law enforcement officer receives a report concerning the possible abuse or neglect of a child or possible threat of abuse or neglect of a child, the officer who receives the report will refer the report to JFS.

[2] Upon information and belief, "NIBRS" refers to the National Incident-Based Reporting System maintained by the FBI.

41. Under the MOU, law enforcement is further empowered as follows:

| | |
|---|---|
| **Law Enforcement** | Contact with the law enforcement agency of proper jurisdiction will occur with each report alleging child sexual abuse, and when a young child is found alone. In addition, a referral will be made to the appropriate law enforcement agency anytime a case of child abuse and neglect appears to require the fact-finding expertise of law enforcement for the purpose of criminal investigation. Consultation for the purpose of determining the need for law enforcement assistance will occur when any of the following conditions exist:<br>• The Public Children's Services Agency (PCSA) has reason to believe the child is in immediate danger of serious harm.<br>• An exigent circumstance exists.<br>• The PCSA worker must conduct a home visit after regular PCSA business hours and a law enforcement escort is requested as a standard operating procedure.<br>• The PCSA is removing a child from his or her family via an order of the court and the assistance of law enforcement is needed as the PCSA has reason to believe the family will challenge the removal.<br>• The PCSA is working with a family that has historically threatened to do harm to PCSA staff.<br>• The social worker's safety is threatened<br>• There is a history of violence in the home<br>• Firearms are known to be in the home<br>• The home is known (or there is information to reasonably believe) to be involved in illegal drug or alcohol activities.<br>• A joint investigation is indicated because of the serious nature of the child abuse and neglect report, or whenever prosecution of a perpetrator appears necessary<br>• Initiating criminal prosecution of a child abuse or neglect perpetrator with the consulting guidance of the prosecuting attorney's office<br>• Filing charges against a perpetrator in which plans for the care of children may be needed<br>• The report involves any institution, facility, or family foster home, which is licensed, approved, or certified by HCJFS; or involves an employee or volunteer working with HCJFS. |

42. According to the MOU, the goals of the Municipal Defendants and other public agencies are as follows: (a) to conduct comprehensive and coordinated investigations of suspected child abuse and neglect; (b) to eliminate all unnecessary interviews of children who are the subject of a report of suspected child abuse or neglect; and (c), to provide, when feasible, for only one interview of a child who is the subject of a report of suspected child abuse or neglect. According to the MOU, "[t]he intent of the interview of the child is to gather sufficient information to use in criminal prosecution as warranted; to identify risk to the child; and to determine any service needs of the family."

43. "Appendix 4" of the MOU sets forth comprehensive confidentiality requirements for the dissemination of information related to child abuse and neglect under OAC 5101:2-33-21. For example, under OAC 5101:2-33-21(A):

> Each referral, assessment/investigation, and provision of services related to reports of child abuse, neglect, dependency, or family in need of services ("FINS") is confidential. Information contained in the statewide automated child welfare information system ("SACWIS") is confidential pursuant to section 5101.131 of the Revised Code. This information may be shared only when dissemination is authorized by this rule. Each report and assessment/investigation of alleged child abuse or neglect is confidential and may be shared only when dissemination is authorized by this rule.

44. SACWIS is a database shared by each of Ohio's 88 public children's service agencies, including Hamilton County Child Protective Services ("CPS"), an agency within JFS. The Ohio Legislature created SACWIS in 2006 to comply with the strict confidentiality requirements of the United States Social Security Administration.

45. According to the County, certain JFS employees, Like Ms. Paul, are trained on how to properly cooperate with law enforcement agencies, like CPD, as part of their job duties. [Doc.45, ¶8, at #306]. This coordination includes, without limitation, the "dissemination of information obtained through SACWIS to law enforcement officers who are investigating a report of child abuse and neglect." [*Id.*, at ¶9]. Per the MOU, JFS records all case information in SACWIS. Per the MOU, the authorization of the dissemination of SACWIS data shall be documented.

46. Under the authority vested in JFS employees like Ms. Paul and CPD Officers like Officer Hooven, it's common and customary for JFS employees to share information with police officers in the normal course of their employment with JFS to assist in

investigations. This is because, according to the County and JFS, the fruits of such information are to remain confidential. [Doc.45, ¶9, at #306].

