city of
CINCINNATI
*Interdepartmental Correspondence Sheet*

DEFENDANT'S EXHIBIT 10 MKS 4-6-26

**Date:** September 21, 2023

**Case:** #23072 **Investigator:** Morgan Givens

**Complaint Received:** April 12, 2023 **Complainant:** Brendon Taylor

---

CCA completed an investigation of CCA Complaint No. 23072 by Brendon Taylor. This report is intended to convey the conclusions reached as a consequence of the investigation, and the basis for those conclusions. This report does not purport to summarize all evidence uncovered during the course of the investigation, nor is it intended to summarize the entirety of CCA's file on this matter.

**Complaint Summary:**

Mr. Taylor alleged that Officer Jesse Hooven used his official capacity as a police officer to obtain information about his juvenile history with the Hamilton County Job and Family Services (HCJFS).

Mr. Taylor became aware that his juvenile history with HCJFS may have been compromised when Officer Hooven contacted Witness B and sent text messages which stated that Officer Hooven became aware of the information from an HCJFS employee. Witness B alleged that Officer Hooven obtaining such information should be a Law Enforcement Automated Data System violation, Officer Hooven responded, "Ok, that's fine he can report me... I didn't search him so he'll be wasting his time, but he should still do it."

**Allegations:**

Misconduct

**Persons Involved:**

Officer Jesse Hooven, #P0111, M/W/26 (CPD, Subject Officer)
Witness A, F/W/29 (Citizen, Involved)
Witness B, F/W/35 (Citizen, Witness)
Brenden Taylor, M/W/31 (Complainant, Involved)

**Evidence Reviewed:**

CPD Records Management System (RMS)
CPD Internal Investigation Section (IIS) Report
Statements by officers, complainant, and relevant witnesses
Screenshots of text messages between Officer Hooven and Witness B

**Significant Discrepancies or Clarifications:**

Officer Hooven and Witness B were previously married and are undergoing a custody battle.

Witness B and Mr. Taylor are dating.

Witness A is a Hamilton County Job and Family Services (HCJFS) employee whom Officer Hooven met in his official capacity. Witness A and Officer Hooven continued communication and developed a consensual personal relationship.

Witness A stated that she had since ended the relationship because Officer Hooven had another girlfriend.

In his CCA interview, Officer Hooven described Witness A as "a friend" that he "didn't know that well" and did not explicitly disclose their romantic relationship. The romantic nature of their relationship as described by Witness A was confirmed in IIS report 2023-102.

There is a discrepancy in who initiated the search for information conducted by Witness A. Witness A says that Officer Hooven asked her to look the name up, Hooven says that she looked the name up unsolicited.

<u>Authorities</u>:

CPD Manual of Rules and Regulations § 0.5 (Code of Ethics)

<u>Analysis</u>:

**Allegation: Misconduct**

Mr. Taylor alleged that Officer Hoven obtained information pertaining to his juvenile HCJFS records through illicit means.

Despite the facts uncovered during this investigation, there is insufficient evidence regarding the subject officer's motivation or intent. Specifically, notwithstanding our efforts to obtain such evidence, CCA does not have information revealing whether Officer Hooven sought out the information about Mr. Taylor or if the information was provided unsolicited by Witness A.

CPD's Code of Ethics requires professionalism at all times and establishes the following standard for officers:

> Law enforcement is an honorable calling. Service in this field commands a professional rather than an occupational philosophy. Personal honor, a desire for professional status, and devotion to service above self are the motives that impel police officers to discharge their responsibility in full measure. Police officers' lives are ones of self-sacrificing service to a high ideal, based upon their recognition of the responsibilities entrusted to them and the belief that law enforcement is an honorable vocation...They perform the functions of their office without fear, favor, or prejudice and do not engage in unlawful or improper practices.

Although CCA could not determine whether or not Officer Hooven sought out the information regarding Mr. Taylor's juvenile history with Children Services, CCA determined that regardless, Officer Hooven is a nine-year veteran of CPD and is aware that HCJFS records are confidential; instead of preventing a further spillage of said information, he shared it with Witness B. In his CCA interview, Officer Hooven acknowledged that he texted Witness B to inform her about the information obtained from Witness A. Mr. Taylor provided CCA with a copy of the text messages where Officer Hooven confronted Witness B about Mr. Taylor's juvenile involvement with HCJFS.

CCA has intentionally refrained from outlining the specific details that Officer Hooven allegedly texted Witness B to prevent further spillage of Mr. Taylor's confidential juvenile records. In the text exchange, Witness B confronted Officer Hooven about how he gained access to the records, "How did you know about past [REDACTED] as a child? That's not public knowledge." Officer Hooven responded, "JFS worker told me. Said both were there." Witness B stated, "Ok. Well, I told Brendon everything that is going on and he said there is no way that his childhood would be public knowledge and he is reporting you for a LEADS violation… I'm on hold with CPS now." Officer Hooven responded, "Ok, that's fine he can report me… I didn't search him so he'll be wasting his time but he should still do it."

Witness A admitted that she should not have searched for the information when prompted by Officer Hooven. She emphasized that Officer Hooven provided her with Mr. Taylor's information, and she believed that he was genuinely worried about his children. Witness A felt as though she had been manipulated by Officer Hooven to obtain the information and when she ended the relationship, Officer Hooven "threw it in his ex-wife's face." Ultimately a complaint was filed with HCJFS, and Witness A received punishment for her actions. She expressed remorse in her interview and was apologetic toward Mr. Taylor.

CCA found that Officer Hooven's poor judgment led to the further dissemination of confidential juvenile HCJFS records which is unacceptable. Officer Hooven's actions were not within CPD policy, procedure, or training.

**Findings:**

**Original Allegations**

| No. | Allegation | Subject Officer | Involved Citizen | Finding |
|---|---|---|---|---|
| 1 | Misconduct | Jesse Hooven | Brendon Taylor | Sustained |

**Morgan Givens, Investigator**

**Makiedah Messam, Interim Director**

**<u>Previous Contacts and Commendations for Officers with Sustained Findings</u>:**

**<u>Officer Jesse Hooven</u>**

**Previous Contacts with CCA**

Officer Hooven had three previous contacts with CCA in the past three years.

| Case Number | Allegation | Finding |
|---|---|---|
| 20112 | Excessive Force | Sustained |
| 20112 | Improper Procedure | Unfounded |
| 20112 | Improper Procedure (BWC) | Sustained |
| 21054 | Discourtesy | Unfounded |
| 21054 | Discrimination | Unfounded |
| 21059 | Improper Procedure | Unfounded |
| 21059 | Harassment | Unfounded |
| 21059 | Discrimination | Unfounded |
| 21059 | Discourtesy | Unfounded |

**Previous Contacts for CCA Referrals**

Officer Hooven had no allegations that CCA referred to CPD for investigation in the past three years.

**Previous Contact with IIS**

Officer Hooven had one previous contact with IIS in the past three years.

| Case Number | Allegation | Finding |
|---|---|---|
| IIS Case 2022-023 | Law Violation by Officer | Sustained |

**Commendations**

Officer Hooven received one commendation in the past three years.

| Date | Source of Commendation Received |
|---|---|
| 5/25/2021 | CPD |