EXHIBIT
104
4-6-26
MKS

# CHILD ABUSE & NEGLECT MEMORANDUM OF UNDERSTANDING

## HAMILTON COUNTY, OHIO

**Revised 06/15/2015**

# Table of Contents


Overview ..... 3

Statement of Exception ..... 7

System for Receiving Reports of Child Abuse & Neglect Twenty-Four Hours Per Day, Seven Days Per Week ..... 8

Roles & Responsibilities for Handling Emergency & Non-Emergency Cases of Child Abuse & Neglect ..... 9

Consultation with Required Participants ..... 10

Standards & Procedures for Handling & Coordinating Investigations of Reported Cases of Child Abuse & Neglect ..... 12

Interviewing Children who are Subjects of Reports ..... 17

SACWIS ..... 18

Emergency and Non-Emergency Removal of Children ..... 19

Failure of a Mandated Reporter to Make a Report of Suspected Child Abuse or Neglect ..... 20

Unauthorized Dissemination of Information ..... 21

Appendix 1 – OAC Section 5101:2-36-03 ..... 22

Appendix 2 – OAC Section 5101:2-36-04 ..... 28

Appendix 3 – OAC Section 5101:2-36-08 ..... 33

Appendix 4 – OAC Section 5101:2-33-21 ..... 35

Appendix 5 – OAC Section 5101:2-36-07 ..... 41

# Overview

**Authority**

The child abuse and neglect memorandum of understanding is required by section 2151.421 of the Ohio Revised Code and section 5101:2-33-26 of the Ohio Administrative Code.

**Purpose**

The memorandum of understanding sets forth the normal operating procedure employed by concerned officials in the execution of their respective responsibilities with respect to the following sections of the Ohio Revised Code:

1. ORC 2151.421: Reporting of child abuse and neglect; investigation; memorandum of understanding
2. ORC 2919.21 (C): Nonsupport or contributing to the nonsupport of dependents
3. ORC 2919.22 (B)(1): Endangering children
4. ORC 2919.23 (B): Interference with custody, and
5. ORC 2919.24: Contributing to unruliness or delinquency of a child.

**Required Participants**

The prepared memorandum of understanding shall be signed by all of the following parties:

- The administrative Juvenile Court judge or the administrative judge's representative
- The county sheriff
- All chief municipal peace officers within the county
- Other law enforcement officers handling child abuse and neglect cases
- The prosecuting attorney of the county
- The city solicitor
- The county humane society
- Each participating member of the children's advocacy center

If any individual serving as the official identified as a required participant of this rule changes, an amendment of the memorandum is required, including the signature of all the required parties.

**Goals**

The goals of the memorandum of understanding are as follows:

- To conduct comprehensive and coordinated investigations of suspected child abuse and neglect.
- To eliminate all unnecessary interviews of children who are the subject of a report of suspected child abuse or neglect.
- To provide, when feasible, for only one interview of a child who is the subject of a report of suspected child abuse or neglect.

The intent of the interview of the child is to gather sufficient information to use in criminal prosecution as warranted; to identify risk to the child; and to determine any service needs of the family.

# Overview

**Role of Mandated & Voluntary Subscribers**

**Hamilton County Juvenile Court**

The juvenile court provides for the care, protection, health, safety, and mental as well as physical development of children. The juvenile court must protect the rights of the parties before the court and ensure the provision of a timely, safe and permanent home for children. The health and safety of the children shall be paramount; however, children should remain in or return to their family environment whenever possible.

The juvenile court has exclusive jurisdiction to hear and decide cases concerning any child who is the subject of a complaint alleging abuse, neglect or dependency pursuant to Ohio Revised Code Chapter 2151. If the court decides a child is abused, neglected or dependent at an adjudicatory hearing, the court shall proceed to hear evidence as to the proper disposition that should be issued. The juvenile court may make any of the following dispositional orders:

- Dismiss the complaint
- Award legal custody to either parent or any other appropriate person
- Place the child in protective supervision
- Commit the child to the temporary custody of the Hamilton County Department of Job & Family Services (HCJFS)
- Commit the child to the permanent custody of the HCJFS, or
- Place the child in the planned permanent living arrangement with HCJFS.

The juvenile court has jurisdiction over adults to hear and decide matters related to support and nonsupport of children, endangering of children, interference with custody, failing to send children to school, custody/visitation between unmarried parents or interested third parties, and contributing to the unruliness or delinquency of children.

# Overview

## Role of Mandated & Voluntary Subscribers

**Hamilton County Sheriff & Cincinnati Police Department**

**Municipal Law Enforcement**

The Juvenile Squad, Criminal Investigation Section of the Hamilton County Sheriff's Office is charged with the responsibility for initial investigation and follow-up investigation of suspected cases of child abuse and neglect occurring in the unincorporated areas of Hamilton County. The Hamilton County Sheriff's Office, Criminal Investigation Section will also assist agencies within Hamilton County upon request of said agency.

The Personal Crimes Unit (PCU) of the Cincinnati Police Department is charged with the responsibility for the investigations of suspected cases of child abuse and neglect occurring within the City of Cincinnati.

**All Other Police Department Divisions**

For cases in incorporated areas within Hamilton County, that police jurisdiction will assist agencies within Hamilton County upon request of said agency.

**Prosecutor's Office**

**Criminal Division**

The Hamilton County Prosecutor's Office Criminal Division will review cases for possible criminal prosecution in the appropriate Court of Hamilton County.

**Family Law Division**

The Family Law Division, a unit within the Hamilton County Prosecutor's Office, represents HCJFS regarding child abuse, neglect and dependency cases filed in Hamilton County Juvenile Court. Assistant prosecutors are available 24 hours a day, 7 days a week to consult with HCJFS about initiating legal proceedings.

**City Solicitor's Office – Prosecutor's Division**

The Prosecutor's Division of the City of Cincinnati Law Department works with the Cincinnati Police Department in the prosecution of misdemeanor violations brought against adult perpetrators in child abuse and neglect cases. The Division may also work with the Police Department in the preliminary aspects of felony, child abuse cases.

**Hamilton County Department of Job & Family Services (HCJFS)**

HCJFS is the local organization legally responsible for taking reports of child abuse, neglect, and dependency; investigating those reports; assessing the safety of children; and acting to protect child victims and children at risk. When necessary, HCJFS caseworkers, with consultation and representation from the Hamilton County Prosecutor's Office, initiate action in Juvenile Court to order participation in services or out-of-home placement for a child. HCJFS caseworkers also make reports to the appropriate law enforcement agency whenever the level of evidence suggests the possibility of a criminal offense.

# Overview

**Role of Mandated & Voluntary Subscribers *(continued)***

**Hamilton County Society for the Prevention of Cruelty to Animals (SPCA)**

The Hamilton County Humane Society investigates reports of animal abuse and neglect within the county. In addition, under O.R.C. 2151.421 agents of the SPCA are required to report suspected cases of child abuse and neglect that they may observe, during the commission of their duties, to the proper authorities.

**Cincinnati Children's Hospital Medical Center (CCHMC)/ Mayerson Center for Safe and Healthy Children**

The Mayerson Center for Safe and Healthy Children is a co-located, hospital based child advocacy center striving to evaluate child victims of abuse and neglect in a way that minimizes trauma to the child and maximizes positive outcomes for the child victim and his or her family. Housed in the Mayerson Center is the CCHMC Child Abuse Team consisting of physicians, nurses and social workers as well representatives from HCJFS, Hamilton County Sheriff's Office (HCSO), Cincinnati Police Department (CPD)/Personal Crimes Unit (PCU), and the Hamilton County Prosecutor's Office.

The Mayerson Center hosts a weekly team meeting where cases are discussed in order to insure proper identification and referral of cases to mandated agencies as well as to provide problem solving, support and education to the multidisciplinary team.

# Statement of Exception

| | |
|---|---|
| **Statement of Exception** | Failure to follow procedures set forth in this memorandum by the concerned officials is not grounds for, and shall not result in the dismissal of any charges or complaint arising from any reported case of abuse or neglect or the suppression of any evidence obtained as a result of any reported child abuse or child neglect and does not give, and shall not be construed as giving, any rights or any grounds for appeal or post-conviction relief to any person. |

## System for Receiving Reports of Child Abuse & Neglect Twenty-Four Hours Per Day, Seven Days Per Week

| | |
|---|---|
| **System for Receiving Reports** | The Hamilton County Department of Job and Family Services (HCJFS) receive reports of suspected child abuse and neglect twenty-four (24) hours a day, seven (7) days a week. Reports may be made by telephone to HCJFS at 241-KIDS (241-5437). In addition, reports of suspected child abuse and neglect as well as suspected crimes against a child may be made by calling the law enforcement agency with jurisdiction. Jurisdiction exists where the incident is alleged to have occurred. Persons needing the name of the appropriate law enforcement agency should call the Hamilton County Communications Center at 825-2280 and give the address where the incident allegedly occurred. |
| **Law Enforcement** | Sheriff's Patrol Deputies respond initially to all calls of potential child abuse or neglect on a 24-hour basis. Sheriff's Deputies will conduct a preliminary investigation into any reported allegations. Sheriff's Deputies will then notify their supervisors of any reported incidents. These incidents will be reported to the Juvenile Squad, Criminal Investigation Section via a NIBRS report as soon as possible or if the circumstances dictate by notifying the on-call Criminal Investigation Section supervisor immediately.<br><br>The Cincinnati Police Department patrol officers respond initially to all calls of potential child abuse or neglect 24 hours, 7 days per week. Patrol officers will conduct a preliminary investigation of the allegation. The patrol officer will notify the Personal Crimes Unit on all incidents identified as suspected child abuse or neglect encountered during patrol activities via a NIBRS report or a Personal Crimes Unit Memorandum. |
| **Cooperation between Law Enforcement & HCJFS** | HCJFS makes an immediate report to law enforcement when the level of evidence suggests the possibility of a criminal offense. When a municipal or county law enforcement officer receives a report concerning the possible abuse or neglect of a child or possible threat of abuse or neglect of a child, the officer who receives the report will refer the report to HCJFS. |

