D5 Commander and Officer Hoover's Relief Commander to meet with Officer Hoover regarding this investigation. Meeting to be documented with an ESL
TAT

# Internal Investigations Section

## Captain Jay B. Johnstone, Commander

| | | | |
|---|---|---|---|
| **Case Number:** | 2023-102 | **Date Assigned:** | April 14, 2023 |
| **Investigator:** | Sergeant Zachary Sterbling | | |
| **Reviewed By:** | Lieutenant David A. Sprague | **Date:** | |
| **Approved By:** | Captain Jay B. Johnstone JBJ | **Date:** | 6/22/23 |
| **Approved By:** | Colonel Teresa A. Theetge, Police Chief TAT | **Date:** | 6-25-23 |

DEPOSITION EXHIBIT 1 KL
10/1/26 Caton
PENGAD 800-631-6989

CITY 00018

**CINCINNATI POLICE DEPARTMENT**
**INTERNAL INVESTIGATIONS SECTION**
**CASE #2023-102**

## INTRODUCTION

Internal Investigations Section (IIS) completed an investigation into a complaint of Law Violation and Unethical Conduct filed on April 12, 2023, by Mr. Brendon Taylor with the Citizen Complaint Authority (CCA).

Mr. Taylor alleged in April 2023, Police Officer Jesse Hooven, EID# 31192, District Five, obtained records from Hamilton County Jobs and Family Services (HCJFS) through illicit means. Officer Hooven then shared personal information obtained from HCJFS with Mr. Taylor's girlfriend, Ms. Holly Hooven. Ms. Hooven is Officer Hooven's ex-wife. Mr. Taylor also alleged Officer Hooven illegally queried Mr. Taylor using a law enforcement database.

## INTERVIEW SUMMARIES

***Mr. Brendon Taylor, 112 Timber Ridge Drive, Carlisle, Ohio 45005, (937)654-3868***

Mr. Taylor is currently dating Officer Hooven's ex-wife, Ms. Hooven. Ms. Hooven told Mr. Taylor that Officer Hooven had access to personal Child Protective Service (CPS) information about Mr. Taylor.

Specifically, Officer Hooven told Ms. Hooven that Mr. Taylor was the victim of sexual abuse as a child and had a recently opened case with CPS regarding his son.

Officer Hooven should not have access to this private information unless it was acquired as the subject of a law enforcement investigation in the course of his official duties.

Mr. Taylor believed Officer Hooven obtained this personal and private information in an unethical manner by using his credentials as a law enforcement officer. Mr. Taylor also believed Officer Hooven improperly queried him in a law enforcement database.

***Ms. Holly Hooven, 136 Bramble Avenue, Highland Heights, KY 41076, (859)576-4320***

Ms. Hooven is the ex-wife of Officer Hooven. She is currently dating Mr. Taylor. On April 11, 2023, Officer Hooven contacted Ms. Hooven via text message to discuss their common children.

Officer Hooven told Ms. Hooven he did not want Mr. Taylor to care for their common children because Officer Hooven had knowledge Mr. Taylor was the victim of sexual and physical abuse as a child. Officer Hooven told Ms. Hooven he obtained the personal and private information from a HCJFS employee named, "Madison."

Officer Hooven also told Ms. Hooven that Mr. Taylor should not be around their common children because Mr. Taylor recently had an open case with CPS regarding Mr. Taylor's son.

Officer Hooven told Ms. Hooven the information was public information. Ms. Hooven did not believe such information was available to the public. Ms. Hooven called HCJFS herself to see if she could confirm the information Officer Hooven shared with her and was told by HCJFS employees that such information was not for public dissemination.

Ms. Hooven believed Officer Hooven obtained the information about her boyfriend, Mr. Taylor, in an unethical manner.

***Ms. Madison Paul, 907 Beechmeadow Lane, Cincinnati, Ohio 45238, (513)544-0243***

Ms. Paul is an employee of HCJFS. Ms. Paul met Officer Hooven in March 2023, when he responded to a call for service to assist Ms. Paul in a child custody dispute. Officer Hooven was on duty and assisted Ms. Paul. While investigating, Ms. Paul and Officer Hooven exchanged personal cellular telephone numbers to discuss the case further.

The day following their on-duty interaction, Officer Hooven called Ms. Paul, and it became immediately clear to Ms. Paul that the telephone call was a personal call and not work related. In the following days, Ms. Paul and Officer Hooven continued to text message and speak on the telephone in their personal time. They developed a romantic relationship and met occasionally outside of work.

