**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **BRENDON TAYLOR, et al.,** | : | **Case No. 1:24-cv-204** |
| | : | |
| **Plaintiffs,** | : | **Judge Susan J. Dlott** |
| | : | |
| **-vs-** | : | **THIRD-PARTY DEFENDANTS** |
| | : | **CITY OF CINCINNATI AND** |
| **JESSE LEE ANTHONY** | : | **SHERYL M.M. LONG'S MOTION** |
| **HOOVEN, et al.,** | : | **FOR DETERMINATION** |
| | : | **REGARDING DUTY TO DEFEND** |
| **Defendants.** | : | **PURSUANT TO R.C. 2744.07(D)** |

Pursuant to R.C. 2744.07, Third-Party Defendants City of Cincinnati and Sheryl M.M. Long ("City Manager Long") (hereinafter collectively the "City") move this Court to determine that it has no duty to defend or indemnify Defendant Jesse Lee Anthony Hooven ("Officer Hooven"). This action centers upon Officer Hooven's purely private conduct aimed at gaining leverage in his child custody dispute. As his conduct was outside the scope of his duties as a Cincinnati Police Officer, the City has no duty to defend or indemnify him. A memorandum in support is attached.

Respectfully submitted,

**EMILY SMART WOERNER (0089349)**
**City Solicitor**

***/s/ Katherine C. Baron***
Katherine C. Baron (0092447)
Shuva J. Paul (0088484)
Senior Assistant City Solicitors
801 Plum Street, Room 214
Cincinnati, Ohio 45202
(513) 352-4705
Fax: (513) 352-1515
Katherine.baron@cincinnati-oh.gov

Shuva.Paul@cincinnati-oh.gov
*Counsel for the City of Cincinnati*

**MEMORANDUM IN SUPPORT**

## I. INTRODUCTION

The Court must reject Officer Hooven's gambit to have taxpayers fund his defense and indemnify him for his conduct in a personal domestic relations matter. The developed record establishes that Officer Hooven gained access to confidential information through his intimate relationship with a county employee. He then leveraged that information to control how his children interacted with ex-wife's new boyfriend. Officer Hooven's personal pursuit was well outside the scope of his job responsibilities, and the City of Cincinnati and its taxpayers should not bear the costs of his behavior.

R.C. Chapter 2744 protects public employees acting within the scope of their official responsibilities and expressly disclaims responsibility for those who are not. R.C. 2744.07(A)(2)(a). The authors of this chapter implemented it to preserve the fiscal integrity of political subdivisions and never envisioned using it to protect litigants—who happen to be public employees—from the liabilities they create on their own time. *See Culberson v. Doan*, 125 F.Supp. 2d 252, 282 (S.D. Ohio 2000).

The Court should also confirm that merely *alleging*, without support, that a public employee acted in his capacity as a public official does not impose a duty to defend on his government employer when his conduct is demonstrably personal and private. Such a ruling would subject political subdivisions to virtually unlimited

liability in requiring them to fund employees' defenses in any lawsuit that recites the magic words.

For these reasons and those more specifically addressed below, the Court should find that, based on the now developed record, the City has no duty to defend or indemnify Officer Hooven in this matter.

## I. STATEMENT OF RELEVANT FACTS

In April 2023, Defendant Madison Paul ("Ms. Paul") worked for the Hamilton County Department of Jobs and Family Services. (Am. Compl., Doc. 55, ¶ 26). At the same time, Officer Hooven worked as a police officer with the Cincinnati Police Department ("CPD"). *See* generally Hooven Depo., Doc. 139, PageID # 1504-1506.

While on duty, Officer Hooven received a call from Ms. Paul requesting police assistance locating children at the Budget Inn on Central Parkway. (*Id.* at PageID # 1574:1-3, 14-16; PageID # 1597-1598). Following this call, Ms. Paul and Officer Hooven exchanged phone numbers; and though Ms. Paul initially contacted Officer Hooven with updates about the children, the relationship soon became personal and sexual in nature. (*Id.* at PageID # 1600:25-1601:10; PageID # 1615:2-12; PageID # 1693:16-18).