47. JFS employees are only authorized to share information gleaned from SACWIS with other public officials delineated in Section 5101:2-33-26.

48. There's a procedure for handling the unauthorized dissemination of confidential SACWIS information:

| Unauthorized Dissemination of Information | |
| --- | --- |
| **Procedure for Unauthorized Dissemination of Information** | When any person commits, causes, permits or encourages the unauthorized dissemination of information concerning reports and investigations of child abuse or neglect, HCJFS shall give written notification of such unauthorized dissemination to the County Prosecutor or City Solicitor. The reporter's identity is confidential and is not to be confirmed or denied, except as permitted by law. |

**The Coordinated Acts of Officer Hooven and Ms. Paul**
**in their Capacities as Public Officials Acting Under the Color of State Law**

49. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

50. The MOU makes clear that, but for one's status as a public official acting under color of state law, one cannot lawfully gain access to SACWIS data.

51. Officer Hooven met Ms. Paul in March of 2023 while Officer Hooven was assisting Ms. Paul in a call for services, with Officer Hooven in his capacity as a Cincinnati Police Officer and Ms. Paul in her capacity as a JFS employee, both acting under color of state law.

52. In March and April of 2023, Officer Hooven asked Ms. Paul to use her position as a public official acting under color of state law to use the SACWIS system to investigate Mr. Taylor.

53. According to Ms. Paul, she "was trained by JFS to consider Cincinnati Police Officers partners with JFS and that it was part of her job duties to treat the officers as partners and to work to help assist them as such." [Doc.43, ¶8, at #290]. According to Ms. Paul, "Officer Hooven served as a Cincinnati Police Officer" at all times relevant to her Crossclaim against him. [*Id.*, at ¶6].

54. As a Children's Services Worker with JFS, Ms. Paul had access to SACWIS, and in the normal course of her job with JFS, she accessed SACWIS to obtain information needed to perform her job duties.

55. Upon accessing SACWIS, Ms. Paul disseminated confidential CPS Records about Mr. Taylor and his son to Officer Hooven.

56. On or about April 11, 2023, Officer Hooven disseminated the information supplied to him by Ms. Paul to Holly Hooven in a text message exchange:

> Remember when you sent me all that stuff about child molestation and people and what not? But yet you wavy to leave my child with someone who was physically and sexually abused as a child. You want to leave my children with a guy who Montgomery County told to file for emergency custody of his child because of how bad he had it with his mom in Tennessee and he couldn't be bothered with it. Have a good day holly. I'm not fighting with you. Willow can call when aiden wakes up.

> JFS worker told me. Said both were there.

> And I'm not dumb enough to use leads in a way that I'm but allowed. That's a felony and I lose my job.

57. When Holly asked Officer Hooven who supplied him with this information, he responded:




58. On or about April 11, 2023, Mr. Taylor filed a formal complaint against Ms. Paul with JFS.

59. On or about April 12, 2023, Mr. Taylor filed a complaint against Officer Hooven with the City of Cincinnati Citizen Complaint Authority ("CCA"), the City agency tasked with investigating citizen complaints of police misconduct. (**Exhibit 2**) [Doc.1, at ##35-38].

60. In his CCA Complaint, Mr. Taylor alleged that Officer Hooven "used his official capacity as a police officer to obtain information about his juvenile history with JFS." [Doc.1, at ##35-38].

61. The CCA then referred the matter to the Cincinnati Police Department ("CPD") Internal Investigations Section ("IIS") for further investigation. [Doc.1, at ##35-38].

62. IIS opened an investigation into Officer Hooven's conduct on or about April 14, 2023. (**Exhibit 1**) [Doc.1, at ##29-34].

63. In May 2023, Officer Hooven initiated formal proceedings against Holly in Case No. DR1801899, to modify his child support obligation and the shared custody of their minor children.

64. Since then, Officer Hooven has aggressively abused the process of the Domestic Relations Court to retaliate against Holly and Mr. Taylor for objecting to and reporting his conduct undertaken in his capacity as a police officer and public official acting under color of state law.