# Roles & Responsibilities for Handling Emergency & Non-Emergency Cases of Child Abuse & Neglect

| | |
|---|---|
| **Background** | HCJFS is required by the OAC section 5101:2-36-03 to investigate all allegations of child abuse, neglect, and dependency. Upon receipt of a report of alleged child abuse and neglect, an investigation must initiate within timeframes specified by the designated priority. All abuse and neglect cases are prioritized according to the information received and the potential imminent risk of abuse and/or neglect. HCJFS follows the OAC mandates. Procedures for prioritizing reports and conducting investigations are set out in Appendix 1. |
| **Emergency** | A child abuse report assessed to be emergent will result in the initiation of investigation within one (1) hour of receipt of the report. "Emergency" is defined as a situation where there is reason to believe that a child is threatened or alleged to be abused, neglected, or dependent to an extent that there is imminent risk to a child's life, physical or mental health, or safety (OAC section 5101:2-1-01). The initiation of investigation includes attempted face-to-face contact (interview/observation) with the alleged child victim.<br><br>When removal of the child from the care and control of his parents or other person appears necessary, the caseworker will solicit the cooperation of the parents toward a plan for the child's admission to the hospital or other appropriate facility, making an arrangement pursuant to a Safety Plan, or will seek custody when necessary in accordance with Ohio law and HCJFS protocol. |
| **Non-Emergency** | When there is information sufficient to create a suspicion that a child may be abused, neglected, or dependent, but absent a reason to believe that the child is at imminent risk to life, physical or mental health, or safety, an investigation and assessment of the circumstance will begin within twenty-four (24) hours of receipt of the report in accordance with ORC 2151.421 and OAC section 5101:2-36-03. |
| **Response of Law Enforcement** | Detectives from the Hamilton County Sheriff's Criminal Investigation Section, Juvenile Squad are available 24 hours a day for emergency calls with the approval of the Criminal Investigation Section on-call supervisor or the Juvenile Squad Supervisor. All non-emergency cases will be referred to the Juvenile Squad for follow-up the next day.<br><br>The Cincinnati Police Department's Personal Crimes Unit is also notified by HCJFS of cases involving suspected child abuse and neglect in their jurisdiction.<br><br>The Personal Crimes officers are available 24 hours per day, seven days a week, for recall on emergency cases with prior approval from a Personal Crimes Unit supervisor. All non-emergency cases will be referred to the Personal Crimes Unit by 8:00 A.M. on the next day for follow up. |

## Consultation with Required Participants

**General**

Cases of child abuse and neglect are routinely and continually evaluated to determine the need for collaboration and consultation with the parties to this memorandum. Consultations with regard to circumstances that may cause harm or risk to a child shall occur whenever deemed necessary by the parties. Consultations will be directed to accomplishing interventions that protect children and maintain families whenever possible.

**Law Enforcement**

Contact with the law enforcement agency of proper jurisdiction will occur with each report alleging child sexual abuse, and when a young child is found alone. In addition, a referral will be made to the appropriate law enforcement agency anytime a case of child abuse and neglect appears to require the fact-finding expertise of law enforcement for the purpose of criminal investigation. Consultation for the purpose of determining the need for law enforcement assistance will occur when any of the following conditions exist:

- The Public Children's Services Agency (PCSA) has reason to believe the child is in immediate danger of serious harm.
- An exigent circumstance exists.
- The PCSA worker must conduct a home visit after regular PCSA business hours and a law enforcement escort is requested as a standard operating procedure.
- The PCSA is removing a child from his or her family via an order of the court and the assistance of law enforcement is needed as the PCSA has reason to believe the family will challenge the removal.
- The PCSA is working with a family that has historically threatened to do harm to PCSA staff.
- The social worker's safety is threatened
- There is a history of violence in the home
- Firearms are known to be in the home
- The home is known (or there is information to reasonably believe) to be involved in illegal drug or alcohol activities.
- A joint investigation is indicated because of the serious nature of the child abuse and neglect report, or whenever prosecution of a perpetrator appears necessary
- Initiating criminal prosecution of a child abuse or neglect perpetrator with the consulting guidance of the prosecuting attorney's office
- Filing charges against a perpetrator in which plans for the care of children may be needed
- The report involves any institution, facility, or family foster home, which is licensed, approved, or certified by HCJFS; or involves an employee or volunteer working with HCJFS.

## Consultation with Required Participants

| | |
|---|---|
| **Prosecuting Attorney's Office/City Solicitor's Office** | Consultation with regard to the legal issues relating to HCJFS' legal responsibilities occurs between HCJFS and the Prosecuting Attorney for Hamilton County, Ohio. HCJFS caseworkers seek legal consultation with the prosecutor's office in all cases in which a parent, guardian, or custodian has been charged with child endangerment, domestic violence against a child, or any crime involving a sexual offense against a child. In addition, caseworkers consult with the prosecutor's office whenever child abuse, neglect, and dependency proceedings in Juvenile Court are being considered. Caseworkers also consult with attorneys in the prosecutor's division of the City Solicitor's Office on cases of misdemeanor violations brought against adult perpetrators of child abuse and neglect. |
| **Juvenile Court** | The intervention of Juvenile Court is necessitated whenever a child's circumstance is such as to warrant state intervention on behalf of the child. |
| **Hamilton County SPCA** | Should the need arise, HCJFS caseworkers consult with the SPCA regarding any concerns identified during contact with the family or in the home. |
| **Cincinnati Children's Hospital Medical Center** | The Mayerson Center for Safe and Healthy Children is a co-located, hospital based child advocacy center striving to evaluate child victims of abuse and neglect in a way that minimizes trauma to the child and maximizes positive outcomes for the child victim and his or her family. Housed in the Mayerson Center is the CCHMC Child Abuse Team consisting of physicians, nurses and social workers as well representatives from HCJFS, Hamilton County Sheriff's Office (HCSO), Cincinnati Police Department (CPD)/Personal Crimes Unit (PCU), and the Hamilton County Prosecutor's Office.<br><br>The Mayerson Center hosts a weekly team meeting where cases are discussed in order to insure proper identification and referral of cases to mandated agencies as well as to provide problem solving, support and education to the multidisciplinary team. |

# Standards & Procedures for Handling & Coordinating Investigations of Reported Cases of Child Abuse & Neglect

## General Investigation Protocol

HCJFS follows the requirements for conducting investigations of child abuse and neglect that are described in OAC section 5101:2-36-03. For more information on these mandates, please see Appendix 1.

### Contact with Alleged Perpetrator

When there is a concurrent criminal investigation, HCJFS will delay contact with the alleged perpetrator until law enforcement has completed their interview. However, this does not prohibit contact with the alleged perpetrator who is the sole custodial parent in order to assure the child's immediate safety. The alleged perpetrator must be advised of the allegations made against him or her at the time of the initial contact with that individual.

Information presented to the alleged perpetrator/sole custodial parent is to be coordinated with law enforcement. Specific details of the allegation may be delayed to reduce the opportunity of an alleged perpetrator to prepare a response or alibi.

Patrol officers are not precluded from obtaining sufficient specifics on the scene to make proper dispositions of the initial police report.

### Securing a Medical Examination/Evaluation

A medical examination/evaluation of the alleged child victim (ACV) can be secured with consent of the child, parent, guardian, or custodian; or with a court order. For urgent evaluation of injuries or need for sexual assault examination, the ACV should be sent to the Emergency Department of CCHMC. Non-urgent medical exams can be obtained through the Mayerson Center or the child's primary care physician. Consultation regarding the most appropriate place to receive medical evaluation can be obtained by paging the CCHMC Child Abuse Team social worker.

### Coordination between Law Enforcement, Children's Hospital Medical Center, & HCJFS

The Hamilton County Sheriff Juvenile Squad and the Cincinnati Police Department Personal Crimes Unit have each assigned two investigators to work directly at the Mayerson Center for Safe and Healthy Children (CAC). These investigators receive notification of case investigations through the Hospital staff, Social Workers, and HCJFS workers assigned at the CAC. Investigators will review and investigate cases received directly by Children's Hospital Staff and HCJFS caseworkers and work jointly with staff to resolve any such reported incidents.

All other municipal police jurisdictions in Hamilton County are encouraged to utilize the Mayerson Center procedures for sexual abuse investigations in their jurisdictions.

**Specific Investigations -- Out of Home Care**

HCJFS follows the procedures described in OAC section 5101:2-36-04 for conducting child abuse and neglect investigations in Out of Home Care settings. See Appendix 2. Out of home care settings are defined in OAC section 5101:2-1-01 as detention facilities, shelter facilities, foster homes, certified foster homes, placement in a prospective adoptive home prior to the issuance of a final decree of adoption, organizations, certified organizations, child day-care centers, type A family day-care homes, child-day care provided by type B family day-care home providers and by in-home aides, group home providers, group homes, institutions, state institutions, residential facilities, residential care facilities, residential camps, day camps, hospitals, and medical clinics that are responsible for the care, physical custody, or control of children.

HCJFS has a special unit, known as the 'Out of Home Care Unit', which investigates reports of alleged abuse or neglect in out of home care settings. HCJFS shares information about these investigations with subscribers to the memorandum of understanding and others with a need to know pursuant to OAC section 5101:2-33-21. See Appendix 4.

**Specific Investigations -- Third Party**

HCJFS conducts third party investigations in accordance with the procedures set out in OAC section 5101:2-36-08. See Appendix 3. HCJFS' 'Out of Home Care Unit' conducts the third party investigation.

HCJFS shall conduct a third party investigation when the following parties are involved as principals:

- Any institution, facility, or family foster home which is licensed, or certified by the Ohio Department of Job & Family Services (ODJFS) and operated or supervised by HCJFS;
- Any employee, or agent of ODJFS or HCJFS; or
- Any authorized person who is representing ODJFS or HCJFS and who is providing services for payment or as a volunteer.

HCJFS will contact the appropriate law enforcement agency of jurisdiction within twenty-four (24) hours of the report to share information. Requests for a third party investigation by law enforcement will be followed up with a written request within three (3) days of the report.

# Standards & Procedures for Handling & Coordinating Investigations of Reported Cases of Child Abuse & Neglect

**Specific Investigations -- Emergency Requiring Immediate Response**

Whenever an emergency exists requiring immediate response HCJFS takes all necessary action in collaboration with law enforcement, the prosecutor's office, Juvenile Court and medical providers to secure the child's immediate safety. If there is a need to obtain an emergency order of custody, to protect a child from imminent risk of serious physical or emotional harm, HCJFS follows the procedures described below.