Within a day of meeting and speaking in their personal time, Officer Hooven began talking about his ex-wife, Ms. Hooven, and her new boyfriend, Mr. Taylor. Officer Hooven told Ms. Paul that he was concerned about Mr. Taylor's past considering he was around Officer Hooven's children. Officer Hooven did not offer Ms. Paul specific safety concerns for his children. Officer Hooven asked Ms. Paul if she could query Mr. Taylor in a HCJFS database to see if Mr. Taylor had a record. Ms. Paul was aware the information Officer Hooven was requesting was for his personal knowledge, and not for a law enforcement related investigation.

Ms. Paul queried Mr. Taylor in the Ohio Statewide Automated Child Welfare Information System (SACWIS). Ms. Paul did not find anything in her query that concerned her about Mr. Taylor being near children. Ms. Paul did not recall exactly what she learned in her query, but recalls telling Officer Hooven that Mr. Taylor did not have a concerning history.

Ms. Paul provided the information to Officer Hooven during a telephone conversation. Ms. Paul is not aware of what Officer Hooven did with the information she provided him.

Ms. Paul learned that Officer Hooven had a live-in girlfriend and was cheating on her. Ms. Paul contacted Officer Hooven's current girlfriend and told her Officer Hooven had been cheating on her. Ms. Paul ended her relationship with Officer Hooven and has not spoken to him since April 8, 2023.

Mr. Taylor made a complaint to HCJFS regarding Ms. Paul disseminating personal and private information to Officer Hooven. Ms. Paul was investigated by the Ohio Inspector General for violating privacy rules regarding the improper use of the SACWIS database. Ms. Paul is currently awaiting discipline from HCJFS.

Ms. Paul believed when she first met Officer Hooven, he only cultivated a personal relationship with her for the sole reason of using her for access to sensitive information regarding his ex-wife and new boyfriend. Officer Hooven spoke about his ex-wife and her new boyfriend regularly. Within one day of meeting Ms. Paul, Officer Hooven began asking her about what databases she had access to in order to collect more information about Mr. Taylor. Officer Hooven told Ms. Paul he was unable to use law enforcement databases to query information regarding Mr. Taylor.

In her interview with IIS, Ms. Paul said she felt Officer Hooven manipulated her for access to information he otherwise did not have access to.

***<u>Police Officer Jesse Hooven, EID# 37106, District Five</u>***

Officer Hooven and his ex-wife, Ms. Hooven, are currently engaged in a legal dispute regarding the custody of their shared children. Ms. Hooven's new boyfriend, Mr. Taylor, regularly watches Officer Hooven's children at the behest of Ms. Hooven. Officer Hooven has never met Mr. Taylor.

Officer Hooven has never queried Mr. Taylor using a law enforcement database.

In March 2023, Officer Hooven met a HCJFS employee, Ms. Paul, while assisting her with a call for service in District Five. Officer Hooven received Ms. Paul's personal cellular telephone number during the call for service. Later, Ms. Paul continued to text message Officer Hooven unrelated to work.

Officer Hooven and Ms. Paul began a romantic relationship outside of work. Officer Hooven vented to Ms. Paul regularly about his ex-wife and her new boyfriend, Mr. Taylor. Ms. Paul voluntarily, and without request, queried Mr. Taylor in a database she had access to at HCJFS. Ms. Paul told Officer Hooven that Mr. Taylor was sexually and physically assaulted as a child based on information she learned from her query.

Ms. Paul did not give any documents to Officer Hooven. Ms. Paul shared the information from her query during a telephone conversation.

Officer Hooven then told his ex-wife, Ms. Hooven, about Mr. Taylor's history of abuse.

Ms. Paul learned that Officer Hooven had a girlfriend. Ms. Paul contacted Officer Hooven's girlfriend and told her that she had an affair with Officer Hooven. Officer Hooven has not spoken to Ms. Paul since she told his girlfriend of their relationship.

Officer Hooven did not cultivate a relationship with Ms. Paul for the purpose of using her for access to information about Mr. Taylor. Officer Hooven told IIS he did not request Ms. Paul to access information for him about Mr. Taylor. Officer Hooven told IIS he was not sure why Ms. Paul queried Mr. Taylor in a HCJFS database.

Officer Hooven was not aware Ms. Paul was being disciplined by HCJFS for accessing a HCJFS database for improper purposes.