During their two-week relationship, Officer Hooven shared information with Ms. Paul about his ongoing child custody battle with Holly Hooven ("Ms. Hooven") and his concerns about her new boyfriend Brendon Taylor ("Mr. Taylor"). (*Id.* at PageID # 1673:12-1674:8). Though unsure why Ms. Paul may want this information, Ms. Paul asked Officer Hooven for Mr. Taylor's name and roughly how old he was. (*Id.* at PageID # 1621:7-15). Officer Hooven complied. (*Id.*).

After receiving the information, Ms. Paul accessed Mr. Taylor's file in the Ohio Statewide Automated Child Welfare Information System ("SACWIS")[1] and provided Officer Hooven with information about Mr. Taylor's history of childhood sexual and physical abuse. (*Id.* at PageID # 1606:5-8; Paul Depo., Doc. 140, PageID # 1830:9-13). Officer Hooven denies requesting the SACWIS information from Ms. Paul but admits he understood the information was confidential (Hooven Depo., Doc. 139, PageID # 1607:21-1608:11). Despite this knowledge, he shared the confidential information with Ms. Hooven in an effort to minimize their children's time spent with Mr. Taylor, whom he distrusted. (*Id.* at PageID # 1622:17-25; *see also* Text Messages, Doc. 145-7, PageID # 2242). Notably, there was no CPD investigation going on concerning Mr. Taylor or into the safety of Officer Hooven's children. (Hooven Depo., Doc. 139, PageID # 1686:4-9).

Upon learning his personal history was accessed, Mr. Taylor along with Ms. Hooven visited CPD District 5's station to lodge a complaint concerning Officer Hooven's conduct. (Caton Depo., Doc. 138, PageID # 1463:7-13). Captain Amanda Caton ("Captain Caton"), captain of CPD District 5 and one of Officer Hooven's superior officers, reviewed the complaint but took no disciplinary action. (*Id.* at PageID # 1463:11-21).

Mr. Taylor also lodged a complaint with the Citizen Complaint Authority ("CCA") alleging that "Officer Jesse Hooven obtained Mr. Taylor's personal records from Hamilton County Jobs and Family Services through illicit means, for Officer

[1] Information contained in SACWIS is confidential pursuant to R.C. 5101.131. (MOU, Doc. 54-1, PageID # 388).

Hooven's personal gain." *See* CCA Complaint Sheet, Doc. 138-4. Even though it pertained to an officer's off-duty conduct, the CCA still investigated the complaint consistent with its broad mandate. *See* Long Depo., Doc. 137, PageID # 1389:2-11 (Q. "Okay. In a situation where the complaint involves nothing to do with police authority, police work, police duties, nothing to do at all with the officer's job, it's totally personal between the complainant and the officer is it - - would CCA investigate that complaint? * * *" A. "Yes. CCA investigates a complaint that is made by residents."). The CCA "sustained" a finding of "misconduct" against Officer Hooven. (CCA Report, Doc. 136-4, PageID # 1358).

Mr. Taylor's complaint with the CCA further prompted CPD's Internal Investigations Section ("IIS") to conduct its own investigation. (Caton Depo., Doc. 138, PageID # 1460:15-24; IIS Report, Doc. 138-1). IIS found that the allegations of "unethical conduct" against Officer Hooven were "not sustained" and that he be "exonerated" of improperly using a law enforcement database. (IIS Report, Doc. 138-1). However, then Police Chief Teresa Theetge ordered "D5 Commander and Officer Hooven's Relief Commander to meet with Officer Hooven regarding this investigation. Meeting to be documented with an ESL[2]." (*Id.*)

On July 7, 2023, Captain Caton and then Lieutenant Robert Wilson met with Officer Hooven at the Chief's request and discussed his off-duty conduct. (ESL, Doc. 138-5). Captain Caton explained that the purpose of the meeting was to caution

[2] ESL stands for "Evaluation Supplement Log." (Caton Depo., Doc.1458:22-23). An ESL is a way CPD documents the activities of its officers, and they can be positive or negative. (Hooven Depo., Doc. 139, PageID # 1646:25- PageID # 1647:3).