65. On or about June 6, 2023, JFS suspended Ms. Paul for eight days without pay to be served on June 9, 2023, for "gross misconduct, neglect of duty, nonfeasance, and failure of good behavior" but took no further action.

66. On or about June 22, 2023, ISS found in part:

> Within a day of meeting [Ms. Paul] and speaking in their personal time, Officer Hooven began talking about his ex-wife, Ms. Hooven, and her new boyfriend, Mr. Taylor. Officer Hooven told Ms. Paul that he was concerned about Mr. Taylor's past considering he was around Officer Hooven's children. Officer Hooven did not offer Ms. Paul specific safety concerns for his children. Officer Hooven asked Ms. Paul if she could query Mr. Taylor in JFS database to see if Mr. Taylor had a record. Ms. Paul was aware the information Officer Hooven was requesting was for his personal knowledge, and not for a law enforcement-related investigation.
>
> ....
>
> Within one day of meeting Ms. Paul, Officer Hooven began asking her about what databases she had access to in order to collect more information about Mr. Taylor. Officer Hooven told Ms. Paul that he was unable to use law enforcement databases to query information regarding Mr. Taylor.

[Doc.1, at ##31-32].

67. Despite the above findings and sustaining a finding of "Law Violation by an Officer" against Officer Hooven in 2022 related to his arrest in May 2022 for operating a vehicle while intoxicated in Hamilton County Municipal Court Case No. 22/TRC/2630, IIS Commander John B. Johnstone "exonerated" Officer Hooven of wrongdoing on or about June 23, 2023. [Doc.1, at ##29-34].

68. CPD Police Chief, Colonel Teresa A. Theetge, personally approved Officer Hooven's "exoneration" on July 25, 2023. [Doc.1, at ##29 and 34]. On the cover of the IIS investigation report, Chief Theetge hand-wrote the following note:

> [District 5] Commander to and Officer Hooven's Relief Commander to meet with Officer Hooven regarding this investigation. Meeting to be documented with a ESL.

[*Id.*, at #29]. According to the City Manual of Rules and Regulations Procedure 15.115, for which the Court may take judicial notice, "ESL" refers to "Evaluation Supplement Log," an entry which "documents personnel work performance, corrective measures, discipline and interventions to enhance employee effectiveness. These entries are used as supporting documentation for employee evaluation."

69. CPD and the Chief exonerated Officer Hooven despite him being known to Hamilton County Prosecutors in connection with his actions in relation to and following an OVI in connection with Case No. 22/TRC/2630, which landed him on the County's list of Brady violators. (**Exhibit 3**) [Doc.1, at ##39-71].

70. On the other hand, on or about September 21, 2023, the CCA sustained a finding of "misconduct" against Officer Hooven. [Doc.1, at #37]. In doing so, the CCA relied in part on the following language found in Section 0.5 of the CPD Manual of Rules and Regulations:

> Law enforcement is an honorable calling. Service in this field commands a professional rather than an occupational philosophy. Personal honor, a desire for professional status, and devotion to service above self are the motives that impel police officers to discharge their responsibility in full measure. Police officers' lives are ones of self-sacrificing service to a high ideal, based upon their recognition of the responsibilities entrusted to them and the belief that law enforcement is an honorable vocation .... They perform the functions of their office without fear, favor or prejudice, and do not engage in unlawful or improper practices.

[*Id.*, at #36]. In 2020, the CCA also sustained complaints against Officer Hooven for excessive force and improper procedure related to his body-worn camera. [*Id.*, at #38].

71. On or about October 18, 2023, Ms. Paul resigned from JFS.

## CAUSES OF ACTION

### Count I
### First Amendment Retaliation, 42 U.S.C. §1983: Holly Hooven and Mr. Taylor against Officer Hooven, in his official capacity, acting under color of state law

72. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

73. Section 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

74. As alleged in this First Amended Complaint, at all times relevant to the same, Officer Hooven was possessed of state authority by virtue of his position as a public official and police officer acting under color of state law, generally, and by virtue of the authority bestowed upon him by the MOU specifically.