**During Business Hours**

- Consult with Assistant Prosecuting Attorney;
- Meet with a prosecutor to prepare a complaint for filing in Juvenile Court;
- Prepare to present emergency circumstances to Court;
- Notify parents of time and place of hearing unless reasonable grounds to believe notification would seriously endanger the child or that family would abscond;
- Complaint and motion are filed.

The court will provide an opportunity for a hearing on a Motion for Temporary Orders during normal business hours. The party requesting the temporary order must make diligent efforts to notify the parents, guardian or custodian of the emergency hearing and the opportunity to be heard at that hearing. The parties will be served with a summons and the complaint at the time of the hearing. Any party to a juvenile court proceeding has the right to be represented by counsel and to have appointed counsel if the person is indigent. The court will appoint a guardian ad litem for a child who is the subject of a complaint alleging abuse, neglect and dependency.

**During Non-Business Hours – Telephone Ex Parte Orders**

- Consult with Assistant Prosecuting Attorney.
- Proceed to contact Juvenile Court through the Juvenile Detention Center.

The on-call Magistrate will call back; the phone call is recorded; a written order is available at the Juvenile Detention Center. An ex parte order may be granted when the court determines that immediate action is required to protect the child's best interest and welfare. If the court issues an ex parte emergency order, a hearing shall be held the next business day or within 72 hours, whichever is earlier.

**Specific Investigations -- Emergency Requiring Immediate Response *(continued)***

**Pending a hearing or complaint, Juvenile Court may issue temporary emergency orders that include:**

- Placing the child in the temporary custody of a PCSA after finding the child's continued residence in the home is contrary to the child's best interest or after finding that the child may abscond or be removed from the jurisdiction or not brought to court;
- Placing the child in the temporary custody of another appropriate party or person;
- Orders with respect to the relation or conduct of a person toward a child if such relation or conduct is not in the child's best interest. This may include issues related to visitation, vacating a residence occupied by a child, court ordered counseling, restraints on conduct, or any other order necessary to protect the child's best interest; and
- Orders regarding emergency medical and surgical treatment, which are immediately necessary to preserve the health and well-being of a child upon the certificate of one or more reputable practicing physicians.

**Specific Investigations -- Child Death Investigations**

Upon notification of the death of a child due to child abuse or neglect, HCJFS will perform its investigative duties pursuant to rules of OAC sections 5101:2-36-03; 5101:2-36-04, 5101:2-36-07, 5101:2-36-08, as appropriate. Generally, 241-KIDS, the Care Management Unit or the active Children's Services caseworker or supervisor receives fatality reports. Notification is initiated with all appropriate parties, including law enforcement. An action plan is then developed to provide for an assessment of the need for protection of siblings, review of the case record, funeral arrangements if necessary, and other supportive services to the family.

The Hamilton County Child Fatality Review Team also screens all deaths of children age 17 years or younger who are Hamilton County residents at the time of death. The Team collects basic demographic data about all Hamilton County child deaths. The following categories qualify for full team review:

- child in custody of HCJFS or under the jurisdiction of Juvenile Court;
- homicides;
- suicides;
- accident;
- undetermined;
- unexpected outcome;
- unexpected clusters;
- current or previous history with HCJFS;
- death was investigated by law enforcement.

Any Team member can request a full review of any child death if they feel a review would be beneficial.

# Standards & Procedures for Handling & Coordinating Investigations of Reported Cases of Child Abuse & Neglect

| | |
|---|---|
| **Specific Investigations -- Investigations of Alleged Withholding** | The OAC section 5101:2-36-07 cites specialized procedures for handling allegations involving withholding of appropriate nutrition, hydration, medication, or medically indicated treatment from disabled infants with life-threatening conditions. These cases require particular response due to the lethality of the circumstances. HCJFS follows the procedures described in OAC section 5101:2-36-07 for responding to such reports. The procedures are described in Appendix 5. |
| **Specific Investigations -- Aiding, Abetting a Child or Ward of the Juvenile Court** | HCJFS responds to reports involving individuals who aid, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court to<br>• become a dependent or neglected child, or<br>• become an unruly or delinquent child , or<br>• leave the custody of any person, department, or public or private institution without the legal consent of that person, department, or institution<br><br>Information will be obtained to allow for a reasonable determination of risk to the child involved and to ascertain whether a suspicion of child abuse and neglect is present. Depending on the circumstances surrounding the reported case, referrals may be made to law enforcement, juvenile court, the prosecuting attorney, or other legal office of proper jurisdiction. Law enforcement investigates these reports, as appropriate. |
| **Specific Investigations -- Missing Children** | Missing child reports will be referred to the law enforcement agency of proper jurisdiction. Consultation and information sharing with law enforcement, the prosecutor's office, and HCJFS will occur on behalf of the missing child as it relates to the child's well-being and best interests. |



TAYLOR__02005

# Interviewing Children who are Subjects of Reports

**Joint Interviews**

Primary goals of the memorandum of understanding are to eliminate unnecessary interviews of children who are the subject of a report of suspected child abuse or neglect; and to provide, when feasible, for only one interview of a child who is the subject of a report. Joint interviews need to be facilitated in a safe, neutral, child-appropriate setting. Specific steps are initiated by the caseworker to arrange joint interviews:

| Step | Action |
|---|---|
| 1 | Contact police jurisdiction in which the alleged abuse and/or neglect occurred.<br>Note: **Personal Crimes is to be contacted rather than the districts for crimes committed in the city of Cincinnati. Contact Hamilton County Sheriff's Office, Criminal Investigations Section, Juvenile Squad for crimes committed in unincorporated areas of Hamilton County.** |
| 2 | Arrange a timely, joint interview of the child with the assigned detective. |
| 3 | Decide prior to the joint interview who will take the lead in the interview. |

In cases which the caseworker has made a referral to law enforcement prior to meeting with the alleged child victim (ACV) **and** a joint interview cannot be convened timely, the priority mandate **must** be met by the caseworker in order to determine the potential risk of abuse/neglect. The caseworker and law enforcement entity can arrange to corroborate their interviews.

**Mayerson Center for Safe & Healthy Children**

Whenever possible, child victims of sexual abuse should be interviewed at the Mayerson Center by forensically trained social workers, caseworkers or law enforcement personnel. All personnel assigned to the case should be present, if possible, for the interview/evaluation process. The multidisciplinary response to child abuse evaluation is designed to have children interviewed in a child-friendly setting by trained professionals and allows children to have access to trained physicians and nurses for medical evaluation and treatment. Quality of services is monitored through case review and peer review processes.



TAYLOR__02006

# SACWIS

**Procedure for SACWIS**

HCJFS records all case information in the Statewide Automated Child Welfare Information System (SACWIS). SACWIS is a technical support tool developed to support data collection and child abuse/neglect assessment. SACWIS provides comprehensive child welfare information. SACWIS information is obtained as part of the Central Registry process. Information to be recorded in SACWIS, includes, but is not limited reports of CA/N, investigation and assessment information and report disposition. HCJFS documents information in SACWIS in accordance with OAC 5101:2-33-70.

# Emergency and Non-Emergency Removal of Children

**Emergency and Non-Emergency Removal of Children**

For information concerning Hamilton County's protocols regarding removal of children from the home, please refer to the section on *Specific Investigations – Emergency Requiring Immediate Response* on pages 15-16 of this MOU.



TAYLOR__02008

## Failure of a Mandated Reporter to Make a Report of Suspected Child Abuse or Neglect

| | |
|---|---|
| **Procedure for Failure to Report** | When circumstances lead to a concern that a mandated reporter has failed to report, HCJFS shall give written notification of such failure to the County Prosecutor or City Solicitor. Failing to report child abuse and neglect, when required to do so as defined in Section 2151.421 of the Ohio Revised Code is a misdemeanor of the fourth degree. |

## Unauthorized Dissemination of Information

**Procedure for Unauthorized Dissemination of Information**

When any person commits, causes, permits or encourages the unauthorized dissemination of information concerning reports and investigations of child abuse or neglect, HCJFS shall give written notification of such unauthorized dissemination to the County Prosecutor or City Solicitor. The reporter's identity is confidential and is not to be confirmed or denied, except as permitted by law.

# Appendix 1 – OAC Section 5101:2-36-03

**5101:2-36-03 PCSA Requirements for Intra-Familial Child Abuse and/or Neglect Assessment/Investigations**

(A) A Public Children Services Agency shall conduct an intra-familial child abuse and/or neglect assessment/investigation in response to a child abuse and/or neglect report if one or more of the following apply:

(1) The alleged perpetrator is a member of the alleged child victim's family.

(2) The alleged perpetrator is known to the family or child and has had access to the alleged child victim, whether or not the access was known or authorized by the child's parent, guardian or custodian.

(3) The alleged perpetrator is involved in daily or regular care for the alleged child victim, excluding a person responsible for the care of a child in an out-of-home care setting.

(B) An intra-familial assessment/investigation shall require the involvement of a third party if a principal named in the report poses a conflict of interest for the PCSA pursuant to rule 5101:2-36-08 of the Administrative Code.

(C) The PCSA may request the assistance of law enforcement during an assessment/investigation if one or more of the following situations exist and the reason for contacting law enforcement is documented in the case record:

(1) The agency has reason to believe that the child is in immediate danger of serious harm.

(2) The agency has reason to believe that the worker is, or will be, in danger of harm.

(3) The agency has reason to believe that a crime is being committed, or has been committed against a child.

(4) The assistance of law enforcement needs to be invoked in accordance with the county child abuse and neglect memorandum of understanding.

(D) Upon acceptance of a child abuse and/or neglect report, the The PCSA shall initiate the screened in child abuse and/or neglect report in accordance with the following:

(1) For an emergency report, attempt a face-to-face contact with the alleged child victim within one hour from the time the referral was screened in, to assess child safety and interview the alleged child victim.

(2) For all other reports, attempt a face-to-face contact or complete a telephone contact within twenty-four (24) hours from the time the referral was screened in, with a principal of the report or collateral source, who has knowledge of the alleged child victim's current condition, and can provide current information about the child's safety.