## ADDITIONAL INFORMATION

IIS reviewed:

- CCA Complaint Sheet #23072
- Cellular telephone text messages between Officer Hooven and Ms. Hooven.
    - Officer Hooven tells Ms. Hooven that Mr. Taylor was sexually and physically abused as a child. Officer Hooven tells Ms. Hooven he learned this information from an HCJFS worker named "Madison."
- Regional Crime Information Center (RCIC) data
    - No law enforcement officers with RCIC access have queried Mr. Taylor in the previous year using a law enforcement database on the RCIC network.

## CONCLUSION

Internal Investigations Section (IIS) completed an investigation into a complaint of Law Violation and Unethical Conduct filed on April 12, 2023, by Mr. Brendon Taylor with the Citizen Complaint Authority (CCA).

Mr. Taylor alleged in April 2023, Police Officer Jesse Hooven obtained records from Hamilton County Jobs and Family Services (HCJFS) through illicit means. Officer Hooven then shared personal information obtained from HCJFS with Mr. Taylor's girlfriend, Ms. Holly Hooven. Ms. Hooven is Officer Hooven's ex-wife. Mr. Taylor also alleged Officer Hooven illegally queried Mr. Taylor using a law enforcement database.

Officer Hooven and his ex-wife, Ms. Hooven, are currently engaged in a legal dispute regarding the custody of their shared children. Ms. Hooven's new boyfriend, Mr. Taylor, regularly watched Officer Hooven's children at the behest of Ms. Hooven. Officer Hooven has never met Mr. Taylor.

Officer Hooven met Ms. Madison Paul, an employee of HCJFS, while on duty and assisting Ms. Paul with a call for service. Ms. Paul and Officer Hooven exchanged personal telephone numbers to discuss the call for service during Officer Hooven's tour of duty.

Officer Hooven and Ms. Paul continued to communicate regularly after Officer Hooven's tour of duty. Their discussions quickly became unrelated to work. Officer Hooven and Ms. Paul developed a romantic relationship off duty.

In her interview with IIS, Ms. Paul said Officer Hooven asked her to query Mr. Taylor in the HCJFS state database to which Officer Hooven did not have access. Officer Hooven told Ms. Paul he was concerned about the welfare of his children near Mr. Taylor, as his ex-wife would often have Mr. Taylor watch Officer Hooven's children.

Officer Hooven told IIS that Ms. Paul queried Mr. Taylor and provided Officer Hooven with information about Mr. Taylor unsolicited.

Regardless of whether Officer Hooven requested the information or not, Ms. Paul told IIS she was aware Officer Hooven was receiving the information for personal reasons and not for legitimate law enforcement reasons.

Ms. Paul told IIS she only told Officer Hooven that Mr. Taylor had no history that would raise concern about Mr. Taylor being around Officer Hooven's children. This statement was based on Ms. Paul's query of the Ohio Statewide Automated Child Welfare Information System (SACWIS).

Officer Hooven told Ms. Hooven, in a series of cellular telephone text messages, that he learned from a HCJFS employee that Mr. Taylor had been physically and sexually abused as a child. Officer Hooven also told Ms. Hooven the information about Mr. Taylor was public record.

Ms. Hooven shared the information with Mr. Taylor who made a complaint with HCJFS for improper dissemination of personal information. Ms. Paul was subsequently investigated and is being disciplined for improperly using the SAQWIS database.

Ms. Paul ended her relationship with Officer Hooven when she learned Officer Hooven had another girlfriend.

Regional Crime Information Center data confirmed Officer Hooven did not query Mr. Taylor in a law enforcement database. Ms. Paul's interview with IIS confirmed she utilized her access to SAQWIS to acquire information about Mr. Taylor as a personal favor to Officer Hooven. Ms. Paul was aware that Officer Hooven would not be using the information in course of his official duties as a police officer.

## RECOMMENDATION

Ms. Paul told IIS that Officer Hooven used his position as a police officer to cultivate a relationship with her to later gain information Officer Hooven would otherwise not have access to. Officer Hooven told IIS he did not solicit the restricted information Ms. Paul provided to Officer Hooven about Mr. Taylor. IIS was unable to determine who prompted the request for restricted information.

Based on the IIS investigation, IIS recommends the allegation of Unethical Conduct, against Police Officer Jesse Hooven be closed, **NOT SUSTAINED**. Approved TAT

Regional Crime Information Center data confirmed Officer Hooven did not query Mr. Taylor in a law enforcement database.

Based on the IIS investigation, IIS recommends the allegation of Law Violation (Improper Use of a Law Enforcement Database), against Police Officer Jesse Hooven be closed, **EXONERATED**.

Approved
TAT