Officer Hooven that his off-duty conduct was adversely affecting his work so that he could make better choices going forward. (Caton Depo., Doc. 138, PageID # 1471:23-25).

## II. PROCEDURAL POSTURE

On April 15, 2024, Mr. Taylor and Ms. Hooven filed a lawsuit against Officer Hooven, both individually and in his official capacity. (Compl., Doc.1). They also named the City, Ms. Paul, the Hamilton County Board of County Commissioners, and the Hamilton County Department of Job and Family Services. (*Id.*). An amended Complaint was filed on August 30, 2024, and the City moved to dismiss it. (Am. Compl., Doc. 55; Motion to Dismiss, Doc. 63). On January 3, 2025, the Court granted the City's motion in its entirety. (Order, Doc. 75).

On January 17, 2025, Officer Hooven filed a crossclaim and third-party complaint against the City and City Manager Long seeking a declaration that the City has a duty under R.C. 2744.07 to defend him and indemnify him against Mr. Taylor and Ms. Hooven's civil rights claims. (Crossclaim, Doc. 79 at PageID # 714-717). The City moved to dismiss. (Motion to Dismiss Crossclaim, Doc. 88).

The Court granted in part and denied in part the City's motion, finding Mr. Taylor and Holly Hooven "had pleaded plausible claims that Officer Hooven acted under the color of state law when he requested Ms. Paul to query Mr. Taylor in the restricted database and then disseminated the confidential information to Ms. Hooven." (Order, Doc. 99, PageID # 912). The Court also instructed the parties to conduct discovery to aid the Court in determining whether the City has a duty to

defend and indemnify Officer Hooven pursuant to R.C. 2744.07. (*Id.* at PageID # 912-913).

Discovery concluded on October 19, 2026, and this motion follows.

## III. STANDARD OF LAW

Ohio law generally requires a political subdivision to "provide for the defense of an employee, in any state or federal court, in any civil action or proceeding which contains an allegation of damages for injury, death, or loss to person or property caused by an act or omission of the employee in connection with a governmental function." R.C. 2744.07(A)(1). But a political subdivision is not required to provide for the defense of an employee when, among other things, "the act or omission occurred while the employee was acting manifestly outside the scope of the employee's employment or official responsibilities." R.C. 2744.07(A)(2)(b).

Similarly, a political subdivision must generally indemnify and hold an employee harmless in the amount of any judgment that is obtained against the employee in a state or federal court for damages for injury, death, or loss to person or property caused by an act or omission in connection with a governmental or proprietary function. R.C. 2744.07(B)(1). But this protection does not extend to an employee acting outside the scope of his employment or official responsibilities. R.C. 2744.07(B)(2)(b).

When a political subdivision refuses to provide a defense for an employee, the revised code prescribes the following procedure:

> If a political subdivision refuses to provide an employee with a defense in a civil action or proceeding as described in division (A) of this section,

> upon the motion of the political subdivision, the court shall conduct a hearing regarding the political subdivision's duty to defend the employee in that civil action. The political subdivision shall file a motion within thirty days of the close of discovery in the action. After the motion is filed, the employee shall have not less than thirty days to respond to the motion.
>
> At the request of the political subdivision or the employee, the court shall order the motion to be heard at oral hearing. At the hearing on the motion, the court shall consider all evidence and arguments submitted by the parties. The court shall determine whether the political subdivision has the duty to defend the employee under division (A) of this section. The pleadings shall not be determinative of whether the employee acted in good faith or was manifestly outside the scope of employment or official responsibilities.
>
> If the court determines that the political subdivision has the duty to defend the employee under division (A) of this section, the court shall order the political subdivision to defend the employee in this action.