75. Moreover, under Ohio Revised Code §9.69(B)(1), by virtue of being a police officer, Officer Hooven "holds public office on a continuing basis." Similarly, under Section 9.69(B)(2), Officer Hooven is "always on duty," regardless of whether he "is, or is not, officially within work hours or officially on the clock."

76. Officer Hooven was only able to gain access to SACWIS records by virtue of his authority as a public official and police officer acting under color of state law. But for that status, he never could have accessed any confidential information from SACWIS, much less confidential information about Mr. Taylor to disseminate to Holly.

77. At all times relevant to this Complaint, Holly Hooven and Mr. Taylor have had the clearly established right under the First Amendment to engage in a private, consensual, intimate relationship.

78. As alleged in this Complaint, and without limitation, Officer Hooven abused his authority as a public official and police officer acting under color of state law to violate the well-established First Amendment rights of Holly Hooven and Mr. Taylor to engage in a private, consensual, intimate relationship, by (a) approaching Ms. Paul to access confidential SACWIS data related to Mr. Taylor; (b) accessing the information supplied to him by Ms. Paul; (c) disseminating the confidential information he received from Ms. Paul to Holly; (d) using his authority as a police officer and public official to intimidate Holly and Mr. Taylor by trying to enlist others to report information back to him about them; and (e) using his position as a public official and police officer to false describe Mr. Taylor as someone who can't be trusted around children.

79. Officer Hooven's actions described in this First Amended Complaint were maliciously made under false pretenses and in abuse of his nondiscretionary authority as a police officer solely for the improper purposes of (a) interfering with the private and consensual intimate relationship between Holly Hooven and Mr. Taylor; (b) intimidating

Holly and Mr. Taylor; (c) retaliating against Holly and Mr. Taylor for engaging in their relationship; and (d) interfering with their clearly established constitutional rights.

80. Officer Hooven's actions described in this Complaint constitute materially adverse actions against Holly Hooven and Mr. Taylor under the First Amendment, Section 1983, and federal law.

81. Officer Hooven's actions alleged in this First Amended Complaint were calculated and were motivated, at least in part, by his desire to harm and retaliate against Holly Hooven and Mr. Taylor for engaging in their well-established First Amendment rights.

82. Officer Hooven knew that his conduct described in this Complaint deprived Plaintiffs of their clearly established rights, privileges, and/or immunities secured by the Constitution and laws, such that no reasonable public official would have done so. For example, and without limitation, (a) the State of Ohio still requires his access to confidential information in his official capacity as a police officer to remain confidential; (b) he overtly disapproved of the private, consensual relationship between Holly Hooven and Mr. Taylor, and sought to disrupt it; (c) he enlisted Ms. Paul to access SACWIS data in her official capacity on his behalf, which he couldn't do himself directly, and/or which he believed he couldn't lawfully do himself; (d) he reported to Holly Hooven that if he did so himself he'd be committing a felony; and (e) he lied to Holly Hooven about the nature of the information gleaned from SACWIS being "publicly available."

83. By his unlawful and dishonest conduct described in this Complaint, Officer Hooven intended to use the authority vested in him by the state and The MOU to retaliate

against Plaintiffs for exercising their clearly established constitutional rights to freely associate with each other and engage in a private, consensual intimate relationship, which would deter persons of ordinary firmness from continuing to engage in the same.

84. Officer Hooven's conduct alleged in this First Amended Complaint constitutes "state action," which is inherent to his authority and power as a police officer and public official despite the particular action of disseminating confidential information about Mr. Taylor to Holly Hooven being unlawful.

85. Thus, Officer Hooven exercised the actual authority bestowed upon him by the State despite misusing that authority by going beyond what the state entrusted to him, i.e., by misusing confidential information.

86. It's irrelevant, as a matter of law, that Officer Hooven might have taken the same action to retaliate against the Plaintiffs had he acted in a purely private capacity.