(3) If face-to-face contact with the alleged child victim was not attempted within the twenty-four (24) hour timeframe an attempt of face-to-face contact with the alleged child victim shall be made within seventy-two (72) hours from the time the report was screened in to assess child safety and interview the alleged child victim.

(E) The PCSA shall document in the case record the date, time, and with whom the assessment/investigation was initiated.

(F) The PCSA shall complete the JFS 01401 "Comprehensive Assessment Planning Model - I.S., Safety Assessment" (rev. 2/2006) pursuant to rule 5101:2-37-01 of the Administrative Code.

(1) The PCSA shall attempt face-to-face contact with the alleged child victim and a parent, guardian, custodian, or caregiver within the first four (4) working days from the date the report was screened in as an abuse or neglect report.
(2) If the PCSA's attempt to complete face-to-face contact pursuant to paragraph (F)(1) of this rule is unsuccessful, the PCSA shall attempt at least one additional face-to-face contact within the first four (4) working days from the date the referral was screened in as a report.

(G) If the attempted face-to-face contacts with the alleged child victim, as specified in paragraphs (D) and (F) of this rule are unsuccessful, the PCSA shall, at a minimum, continue making attempts for face-to-face contact at least every five (5) working days until the child is seen or until the PCSA is required to make a report disposition pursuant to paragraph (T) or (U) of this rule.

(H) The PCSA shall not interview the alleged child victim without parental consent, unless one of the following exigent circumstances exists:
(1) There is credible information indicating the child is in immediate danger of serious harm.
(2) There is credible information indicating that the child will be in immediate danger of serious harm upon return home from school or other locations away from his or her home.
(3) There is credible information indicating that the child may be intimidated from discussing the alleged abuse or neglect in his or her home.
(4) The child requests to be interviewed at school or another location due to one of the circumstances listed above.

(I) Should an alleged child victim provide information during an interview that indicates a sibling might be in immediate danger of serious harm or that the sibling could provide information regarding immediate danger of serious harm to the alleged child victim, the interview of the sibling who was not identified as an alleged child victim may commence.

(J) The specific facts necessitating that investigative interviews of a child be conducted without parental consent must be documented in the case record.

(K) If a child is interviewed without parental consent, then the same day, the PCSA shall attempt a face-to-face contact or complete a telephone contact with the child's parent, guardian, or custodian to inform them that an interview of the child occurred and provide the specific facts necessitating the child be contacted without parental consent..

(L) If the attempt to contact the child's custodian pursuant to paragraph (K) of this rule is unsuccessful, the PCSA shall continue to attempt to complete face-to-face contact with the child's parent, guardian or custodian once every five (5) working days until contact is made with the child's parent, guardian, or custodian, or until the PCSA is required to make a case disposition pursuant to paragraphs (U) and (V) of this rule.

(M) The PCSA shall conduct and document face-to-face interviews with each child residing within the home of the alleged child victim. When possible each child should be interviewed separately and apart from the alleged perpetrator. The purpose of the interviews is to:
(1) Evaluate each child's condition.

(2) Determine if each child is safe.
(3) Obtain each child's explanation regarding the allegations contained in the report.

(N) The PCSA need not interview a child if it is determined that:
(1) The child does not have sufficient verbal skills.
(2) Additional interviewing would be detrimental to the child, unless requested by the lead PCSA pursuant to paragraph (AA) or (BB) of this rule.

(O) The PCSA shall conduct and document face-to-face interviews with the alleged perpetrator and all adults residing in the home of the alleged child victim, unless law enforcement or the county prosecutor will interview the alleged perpetrator pursuant to the procedures delineated in the county child abuse and neglect memorandum of understanding, in order to:
(1) Assess his or her knowledge of the allegation.
(2) Observe the interaction between the alleged child victim and caretaker.
(3) Obtain relevant information regarding child safety and risk to the child.

(P) The PCSA shall advise the alleged perpetrator of the allegations made against him or her at the time of the initial contact with the person. The initial contact between the PCSA and the alleged perpetrator of the report includes the first face-to-face or telephone contact, whichever occurs first, when information is gathered as part of the assessment/investigation process.

(Q) The PCSA shall conduct and document face-to-face or telephone interviews with any person identified as a possible source of information during the assessment/investigation to obtain relevant information regarding the safety of and risk to the child. The PCSA shall exercise discretion in the selection of collateral sources to protect the family's right to privacy.

(R) The PCSA shall take any other actions necessary to assess safety and risk to the child. These actions may include, but are not limited to:
(1) Taking photographs of areas of trauma on the child's body.
(2) Taking photographs of the child's environment with the parent, guardian, or custodian's consent.
(3) Securing a medical examination, psychological evaluation or both of the child with consent of the child's parent, guardian, or custodian or with a court order.
(4) Securing any relevant records, including but not limited to school, mental health, and medical records.

(S) At any time the PCSA determines a child to be in immediate danger of serious harm, the PCSA shall follow procedures outlined in rule 5101:2-37-02 of the Administrative Code.

(T) If the PCSA determines supportive services are necessary, the supportive services shall be made available to the child, his or her parent, guardian, or custodian during all of the following pursuant to procedures established in rule 5101:2-40-02 of the Administrative Code:
(1) The safety planning process.
(2) The assessment/investigation process.

(U) The PCSA shall complete the report disposition and arrive at a final case decision by completing the JFS 01400 "Comprehensive Assessment and Planning Model - I.S., Family Assessment" (rev. 7/2006) no later than forty-five (45) days from the date the PCSA screened in the referral as a child abuse and/or neglect report. The PCSA may extend the time frame by a

maximum of fifteen (15) days if information needed to determine the report disposition and final case decision cannot be obtained within forty-five (45) days and the reasons are documented in the case record pursuant to rule 5101:2-36-11 of the Administrative Code.

(V) If the child abuse and/or neglect report involves a principal of the report who is currently receiving ongoing protective services from the PCSA, the PCSA shall complete the report disposition by completing the JFS 01402 "Comprehensive Assessment and Planning Model - I.S., Ongoing Case Assessment/Investigation" (rev. 7 2/2006).

(1) The JFS 01402 shall be completed no later than forty-five (45) days from the date the PCSA screened in the referral as a child abuse and/or neglect report.

(2) The PCSA may extend the time frame by a maximum of fifteen (15) days when information needed to determine the report disposition cannot be obtained within thirty (30) days and the reasons are documented in the case record pursuant to rule 5101:2-36-11 of the Administrative Code.

(W) The PCSA shall not waive the completion of the report disposition.

(X) The PCSA shall request assistance from the county prosecutor, the PCSA's legal counsel, and/or the court when refused access to the alleged child victim or any records necessary to conduct the assessment/investigation.

(Y) The PCSA shall have an interpreter present for all interviews when the PCSA has determined that a principal of the report has a language or any other impairment that causes a barrier in communication, including but not limited to a principal of the report who is deaf or hearing impaired, limited English proficiency or is developmentally delayed.

(Z) Within two (2) working days of completion of the assessment/investigation, the PCSA shall do all of the following:

(1) Notify the child, unless the child is not of an age or developmental capacity to understand; and the child's parent, guardian, or custodian of the report disposition and final case decision.

(2) Notify the alleged perpetrator in writing of the report disposition; the right to appeal,; and the method by which the alleged perpetrator may appeal the disposition as outlined in rule 5101:2-33-20 of the Administrative Code.

(3) Refer all children under the age of three to "Help Me Grow" for early intervention services if there is a substantiated report of child abuse or neglect regardless of the child's role in the report.

(4) Refer any infant who has been born and identified as affected by illegal substance abuse or withdrawal symptoms resulting from prenatal drug exposure to "Help Me Grow."

(5) As appropriate, refer any child determined not to be at risk of imminent harm for services pursuant to procedures established in rule 5101:2-40-02 of the Administrative Code.

(6) Notify the child's non-custodial parent, who holds residual parental rights to the child and maintains an ongoing relationship through visitation with the child and/or payment of child support, of the receipt of the report, the report disposition, and the case decision.

(7) Document in the case record, the date and method of notification to the principals of the report of the above listed activities.

# Appendix 1 – OAC Section 5101:2-36-03

(AA) If two or more Ohio PCSAs are involved in an assessment/investigation the lead county shall be determined by the following criteria:

(1) The PCSA located within the county where a juvenile court has issued a protective supervision order.

(2) The PCSA located within the county where the parent, guardian, custodian of the alleged child victim resides. If an order of shared parenting has been issued, the PCSA located within the county of residence of the custodian who has physical care of the alleged child victim at the time the referral information is received, unless the court order identifies a designated custodian of the alleged child victim.

(BB) If a report of child abuse and neglect involves a child who is living in a shelter for victims of domestic violence or a homeless shelter, the PCSA that received the report shall do one of the following:

(1) Determine if the child was brought to the shelter pursuant to an agreement with a shelter in another county. If a determination is made that there was an agreement in place, the PCSA from the county from which the child was brought shall lead the assessment/investigation and provide the required supportive services or petition the court for custody of the child, if necessary.

(2) Lead the assessment/investigation if a determination is made that the child was not brought to the shelter under an agreement with a shelter in another county. When two or more PCSAs are involved, all PCSAs shall be responsible for following procedures outlined in this rule.

(3) Commence the assessment/investigation if a determination cannot be made immediately if an agreement is in effect. The PCSA shall continue to determine if an agreement is in effect and follow procedures outlined in this rule.

(CC) If requested by the lead PCSA, either verbally or in writing, the non-lead PCSA shall conduct interviews of any principals of the report and collateral sources presently located within its jurisdiction and assist in the completion of the JFS 01401, JFS 01400, JFS 01402 within a time frame that will allow the lead PCSA to meet the time frames outlined in this rule. All PCSAs involved shall document the request in the case record.

(DD) The PCSA shall follow procedures set forth in rule 5101:2-36-07 of the Administrative Code if the report of neglect involves alleged withholding of medically indicated treatment from a disabled infant with life-threatening conditions.

(EE) The assessment/investigation documentation and any materials obtained as a result of the assessment/investigation shall be maintained in the case record. If any information gathering activity cannot be completed, justification and the written approval of the director or the designee shall be filed in the case record in accordance with rule 5101:2-36-11 of the Administrative Code.