R.C. 2744.07(D).

## IV. ARGUMENT

The Court should determine the City has no duty to defend Officer Hooven in the instant matter. The actions complained of occurred when Officer Hooven was acting manifestly outside the scope of his employment. *See* R.C. 2744.07(A); R.C. 2744.07(D). This conclusion is not overcome by Officer Hooven's receipt of an ESL from his supervisors or the Plaintiffs' *allegations* that he was acting within the scope of his employment, because they do not establish that his actions fell within his job duties. To the contrary, the developed record leaves no doubt Officer Hooven's conduct was personal in nature and in no way furthered City interests. Consequently, the City has no duty to defendant or indemnify him.

### 1. Hooven's conduct was manifestly outside the scope of his employment.

It is well-established that an employer is only liable for its employee's conduct when the employee acts within the scope of his employment. *Jackson v. Richard*, 2022 U.S. Dist. LEXIS 154731, ¶ 21 (S.D. Ohio) (citing *Byrd v. Farber*, 57 Ohio St.3d 56, 58-59 (1991)). In other words, an employer is not liable for independent self-serving acts of its employees which in no way facilitate or promote its business. *Id.*

An employee's actions are manifestly outside the scope of employment if the actions are "self serving or have no relationship to the employer's business." *Harris v. Hilderbrand*, 172 Ohio St.3d 471, 477 (2023) (quoting *Theobald v. Univ. of Cincinnati*, 111 Ohio St.3d 541, ¶ 28 (2006)). Whether an employee is acting within the scope of his employment is typically a question of fact, however "when reasonable minds can come to but one conclusion, the issue regarding scope of employment becomes a question of law." *Jackson* at ¶¶ 21-22 (quoting *Osborne v. Lyles*, 63 Ohio St.3d 326, 330 (1992)).

Regardless of whether the Court believes Officer Hooven *requested* confidential information from Ms. Paul or innocently *received* it from her during their brief tryst—the record demonstrates he acted manifestly outside the scope of his employment when he sent confidential information to Ms. Hooven.

***First***, Officer Hooven has admitted that CPD was not investigating Mr. Taylor at the time of this incident, and that there was never any City investigation of any kind involving Mr. Taylor then or ever. (Hooven Depo., Doc. 139, PageID # 1686:4-9). Indeed, the record is devoid of camera footage, reports, or radio transmissions

concerning Mr. Taylor or Officer Hooven's children which are ways Officer Hooven typically documents his work as a police officer. *See id.*, PageID # 1668:20-24.

***Second***, Officer Hooven knew the information was confidential and in no way facilitated or promoted City business. Indeed, when Ms. Hooven asked him how he obtained the information about Mr. Taylor, Officer Hooven responded (via text) that he was not foolish enough to utilize any CPD law enforcement database because he would lose his job were he to do so.










(Am. Compl., Doc. 55, ¶ 56).

***Third***, the entire episode was a purely personal one: Officer Hooven and Holly Hooven were embroiled in a domestic relations dispute where Officer Hooven sought full custody of their children. (Hooven Depo., Doc. 139, PageID # 1687: 7-11; *see also*

*id.* at PageID # 1687:16-19) ("Q: "While you were asking Madison or sharing information about Madison, you're undergoing—in the middle of a child custody battle with Holly, correct?" A: "Yes."). When his ex-wife asked why he was "digging around" for information about Mr. Taylor, Hooven responded in part, "* * * You don't care about our agreements! So I want to know who my kids are around." (Text Messages, Doc. 145-7, PageID # 2243). Officer Hooven's motive here was to use the information he acquired to control his children's interactions with Mr. Taylor.