87. As a direct and proximate result of Officer Hooven's retaliation against Holly Hooven and Mr. Taylor in violation of the First Amendment, Plaintiffs have suffered compensable injuries in excess of the jurisdictional threshold of this Court to be determined by the trier of fact

**Count II**
***Monell* Liability, 42 U.S.C. §1983:**
**Holly Hooven and Mr. Taylor against the City: 1st Amendment**

88. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

89. As alleged in this First Amended Complaint, Officer Hooven acted in his official capacity as a police officer acting under color of state law at all times relevant to this same.

90. As alleged in this First Amended Complaint, Officer Hooven's actions described in the same violated the clearly established First Amendment rights of Holly Hooven and Mr. Taylor.

91. Officer Hooven's misconduct alleged in this Complaint occurred pursuant to the policies, procedures, and customs of the City and CPD, as evidenced in part by (a) the Chief of Police formally signing off on the exoneration of Officer Hooven such that the City and CPD either tolerated, approved of, endorsed, or ratified the same; (b) and the failure of CPD and the City to adequately train and supervise Officer Hooven as evidenced by (i) his willingness to use his position of authority as a police officer acting under color of state law to intimidate Holly and Mr. Taylor when trying to enlist others to report back to him their comings, goings, and associations; (ii) his willingness to surreptitiously enlist Ms. Paul to use the SACWIS system to access confidential information related to Mr. Taylor; (iii) to access that information himself upon Ms. Paul's investigation; and (iv) to disseminate that confidential information to Holly Hooven despite believing that if he accessed the information himself directly, he'd be committing a felony.

92. The toleration, endorsement, ratification, and/or acquiescence of the City and CPD to Officer Hooven's conduct described in this Complaint amounts to deliberate indifference to the constitutional rights of Holly Hooven and Mr. Taylor. This conclusion is bolstered by the scant IIS investigation into the same despite (a) Officer Hooven being a known Brady offender, (b) his misconduct associated with his 2022 OVI, (c) the finding of misconduct by the City, CPD, and IIS related to the same; (d) the finding of misconduct

related to Plaintiffs' allegations in this case by the CCA; and (e) the previous findings of the CCA related to Officer Hooven's misconduct in 2020.

93. Thus, the City's policies, procedures, and customs were the motivating force behind Officer Hooven's actions described in this Complaint.

94. The City is, therefore, liable in its own right under Section 1983 for violating Plaintiffs' First Amendment rights to associate with each other and engage in a private and consensual intimate relationship, separate and apart from the liability of Officer Hooven.

95. As a direct and proximate result of Officer Hooven's execution of the City's policies, procedures, and customs in violation of the First Amendment, Plaintiffs have suffered compensable injuries of a constitutional magnitude in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count III**
**Violation of the Fourteenth Amendment**
**Substantive Due Process Clause, 42 U.S.C. §1983:**
**Mr. Taylor against Officer Hooven and Ms. Paul**
**in their official capacities acting under color of state law**

96. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

97. Ms. Paul was also a public official acting in her nondiscretionary capacity under color of State law at all times relevant to this Complaint.

98. Ms. Paul is, therefore, also subject to Section 1983.

99. Ms. Paul was charged by State and federal law and the MOU to maintain the strict confidentiality of SACWIS records.

100. Despite that, Ms. Paul agreed to help Officer Hooven access SACWIS information related to Officer Hooven in their official capacities under color of state law.

101. Like Officer Hooven, Ms. Paul couldn't have accessed SACWIS information but for her position as a public official acting under color of state law.

102. The Due Process Clause of the Fourteenth Amendment provides that a State may not "deprive any person of life, liberty, or property, without due process of law."

103. To this end, the Fourteenth Amendment guarantees Mr. Taylor's substantive right and "interest in avoiding disclosure of personal matters" like the information contained in the CPS Records because that information is of a personal, sexual, and/or humiliating nature, i.e., a fundamental substantive "information right of privacy."

104. By illegally accessing and disseminating CPS Records related to Mr. Taylor, Officer Hooven, and Ms. Paul knowingly and deliberately abused their positions of authority in their official capacities under color of state law by violating his substantive information right to privacy.

105. The deliberate and unlawful acts and omissions of Officer Hooven and Ms. Paul described in this Complaint were arbitrary and capricious and would "shock the conscience" of any reasonable person.