Effective: 03/001/2014
R.C. 119.032 review dates: 01/01/2017

Promulgated Under: 119.03
Statutory Authority: 2151.421, 5153.16.
Rule Amplifies: 2151.3518, 2151.421, 5153.16
Prior Effective Dates: 2/1/82, 10/1/82, 1/1/87, 1/1/88, 3/15/88, 1/1/90, 10/1/95, 6/1/96, 6/1/97, 10/1/97 (Emer.), 12/30/97; 4/1/01, 12/1/01, 6/25/04, 03/01/06, 10/01/09, 03/01/12

# Appendix 2 – OAC Section 5101:2-36-04

**5101:2-36-04 PCSA Requirements for Conducting a Specialized Assessment/Investigation**

(A)The public children services agency (PCSA) shall conduct a specialized assessment/investigation if the child abuse or neglect report involves an alleged perpetrator who meets one or more of the following criteria:

(1) Is a person responsible for the alleged child victim's care in an out-of-home care setting as defined in rule 5101:2-1-01 of the Administrative Code.

(2) Is a person responsible for the alleged child victim's care in out-of-home care as defined in section 2151.011 of the Revised Code.

(3) Has access to the alleged child victim by virtue of his/her employment by or affiliation to an institution.

(B) A specialized assessment/investigation may shall require a third party if a principal named in the report poses a conflict of interest for the PCSA pursuant to rule 5101:2-36-08 of the Administrative Code.

(C) If a specialized assessment/investigation of an abuse and/or neglect report involves multiple alleged child victims from multiple cases, the PCSA shall complete a separate assessment/investigation for each case. The completion of the JFS 01403, "Comprehensive Assessment Planning Model, Specialized Assessment Investigation" (rev. 2/2006) is required for each case.

(D) The PCSA shall initiate the screened in child abuse and/or neglect report in accordance with the following:

(1) For an emergency report, attempt a face-to-face contact with the alleged child victim within one hour from the time the referral was screened in, to assess child safety and interview the child victim.

(2) For all other reports, attempt a face-to-face contact or complete a telephone contact within twenty-four (24) hours from the time the referral was screened in, with a principal of the report or collateral source, who has knowledge of the alleged child victim's current condition, and can provide current information about the child's safety.

(E) If face-to-face contact with the alleged child victim was not completed within the twenty-four (24) hour time frame, an attempt of face-to-face contact with the alleged child victim shall be made within seventy-two (72) hours from the time the report was screened in to assess child safety and interview the alleged child victim.

(F) The PCSA shall document in the case record the date, time, and with whom the specialized assessment/investigation was initiated.

(G) If the PCSA has attempted face-to-face contact with the alleged child victim, as specified in paragraph paragraphs (D) and (E) of this rule are is unsuccessful, the PCSA shall continue to make attempts for face-to-face contact at a minimum, every five (5) working days until the child is seen or until the PCSA is required to make a report disposition pursuant to paragraph (T) of this rule.

(H) If the child abuse and/or neglect report involves an alleged child victim, who is not in the custody of a PCSA or PCPA, who resides with his or her parent, guardian, or custodian, the

# Appendix 2 – OAC Section 5101:2-36-04

PCSA shall not interview the child without parental consent unless one of the following exigent circumstances exists:

(1) There is credible information indicating the child is in immediate danger of serious harm.
(2) There is credible information indicating that the child will be in immediate danger of serious harm upon return home from school or other locations away from home.
(3) There is credible information indicating that the child may be intimidated from discussing the alleged abuse or neglect in his/her his or her home.
(4) The child requests to be interviewed at school or another location due to one of the circumstances listed above.

(I) Should an alleged child victim provide information during an interview that indicates a sibling might be in immediate danger of serious harm or that the sibling could provide information regarding immediate danger of serious harm to the alleged child victim, the interview of the sibling who was not identified as an alleged child victim may commence.

(J) The specific facts necessitating that assessment/investigative interviews of a child be conducted without parental consent must be documented in the case record.

(K) If an alleged child victim is interviewed without parental consent, then the same day, the PCSA shall attempt a face-to-face contact with the alleged child victim's parent, guardian, or custodian to inform them that an interview of their child occurred.

(1) If unsuccessful, the PCSA shall attempt to complete face-to-face contact with the child's parent, guardian, or custodian once every five (5) working days until contact is made or until the PCSA is required to make a report disposition pursuant to paragraph (U) of this rule.
(2) The PCSA shall document in the case record the date and time of the contact, or attempted contacts.

(L) When the PCSA conducts a specialized assessment/investigation, the PCSA shall:

(1) Within twenty-four (24) hours of the screening decision contact the out-of-home care setting administrative officer, director, or other chief administrative officer, or if the administrative officer, director or other chief administrative officer is alleged to be the perpetrator, the board of directors, county commissioners, or law enforcement as applicable in order to:
    (a) Share information regarding the report.
    (b) Discuss what actions have been taken to protect the alleged child victim.
    (c) Provide information about the assessment/investigation activities that will follow.
(2) No later than the next working day, from the date the referral was screened in as a child abuse and/or neglect report Inform the parent(s), guardian, or custodian of the alleged child victim that a report of abuse and/or neglect involving his or her child is being assessed/investigated and inform him or her of the allegations contained within the report no later than the next working day, from the date the referral was screened in as a child abuse and/or neglect report.
(3) No later than the next working day, from the date the referral was screened in as a child abuse and/or neglect report Contact licensing and supervising authorities, as appropriate, no later than the next working day to share information pursuant to rule 5101:2-36-12 of the Administrative Code.

(4) Attempt to coordinate the interview of the alleged child victim when another agency is required by statute or administrative rule to conduct its own assessment/investigation to minimize the number of interviews of the child .
(5) Conduct and document face-to-face interviews with the alleged child victim to:
  (a) Evaluate the alleged child victim's condition.
  (b) Determine whether the child is safe.
  (c) Obtain the alleged child victim's explanation regarding the allegations contained in the report.
(6) Conduct and document all face-to-face interviews with the alleged perpetrator, unless law enforcement or the county prosecutor will interview the alleged perpetrator pursuant to the procedures delineated in the county child abuse and neglect memorandum of understanding, in order to assess his or her knowledge of the allegation.
(7) Advise the alleged perpetrator of the allegations made against him or her at the time of the initial contact with the person. The initial contact between the PCSA and the alleged perpetrator of the report includes the first face-to-face or telephone contact, whichever occurs first, when information is gathered as part of the assessment/investigation process.
(8) Conduct and document face-to-face or telephone interviews with any person identified as a possible source of information during the assessment/investigation to obtain relevant information regarding the safety of and risk to the child. The PCSA shall exercise discretion in the selection of collateral sources to protect the privacy of the principals of the report.
(9) As appropriate, conduct and document all face-to-face interviews with the parent, guardian, or custodian and/or caretaker of the alleged child victim to gather relevant information regarding the parent, guardian, or custodian and/or caretaker's ability to keep the child safe and identify what, if any, services are needed by the family.
(10) Attempt to secure any relevant records, including but not limited to school, mental health, medical, incident reports in an out-of-home care setting.
(11) Take any other actions necessary to assess safety and risk to the child. These actions may include, but are not limited to:
  a. Taking photographs of areas of trauma on the child's body.
  b. Taking photographs of the child's environment with the consent of the out-of-home setting administrator.
  c. Securing a medical examination or psychological evaluation, or both, of the child with the consent of the child's parent, guardian, or custodian or with a court order.

(M) The PCSA does not have to interview an alleged child victim if the PCSA determines that:
(1) The child does not have sufficient verbal skills.
(2) Additional interviewing would be detrimental to the child, unless requested by the lead PCSA pursuant to paragraph (T) of this rule.

(N) At any time the PCSA determines a child is in immediate danger of serious harm, the PCSA shall follow procedures outlined in rule 5101:2-37-01 of the Administrative Code

(O) If the PCSA determines supportive services are necessary, the supportive services shall be made available to the child, his or her parent, guardian, or custodian during all of the following pursuant to procedures established in rule 5101:2-40-02 of the Administrative Code:
(1) The safety planning process.
(2) The assessment/investigation process.

# Appendix 2 – OAC Section 5101:2-36-04

(P) The PCSA shall request assistance from the county prosecutor, the PCSA's legal counsel, or the court when refused access to the alleged child victim or any records necessary to conduct the specialized assessment/investigation.

(Q) The PCSA shall have an interpreter present for all interviews when the PCSA has determined that a principal of the report has a language or any other impairment that causes a barrier in communication, including but not limited to a principal of the report who is deaf or hearing impaired, has limited English proficiency or is developmentally delayed.

(R) If two or more Ohio PCSAs are involved in an assessment/investigation the lead county shall be determined by the following criteria

(1) The PCSA located within the county where a juvenile court has issued a protective supervision order.
(2) The PCSA located within the county where the parent, guardian, custodian of the alleged child victim resides.
(3) If an order of shared parenting has been issued, and a residential parent has not been designated by the court, the PCSA located within the county of residence of the custodian who has physical care of the alleged child victim at the time the incident occurred.

(S) If requested by the lead PCSA, either verbally or in writing, the non-lead PCSA shall conduct interviews of any principals of the report and collateral sources presently located within its jurisdiction to provide the lead agency with the information necessary to complete the JFS 01403 within a time frame that will allow the lead PCSA to meet the time frames outlined in this rule. All PCSAs involved shall document the request in the case record.

(T) The PCSA shall complete the report disposition and arrive at a final case decision by completing the JFS 01403 no later than forty-five (45) days from the date the PCSA screened in the referral as a child abuse and neglect report. The PCSA may extend the timeframe by a maximum of fifteen (15) days when information needed to determine the report disposition and final case decision cannot be obtained within forty-five (45) days and the reasons are documented in the case record pursuant to rule 5101:2-36-11 of the Administrative Code.

(U) Investigative activities conducted independently by other agencies, does not relieve the PCSA of its responsibility for concluding an assessment/investigation in accordance with this rule. The PCSA shall not waive the completion of the report disposition.