Courts regularly conclude that employees act outside the scope of their employment when their conduct, like Officer Hooven's, is "self-serving." For instance, an employee was found to be acting manifestly outside the scope of his employment as a correctional officer when he dumped an inmate from a wheelchair, causing him to fall to the floor and injure himself. *Jodrey v. Ohio Dep't of Rehab. & Corr.*, 2013-Ohio-289, ¶ 2 (10th Dist.). After testimony about the incident, the magistrate found that the correctional officer's intention when he upended the wheelchair was to harm the inmate. Thus, the magistrate recommended that the trial court issue a determination that the correctional officer was not entitled to immunity. *Id.* at ¶ 5. The trial court agreed with the magistrate's recommendation and found that the correctional officer's conduct was manifestly outside the scope of his employment. *Id.* at ¶ 6. The correctional officer appealed and the appeals court upheld the trial court's decision finding that the trial court did not err in concluding that the correctional officer was acting outside the scope of his employment because the correctional officer's "only apparent motive for his actions was to vent his anger," and "[t]hat self-

serving motive removes [the correctional officer's] actions from the scope of his employment." *Id.* at ¶ 20. Similarly, in the instant case, the only apparent motive for Officer Hooven to provide the confidential SACWIS information to his ex-wife was to aid him in his ongoing custody battle.

In another instructive case, the court determined that an employee's acts were manifestly outside the scope of his employment, divesting him of a city funded defense, when the plaintiff complained that the employee made sexual comments and touched her on one occasion. *Browder v. Ohio Dep't of Rehab. & Corr.*, 2022-Ohio-3088, ¶ 8 (Ct. Cl.). The magistrate reasoned that the employee's actions "did not further the interests of the state and they had no relation to his duties as Health and Safety Coordinator." *Id.* Instead, the employee "diverged from any official job duties and responsibilities to satisfy his own prurient personal self-interests." *Id.* Therefore, his acts were manifestly outside the scope of his employment. *Id.*

Like the employees in *Jodrey* and *Browder*, Officer Hooven's conduct in no way furthered City business. Instead, the record points to two logical motives for Officer Hooven's conduct: (1) to aid him in his personal child custody dispute and (2) to gain information that he would not be otherwise entitled to about the man his ex-wife was romantically involved with and whom he distrusted. Either motive equates with the pursuit of purely private objectives instead of the furtherance of City business. Because Officer Hooven's conduct was so manifestly outside the scope of employment, the City has no duty to defend or indemnify Officer Hooven.

**2. The ESL is not dispositive of whether Hooven was acting within the scope of his employment.**

The City's issuance of an ESL to Officer Hooven does not establish that his conduct was within the scope of his employment. There is a distinction between activities within the scope of one's employment, and activities that reflect on one's ability to serve as an employee. Officer Hooven's ESL concerns the latter, as his behavior led his supervisors to question whether his off-duty activities justified disciplining him as an employee.

As a general rule, an employer's right to discipline employees is confined to work-related matters. *Monroe Auto Equipment Co. v. International Union, United Automotive, etc.*, 981 F.3d 261, 264 (6th Cir. 1992). However, an employer can justify discipline for off-duty conduct if the employer can provide a connection between the facts developed in a particular case and a detrimental effect on its business. *Id.* The connection and effect must be reasonable and discernible "such as could logically be expected to cause some result in the employer's affairs." *Id.* at 264-265.

Officer Hooven concedes his interactions with Ms. Paul strained CPD's working relationship with JFS. *See* Hooven Depo., Doc. 139, PageID # 1690:19-1691:2 ("Like, I would not - - unless it was something I actually had to call JFS for, like, something where a kid or an elderly person was really abused or unless it was something I had to without a doubt in my mind call JFS, I would not call JFS because I did not want to be accused of anything because in today's society an accusation gets you written up. You're here stating this isn't a work thing, however, my job wrote me up over it. So, therefore it's now work related."). Moreover, his supervising captain,

Captain Amanda Caton, explained that she has seen ESLs issued for both work-related and off-duty conduct and that when she issued the ESL to Hooven, they talked about his conduct and how it was affecting his work. (Caton Depo., Doc. 138, PageID # 1459:20-22; PageID # 1469:23-25; PageID #1471:20-25).