106. Because of the nature of the sensitive and confidential information Ms. Paul and Officer Hooven accessed and disseminated about Mr. Taylor, they knew it would be detrimental to him by doing so.

107. Despite that, they did it anyway, such that they could only have done so intentionally and or recklessly to deprive Mr. Taylor of his informational right to privacy.

108. Indeed, the actions of Officer Hooven and Ms. Paul were materially detrimental to Mr. Taylor and constitute materially adverse action against him by them.

109. As a direct and proximate result of their intentional violations of Mr. Taylor's rights arising under the Fourteenth Amendment, Mr. Taylor has suffered compensable injuries within the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count IV**
**Monell Liability, 42 U.S.C. §1983:**
**Mr. Taylor against the City: 14th Amendment**

110. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

111. The City of Cincinnati is liable under Section 1983 for violating Mr. Taylor's Fourteenth Amendment substantive due process rights for the same reasons articulated in Counts I, II, and III of this Complaint.

112. As a direct and proximate result of Officer Hooven's execution of the City's policies, procedures, and customs in violation of the Fourteenth Amendment, Mr. Taylor has suffered compensable injuries of a constitutional magnitude in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count V**
**Monell Liability, 42 U.S.C. §1983:**
**Mr. Taylor against the County Defendants: 14th Amendment**

113. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

114. The County Defendants failed to properly train and supervise Ms. Paul, as evidenced by how easy it was for Officer Hooven to enlist her to help him access and disseminate confidential SACWIS information about Mr. Taylor, flatly contrary to the scope and spirit of the MOU that she relies on in her Crossclaims.

115. Yet the County and JFS put up no guardrails to prevent the misconduct of Officer Hooven and Ms. Paul described in this Complaint.

116. Even upon finding Ms. Paul to be guilty of "gross misconduct," "misfeasance," "neglect of duty," and "failure of good behavior," the County and JFS gave her a mild slap on the wrist in the form of unpaid leave for one business day without taking any other action. Thereafter, the County Defendants allowed Ms. Paul the same access to the same or similar confidential information in SACWIS until she resigned in October 2023.

117. By failing to properly train and supervise Ms. Paul on a matter so important as maintaining the confidentiality of SACWIS records, the County and JFS turned a blind eye to Ms. Paul's illegal activities under color of State such that they were deliberately indifferent to Mr. Taylor's rights arising under the Fourteenth Amendment.

118. By taking no meaningful action against Ms. Paul, despite their unequivocal findings, the plain scope and spirit of the MOU, and allowing her to retain the authority of her position, the County and JFS endorsed, ratified, and adopted Ms. Paul's misconduct as being consistent with their customs, policies, and practices, which were the moving forces behind the violations alleged in this Complaint.

119. The County Defendants are, therefore, liable in their own rights separate and apart from the liability of Officer Hooven and Ms. Paul.

120. As a direct and proximate result of Ms. Paul's execution of the policies, procedures, and customs of the County and JFS in violation of the Fourteenth Amendment, Mr. Taylor has suffered compensable injuries of a constitutional magnitude in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count VI**
**Civil Conspiracy to Violate Civil Rights, 42 U.S.C. §1985(3): Mr. Taylor and Holly Hooven against Officer Hooven and Ms. Paul in their official capacities acting under color of state law**

121. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

122. As described in this Complaint, Officer Hooven and Ms. Paul conspired against Plaintiffs to deprive them, directly and indirectly, of the equal protection of the laws and the equal privileges and immunities of the laws secured by the United States Constitution and federal law.

123. As described in this Complaint, Officer Hooven and Ms. Paul took the overt acts of illegally accessing, using, and disseminating the CPS Records in furtherance of their conspiracy against Mr. Taylor and Ms. Hooven.

124. As a direct and proximate result, Plaintiffs have suffered compensable injuries to their persons and property and have been deprived of their rights and privileges afforded citizens of the United States, in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count VII**
**Intentional Infliction of Emotional Distress:**
**Mr. Taylor and Holly Hooven against Officer Hooven individually**

125. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

126. By his acts described in this Complaint, Officer Hooven either intended to cause Plaintiffs emotional distress and knew, or should have known, that the same would result in serious emotional distress to them.