(V) Within two (2) working days of completion of the JFS 01403, the PCSA shall:

(1) Notify the child, unless the child is not of an age or developmental capacity to understand, and the child's parent, guardian, or custodian of the report disposition and the final case decision.
(2) Notify the alleged perpetrator in writing of the report disposition; their right to appeal, and the method by which the alleged perpetrator may appeal the disposition as outlined in rule 5101:2-33-20 of the Administrative Code.
(3) Refer all children under the age of three to "Help Me Grow" for early intervention services if there is a substantiated report of child abuse or neglect regardless of the child's role in the report
(4) Refer any infant who was born and identified as affected by illegal substance abuse or withdrawal symptoms resulting in prenatal drug exposure to "Help Me Grow."

(5) Notify the child's non-custodial parent, who holds residual parental rights to the child and maintains an ongoing relationship through visitation with the child or payment of child support, of the receipt of the report, the report disposition, and case decision.
(6) Document in the case record, the date and method of notification to the principals of the report of the above listed activities.

(W) No later than three (3) working days from the date of the completion of the report disposition, the PCSA shall provide written notification of the report disposition to the following entities, as applicable, in accordance with rules 5101:2-33-21 and 5101:2-36-12 of the Administrative Code:
(1) Administrator, director, or other chief administrator of the out-of-home care entity.
(2) The owner or governing board of the out-of-home care entity.
(3) The appropriate licensing and supervising authorities of the out-of-home care entity.

(X) The PCSA shall not provide witness statements, police reports, or other investigative reports to the entities described in paragraph (W) of this rule.

(Y) If a report of child abuse and neglect involves a child who is living in a shelter for victims of domestic violence or a homeless shelter, the PCSA that received the report shall do one of the following:

1. Determine if the child was brought to the shelter pursuant to an agreement with a shelter in another county. If a determination is made that there was an agreement in place, the PCSA from the county from which the child was brought shall lead the assessment/investigation and provide the required supportive services or petition the court for custody of the child, if necessary.
2. Lead the assessment/investigation if a determination is made that the child was not brought to the shelter under an agreement with a shelter in another county. If two or more PCSAs are involved, all PCSAs shall be responsible for following procedures outlined in this rule.
3. Commence the assessment/investigation if a determination cannot be made immediately if an agreement is in effect.

(Z) The assessment/investigation documentation and any materials obtained as a result of the assessment/investigation shall be maintained in the case record. If any information gathering activity cannot be completed, justification and the written approval of the director or the designee shall be filed in the case record in accordance with rule 5101:2-36-11 of the Administrative Code.

Effective: 03/01/2014
R.C. 119.032 review dates: 01/01/2017
Promulgated Under: 119.03
Statutory Authority: 2151.421, 5153.16
Rule Amplifies: 2151.3516, 2151.421, 5153.16
Prior Effective Dates: 2/1/82, 10/1/82, 1/1/87, 1/1/88, 3/15/88, 1/1/90, 10/1/95, 6/1/96, 6/1/97, 4/1/01, 3/01/06, 10/1/09, 03/01/12

# Appendix 3 – OAC Section 5101:2-36-08

**5101:2-36-08 PCSA Requirements for Involving a Third Party in the Assessment/Investigation of a Child Abuse or Neglect Report**

(A) The public children services agency (PCSA) shall adhere to this rule for reports of child abuse or neglect where there is a potential conflict of interest and one or more of the following parties is a principal of the report

(1) Any employee of an institution or facility that is licensed or certified by the Ohio department of job and family services (ODJFS) or another state agency and supervised by the PCSA.
(2) A foster caregiver pre-finalized adoptive parent, adoptive parent, relative, or kinship caregiver who is recommended, approved, or supervised by the PCSA.
(3) A type B family day care home certified by a county department of job and family services (CDJFS) that has assumed the powers and duties of the county children services function defined in Chapter 5153 of the Revised Code.
(4) Any employee or agent of ODJFS or the PCSA as defined in Chapter 5153 of the Revised Code.
(5) Any authorized person representing ODJFS or the PCSA who provides services for payment or as a volunteer.
(6) A foster caregiver or an employee of an institution or facility licensed or certified by ODJFS and the alleged child victim is in the custody of, or receiving services from, the PCSA that accepted the report.
(7) Any time a PCSA determines that a conflict of interest exists.

(B) The involvement of a third party does not relieve the lead PCSA of its responsibility to ensure assessment/investigation activities are completed.

(C) A law enforcement agency or another PCSA may serve as the third party to an assessment/investigation of child abuse or neglect.

(1) The PCSA shall request the assistance of law enforcement as the third party if the child abuse or neglect report alleges a criminal offense.
(2) The PCSA may request the assistance of another PCSA as the third party if the child abuse or neglect report does not allege a criminal offense and mutual agreement exists by both agencies to participate in the assessment/investigation accordingly.

(D) In lieu of law enforcement or another PCSA, the PCSA may operate an in-house unit to assess/investigate reports of child abuse and neglect requiring a third party if all of the following apply:

(1) An agency employee is not named as a principal in the report.
(2) The report does not allege a criminal offense.
(3) The PCSA maintains written internal policies and procedures for the review and approval of assessments/investigations conducted by the in-house unit.
(4) The in-house unit works independently of all other units within the PCSA.

(E) Within twenty-four (24) hours of the identification of a conflict of interest, the PCSA shall request and document the assistance of a third party

(F) Upon acceptance of the request from the lead PCSA, the non-lead PCSA shall complete the assessment/investigation within the timeframes established pursuant to rule 5101:2-36-03 or 5101:2-36-04 of the Administrative Code.

# Appendix 3 – OAC Section 5101:2-36-08

(G) In instances where law enforcement or another PCSA declines to assist the PCSA, the PCSA is responsible for conducting the assessment/investigation. The PCSA is responsible for having procedures in place to address the conflict of interest and ensure the completion of the assessment/investigation.

(H) The PCSA shall comply with all procedures pursuant to rule 5101:2-36-03 or 5101:2-36-04 of the Administrative Code

(I) The assessment/investigation documentation and any materials obtained as a result of the assessment/investigation including the third party assessment/investigation report from law enforcement or the non-lead PCSA shall be maintained in the case record.

Effective: 03/01/2014
R.C. 119.032 review dates: 11/01/2015
Promulgated Under: 119.03
Statutory Authority: 2151.421, 5153.16
Rule Amplifies: 2151.3518, 2151.421, 5153.16
Prior Effective Dates: 2/1/82, 10/1/82, 1/1/87, 1/1/88, 3/15/88, 1/1/90, 10/1/95, 6/1/96, 6/1/97, 4/1/01, 3/01/06, 10/01/09, 3/01/11

# Appendix 4 – OAC Section 5101:2-33-21

**5101:2-33-21 Confidentiality and Dissemination of Information Relating to Child Abuse or Neglect**

(A) Each referral, assessment/investigation and provision of services related to reports of child abuse, neglect, dependency, or family in need of services (FINS) is confidential. Information contained in the statewide automated child welfare information system (SACWIS) is confidential pursuant to section 5101.131 of the Revised Code. This information may be shared only when dissemination is authorized by this rule. Each report and assessment/investigation of alleged child abuse or neglect is confidential and may be shared only when dissemination is authorized by this rule.

1. (B) If any information is disseminated, the public children services agency (PCSA) shall notify the receiver of the information that all of the following apply: The information is confidential and is not subject to disclosure pursuant to section 149.43 or 1347.08 of the Revised Code by the agency to whom the information was disclosed.
2. Unauthorized dissemination of the contents of the information is in violation of section 2151.421 of the Revised Code.
3. Anyone who permits or encourages unauthorized dissemination of the contents of the information violates section 2151.99 of the Revised Code and such a violation is a misdemeanor of the fourth degree.

(C) The PCSA shall document in SACWIS that the dissemination of information occurred. Documentation shall include a summary of all of the following:
1. The specific information disseminated.
2. The date the information was disseminated.
3. The agency, organization, or individual to whom the information was disseminated.
4. The reason for the dissemination of information.
5. If required, written authorization to disseminate information pursuant to paragraphs (H) and (R) of this rule.

(D) When any person commits, causes, permits, or encourages unauthorized dissemination of information, the PCSA shall give written notification of such unauthorized dissemination to the county prosecutor or city director of law and the Ohio department of job and family services (ODJFS). A copy of the written notification shall be maintained in the case record.

(E) The PCSA shall not release the identities of the referent/reporter, and any person providing information during the course of an assessment/investigation shall remain confidential. The identities of these individuals shall not be released or affirmed by the PCSA to any party without the written consent of the individual(s) involved, except to those individuals outlined in paragraph (F) of this rule.

(F) The PCSA shall release child welfare information to the following persons or entities:
1. ODJFS staff with supervisory responsibility in the administration of Ohio's child welfare program.
2. Law enforcement officials who are investigating a report of child abuse or neglect or that a person violated section 2921.14 of the Revised Code by knowingly making or causing another person to make a false report.

3. The county prosecutor who is investigating a report of child abuse or neglect or that a person violated section 2921.14 of the Revised Code by knowingly making or causing another person to make a false report.
4. Any PCSA or children services agency (CSA) assessing/investigating a child abuse or neglect report involving a principal of the case.
5. The court, for the purpose of the issuance of a subpoena to the referent/reporter.

(G) The PCSA shall promptly disseminate all information determined to be relevant, except as specified in paragraph (E) of this rule, to any federal, state, or local governmental entity, or any agent of such entity, with a need for such information in order to carry out its responsibilities under law to protect children from abuse and neglect including but not limited to:

(1) Law enforcement officials, as set forth in the child abuse and neglect memorandum of understanding, to investigate a PCSA report of child abuse or neglect, a report of a missing child, or a report that a person has violated section 2921.14 of the Revised Code, by knowingly making or causing another person to make a false report of child abuse or neglect.
(2) The county prosecutor, to provide legal advice or initiate legal action on behalf of an alleged child victim; and to prosecute any person who has violated section 2921.14 of the Revised Code, by knowingly making or causing another person to make a false report of child abuse or neglect.
(3) A guardian ad litem or court appointed special advocate.
(4) Any PCSA or CSA as defined in rule 5101:2-1-01 of the Administrative Code, which is currently assessing/investigating a report of child abuse or neglect involving a principal of the case or providing services to a principal of the case. In an emergency situation, the requested information may be released by telephone to a verified representative of a CSA. The PCSA releasing information will verify the identity, job title and authority/job duties of the CSA representative prior to releasing any information. All of the following information shall be released:
    (a) The name and role of each principal of the case registered in any prior report.
    (b) The date, allegation and disposition of each report or allegation.
    (c) The name and telephone number of the county PCSA that conducted an assessment/investigation or provided services for each report.
(5) A coroner, to assist in the evaluation of a child's death due to alleged child abuse and/or neglect.
(6) Child abuse and neglect multidisciplinary team members, for consultation regarding investigative findings or the development and monitoring of a case plan.
(7) Public service providers working with a parent, guardian, custodian or caretaker or children of the family about whom the information is being provided, including but not limited to:
    (a) Probation officers and caseworkers employed by the court, adult parole authority, rehabilitation and corrections, or the department of youth services.
    (b) Employees of the local county boards of developmental disabilities and employees of the local county boards of alcohol drug addiction and mental health.