The effect Officer Hooven's off-duty conduct had on CPD's relationship with JFS created a nexus to his employment. Therefore, it was reasonable for the City to issue him an ESL, and the ESL in no way transformed Officer Hooven's self-serving conduct into conduct that furthered any CPD law enforcement objectives or City business.

**3. The allegations in the Amended Complaint do not control whether Hooven is entitled to a City-funded defense and indemnification.**

As with the ESL, the Plaintiff's allegations that Officer Hooven acted in his "nondiscretionary capacity as a police officer and public official under the color of State law" are insufficient to require the City defend and indemnify him (Crossclaim Compl., Doc. 79, PageID # 713-14).

The legislative history of R.C. 2744.07 confirms that allegations are insufficient to establish a duty to defend and indemnity. Prior to 2003, R.C. 2744.07 required a political subdivision to provide a defense "if the act or omission occurred or is alleged to have occurred while the employee was acting in good faith and not manifestly outside the scope of his employment or official responsibilities." However, when R.C. 2744.07 was amended, the General Assembly eliminated allegations contained in pleadings as a standalone basis for a city's obligation to defend and indemnify its employees. It instead simplified the standard, only requiring a political subdivision

to provide an employee with a defense "if the act or omission occurred while the employee was acting both in good faith and not manifestly outside the scope of employment or official responsibilities." *See* Am. Sub. S.B. 106 Final Bill Analysis Legislative Service Commission; *see also Cantwell v. Franklin Cnty. Bd. of Comm'rs*, 2011 Ohio Misc. LEXIS 17837 (Sep.9, 2011) (reviewing the amendments and ruling that the employee's conduct was manifestly outside the scope of his employment despite the inmates' allegation to the contrary). And it plainly provided that "[t]he pleadings shall not be determinative of whether the employee acted in good faith or was manifestly outside the scope of employment or official responsibilities." *Id.*; *see also McCormack v. Jefferson Area Local Sch. Dist.*, 2018-Ohio-3744, ¶ 19 (11th Dist.) ("The pleadings themselves no longer provide an alternative basis on which to require a subdivision to provide its employee with a defense.").

Later, in 2018, the legislature drove home the fact that mere reliance on the pleadings is not sufficient to trigger a duty to defend and indemnify by amending R.C. 2744.07 to clarify that a political subdivision "does not have the duty to provide for the defense" when the act or omission "occurred while the employee was acting manifestly outside the scope of the employment or official responsibilities." 2017 Ohio SB 239.

Even though the Amended Complaint alleges Officer Hooven was acting within the scope of his employment, that alone is not sufficient to create a duty to defend. As argued throughout, the record is otherwise devoid of support for Officer Hooven's claim that he was is some way furthering the City's interests by disseminating

confidential information about his ex-wife's new boyfriend while engaged in a contentious child custody dispute. As such, the Court should find that the City has no duty to defend or indemnify Officer Hooven for his purely personal conduct.

## V. CONCLUSION

Based on the foregoing, the City respectfully requests that the Court determine that the City has no duty to defend or indemnify Officer Hooven pursuant to R.C. 2744.07.

Respectfully submitted,

**EMILY SMART WOERNER (0089349)**
**City Solicitor**

***/s/ Katherine C. Baron***
Katherine C. Baron (0092447)
Shuva J. Paul (0088484)
Senior Assistant City Solicitors
801 Plum Street, Room 214
Cincinnati, Ohio 45202
(513) 352-4705
Fax: (513) 352-1515
Katherine.baron@cincinnati-oh.gov
Shuva.Paul@cincinnati-oh.gov
*Counsel for the City of Cincinnati*

## CERTIFICATE OF SERVICE

I certify that on the 9th day of November, 2026 a true and accurate copy of the foregoing motion was filed electronically. Notice of the filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

***/s/ Katherine C. Baron***
Katherine C. Baron (0092447)