127. Officer Hooven's conduct described in this Complaint was so extreme and outrageous as to go beyond all bounds of decency and was utterly intolerable in a civilized society.

128. As a direct and proximate result, Plaintiffs have suffered compensable mental anguish, emotional distress, psychological injuries so serious that no reasonable person could be expected to endure them, and other compensable injuries in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

**Count VIII**
**Wrongful Intrusion:**
**Mr. Taylor against Officer Hooven and Ms. Paul individually**

129. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

130. As described in this Complaint, Officer Hooven and Ms. Paul wrongfully intruded into Mr. Taylor's private affairs when they illegally accessed and disseminated his CPS Records without any lawful purpose.

131. Officer Hooven and Ms. Paul did so in a manner that would outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.

132. As a direct and proximate result, Mr. Taylor has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

## <u>Count IX</u><br>Abuse of Process<br>Holly Hooven against Officer Hooven individually

133. Plaintiffs incorporate and reallege the preceding allegations and paragraphs of this First Amended Complaint as if fully rewritten.

134. As described in this Complaint, Officer Hooven initiated a civil judicial proceeding against Ms. Hooven between March of 2023 and the present to eliminate or reduce his child support obligation and to modify their parenting schedule to be more favorable to him.

135. He commenced that civil proceeding properly and with probable cause.

136. As described in this Complaint, Officer Hooven subsequently perverted the civil custody proceeding to attempt to accomplish the ulterior motive of securing leverage over Ms. Hooven and to extort a more favorable result for himself, purposes for which custody proceedings aren't designed.

137. Officer Hooven's conduct described in this Complaint, therefore, constitutes abuse of process under Ohio law.

138. As a direct and proximate result, Ms. Hooven has suffered damages in excess of the jurisdictional threshold of this Court to be determined by the trier of fact.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Brendon Taylor and Holly Hooven pray for judgment against Defendants Jesse Lee Anthony Hooven, the City of Cincinnati, Madison Paul, the Hamilton County Board of County Commissioners, and the Hamilton County Department

of Jobs and Family Services, jointly and severally as follows: (a) a finding that none of the Defendants are entitled to a defense of qualified immunity; (b) a finding that none of the Defendants are entitled to a defense of Eleventh Amendment immunity; (c) a finding that the City of Cincinnati is liable in its own right under Section 1983 for violating Plaintiffs' First and Fourteenth Amendment rights under its policies, procedures, and customs; (d) a finding that the Hamilton County Board of County Commissioners and JFS are liable in their own rights under Section 1983 for violating Mr. Taylor's Fourteenth Amendment rights under its policies, procedures, and customs; (e) by awarding Plaintiffs compensatory damages, statutory damages, damages for emotional distress and psychological injuries, equitable relief, and pre and post judgment on all damages and equitable relief; (f) by awarding them punitive damages; (g) by awarding them reimbursement of their attorney's fees and costs; and (h) by awarding them all other relief to which they're entitled.

**DATED: August 30, 2024.**

Respectfully submitted,

*/s/ Justin Whittaker*
Justin Whittaker, Esq. (0093212)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
(513) 475-5545
(513) 436-0698 Fax
Justin@WhittakerLawFirm.com

**Counsel for Plaintiffs**
**Brendon Taylor and Holly Hooven**

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

***/s/ Justin Whittaker***
Justin Whittaker, Esq. (0093212)
WHITTAKER LAW, LLC
2055 Reading Road, Suite 260
Cincinnati, Ohio 45202
(513) 475-5545
(513) 436-0698 Fax
Justin@WhittakerLawFirm.com

**Counsel for Plaintiffs**
**Brendon Taylor and Holly Hooven**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing was electronically filed on **August 30, 2024**, with the Clerk of this Court via the CM/ECF system and served on counsel for the parties via the Court's electronic filing system. A hard copy was served via regular mail to all parties not served by the Court's electronic filing system.

***/s/ Justin Whittaker***
Justin Whittaker, Esq. (0093212)