(8) A school administrator or designee when a PCSA intends to place a child in a foster home in a county other than the county in which the child resided at the time the child was removed from his home.
(9) The licensing and supervising authorities of a public or non-public out-of-home care setting in which child abuse or neglect is alleged to have occurred.
(10) The approving authority of a kinship care setting in which child abuse or neglect is alleged to have occurred.
(11) Administrators of public out-of-home care settings in which child abuse or neglect is alleged to have occurred including but not limited to:
   (a) Psychiatric hospitals managed by the Ohio department of mental health.
   (b) Institutions managed by county courts for unruly or delinquent children.
   (c) Institutions managed by the Ohio department of youth services.
   (d) Institutions or programs managed by the Ohio department of developmental disabilities or local boards of developmental disabilities.
(12) Child abuse citizen review boards upon request.
(13) A child fatality review board recognized by the Ohio department of health, upon request except when a county prosecutor intends to prosecute or a judge prohibits release according to procedures contained in sections 5153.171, 5153.172 and 5153.173 of the Revised Code.
(14) A grand jury or court, as ordered.
(15) A children's advocacy center, as set forth in the PCSA child abuse and neglect memorandum of understanding, to comply with the protocols and procedures for receiving referrals and conducting investigations, to coordinate activities, and to provide services for reports alleging sexual abuse or other types of abuse.
(16) A CDJFS, for child care licensure pursuant to section 5153.175 of the Revised Code and for joint planning and sharing of information pursuant to rule 5101:2-33-28 of the Administrative Code.

(H) Except as specified in paragraph (E) of this rule or if disclosure would jeopardize a criminal investigation or proceeding, the PCSA shall promptly disseminate all information it determines to be relevant to an individual or agency, with written authorization from the PCSA director, when it is believed to be in the best interest of any of the following:

1. An alleged child victim, a child subject of the report, the family, or the caretaker.
2. Any child residing within, or participating in an activity conducted by an out-of-home care setting when necessary to protect children in that setting.
3. A child who is an alleged perpetrator.

(I) Upon receiving a request for disclosure to the public regarding the findings or information about a case of child abuse or neglect which has resulted in either a child fatality or a near fatality that, as certified by a physician, placed the child in serious or critical condition, the PCSA shall prohibit disclosure of such information if it is determined by the PCSA that any of the following would occur:

1. Harm to the child or the child's family.
2. Jeopardize a criminal investigation or proceeding.
3. Interfere with the protection of those who report child abuse or neglect.

(J) If the PCSA has determined to disclose to the public information pursuant to paragraph (I) of this rule, the PCSA shall provide all of the following:

1. The cause of and circumstances regarding the fatality or near fatality.

2. The age and gender of the child.
3. Information describing and the findings of any previous reports of child abuse or neglect assessment/investigations that are pertinent to the child abuse or neglect that led to the fatality or near fatality.
4. Any services provided by the PCSA on behalf of the child that are pertinent to the child abuse or neglect that led to the fatality or near fatality.
5. Any actions, including but not limited to court filings, removals or implementation of safety plans on behalf of the child that are pertinent to the child abuse or neglect that led to the fatality or near fatality.

(K) Upon request, the PCSA shall promptly disseminate to a mandated reporter, who makes a report of child abuse or neglect, information pursuant to section 2151.421 of the Revised Code.

1. Whether the PCSA has initiated an investigation.
2. Whether the PCSA is continuing to investigate.
3. Whether the PCSA is otherwise involved with the child who is the subject of the report.
4. The general status of the health and safety of the child who is the subject of the report.
5. Whether the report has resulted in the filing of a complaint in juvenile court or of criminal charges in another court.

(L) The PCSA shall promptly disseminate all information it determines to be relevant to the principals of the case, in accordance with Chapter 5101:2-36 of the Administrative Code, to inform them of the following:

1. Each allegation contained in the report.
2. All report dispositions resulting from the assessment/investigation.
3. All case decisions resulting from the alternative response assessment.

(M) The PCSA shall promptly disseminate all information determined to be relevant, except as specified in paragraph (E) of this rule, to all of the following persons or entities:

1. The non-custodial parent of the alleged child victim or child subject of the report, and children being provided services by the PCSA when the PCSA believes such sharing would be in the best interest of the child.
2. A physician, for the diagnostic assessment of a child where there is reason to believe the child may be a victim of abuse or neglect.
3. A private service provider, for diagnostic evaluations of and service provision to the alleged child victim or child subject of the report and his family.
4. The administrator of a non-public out-of-home care setting in which child abuse or neglect is alleged to have occurred.
5. A foster, relative and non-relative caregiver, as required by rule 5101:2-42-90 of the Administrative Code.
6. The superintendent of public instruction, pursuant to section 5153.176 of the Revised Code, when the report involves a person who holds a license issued by the state board of education where the agency has determined that child abuse or neglect occurred and that abuse or neglect is related to the person's duties and responsibilities under the license.

(N) The PCSA shall utilize information outlined in paragraph (O) of this rule obtained from the alleged perpetrator search within SACWIS for the purpose of a background check for any of the following:

# Appendix 4 – OAC Section 5101:2-33-21

1. Foster care licensure, pursuant to Chapters 5101:2-5 and 5101:2-7 of the Administrative Code.
2. An adoption homestudy, pursuant to Chapter 5101:2-48 of the Administrative Code.
3. A relative or non-relative caregiver approval for placement, pursuant to rule 5101:2-42-18 of the Administrative Code.

(O) The PCSA shall consider reports that meet the following criteria when the information is being used for a background check in accordance with paragraphs (N) and (G) (16) of this rule:

1. Substantiated reports where the subject of the search was the alleged perpetrator.
2. Indicated reports where the subject of the search was the alleged perpetrator.

(P) If releasing information pursuant to paragraphs (N) and (G) (16) of this rule, the PCSA shall not release any information pertaining to an unsubstantiated report or an alternative response report.

(Q) The PCSA shall refer any individual who inquires whether his or her name has been placed or remains within SACWIS as the subject of a report of alleged child abuse and/or neglect to ODJFS. An individual may submit a written request to ODJFS. The written request must contain the original signature of the individual who is the subject of the inquiry and the following:

1. The individual's full name, including maiden and any other names utilized; address; date of birth and social security number.
2. A copy of two of the following forms of identification, with at least one containing the individual's social security number:
   a. Social security card.
   b. Driver license.
   c. State identification card.
   d. Birth certificate.
   e. Passport or travel visa.
3. In lieu of the two copies of the forms of identification required in paragraph (Q)(2) of this rule, an individual may submit a notarized request containing the individual's name, address, date of birth and social security number.

(R) At his or her sole discretion, a PCSA director may disseminate information to a researcher in the area of child welfare, if the information is determined to be relevant to the researcher, and the results of the research will be beneficial to the county PCSA in administering child welfare programs/services. Authorization of the dissemination shall be documented. No direct access to SACWIS or any other state of Ohio database shall be requested by or on behalf of, nor approved for or granted to, any researcher pursuant to rule 5101:2-33-70 of the Administrative Code. The PCSA shall disclose only the minimum information needed by the researcher to perform the study, and, prior to disseminating information to any researcher, the PCSA shall require the researcher to sign an agreement which addresses all of the following:

1. The researcher shall not disseminate confidential information containing names or data by which any individual or out-of-home care setting could be identified or deductively inferred.
2. The PCSA shall review the research prior to its dissemination or publication to ensure that the research is void of names or data by which any individual or out-of-home care setting could be identified or deductively inferred.

3. The researcher shall accept liability for unauthorized dissemination of information.

Replaces: 5101:2-33-22, 5101:2-33-24
Effective: 07/01/2014
R.C. 119.032 review dates: 02/06/2014 and 07/01/2019
Promulgated Under: 119.03
Statutory Authority: 2151.421, 5101.134
Rule Amplifies: 2151.421, 2151.423, 5101.13 , 5101.132, 5101.133
Prior Effective Dates: 11/22/81, 10/1/82, 1/1/87, 1/1/88, 1/1/90, 9/1/94, 6/30/97 (Emer.), 9/28/97, 10/1/97 (Emer.), 12/30/97, 4/1/01, 3/1/06, 1/1/07, 1/15/11, 11/1/11



TAYLOR__02029

# Appendix 5 – OAC Section 5101:2-36-07

**5101:2-36-07 PCSA Requirement for Conducting an Assessment/Investigation of the Alleged Withholding of Medically Indicated Treatment from a Disabled Infant with Life-Threatening Conditions**

(A) The public children services agency (PCSA) shall conduct an assessment/investigation when a neglect report alleges the withholding of medically indicated treatment from a disabled infant with life-threatening condition(s).

(1) The withholding of medically indicated treatment is the refusal to provide appropriate nutrition, hydration, medication or other medically indicated treatment from a disabled infant with a life-threatening condition.

(2) Medically indicated treatment includes the medical care, which is most likely to relieve, or correct, the life-threatening condition. Nutrition, hydration, and medication, as appropriate for the infant's needs, are medically indicated for all disabled infants; as well as, the completion of appropriate evaluations or consultations necessary to assure that sufficient information has been gathered to make informed medical decisions on behalf of the disabled infant.

(3) In determining whether treatment is medically indicated, reasonable medical judgments made by a prudent physician, or treatment team, knowledgeable about the case and its treatment possibilities will be regarded (considered). The opinions about the infant's future "quality of life" are not to bear on whether or not a treatment is judged to be medically indicated. Medically indicated treatment does not include the failure to provide treatment to a disabled infant if the treating physician's medical judgment identifies any of the following:

(a) The disabled infant is chronically and irreversibly comatose.

(b) The provision of the treatment would be futile and would prolong dying.

(c) The provision of the treatment would not be effective in ameliorating or correcting all of the disabled infant's life threatening conditions.

(d) The provision of such treatment to the disabled infant would be inhumane.

(B) The PCSA shall initiate the screened in medical neglect report in accordance with the following:

(a) Complete face-to-face or telephone contact with the health care facility's administrator, or designee, within one hour from the time the referral was screened in as a report.

(b) Obtain the following information from the health care facility's administrator, or designee, regarding the current condition of the disabled infant, including but not limited to:

(a) The physical location of the disabled infant within the hospital, e.g., emergency room, neonatal intensive care unit, labor and delivery, sixth floor, etc.

(b) The disabled infant's age.

(c) The disabled infant's diagnoses or diagnosis and the prognosis.

(d) The problem requiring treatment.

(e) The immediate actions necessary to keep the disabled infant alive.

(f) Whether or not the withholding of life-sustaining treatment has been recommended.

(g) Whether or not the withholding of life-sustaining treatment has been implemented.

(h) Whether or not the parent, guardian, or custodian has refused to consent to life-sustaining treatment.

(i) Whether or not the hospital chose to sustain life-supporting care for the immediate future, preceding 96 hours from the date and time the PCSA initiated the report, while the assessment/investigation is underway.

(j) Whether or not sustenance (food or water, whether given orally or through an intravenous or nasogastric tube) or medication is being denied.

(C) The PCSA shall document in the case record the date, time, and with whom the assessment/investigation was initiated

(D) The PCSA shall involve a qualified medical consultant within twenty-four (24) hours from the time the referral was screened in as a report to assist in the evaluation of the disabled infant's medical information, including medical records, obtained during the preliminary medical assessment.

(E) If the PCSA determines the child to be in immediate danger of serious harm, the PCSA shall follow procedures outlined in rule 5101:2-37-02 of the Administrative Code.

(F) The PCSA shall pursue any legal remedies, including the initiation of legal proceedings in a court of competent jurisdiction, to provide medical care or treatment for a child when such care or treatment is necessary to prevent or remedy serious harm to the child or to prevent the withholding of medically indicated treatment from a disabled infant with a life-threatening condition.

(G) The PCSA shall attempt a face-to-face contact in order to conduct an interview with the alleged disabled infant's parent, guardian, or custodian no later than twenty-four (24) hours from the time the referral was screened in as a report. The purpose of the interview is to:

(1) Inform the parent, guardian, or custodian that a neglect report alleging the withholding of medically indicated treatment to a disabled infant has been accepted by the PCSA.
(2) Inform the parent guardian, or custodian of the purpose of the assessment/investigation.
(3) Seek parental consent for medically indicated treatment, if applicable.
(4) Confirm parent, guardian, or custodian's name and identifying information.
(5) Determine if parent, guardian, or custodian agrees on the course of action to be followed.
(6) Determine if the parent, guardian, or custodian was presented with all treatment options by the medical treatment team.
(7) Determine if the prognosis of the disabled infant was presented to the parent, guardian, or custodian.
(8) Assess if the parent, guardian, or custodian understands the information provided by the medical treatment team.
(9) Determine the nature and degree of parental involvement in the decision to deny treatment or sustenance to the alleged child victim, if applicable.
(10) Assess if appropriate counseling services have been made available to the parent, guardian, or custodian.
(11) Refer the parent, guardian, or custodian to appropriate counseling services, if applicable.
(12) Determine if the parent, guardian, or custodian was provided information to facilitate access to available services for disabled persons and family members.
(13) Assist the parent, guardian, or custodian in accessing needed services, if applicable.
(14) Determine if the parent, guardian, or custodian participated in the hospital review process.
(15) Determine if the parent, guardian, or custodian was provided with or has access to the results of the hospital review process.

(H) If the attempted face-to-face contact with the disabled infant's parent, guardian, or custodian as specified in paragraph (G) is unsuccessful, the PCSA shall continue making attempts of face-to-face contact at least every five (5) working days until face-to-face contact has occurs or until the PCSA is required to make a report disposition pursuant to paragraph (O) of this rule.

(I) The PCSA shall complete the JFS 01401 "Comprehensive Assessment and Planning Model - I.S., Safety Assessment" (rev. 2/2006) pursuant to rule 5101:2-37-01 of the Administrative Code within four (4) working days from the date the report was screened in.

(J) The PCSA shall document in the case record the date and time of the contact, or attempted contacts.

(K) The PCSA shall, in cooperation with the medical consultant, conduct and document interviews with the attending physician and health care facility staff. The purpose of the interviews is to:

(1) Determine the measures that the health care facility staff attending to the disabled infant has taken to provide medically indicated treatment to the disabled infant.
(2) Determine whether the disabled infant's attending physician, with the consent of the disabled infant's parent, guardian or custodian will sustain needed life-supporting care for twenty-four (24) hours while the PCSA continues the assessment/investigation.
(3) Determine if any of the following conditions of and risk to the disabled infant were concluded by the attending physician's and/or staff's assessment:
    (a) The disabled infant is chronically and irreversibly comatose.
    (b) The provision of medical treatment would merely prolong dying, not be effective in ameliorating or correcting all of the disabled infant's life-threatening conditions, or otherwise be futile in terms of the survival of the disabled infant.
    (c) The provision of medical treatment would be virtually futile in terms of the survival of the disabled infant and the treatment itself under such circumstances would be inhumane.
(4) Verify if plans have been made to convene a meeting of the health care facility review committee or to adopt the recommendations of the appropriate health care facility review committee, and the meeting has been held.
(5) Confirm the disabled infant's age.
(6) Confirm the disabled infant's diagnoses or diagnosis.
(7) Determine if the disabled infant's life is endangered.
(8) Determine if the withholding of life-sustaining treatment has been recommended.
(9) Determine if the withholding of life-sustaining treatment has been implemented.
    (a) Identify the treatment necessary for the disabled infant's life or health that is being denied.
    (b) Determine if sustenance (food or water, whether given orally or through an intravenous or nasogastric tube) or medication is being denied.
(10) Determine if the parent, guardian, or custodian refused to consent to life-sustaining treatment.
(11) Determine if the hospital will sustain life-supporting care for the immediate future while the PCSA's assessment/investigation is conducted, if applicable.
(12) Identify the treatment or sustenance being provided to the disabled infant, if applicable.
(13) Determine if there is consensus regarding the medical diagnoses among the treatment team.

(14) Document and identify if there were/have been any differing opinions among the treatment team.
(15) Document the names of all medical consultants involved include their qualifications/credentials.
(16) Determine which members of the treatment team discussed the case with the parent, guardian, or custodian.
(17) Determine if a hospital review process has occurred.
  (a) If applicable, document the review process.
  (b) If applicable, document the recommendations.

(L) The PCSA shall conduct and document all face-to-face interviews with the alleged perpetrator, unless law enforcement or the county prosecutor or medical consultant will interview the alleged perpetrator pursuant to the procedures delineated in the county child abuse and neglect memorandum of understanding, in order to assess his or her knowledge of the allegation.

(M) The PCSA shall advise the alleged perpetrator of the allegations made against him or her at the time of the initial contact. The initial contact between the PCSA and the alleged perpetrator of the report includes the first face-to-face or telephone contact, whichever occurs first, if information is gathered as part of the assessment/investigation process.

(N) The PCSA shall conduct and document face-to-face or telephone interviews with any person identified as a possible source of information during the assessment/investigation to obtain relevant information regarding the safety of and risk to the child. The PCSA shall exercise discretion in the selection of collateral sources to protect the privacy of the principals of the report.

(O) The PCSA shall complete the report disposition and arrive at a final case decision by completing the JFS 01400 "Comprehensive Assessment and Planning Model - I.S., Family Assessment" (rev. 7/2006) no later than forty-five (45) days from the date the PCSA screened in the referral as a child abuse and/or neglect report. The PCSA may extend the time frame by a maximum of fifteen (15) days when information needed to determine the report disposition and final case decision cannot be obtained within forty-five (45) days and the reasons are documented in the case record pursuant to rule 5101:2-36-11 of the Administrative Code.

(P) The PCSA shall not waive the completion of the report disposition.

(Q) The PCSA shall have an interpreter present for all interviews if the PCSA has determined that a principal of the report has a language or any other impairment that causes a barrier in communication, including but not limited to a principal of the report who is deaf or hearing impaired, limited English proficiency or is developmentally delayed.

(R) Within two (2) working days of completion of the assessment/investigation, the PCSA shall notify the alleged perpetrator in writing of the report disposition and the right to appeal the disposition as pursuant to rule 5101:2-33-20 of the Administrative Code.

(S) Within two (2) working days from the date of the completion of the report disposition, the PCSA shall notify the disabled infant's parent(s) in writing of the report disposition and case decision.



TAYLOR__02033

# Appendix 5 – OAC Section 5101:2-36-07

(T) No later than three (3) working days from the date of the completion of the report disposition, the PCSA shall provide written notification of the report disposition to the following entities, as applicable, in accordance with rules 5101:2-33-21 and 5101:2-36-12 of the Administrative Code.

(1) Administrator, director, or other chief administrator of the health care facility.
(2) The owner or governing board of the health care facility.
(3) The appropriate licensing and supervising authorities of the health care facility.

(U) The PCSA shall notify law enforcement if it is determined that the attending physician failed to provide medically indicated treatment or failed to inform the alleged child victim's parent, guardian, or custodian of the available treatment options.

(V) The PCSA shall maintain all materials obtained as a result of the assessment/investigation in the case record.

Effective: 06/15/2015
R.C. 119.032 review dates: 06/15/2020
Promulgated Under: 119.03
Statutory Authority: 2151.421
Rule Amplifies: 2151.421
Prior Effective Dates: 4/1/86 (Emer.), 6/19/86 (Emer.), 8/1/86, 1/1/89, 10/1/95, 1/1/00, 4/1/01, 3/01/06, 10/1/09